Presentment Date and Time: **July 31, 2015 at 12:00 p.m.**
Objection Deadline: **July 31, 2015 at 11:30 a.m.**

HERRICK, FEINSTEIN LLP
Andrew C. Gold
Robert L. Rattet
2 Park Avenue
New York, NY 10016
(212) 592-1400
(212) 592-1500 (fax)
agold@herrick.com
rrattet@herrick.com

*Attorneys for Leon Silverman, Wilton Motiva
Associates, LLC, Wholesale Fuel Distributors--CT,
LLC, and Connecticut Dealer Stations, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                     :
In re:                                                               :
                                                                     :    Chapter 11
SAMMY EL JAMAL,                                                      :
                                                                     :    Case No.: 15-22872 (RDD)
                          Debtor.                                    :
                                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF HEARING ON MOTION FOR ORDER PURSUANT
TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 2004 DIRECTING
<u>EXAMINATION OF THE DEBTOR AND PRODUCTION OF DOCUMENTS</u>**

       **PLEASE TAKE NOTICE** that upon the annexed motion (the "<u>Motion</u>") of Leon

Silverman, Wilton Motiva Associates, LLC, Wholesale Fuel Distributors--CT, LLC, and

Connecticut Dealer Stations, LLC (collectively, the "<u>Silverman Parties</u>") for the entry of an

order, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure, directing

the examination of Sammy El Jamal (the "<u>Debtor</u>"), and the production of documents by the

Debtor, the undersigned will present the attached proposed order to the Honorable Judge Robert

D. Drain, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of

New York, at 300 Quarropas Street, White Plains, New York 10601, for signature on **July 31, 2015 at 12:00 p.m.** (prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the proposed order, with proof of service, is filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers before the date of presentment, there will not be a hearing and the order may be signed.  Objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (General order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard-copy delivered directly to Chambers), and shall be served in accordance with General Order M-242 upon (a) counsel for the Silverman Parties, Herrick, Feinstein LLP, 2 Park Avenue, New York, NY  10016 (Attn.: Andrew C. Gold, Esq.); (b) the Office of the United States Trustee; and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, a hearing will be held on the Motion before the Honorable Judge Robert D. Drain, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, at 300 Quarropas Street, White Plains, New York 10601, on **August 28, 2015 at 10:00 a.m.** (prevailing Eastern Time).

Dated: New York, New York
July 17, 2015

HERRICK, FEINSTEIN LLP
*Attorneys for Leon Silverman, Wilton Motiva*
*Associates, LLC, Wholesale Fuel*
*Distributors--CT, LLC, and Connecticut*
*Dealer Stations, LLC*

By: /s/ Andrew C. Gold
Andrew C. Gold
Robert L. Rattet
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
agold@herrick.com
rrattet@herrick.com

HERRICK, FEINSTEIN LLP
Andrew C. Gold
Robert L. Rattet
2 Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500 (fax)
agold@herrick.com
rrattet@herrick.com

*Attorneys for Leon Silverman, Wilton Motiva*
*Associates, LLC, Wholesale Fuel Distributors--CT,*
*LLC, and Connecticut Dealer Stations, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | |
| | : | Chapter 11 |
| SAMMY EL JAMAL, | : | |
| | : | Case No.:  15-22872 (RDD) |
| Debtor. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION FOR ORDER PURSUANT TO FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE 2004 DIRECTING**
**EXAMINATION OF THE DEBTOR AND PRODUCTION OF DOCUMENTS**

Leon Silverman, Wilton Motiva Associates, LLC ("Wilton"), Wholesale Fuel

Distributors--CT, LLC ("WFD"), and Connecticut Dealer Stations, LLC ("CDS," and together

with the preceding, collectively, the "Silverman Parties"), by their counsel Herrick, Feinstein

LLP, seek entry of the proposed order annexed hereto as Exhibit "A" (the "Proposed Order"),

pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), directing the examination of Sammy El Jamal (the "Debtor") and the production of

documents (the "Documents") identified in the Request for Documents attached to the annexed

Proposed Order.  In support of this Motion, the Silverman Parties respectfully represent as

follows:

## BACKGROUND

1.      The Silverman Parties are creditors of the Debtor in connection with various state court litigations involving the Debtor.

2.      In March 2008, Leon Silverman and the Debtor entered into a business venture to own, manage and provide gasoline to gas stations located in Connecticut.  At the time, (i) WFD was owned 95% by the Debtor and 5% by Leon Silverman; (ii) CDS was owned 94% by the Debtor, 5% by Leon Silverman, and 1% by Connecticut Dealer Stations Management LLC ("CDSM"), an entity owned 100% by the Debtor; (iii) the Debtor was the manager of WFD and CDSM was the manager of CDS.  The Debtor does not, and has never, owned or controlled Wilton.

3.      The business was structured such that CDS acquired from Motiva Enterprises (better known as the Shell Oil Company) title to eight Shell gas stations, leasehold interests in five Shell gas stations, and nine dealer supply agreements pursuant to which retail service stations were supplied with Shell branded motor fuel.  Through a series of interrelated agreements, Silverman and the Debtor agreed, in substance, that the enterprise would be financed, owned and operated as follows:

- CDS would assign its right to acquire the eight gas stations to Wilton;

- Wilton would obtain fee title to the eight gas stations, pay $6.1 million in cash (***which was provided solely by Leon Silverman and his co-investors in Wilton***), and be the "borrower" on a $13,110,000 acquisition loan and a $636,000 CAPEX loan (collectively, the "Loans");

- the Debtor, WFD, CDS, and CDSM (among other entities owned or controlled by the Debtor) would unconditionally guarantee the prompt payment and performance of all of Wilton's obligations under the Loans;

2

- Wilton would enter into a long-term triple net lease for the eight gas stations with CDS as tenant, and CDS would assume all obligations of payment under the Loans, as well as the repair and maintenance of those sites;

- In order to protect Leon Silverman's $6.1 million investment, CDS and WFD would deposit the sum of $5 million into escrow as "additional security" under the long-term leases;

- commencing the third year, CDS would have the option to purchase the eight sites from Wilton; and

- the Debtor, CDSM and other entities owned or controlled by the Debtor would personally guarantee all of CDS's lease obligations.

4.      CDS and WFD (owned and controlled by the Debtor at the time)[1] failed to provide the $5 million additional security as required under the lease and the entities' operating agreements, and the Debtor (and his father) failed to provide the $5 million deposit as guarantors of that obligation.  In addition, in July 2013 the Debtor improperly transferred $863,308.17 from the accounts of CDS and WFD to pay his personal tax obligations.  Accordingly, the Silverman Parties are creditors of the Debtor.

5.      On November 24, 2014, the Debtor and his wife commenced a divorce proceeding in the Supreme Court of the State of New York, County of Westchester under index number 003747/2014 (the "Matrimonial Proceeding").  The Silverman Parties have reason to believe the Matrimonial Proceeding is a sham, and the Debtor intends to shield assets from his creditors through the Matrimonial Proceeding.

6.      Moreover, in pending state court litigation by a judgment creditor (Brent Coscia) against the Debtor, the Debtor has admitted in filed affidavits to making transfers to his brother, and may have made transfers to other members of his family.  In fact, in deciding to appoint a receiver in that case, the state court stated that there was "persuasive and unrebutted

---

[1] Leon Silverman has since acquired the Debtor's ownership interests in CDS and WFD.

evidence that Eljamal has sought to shield assets from creditors." *See* Decision and Order dated April 7, 2015, Index No. 60236/2011, annexed hereto as <u>Exhibit B</u>, at page 3.

7.     On June 8, 2015 (the "<u>Petition Date</u>"), the Debtor filed a petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtor has listed Leon Silverman with an unliquidated, disputed claim in an unknown amount on the *List of Creditors Holding 20 Largest Unsecured Claims* that was filed with his petition.

8.     On July 16, 2015, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "<u>Committee</u>") in the Debtor's chapter 11 case. The Committee is composed of Brent Coscia, JMM Fuelco, LLC, and GasLand Petroleum, Inc.

9.     By this Motion, the Silverman Parties seek information and documents relating to the Matrimonial Proceeding, and the Debtor's finances, including his income, assets and liabilities, as well as the transfers of his assets as referenced in the state court's decision attached as Exhibit B.  The Silverman Parties respectfully submit that, under these circumstances where the Debtor is actively engaged in activities to shield assets from the reach of creditors, the need for disclosure of pertinent information from the Debtor is manifest.

## <u>ARGUMENT</u>

10.     Bankruptcy Rule 2004 authorizes any party to a bankruptcy case to conduct discovery.  Specifically, it provides in relevant part:

> *Examination on Motion.*  On motion of any party in interest, the court may order the examination of any entity.
>
> *Scope of Examination.*  The examination of any entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . and any other matter relevant to the case or to the formulation of a plan.

4

*Compelling Attendance and Production of Documents*.    The attendance of an entity for examination and for the production of documents . . . may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.

11.    The scope of the examination provided by Bankruptcy Rule 2004 is very broad.  *In re Duratech Indus.*, 241 B.R. 283, 289 (E.D.N.Y. 1999); *In re Valley Forge Plaza Associates*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990).  Indeed, the examination may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him."  *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (citing *In re Mantolesky*, 14 B.R. 973, 976 (Bankr. D. Mass. 1981)).  "The purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate."  *In re Johns-Manville Corp.*, 42 B.R. at 364.

12.    Furthermore, the scope of the Bankruptcy Rule 2004 examination is more expansive than that allowed under the Federal Rules of Civil Procedure "and can legitimately be in the nature of a 'fishing expedition.' "  *In re Fearn*, 96 B.R. 135, 137-38 (Bankr. S.D. Ohio 1989) (citing *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)); *see also In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. Md. 1996) ("A Rule 2004 examination allows a broad 'fishing expedition' into an entity's affairs for the purpose of obtaining information relevant to the administration of the bankruptcy estate.); *In re Coffee Cupboard, Inc.*, 128 B.R. 509 (Bankr. E.D.N.Y. 1991).

13.    The scope of a Bankruptcy Rule 2004 inquiry thus is not limited to ascertaining assets of the estate, "but may properly extend to creditors and third parties who have had dealings with the debtor."  *In re Fearn*, 96 B.R. at 138 (citing *Chereton v. United States*, 286 F.2d 409, 413 (6th Cir. 1961), *cert denied*, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384 (1961)).  Indeed, any third party who has a relationship with the debtor may be subject to a Bankruptcy

Rule 2004 examination. *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994).

14.     The Silverman Parties seeks entry of an order directing the Debtor to produce the documents listed on the exhibit to the Proposed Order annexed hereto.   The Silverman Parties seek documents and information related to the Matrimonial Proceeding and the Debtor's finances, and the transfers of his assets as referenced in the state court's decision attached as Exhibit B.   This request is well within the scope of Bankruptcy Rule 2004.   The information sought is narrowly tailored and should not impose any undue hardship on the Debtor.   The Silverman Parties respectfully submit that the documents and information sought fall within the broad scope of inquiry authorized under Bankruptcy Rule 2004.

<u>**NO PRIOR REQUEST**</u>

15.     No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Silverman Parties respectfully request that this Court enter an order substantially in the form of the Proposed Order annexed hereto as <u>Exhibit "A"</u>, directing the examination of the Debtor and the production of documents, and that the Court grant the Silverman Parties such other and further relief as the Court deems just and equitable.

Dated: New York, New York
      July 16, 2015

                        HERRICK, FEINSTEIN LLP
                        *Attorneys for Leon Silverman, Wilton Motiva*
                        *Associates, LLC, Wholesale Fuel*
                        *Distributors--CT, LLC, and Connecticut*
                        *Dealer Stations, LLC*

                        By: */s/ Andrew C. Gold*          
                           Andrew C. Gold
                           Robert L. Rattet
                        2 Park Avenue
                        New York, New York 10016
                        (212) 592-1400
                        (212) 592-1500 (fax)
                        agold@herrick.com
                        rrattet@herrick.com

# EXHIBIT A

A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                    :
:    Chapter 11
SAMMY EL JAMAL,                                           :
:    Case No.:  15-22872 (RDD)
                                Debtor.    :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER PURSUANT TO FEDERAL RULES**
**OF BANKRUPTCY PROCEDURE 2004 DIRECTING**
**EXAMINATION OF THE DEBTOR AND PRODUCTION OF DOCUMENTS**

Upon the motion (the "Motion") of Leon Silverman, Wilton Motiva Associates, LLC, Wholesale Fuel Distributors--CT, LLC, and Connecticut Dealer Stations, LLC (collectively, the "Silverman Parties"), by and through their counsel, Herrick, Feinstein, LLP pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure; and the Court being satisfied that the relief sought in the Motion is appropriate under the circumstances; and good and sufficient cause appearing for the entry of this Order;

**IT IS HEREBY ORDERED**, that the relief requested in the Motion is granted as set forth below; and it is further

**ORDERED**, that counsel for the Silverman Parties are authorized to conduct an oral examination of the Debtor on a mutually agreeable date and time at the offices of Herrick, Feinstein LLP, 2 Park Avenue, New York, New York, 10016; provided, however, that such oral examination shall be conducted within 30 days of entry of this Order; and it is further

**ORDERED**, the Debtor shall produce the documents set forth on the Exhibit hereto at the offices of Herrick, Feinstein LLP, 2 Park Avenue, New York, New York, on or

before the date that is seven (7) days prior to the date of the oral examination of the Debtor; and

it is further

**ORDERED**, that the Court retains jurisdiction to determine any disputes

regarding this Order.

Dated: New York, New York
_____, 2015

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT

## DEFINITIONS

1. "Document" means any writing, drawing, graph, chart, photograph, phonecord, computer data, or other data compilation from which information can be obtained, whatever its origin or location, and regardless of the form in which such information exists or is maintained, and includes, but is not limited to: correspondence, books, records, memoranda, contracts, tables and tabulations, graphs, charts, diagrams, plans, schedules, appointment books and calendars, diaries, telephone messages and logs, tapes, recordings, transcriptions, notices, instructions, minutes, filings, and inter- and intra- office communications; and includes all originals, drafts, non-identical copies and copies with marginal notations or interlineations.

2. "Documents relating to" means documents consisting of, containing, constituting, discussing, describing, concerning, showing, relating or referring to in any way, or being legally, logically, or factually connected directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each request.

3. "Communication" means any contact between two or more persons and shall include, but is not limited to, written contact and any oral contact such as face-to-face meetings and telephone conversations.

4. "Eljamal" means Sammy Eljamal.

5. The "Matrimonial Proceeding" means *Eljamal v. Eljamal*, Index No. 003747/2014, Supreme Court of the State of New York, County of Westchester.

## INSTRUCTIONS

A.   The documents covered by this request include all documents in the possession, custody or control of Eljamal, his representatives, agents, partners, affiliates, or persons acting on its behalf.

B.   The documents covered by this request include any documents that were generated or received by Eljamal or otherwise came into existence or were utilized by Eljamal during the period April 1, 2011 through and including the date of production.

C.   Each document must be produced in its entirety, including attachments, enclosures, and transmittal sheets, and in its original folder, binder, or other cover or container, unless that is not possible. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook or other cover or container, a copy of the label of such cover or other container must be attached to the document.  A request for any document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

D.   With respect to each document withheld from production on the ground of privilege, work product, or any similar claim, provide the following information for each such document: (a) the name(s) and title(s) of the author(s) and/or sender(s) and addressee(s) and any other recipient(s); (b) the name and title of each person (other than stenographic or clerical assistant) participating in the preparation of the document; (c) the name and title of each person to whom the contents of the document have heretofore been disseminated by copy, exhibition, reading or substantial summarization; (d) the date and number of pages of the document; (e) a description of the nature and subject matter of he document;  (f) a statement of the basis on which it is claimed that the document is protected from disclosure; and (g) the name and title of the person

4

supplying the information requested in subparagraphs (a) through (f) above.

E.  Notwithstanding a claim that a document is protected from disclosure, any documents that are withheld must be produced with the portion claimed to be protected redacted.

F.  Each request for production of documents herein shall be deemed to be continuing so as to require prompt supplemental responses if further documents called for herein are obtained or discovered between the time of responding to this request and the time of trial.

G.  If any document within the scope of this request has been destroyed, the response hereto shall be describe in detail the circumstances of such destruction, and any documents relating to such destruction shall be produced.

**DOCUMENTS TO BE PRODUCED**

Produce the following documents in your possession, custody or control:

1. All documents filed in the Matrimonial Proceeding.

2. All correspondence between Eljamal and Farrauto, Berman & Slater.

3. All Net Worth Statements filled out by Eljamal.

4. All executed Net Worth Statements executed by Eljamal.

5. All Net Worth Statements filled out by Haifa Eljamal.

6. All executed Net Worth Statements executed by Haifa Eljamal.

7. All documents exchanged in discovery in the Matrimonial Proceeding.

8. All discovery requests in the Matrimonial Proceeding.

9. All responses to interrogatories, bills of particular and notices to admit in the Matrimonial Proceeding.

10. All correspondence between Farrauto, Berman & Slater and Kass & Navins, PLLC.

11. All drafts of property settlement agreements between Haifa Eljamal and Eljamal.

12. All executed property settlement agreements between Haifa Eljamal and Eljamal.

13. All documents tendered by Eljamal to Farrauto, Berman & Slater.

14. All correspondence between Eljamal and Haifa Eljamal.

15. All financial statements tendered by Eljamal to a third party.

16. All documents used to prepare Eljamal's income tax returns.

17. All documents transmitted by Eljamal to his accountant.

18. All financial statements submitted by Eljamal to a banking institution.

19. All valuations of property concerning property owned by Eljamal.

20. All real estate appraisals of property owned by Eljamal.

21.     All property valuations used in the Matrimonial Proceeding.

22.     All real estate appraisals used in the Matrimonial Proceeding.

23.     All documents concerning the transfer of an equity interest in a corporation by Eljamal.

24.     All documents concerning the transfer of a partnership interest in a partnership by Eljamal.

25.     All documents concerning the transfer of a membership interest in a limited liability company by Eljamal.

26.     All financial statements concerning Haifa Eljamal.

27.     All financial statements concerning Eljamal.

28.     All real estate deeds concerning Eljamal.

29.     All documents concerning Eljamal's equity interest in a corporation.

30.     All documents concerning Eljamal's membership interest in a limited liability company.

31.     All documents concerning Eljamal's partnership interest in a partnership.

32.     All brokerage account statements concerning Eljamal.

33.     All loan applications concerning Eljamal.

34.     All documents concerning distributionss Eljamal has received from limited liability companies.

35.     All documents concerning distributionss Eljamal has received from corporations.

36.     All documents concerning distributionss Eljamal has received from partnerships.

37.     All documents concerning transfers of a membership interest in a limited liability company from Eljamal to a relative of Eljamal.

38.      All documents concerning transfers of an equity interest in a corporation from Eljamal to a relative of Eljamal.

7

39.    All documents concerning transfers of a partnership interest in a partnership from Eljamal to a relative of Eljamal.

40.    All documents concerning the transfer of an membership interest in a limited liability company by Eljamal.

41.    All documents concerning the transfer of an equity interest in a corporation by Eljamal.

42.    All documents concerning the transfer of a partnership interest in a partnership by Eljamal.

43.    All documents concerning any trusts established by Eljamal.

44.    All documents concerning any trusts to which Eljamal is a trustee.

45.    All documents concerning any trusts to which Haifa Eljamal is a trustee.

46.    All documents concerning expenditures of more than $5,000.00 by Eljamal.

47.    All certificate of titles concerning automobiles owned by Eljamal.

48.    All documents concerning a pension plan in which Eljamal has an interest.

49.    All documents concerning a retirement account owned by Eljamal.

50.    All documents concerning any boats or watercraft owned by Eljamal.

51.    All documents concerning watches owned by Eljamal.

52.    All documents concerning jewelry owned by Eljamal.

53.    All documents concerning gifts made by Eljamal in excess of $500.00.

54.    All documents concerning personal property owned by Eljamal in excess of $500.00.

55.    All income statements concerning Eljamal.

56.    All income statements concerning businesses in which Eljamal has an ownership interest.

57.    All balance sheets concerning businesses in which Eljamal has an ownership interest.

58.    All documents concerning any pre-nuptial agreement executed by Eljamal.

59.    All documents concerning the value of any assets transferred from Eljamal to Haifa Eljamal.

60.    All documents concerning the value of any assets transferred from Eljamal to any of Eljamal's relatives.

61.    All documents concerning the consideration that Eljamal received for transferring assets to Haifa Eljamal.

62.    All documents concerning the consideration that Eljamal received for transferring assets to any of his relatives.

63.    All bank statements concerning Eljamal.

64.    All insurance policies concerning Eljamal.

65.    All accounts receivable owned by Eljamal.

66.    All documents concerning claims owned by Eljamal.

67.    All documents concerning claims prosecuted by Eljamal.

68.    All 1099 forms received by Eljamal.

69.    All corporate kits of limited liability companies in which Eljamal is the managing member.

70.    All corporate kits of corporations in which Eljamal is the President.

71.    All documents relating to Eljamal's membership interest in 3017 East Main Street Realty, LLC.

72.    All documents relating to distributions received by Eljamal from 3017 East Main Street Realty, LLC.

73.    All documents relating to income received by Eljamal from 3017 East Main Street Realty, LLC.

9

74.    All documents relating to Eljamal's equity interest in Airport Mart, Inc.

75.    All documents relating to distributions received by Eljamal from Airport Mart, Inc.

76.    All documents relating to income received by Eljamal from Airport Mart, Inc.

77.    All documents relating to Eljamal's equity interest in American Transit Host Corp.

78.    All documents relating to distributions received by Eljamal from American Transit Host Corp.

79.    All documents relating to income received by Eljamal from American Transit Host Corp.

80.    All documents relating to Eljamal's membership interest in Best Rent Properties, LLC.

81.    All documents relating to distributions received by Eljamal from Best Rent Properties, LLC.

82.    All documents relating to income received by Eljamal from Best Rent Properties, LLC.

83.    All documents relating to Eljamal's equity interest in Croton Falls Gas Mart, Inc.

84.    All documents relating to distributions received by Eljamal from Croton Falls Gas Mart, Inc.

85.    All documents relating to income received by Eljamal from Croton Falls Gas Mart, Inc.

86.    All documents relating to Eljamal's equity interest in Croton Gas Mart, Inc.

87.    All documents relating to distributions received by Eljamal from Croton Gas Mart, Inc.

88.    All documents relating to income received by Eljamal from Croton Gas Mart, Inc.

89.    All documents relating to Eljamal's equity interest in Elmsford Snack Mart, Inc.

90.    All documents relating to distributions received by Eljamal from Elmsford Snack Mart, Inc.

91.    All documents relating to income received by Eljamal from Elmsford Snack Mart, Inc.

92.    All documents relating to Eljamal's equity interest in Ardsley Snack Mart, Inc.

10

93.    All documents relating to distributions received by Eljamal from Ardsley Snack Mart, Inc.

94.    All documents relating to income received by Eljamal from Ardsley Snack Mart, Inc.

95.    All documents relating to Eljamal's equity interest in Greenwich Convenience Mart, Inc.

96.    All documents relating to distributions received by Eljamal from Greenwich Convenience Mart, Inc.

97.    All documents relating to income received by Eljamal from Greenwich Convenience Mart, Inc.

98.    All documents relating to Eljamal's membership interest in NY Fuel Holdings, LLC.

99.    All documents relating to distributions received by Eljamal from NY Fuel Holdings, LLC.

100.   All documents relating to income received by Eljamal from NY Fuel Holdings, LLC.

101.   All documents relating to Eljamal's equity interest in Shrub Oak Gas Mart, Inc.

102.   All documents relating to distributions received by Eljamal from Shrub Oak Gas Mart, Inc.

103.   All documents relating to income received by Eljamal from Shrub Oak Gas Mart, Inc.

104.   All documents relating to Eljamal's equity interest in South Greenwich Convenience Mart, Inc.

105.   All documents relating to distributions received by Eljamal from South Greenwich Convenience Mart, Inc.

106.   All documents relating to income received by Eljamal from South Greenwich Convenience Mart, Inc.

107.   All documents relating to Eljamal's equity interest in Purchase Country Market, Inc.

11

108.    All documents relating to distributions received by Eljamal from Purchase Country Market, Inc.

109.    All documents relating to income received by Eljamal from Purchase Country Market, Inc.

110.    All documents relating to Eljamal's equity interest in Tarrytown Snack Mart, Inc.

111.    All documents relating to distributions received by Eljamal from Tarrytown Snack Mart, Inc.

112.    All documents relating to income received by Eljamal from Tarrytown Snack Mart, Inc.

113.    All documents relating to Eljamal's membership interest in NY Dealer Stations Management, LLC.

114.    All documents relating to distributions received by Eljamal from NY Dealer Stations Management, LLC.

115.    All documents relating to income received by Eljamal from NY Dealer Stations Management, LLC.

116.    All documents relating to Eljamal's equity interest in Centralized Management Services, Inc.

117.    All documents relating to distributions received by Eljamal from Centralized Management Services, Inc.

118.    All documents relating to income received by Eljamal from Centralized Management Services, Inc.

119.    All documents relating to Eljamal's equity interest in Thornwood Snack Mart, Inc.

120.    All documents relating to distributions received by Eljamal from Thornwood Snack Mart, Inc.

12

121.   All documents relating to income received by Eljamal from Thornwood Snack Mart, Inc.

122.   All documents relating to Eljamal's membership interest in Wholesale Fuel Distributors-CT, LLC.

123.   All documents relating to distributions received by Eljamal from Wholesale Fuel Distributors-CT, LLC.

124.   All documents relating to income received by Eljamal from Wholesale Fuel Distributors-CT, LLC.

125.   All documents relating to Eljamal's equity interest in Yorktown Gas Mart, Inc.

126.   All documents relating to distributions received by Eljamal from Yorktown Gas Mart, Inc.

127.   All documents relating to income received by Eljamal from Yorktown Gas Mart, Inc.

128.   All documents relating to Eljamal's membership interest in Metro NY Dealer Stations, LLC.

129.   All documents relating to distributions received by Eljamal from Metro NY Dealer Stations, LLC.

130.   All documents relating to income received by Eljamal from Metro NY Dealer Stations, LLC.

131.   All documents relating to Eljamal's membership interest in 202 Gas Mart, Inc.

132.   All documents relating to distributions received by Eljamal from 202 Gas Mart, Inc.

133.   All documents relating to income received by Eljamal from 202 Gas Mart, Inc.

134.   All documents relating to Eljamal's membership interest in Armonk Snack Mart, Inc.

135.    All documents relating to distributions received by Eljamal from Armonk Snack Mart, Inc.

13

134.    All documents relating to income received by Eljamal from Armonk Snack Mart, Inc.

135.    All documents relating to Eljamal's membership interest in Connecticut Dealer Stations, LLC.

136.    All documents relating to distributions received by Eljamal from Connecticut Dealer Stations, LLC.

137.    All documents relating to income received by Eljamal from Connecticut Dealer Stations, LLC.

138.    All documents relating to Eljamal's membership interest in Connecticut Dealer Stations Management, LLC.

139.    All documents relating to distributions received by Eljamal from Connecticut Dealer Stations Management, LLC.

140.    All documents relating to income received by Eljamal from Connecticut Dealer Stations Management, LLC.

141.    All documents relating to Eljamal's membership interest in Cortlandt Manor Gas Mart, Inc.

142.    All documents relating to distributions received by Eljamal from Cortlandt Manor Gas Mart, Inc.

143.    All documents relating to income received by Eljamal from Cortlandt Manor Gas Mart, Inc.

144.    All documents relating to Eljamal's membership interest in Courtesy Properties, LLC.

145.    All documents relating to distributions received by Eljamal from Courtesy Properties, LLC.

146.    All documents relating to income received by Eljamal from Courtesy Properties, LLC.

147.   All documents relating to Eljamal's membership interest in Food & Gas of Oregon Road Inc.

148.   All documents relating to distributions received by Eljamal from Food & Gas of Oregon Road Inc.

149.   All documents relating to income received by Eljamal from Food & Gas of Oregon Road Inc.

150.   All documents relating to Eljamal's membership interest in Hawthorne Snack Mart, Inc.

151.   All documents relating to distributions received by Eljamal from Hawthorne Snack Mart, Inc.

152.   All documents relating to income received by Eljamal from Hawthorne Snack Mart, Inc.

153.   All documents relating to Eljamal's membership interest in MS Scarsdale Snack Mart, Inc.

154.   All documents relating to distributions received by Eljamal from MS Scarsdale Snack Mart, Inc.

155.   All documents relating to income received by Eljamal from MS Scarsdale Snack Mart, Inc.

156.   All documents relating to Eljamal's membership interest in NY Dealer Stations, LLC.

157.   All documents relating to distributions received by Eljamal from NY Dealer Stations, LLC.

158.   All documents relating to income received by Eljamal from NY Dealer Stations, LLC.

159.   All documents relating to Eljamal's membership interest in NY Fuel Distributors, LLC.

160.   All documents relating to distributions received by Eljamal from NY Fuel Distributors, LLC.

161.    All documents relating to income received by Eljamal from NY Fuel Distributors, LLC.

162.    All documents relating to Eljamal's membership interest in Peekskill Gas Mart, Inc.

163.    All documents relating to distributions received by Eljamal from Peekskill Gas Mart, Inc.

164.    All documents relating to income received by Eljamal from Peekskill Gas Mart, Inc.

165.    All documents relating to Eljamal's membership interest in Purchase Snack Mart, Inc.

166.    All documents relating to distributions received by Eljamal from Purchase Snack Mart, Inc.

167.    All documents relating to income received by Eljamal from Purchase Snack Mart, Inc.

168.    All documents relating to Eljamal's membership interest in Travelers Club Restaurant, Inc.

169.    All documents relating to distributions received by Eljamal from Travelers Club Restaurant, Inc.

170.    All documents relating to income received by Eljamal from Travelers Club Restaurant, Inc.

171.    All documents relating to Eljamal's membership interest in Virginia Road Snack Mart, Inc.

172.    All documents relating to distributions received by Eljamal from Virginia Road Snack Mart, Inc.

173.    All documents relating to income received by Eljamal from Virginia Road Snack Mart, Inc.

174.    All documents relating to Eljamal's membership interest in Yonkers Central Avenue Snack Mart, Inc.

175.    All documents relating to distributions received by Eljamal from Yonkers Central

16

Avenue Snack Mart, Inc.

176.   All documents relating to income received by Eljamal from Yonkers Central Avenue Snack Mart, Inc.

177.   All documents relating to Eljamal's membership interest in Wholesale Fuel Distributors, Inc.

178.   All documents relating to distributions received by Eljamal from Wholesale Fuel Distributors, Inc.

179.   All documents relating to income received by Eljamal from Wholesale Fuel Distributors, Inc.

180.   All documents concerning precious metals owned by Eljamal.

181.   All documents concerning the transfer of equity or membership interests by Eljamal of either corporations or limited liability companies set forth in Paragraphs 71 through 179 of Exhibit A.

# EXHIBIT B

To commence the statutory time for appeals as of right
(CPLR 5513[a]), you are advised to serve a copy
of this order, with notice of entry, upon all parties.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------------x
BRENT COSCIA,

                            Plaintiff,                    DECISION and ORDER
                                                         Sequence No. 8
                    -against-                            Index No. 60236/2011

SAMMY ELJAMAL and BRIAN ORSER,

                            Defendants.
-----------------------------------------------------------------------------x
CONNOLLY, J.

        The following papers were considered in connection with the plaintiff's motion to appoint
a receiver:

        Notice of motion, affirmation, affidavit, exhibits, memo of law        1-18
        Eljamal affidavit in opposition, affirmation, exhibits, memo of law     19-22
        Reply affirmation, exhibits, memo of law                                23-25

        On June 13, 2014, the plaintiff obtained a judgment (Adler, J.) in his favor and against the
defendant Sammy Eljamal in the principal sum of $4,785,000.00, and against the defendant Brian
Orser in the principal sum of $225,260.00.[1] The action was commenced to recover damages arising
from a false police report filed by Eljamal with the Harrison Police Department claiming that the
plaintiff had threatened to kill him. Because of these false accusations, the plaintiff was arrested and
forced to stand trial in criminal court. At the trial in this action, the plaintiff demonstrated that
Eljamal, through a practice known as "spoofing," sent a fabricated threatening text message to his
own cell phone in a manner which made it appear that the plaintiff had sent the message. This
fabricated text message formed the basis of Eljamal's criminal accusations against the plaintiff. The
jury awarded compensatory damages for malicious prosecution, prima facie tort, and abuse of
process, and imposed a punitive damage award of $1.5 million.

        By decision and order on motion dated August 11, 2014, the Appellate Division, Second
Department denied Eljamal's motion to stay enforcement of the judgment pending hearing and
determination of an appeal therefrom.

-----------------------------------

        [1] By decision and order dated April 1, 2015, this Court denied Eljamal's motion to set aside the verdict
pursuant to CPLR 4404 (a).

-1-

By order to show cause dated December 19, 2014, the plaintiff seeks an order appointing himself as receiver over Eljamal's interests in two limited liability companies: New York Fuel Holdings, LLC (hereinafter NY Fuel) and Metro NY Fuels Holdings, LLC (hereinafter Metro Fuel) (hereinafter collectively the Companies). The plaintiff seeks, as receiver, the power to administer and collect Eljamal's distributions from the Companies, as well as the power to sell Eljamal's interest in the Companies in satisfaction of the judgment. The plaintiff contends that Eljamal failed to respond to a subpoena to take his deposition on October 9, 2014 and that information subpoeans served on 20 banking institutions failed to locate any of Eljamal's funds (with the exception of $464.44 in exempt funds). Further, of 35 information subpoenas served on companies in which Eljamal is known to have had an interest, the plaintiff only received responses only to two subpoenas, specifically from the subject Companies over which he seeks to be appointed receiver. Separate responses from the Chief Financial Officer of NY Fuel and Metro Fuel indicate that Eljamal owns a 8.627% interest in each of the Companies.

The plaintiff also contends that Eljamal's house is heavily mortgaged and, therefore, not suitable for execution, and that an income execution would not be a viable method of enforcement given the size of the judgment and the difficulty of ascertaining the identity, if any, of Eljamal's employer. The plaintiff points out that, while Eljamal has failed to satisfy the instant judgment or respond to any of the information subpoenas, he has boasted in other court proceedings that his companies do over $60 million in business annually and that his close family members have over $3.6 million in readily available funds that ARE available to his businesses. However, in other actions Eljamal has filed court papers indicating that he recently transferred his interests in a number of companies, evidencing a deliberate attempt to avoid creditors. The plaintiff also contends that he is the ideal person to be appointed receiver of Eljamal's interests in the companies since the plaintiff has over 30 years of experience in the gasoline industry and was in fact previously hired by Eljamal to serve as general manager of his business enterprise.

El Jamal opposes the motion. He claims that his attorney attempted to adjourn the October 9, 2014 deposition because he was unavailable that day, but the plaintiff's attorney refused to consent to an adjournment. Eljamal further states: "The fact of the matter is that I do not have the money or assets currently to satisfy a $4,785,000 [judgment] and I don't known many people who do" (Eljamal affidavit in opposition ¶ 5). Eljamal further contends that Limited Liability Company Law § 607 (b) precludes the plaintiff from executing on his interest in the Companies.

In reply, the plaintiff argues, among other things, that Eljamal's offer to appear for a deposition is not a meaningful remedy, since Eljamal admits in his papers that he lacks the assets to satisfy the judgment.

## DISCUSSION/ANALYSIS

The branch of the plaintiff's motion which is for the appointment of a receiver over Eljamal's interest in the Companies is granted. However, for the reasons that follow, the Court finds that the plaintiff himself is not a suitable receiver and, therefore, the Court appoints an independent receiver

with the power to collect Eljamal's distributions from the Companies and, ultimately, to sell Eljamal's interests in the Companies for the purpose of satisfying the judgment.

Article 52 of the CPLR contains a wide array of enforcement devices available to judgment creditors to aid in the enforcement of judgments. Notably, the CPLR permits the use of any or all of these devices depending on whichever bests suits the particular purpose at hand (*see* Siegel, NY Prac § 492 [5th ed.] ["As to the sequence in which the [enforcement] devices must be used, there is none. The judgment creditor can use whichever ones suit the particular purpose at hand, beginning with any one of them and finishing with any other, with no particular progression except that which the judgment creditor has decided suits the case best. The CPLR has no direction about it, preferring for this, as it prefers for enforcement generally . . ."]).

Although perhaps less frequently employed, one of the available enforcement devices is the appointment of a receiver over a debtor's real or personal property:

> Upon motion of a judgment creditor, upon such notice as the court may require, the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment.

(CPLR 5228 [a]).

"In deciding whether the appointment of [a] receiver is justified, courts have considered the (1) alternative remedies available to the creditor . . . ; (2) the degree to which receivership will increase the likelihood of satisfaction . . . ; and (3) the risk of fraud or insolvency if a receiver is not appointed" (*see Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d 303, 317 [2010] [internal quotation marks omitted]). "A receivership has been held especially appropriate when the property interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction, such as the interest of a psychiatrist/judgment debtor in a professional corporation of which he is a member" (Siegel, NY Prac § 512 [5th ed.]).

Here, although Eljamal has belatedly offered to appear for a post-judgment deposition, in the same breath, he has explicitly stated that he lacks the funds or assets necessary to satisfy the judgment. Further, in his opposition to the motion, Eljamal has not produced or offered to produce any of the documents requested by the plaintiff's subpoena (tax records, bank statements, financial records, etc.). While the plaintiff has presented persuasive and unrebutted evidence that Eljamal has sought to shield assets from creditors, Eljamal has signaled that he lacks the means and motivation to satisfy the judgment. Accordingly, the Court sees no value in delaying the appointment of a receiver pending the holding of a deposition[2] when Eljamal has already stated that he lacks the assets necessary to satisfy the judgment—any identifiable assets should therefore be marshaled and applied

---

[2] Nothing in this order relieves Eljamal from the duty to comply with the subpoena and appear for a deposition.

in satisfaction of the judgment. Stated differently, there is no need to consider alterative remedies to the appointment of receiver to liquidate Eljamal's interest in the companies since, by Eljamal's admission, his assets will be insufficient to satisfy the judgment (*see Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d at 317-318 [upholding appoint of a receiver where "an identifiable risk exists that Defendants will be unable to satisfy a future judgment"]).

Moreover, given the lack of marketability of a membership interest in a limited liability company, the appointment of a receiver is particularly appropriate (*see Udel v Udel,* 82 Misc2d 882, 884 [NY City CivCt 1975] ["In this case because of the lack of marketability of the stock and the difficulty in determining its true value, it is unlikely that a turn over to the sheriff would result in satisfying the judgment. Accordingly it is directed that the stock be turned over to a receiver"]; *see also Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d at 318 ["given the lack of marketability of defendants' intangible property interests (there is no ready market for them), turning the property over to the sheriff would not be helpful in trying to satisfy the judgment"]).

Further, since the Appellate Division, Second Department has denied Eljamal's application for a stay of enforcement, there is no procedural impediment to the plaintiff enforcing the judgment. Accordingly, both the time and circumstances are ripe for the appointment of a receiver to convert Eljamal's 8.627% interest in each of the Companies into funds that may used to satisfy the judgment.

Contrary to Eljamal's contention, Limited Liability Company Law § 607 (b) does not bar the appointment of a receiver in this case. Limited Liability Company Law § 607 (b) states: "No creditor of a member shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company." While that section bars a creditor from obtaining an interest in the property *of the limited liability company*, it does not bar the creditor from executing on the debtor's membership interest itself. Moreover, Limited Liability Company Law § 607 (a), which provides that a judgment creditor's rights in a debtor's membership interest are limited to the rights of an assignee of the membership interest (i.e., lacking the full rights of membership), implicitly signals that a membership interest may be levied in satisfaction of a judgment. In any event, the Court notes that the appointment of receiver over a debtor's interest in a business entity has been held proper (*see Hotel 71 Mezz Lender LLC v Falor*, 14 NY3d at 309 [affirming trial court's ruling that "defendants' intangible interests [in 22 out-of-state limited liability companies] were attachable property under the CPLR"]; *see also Udel v Udel*, 82 Misc2d at 884 [directing that judgment debtor's stock in a professional corporation be turned over to receiver]).

However, while a receiver is the appropriate procedural mechanism to liquidate Eljamal's interests in the companies, the Court denies the plaintiff's request that he be appointed as the receiver. Although CPLR 5228 allows for the appointment of a judgment creditor as a receiver, the Court finds that appointment of an independent receiver is more appropriate to avoid any appearance of impropriety in the sale of Eljamal's interests in the companies (*see* Weinstein, Korn, & Miller, 11-5228 New York Civil Practice: CPLR P 5228.16 ["the appointment of the judgment creditor to collect rent may present little likelihood of abuse, but *the court may find it more advisable to appoint a third person, who is not primarily concerned with the immediate goal of satisfying his own*

-4-

*judgment, to negotiate settlements or sales, to lease or manage property, or to perform other tasks requiring discretion* (emphasis added)")]). In addition to the plaintiff's desire to satisfy the judgment as quickly as possible, the plaintiff's past involvement in the Companies as a general manager could present a conflict of interest in obtaining the highest value for Eljamal's interests in the Companies in an arms-length transaction. While the plaintiff contends that his work experience in the gasoline industry makes him particularly well-suited for appointment as receiver, an independent receiver could properly value and sell Eljamal's membership interests by seeking leave of Court to employ the appropriate expert to conduct appraisals. Accordingly, the Court appoints an independent receiver, rather than the plaintiff, as set forth in the decretals below.

Based upon the foregoing, it is hereby,

ORDERED that the branch of the plaintiff's motion which is for the appointment of a receiver is granted; and it is further

ORDERED that the branch of the plaintiff's motion which is to have himself appointed as receiver is denied; and it is further

ORDERED that John Charles Guttridge, Esq., 303 S. Broadway, Suite 100, Tarrytown, NY 10591, (914) 631-6900, is appointed receiver, with the usual powers of receiver, to sell, dispose, or transfer the defendant Sammy Eljamal's membership interests in New York Fuel Holdings, LLC and Metro NY Fuels Holdings, LLC; and it is further

ORDERED that the receiver shall have the power to collect Sammy Eljamal's future distributions, dividends, and/or profits[3] from New York Fuel Holdings, LLC and Metro NY Fuels Holdings, LLC and the power to take any other action consistent with an assignee of the defendant Sammy Eljamal's interest in those companies (*see* Limited Liability Company Law § 607 [a]); and it is further

ORDERED that, prior to commencing his duties, the receiver shall: (1) file an oath in accordance with CPLR 6402;[4] and (2) file an undertaking in accordance with CPLR 6403, in the form of a bond in the amount of $50,000; and it is further

ORDERED that the receiver shall keep written accounts in accordance with CPLR 6404; and it is further

---

[3] This order shall have no effect over Eljamal's *past* distributions from the Companies, which are the subject of a separate interpleader action, *NY Fuel Holdings, LLC, et al. v El Jamal, et al.* (Westchester County Index No. 70487/2012).

[4] "The provisions of CPLR 6402 through 6405, which are the parts of the provisional remedy article that govern a receiver's oath, bond, accounts, and removal, are made applicable by adoption to the CPLR 5228 receivership" (Siegel, NY Prac § 512 [5th ed.]).

-5-

ORDERED that the receiver shall deposit all monies collected in his own name, as receiver, in a major New York bank and no withdrawal shall be made therefrom except as directed by order of the Court; and it is further

ORDERED that all other relief requested and not decided herein is denied.

This constitutes the decision and order of the Court.

Dated: White Plains, New York
April 7, 2015

HON. FRANCESCA E. CONNOLLY, J.S.C.

TO:   Oxman Tulis Kirkpatrick Whyatt & Geiger LLP
      Attorneys for the plaintiff
      120 Bloomingdale Road, Suite 100
      White Plains, New York 10605
      By NYSCEF

      Farrauto, Berman & Slater
      Attorneys for the defendant Sammy Eljamal
      1250 Central Park Avenue
      Yonkers, NY 10704
      By NYSCEF

      Gaines, Novick, Ponzini, Cossu & Venditti, LLP
      Attorneys for the defendant Brian Orser
      11 Martine Avenue
      White Plains, NY 10606
      By NYSCEF

      John Charles Guttridge, Esq.
      Receiver
      303 S. Broadway, Suite 100
      Tarrytown, NY 10591
      By e-mail: jguttridge@gclawny.com

COURTESY COPY TO:

      Fishman & Decea
      Attorneys on the brief for the defendant Sammy Eljamal
      84 Business Park Drive, Suite 200
      Armonk, NY 10504
      By NYSCEF