SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------------X
SAMMY EL JAMAL, Individually and as Managing
Member of NY FUEL HOLDINGS, LLC; NY FUEL
DISTRIBUTORS, LLC; NY DEALER STATIONS,
LLC; NY DEALER STATIONS MANAGEMENT,
LLC; METRO NY DEALER STATIONS, LLC and
on behalf of himself as an Investor in NY FUEL
HOLDINGS, LLC; METRO NY DEALER
STATIONS, LLC and all other Investors therein,

Index No. 51297/11

**SUMMONS**

Plaintiff(s),

-against-

JAMES A. WEIL, Individually, LEON SILVERMAN,
Individually, JAMES A. WEIL and LEON
SILVERMAN, as Managers of
NY FUEL HOLDINGS, LLC; METRO NY
DEALER STATIONS, LLC; NY FUEL
DISTRIBUTORS, LLC; NY DEALER
STATIONS MANAGEMENT, LLC and
AMSTERDAM 181 REALTY, LLC, and
NY FUEL HOLDINGS, LLC; METRO NY
DEALER STATIONS, LLC; NY FUEL
DISTRIBUTORS, LLC; NY DEALER
STATIONS MANAGEMENT, LLC and
AMSTERDAM 181 REALTY, LLC



Defendant(s).
--------------------------------------------------------------------X
**TO THE ABOVE NAMED DEFENDANT(S):**

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to

serve a copy of your answer, or, if the verified complaint is not served with this

summons, to serve a notice of appearance, on the Plaintiff's attorneys within twenty (20)

days of service of this summons, exclusive of the day of service (or within thirty (30)

days after the service is complete if this summons is not personally delivered to you

within the State of New York); and in case of your failure to appear or answer, judgment

will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates Westchester County as the place of trial. The basis of venue

is that the cause of action arose within the County of Westchester. Plaintiff's address

is 4 Linden Drive, Purchase, New York 10577.

Dated: White Plains, New York
      June 7, 2011

                ALBERT J. PIRRO, JR., ESQ.
                *Attorney for Plaintiff(s)*

By:_____
                Albert J. Pirro, Jr.
                One North Lexington Avenue
                White Plains, New York 10601
                (914) 287-6444

To:    Richard L. Brodsky, Esq.
       5 West Main Street, Suite 205
       Elmsford, NY 10523
       (212) 633-1405
       (914) 720-0880
       richardbrodsky@msn.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

----------------------------------------------------------------X

SAMMY EL JAMAL, Individually and as Managing
Member of NY FUEL HOLDINGS, LLC; NY FUEL
DISTRIBUTORS, LLC; NY DEALER STATIONS,
LLC; NY DEALER STATIONS MANAGEMENT,
LLC; METRO NY DEALER STATIONS, LLC and
on behalf of himself as an Investor in NY FUEL
HOLDINGS, LLC; METRO NY DEALER
STATIONS, LLC and all other Investors therein,

Index No.

**VERIFIED COMPLAINT**

Plaintiff(s),

-against-

JAMES A. WEIL, Individually, LEON SILVERMAN,
Individually, JAMES A. WEIL and LEON
SILVERMAN, as Managers of
NY FUEL HOLDINGS, LLC; METRO NY
DEALER STATIONS, LLC; NY FUEL
DISTRIBUTORS, LLC; NY DEALER
STATIONS MANAGEMENT, LLC and
AMSTERDAM 181 REALTY, LLC and
NY FUEL HOLDINGS, LLC; METRO NY
DEALER STATIONS, LLC; NY FUEL
DISTRIBUTORS, LLC; NY DEALER
STATIONS MANAGEMENT, LLC and
AMSTERDAM 181 REALTY, LLC,



FILED

JUN -7 2011

TIMOTHY G. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

Defendant(s).

----------------------------------------------------------------X

Plaintiff Sammy El Jamal, individually and as Managing Member of NY Fuel Holdings,

LLC; NY Fuel Distributors, LLC; NY Dealer Stations, LLC; NY Dealer Stations Management,

LLC; Metro NY Dealer Stations, LLC and on behalf of himself as an Investor in New York Fuel

Holdings, LLC and Metro NY Dealers Stations, LLC through his attorney Albert J. Pirro, Jr.,

Esq. as and for his Verified Complaint alleges and states:

## INTRODUCTION

1.      This action asserts an individual claim on behalf of Plaintiff Sammy El Jamal

("Plaintiff"), against Defendants James Weil and Leon Silverman (the "Individual Defendants");

and asserts shareholder derivative claims by Plaintiff as both a member and managing member of

NY Fuel Holdings, LLC, NY Fuel Distributors, LLC, NY Dealer Stations, LLC, NY Dealer

Stations Management, LLC, Metro NY Dealer Stations (the "LLC's") (referred to in his capacity

as member and a managing member of the LLCs, as "Plaintiff Member"), on behalf of the

LLC's, against Defendant LLC's and Defendants James Weil and Leon Silverman as a managing

member of the LLC's, and seeks relief against the Defendants on behalf of LLC's.

## THE PARTIES

A.      **Plaintiff**

2.      Plaintiff resides at 4 Linden Drive, Purchase, County of Westchester, New York

10577.

3.      Plaintiff has a principal place of business at 25 St. Charles Street, Thornwood,

New York 10577.

4.      Plaintiff is a member of the LLC's, and is one of three managing members.

5.      Plaintiff is and was a managing member of the LLC's at all times relevant to the

claims and allegations at issue in this Verified Complaint.

6.      Plaintiff was authorized to negotiate on behalf of himself with Shell Oil Company

and its wholly owned subsidiary Motiva Enterprises, LLC ("Motiva") regarding the acquisition

of Shell/Motiva's New York market sale.

7.      Subsequently, Plaintiff, upon assignment of Plaintiff's contract to buy the

Shell/Motiva New York market sale to the LLC's.  Plaintiff was authorized to negotiate on

---

Verified Complaint
06-06-11

Page 2

behalf of the LLC's, at all times relevant to the claims and allegations in this Verified Complaint, and was authorized by Individual Defendants, as co-managing members of the LLC's to negotiate the May 6, 2006 original Asset Purchase and Sale Agreement with Motiva, the June 5, 2010 Amended and Restated Asset Purchase and Sale Agreement together with the accompanying transaction documents which give rise to the claims in this Verified Complaint. (See Amended and Restated Asset Purchase and Sale Agreement, annexed as **Plaintiff's Exhibit "14"**)

      8.      Each of the LLCs are limited liability companies organized and existing under the laws of Delaware with a principal place of business at 25 St. Charles Street, Thornwood, New York with the exception of Defendant 181 Amsterdam Avenue, LLC which has, upon information and belief, has a principal place of business c/o Leon Silverman, Silverman Realty Group, Inc., 237 Mamaroneck Avenue, White Plains, New York 10605.

      9.      Plaintiff is the only individual guarantor on the $33,000,000 loan by Manufacturers and Traders Trust Company June 15, 2010 Loan and Security Agreement used to acquire the New York market from Shell/Motiva.

      10.      Plaintiff is the only individual guarantor on the Amended and Restated Asset Purchase and Sale Agreement and all transactional documents associated with the Asset Purchase and Sale Agreement with Motiva.

B.      **The Defendants**

      11.      Individual Defendant James A. Weil resides at 4 Dolma Road, Scarsdale, County of Westchester, New York 10583.

      12.      Individual Defendant Leon Silverman resides at 42 The Crossings, 2777 Purchase Street, Purchase, County of Westchester, New York 10577.

13.     Accordingly, NY Fuel Holdings, LLC, a Delaware limited liability company was created and filed on or about April 4, 2009 which limited liability company took in the investor's monies including that of Plaintiff. (The operating agreement of NY Fuel Holdings LLC is annexed as **Plaintiff's Exhibit "1"**)

14.     NY Fuel Holdings, LLC, a Delaware limited liability company, then created and owns one hundred (100%) percent of the following subsidiaries:

(a)     NY Dealer Stations, LLC, a Delaware limited liability company, formed to acquire Motiva and hold title to 26 fee locations and 17 leases premises in NY 1 locations (the operating agreement is annexed as **Plaintiff's Exhibit "3"**); and

(b)     NY Dealer Stations Management, LLC, a Delaware limited liability company, formed to manage the fee and lease premises in NY 1 acquired by NY Dealers Stations, LLC (the operating agreement is annexed as **Plaintiff's Exhibit "5"**); and

(c)     NY Fuel Distributors, LLC, a Delaware limited liability company, formed to guarantee the obligations of NY Dealer Stations, LLC to purchase and distribute fuel (the operating agreement is annexed as **Plaintiff's Exhibit "4"**); and

(d)     Metro NY Dealer Stations, LLC, a Delaware limited liability company, formed to initially lease with an option to buy NY 1 and NY 2 locations (the operating agreement is annexed as **Plaintiff's Exhibit "3"**).

15.     Defendant Amsterdam 181 Realty, LLC ("Amsterdam") is a Delaware limited liability company which was filed on January 24, 2011 (See **Plaintiff's Exhibit "12"**). An Asset Purchase and Sale Agreement was originally executed between Shell/MOTIVA as seller and Metro N.Y. Dealers LLC (See **Plaintiff's Exhibit "10"**).

---

Verified Complaint
06-06-11

Page 4

16.     $381,000 of the moneys paid to MOTIVA for the acquisition of 2420 Amsterdam Avenue, New York, NY was paid by NY Fuel Distributors LLC (See **Plaintiff's Exhibit "11"**).

17.     The Shell "branded retail motor fuel facility" located at 2420 Amsterdam Avenue, New York, New York was a corporate opportunity of the LLC's and under the operating agreements of the LLC's was to be offered to the LLC's, in particular NY Dealer Stations, LLC and NY Fuel Distributors, LLC wholly owned by the investors' holding company NY Fuel Holdings, LLC.

18.     Defendant Amsterdam 181 Realty, LLC, a Delaware limited liability company, has as its members of the Amsterdam 181 Realty, LLC are Individual Defendants James A. Weil and Leon Silverman.

19.     Defendant Amsterdam 181 Realty, LLC closed on the title to 2420 Amsterdam Avenue, New York, New York when they acquired the premises from Motiva for the individual Defendants personal gain taking a corporate opportunity of the LLC's and violating the operating agreements of the LLC's (See **Plaintiff's Exhibit "13"**).

## VENUE

20.     Venue is proper in Westchester County as that is the County where Plaintiff resides; is the location where Plaintiff and Defendants engaged in discussions and agreed to partner to acquire the property from Shell/Motiva and is the County where Plaintiff invested monies in the LLC's for the Shell/Motiva properties.

21.     The principle place of business of all LLC's is 25 St. Charles Street, Thornwood, New York with the exception of Amsterdam 181 Realty, LLC which has a principal place of business c/o Silverman Realty, Inc., 237 Mamaroneck Avenue, White Plains, New York 10605.

## JURISDICTION

22.     The Court has jurisdiction as each individual cause of action exceeds the

jurisdictional amount for all other courts, and seeks equitable and other relief.

## THE DECISION BY SHELL OIL COMPANY THROUGH ITS WHOLLY OWNED SUBSIDIARY MOTIVA ENTERPRISES, LLC TO SELL AND/OR LEASE 88 MOTOR FUEL SERVICE STATION LOCATIONS IN THE STATE OF NEW YORK

23.     In 2005, Shell Oil Company ("Shell") and its wholly owned subsidiary Motiva

Enterprises, LLC ("Motiva") retained CB Richard Ellis to solicit bids and auction the properties

either by direct fee sale or lease agreements to its service stations in Arizona, California,

Colorado, Florida, Illinois, Indiana, Kansas, Massachusetts, Missouri, Texas, Virginia,

Washington and New York.  Some of these and other markets were marketed directly by

Motiva's portfolio group to existing wholesalers that represented the Shell brands.

24.     Since Plaintiff was a Shell and Motiva recognized and distinguished service

station retailer and wholesaler for Shell and Motiva for ten (10) years, Deponent decided to bid

for all the Shell/Motiva sites in New York State.

25.     The original bid price was $120 Million and after extensive negotiations,

Deponent successfully reduced it to $88 Million.  After further negotiations, one site was

removed from the portfolio further reducing the bid price to $80 Million. Since the bid required

financing, Plaintiff needed partners to submit a bid and acquire all New York locations and

obtain sufficient equity and a financial institution loan for the acquisition.

## DEFENDANT JAMES WEIL AND LEON SILVERMAN

26.     Defendant Leon Silverman had an investment portfolio of his own.

27.     Defendant James Weil had an investment portfolio of his own and a group of

investors.

Verified Complaint
06-06-11                                                                                    Page 6

28.     After several meetings with Plaintiff, Defendant James Weil and Defendant Leon Silverman elected to partner with Plaintiff as a "key individual man" with Shell/Motiva to bid on the Shell/Motiva Portfolio which consisted of:

(1)     NY 1:  The motor fuel station locations in Westchester County and the Bronx; and

(2)     NY 2:  The motor fuel station locations in Nassau, Brooklyn, Queens and Suffolk County; and

(3)     NY 3:  Nassau County.

**THE ORGANIZATIONAL STRUCTURE PREPARED FOR BID AND ACQUISITION**

29.     Initially, Plaintiff Sammy El Jamal d/b/a Wholesale Fuel Distributors submitted the bid in July 2008 to acquire the Shell/Motiva N.Y. portfolio on an original bid of $120,000,000 which was ultimately negotiated to $80,000,000 based on the business plan of Plaintiff to rehabilitate the NY Marketplace, the training program put in place for Shell by Plaintiff for employees and dealers in the NY Marketplace and Plaintiff's "track record" in New York and Connecticut with Shell/Motiva.

30.     In early 2009, Shell/Motiva gave Plaintiff a deadline to come up with the funds and financing for the acquisition of NY 1, NY 2 and NY 3 by Sammy El Jamal d/b/a Wholesale Fuel Distributors.

31.     Defendant James Weil was brought to Plaintiff as investment partner in December 2009 and Defendant Leon Silverman was already a landlord of eight (8) Shell Service Stations in Connecticut with Sammy El Jamal's wholly owned entities as the tenant of the eight (8) Shell Service Stations.

32.     Accordingly, prior to the acquisition of Shell/Motiva's NY Marketplace, neither Defendant James Weil nor Defendant Leon Silverman had any experience with the operation of motor fuel service stations, the retail of motor fuel products or the wholesale marketing of motor fuel operations.

33.     Simultaneously, Thomas Borek arranged for financing for the Asset Purchase Agreement by Manufacturers and Trader's Trust Company. (See Loan Agreement, **Plaintiff's Exhibit "14"**)

<u>**THE BID ASSIGNMENT**</u>

34.     Upon Defendant James Weil and Defendant Leon Silverman agreeing to enter the venture to acquire the Shell/Motiva NY Market, Alan Rothschild, Esq. was retained to form operational limited liability companies to document, the Defendant Weil Investor's interest, the Defendant Leon Silverman's interest and Deponent Sammy El Jamal's interest.

35.     Accordingly, NY Fuel Holdings, LLC, a Delaware limited liability company was created and filed on or about April 4, 2009 which limited liability company took in the investor's monies including that of Plaintiff.

36.     NY Fuel Holdings, LLC, a Delaware limited liability company, then created and owns one hundred (100%) percent of the following subsidiaries:

(a)     NY Dealer Stations, LLC, a Delaware limited liability company, formed to acquire Motiva and hold title to 26 fee locations and 17 leases premises in NY 1 locations; and

(b)     NY Dealer Stations Management, LLC, a Delaware limited liability company, formed to manage the fee and lease premises in NY 1 acquired by NY Dealers Stations, LLC; and

(c)　　NY Fuel Distributors, LLC, a Delaware limited liability company, formed to guarantee the obligations of NY Dealer Stations, LLC to purchase and distribute fuel; and

(d)　　Metro NY Dealer Stations, LLC, a Delaware limited liability company, formed to initially lease with an option to buy NY 1 and NY 2 locations.

37.　　Plaintiff, Defendant Leon Silverman and Defendant James Weil became the managing members of each of the above limited liability companies with Defendant James Weil and Deponent Sammy El Jamal each paid a management fee of $125,000 from NY Fuel Distributors, LLC and each paid a management fee of $125,000 from NY Dealer Stations, LLC.

## ASSIGNMENT FROM SAMMY EL JAMAL D/B/A WHOLESALE FUEL DISTRIBUTORS TO NY FUEL DISTRIBUTORS, LLC, NY DEALER STATIONS, LLC, NY DEALER STATIONS MANAGEMENT, LLC AND METRO NY DEALER STATIONS, LLC

38.　　On May 6, 2009, NY Dealer Stations, LLC and NY Fuel Distributors, LLC entered into an Asset Purchase and Sale Agreement with Motiva Enterprises, LLC to purchase Motiva's interest in eighty-eight (88) Shell "branded retail motor fuel facilities."

39.　　On June 5, 2009, the May 6, 2009 Asset Purchase and Sale Agreement was amended to include the sale of forty-six (46) "Shell" branded retail motor fuel facilities and/or contracts. Seventeen (17) retail motor fuel facilities had a contract operator and twenty-five (25) retail motor fuel facilities were owned in fee or leasehold interest and operated such facilities by leasing the facilities to independent dealers. One (1) fee interest property already had closed. (See **Plaintiff's Exhibit "6"**). (Note the Amended Asset Purchase and Sale Agreement is governed by New York Law; paragraph 15.2).

40.　　Also as part of the June 5, 2009 Amended Asset Purchase and Sale Agreement, it was agreed that on the closing date, Motiva would, and did, lease forty-one (41) "Shell" branded retail motor fuel facilities to Metro NY Dealer Stations, LLC.

Verified Complaint
06-06-11

41. The purchase price under the Amended Asset Purchase and Sale Agreement, subject to final adjustments, was $43,275,057. (See **Plaintiff's Exhibit "6"**)

42. Section 5.3(n) of the Amended and Restated Asset Purchase and Sale Agreement by and among Motiva Enterprises, LLC and NY Dealer Stations, LLC and NY Fuel Distributors, Inc. executed June 5, 2010 (Amending the Asset Purchase and Sale Agreement dated May 6, 2010) states that as a condition of closing, the Guarantee of Sammy El Jamal was required which guaranteed NY Fuel Distributors, LLC and NY Dealer Stations, LLC's obligations under the Amended Purchase and Sale Agreement and all Transaction Documents. [See **Plaintiff's Exhibit "6"**, section 5.3(n)]

43. Among all the Transaction Documents annexed to the Amended and Related Asset Sale and Purchase Agreement with MOTIVA include environmental indemnification, compliance with NY S Department of Environmental Conservation Consent Order, underground tank removal costs, excavation or restoration activities (until December 31, 2029) purchase of minimum volumes of gasoline under the Wholesale Marketer Agreement, a Shell Branding and Product Purchase Agreement, a retail Facility site lease for each of the Bridge Lease premises, the Asset and Sale Bridge Lease Premises Purchase Agreement, pursuant to Article N of the Amended Asset Purchase and Sale Agreement, a release and indemnification agreement pursuant to Article 11 of the Amended Asset Purchase and Sale Agreement, in favor of Motiva. (See List of Guaranteed Transaction Documents, **Plaintiff's Exhibit "7"**; the personal guarantee of Plaintiff Sammy El Jamal regarding the Asset Purchase and Sale Agreement and all transaction documents is set forth as **Plaintiff's Exhibit "8"**).

44. In addition, pursuant to paragraph 8.4 of the Amended Asset and Purchase Agreement, NY Dealer Stations, LLC and NY Fuel Distributors, LLC agreed as part of their

representation "shall not conflict with or result in the violation of any agreement or contract to which Buyer is party." (See **Plaintiff's Exhibit "6"**, paragraph 8.4)

45. The removal of Sammy El Jamal creates an event of default under the "M & T" loan agreement and violates paragraph 8.4 of the Amended Asset Purchase and Sale Agreement. (See **Plaintiff's Exhibit "6"**, paragraph 8.4)

46. Upon the funding of NY Fuel Holding, LLC and Metro NY Dealer Stations, LLC of investment equity and a loan commitment from Manufacturers and Traders Trust Company ("M & T") of Term Loan A by M & T to NY Fuel Distributors, LLC and NY Dealer Stations , LLC of $21,700,000, a Term Loan A-1 in the amount of $5,000,000, a Term Loan B in the amount of $6,300,000 by M & T to NY Fuel Distributors, LLC and NY Dealer Stations, LLC, Plaintiff assigned his rights and that of Wholesale Fuel Distributors to the aforestated limited liability companies to acquire both the fee and leased premises in NY 1 and the lease with option to buy regarding NY 2 and NY 3.

47. On June 15, 2010, NY Dealer Stations, LLC ("NY Dealer"); NY Fuel Distributors, LLC ("NY Fuel"); NY Fuel Holdings, LLC ("Holdings"); Wholesale Fuel Distributors, Inc. and other limited liability companies, as additional collateral security entered into a Loan and Security Agreement with Manufacturers and Traders Trust Company, 350 Park Avenue, New York, New York 10022 (Lender) (hereafter the "Loan Agreement") (See **Plaintiff's Exhibit "14"**).

48. Pursuant to paragraph 11.17, the Loan Agreement is construed and interpreted under NY Law and any enforcement of the agreement must be brought in either a state of federal court sitting in New York.

Verified Complaint
06-06-11

49.     Plaintiff Sammy El Jamal is both a Corporate Guarantor and Individual Guarantor pursuant to the Loan and Security Agreement with Manufacturers and Traders Trust Company (Lender) (See Loan Agreement, paragraph 1.41 and paragraph 1.47 which states "'Individual Guarantor' shall mean Sammy El Jamal.")

50.     No other member of any of the limited liability companies, including Defendants James Weil and Leon Silverman, are individual guarantors.

51.     Paragraph 9 of the Loan Agreement sets forth various events of default and states: at "9.9 Change in Management. If Sammy El Jamal shall not at all times be active in the management of the obligors." (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraph 9.9).

52.     Pursuant to paragraph 5.4 of the Loan Agreement, the Corporate Guarantors and Sammy El Jamal, as Individual Guarantor have agreed "5.4 Observe Covenants. Observe, perform and comply <u>and causes each subsidiary to observe, perform and comply with the covenants, terms and conditions of this Agreement and any other agreement or document entered into between obligor and lender</u>". (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraph 5.4; <u>emphasis</u> added).

53.     Borrower is defined collectively as NY Dealer and NY Fuel (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraph 1.12).

54.     A Subsidiary, under the Loan Agreement, shall mean as to Borrower, a corporation of which shares of stocks are owned, or the management of which corporation is controlled directly or indirectly through one or more intermediaries, or both, by the Borrower. (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraph 1.79).

55.     Pursuant to paragraph 9.2 of the Loan Agreement, it is an event of default if any obligor fails to perform or observe any covenant, term or condition of the Loan Agreement, or

any other agreement with Lender (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraph 9.2).

56.     Pursuant to paragraph 9.9 of the Loan Agreement, it is an Event of Default "if Sammy El Jamal shall not at all times be active in the management of the obligators." (See Loan Agreement, Plaintiff's **Exhibit "14"**, paragraph 9.9; emphasis added).

57.     Accordingly, the removal of Sammy El Jamal as a manager of the obligors in an Event of Default (The Obligors defined in paragraph 1.70 of the Loan Agreement, as Borrower ["NY Dealer" and "NY Fuel"] any subsidiary of Borrower, the Guarantors and any future guarantors (See Loan Agreement, **Exhibit "14"**, paragraph 1.70).

58.     Paragraph 9.11 of the Loan Agreement with Manufacturers and Traders Trust Company specifies that the termination of any Motiva Agreement or a default by any borrower of any material covenant or provision under any of the Motiva Agreements that shall have a Material Adverse Effect is also an event of default (See Loan Agreement, Plaintiff's **Exhibit "14"**, paragraph 9.11).

59.     Pursuant to paragraph 10.1 of the Loan Agreement, any Event of Default accelerates the total amount of the loan by the Lender which then becomes immediately due and payable (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraph 10.1; emphasis added).

60.     The total amount of money in the event of default which becomes accelerated and immediately due and payable upon removal of Sammy El Jamal is $21,700,000 under Term Loan A, $5,000,000 under Term Loan A-1 Note, and $6,300,000 under Term Loan B for a total due upon an event of default of $33,000,000 (See Loan Agreement, **Plaintiff's Exhibit "14"**, paragraphs 1.81, 1.82, 1.83, 1.84 , 1.85 and 10.1).

Verified Complaint
06-06-11                                                                                    Page 13

61.     Upon an event of default not only does $33,000,000 become immediately due and payable, but Sammy El Jamal, guarantor, is personally liable for the $33,000,000 under paragraph 1.47 of the Loan Agreement.

## MOTIVA PURCHASE AND SALE AGREEMENTS, WHOLESALE MARKETING AGREEMENT AND BRANDING AGREEMENTS

62.     Similarly, the agreement under which NY Dealer Stations, LLC and NY Fuel Distributors, LLC acquired fee interest and leasehold interest from Motiva Enterprises, LLC, a Delaware Limited Liability Company, a subsidiary of Shell Oil Company, pursuant to a Purchase Agreement dated May 6, 2010, amended June 5, 2010, additional transactional documents such as a Wholesale Marketing Agreement, a Branding and Product Purchase Commitment Agreement, an indemnification agreement, environmental obligations and other transactional documents  (annexed hereto as **Plaintiff's Exhibit "6"**) were entered into with Sammy El Jamal, as the only individual personal guarantor, regarding "Shell's" New York fee and lease motor branded retail motor fuel facilities and all other agreements accompanying the June 5, 2010 Amended and Restated Asset Purchase and Sale Agreement.

63.     Pursuant to Exhibit K of the June 4, 2010 Motiva Agreements, Sammy El Jamal is the individual guarantor of the obligations of NY Fuel and NY Fuel Distributors.  The obligation of Sammy El Jamal as personal guarantor in Paragraph 2.7 (vi) of the Guarantee Agreement makes clear that the personal guarantee of Sammy El Jamal under the Motiva Transaction Documents executed on June 5, 2010 was and is a material inducement for Motiva to consummate the transactions with NY Fuel and NY Fuel Distributors (See Motiva Guarantee, **Plaintiff's Exhibit "7"**).

## THE BID FOR ACQUISITION OF NEW JERSEY MARKET OF SHELL/MOTIVA

64.    As in the case of the New York market place, Shell/Motiva auctioned its New
Jersey fee and leased premises.

65.    For the past six months, at the urging of Defendant James Weil and Defendant
Leon Silverman, Plaintiff was requested, notwithstanding that a team had been assembled for
this purpose, to personally visit, review, evaluate and report on each of the Shell sites in the New
Jersey market place.

66.    This endeavor in reviewing a business expansion was done concurrently with
Plaintiff's multiple tasks in obtaining dealers while managing day to day operations and working
on the reconstruction of selected sites for the already acquired New York sites, rehabilitating and
upgrades in the New York sites and having Plaintiff's father operate certain failing New York
sites to keep them from "going dark" in an effort to meet NY Fuel Distributors, LLC's
guaranteed motor fuel volume from Shell and maintaining the acquired and leased sites as
branded Shell stations.

67.    The bid for the New Jersey acquisition was accepted and subsequently Shell was
advised by Defendant James Weil that a new entity formed for the New Jersey acquisition would
not be going forward.

68.    All monies paid out regarding the New Jersey effort was authorized by
Defendants Weil and Silverman and the limited liability companies since the New York limited
liability companies issued their own checks for consultants, appraisers, engineers and lawyers,
overnight stays, transportation, etc. regarding the New Jersey aborted acquisition. (See
**Plaintiff's Exhibits "16" to "18"**).

## MONIES OWED TO NY FUEL DISTRIBUTORS, LLC BY DEPONENT'S FATHER
## FOR FUEL ACQUIRED FROM NY FUEL DISTRIBUTORS, LLC

69.      As indicated under the Wholesale Marketing and Branding Agreement with

Motiva, NY Fuel Distributors, LLC has to brand, operate and acquire certain minimum volumes

of petroleum product for the acquired fee and leased sites in New York.

70.      Once a station "goes dark" its value diminishes and it becomes difficult to

ultimately find a dealer to whom a station may be leased.

71.      Accordingly, NY Fuel Distributors, LLC asked Plaintiff's father to enter into an

interim agreement through his companies to keep five (5) stations from going dark, brand the

stations, and purchase fuel to keep up the volume acquisition guarantee with Motiva.  This he

did.

72.      However, the aforementioned five (5) sites between the charged rent and price of

gasoline simply couldn't function profitably.  The five (5) stations ran into debt in the amount of

$900,000 to NY Fuel Distributors, LLC.

73.      Notwithstanding that NY Fuel Distributors, LLC had given both a rent abatement

and a repayment plan to other dealers they refused to do so for the five (5) sites controlled for

NY Fuel Distributors, LLC's benefit by Plaintiff's father's companies.

74.      After an acrimonious meeting on Thursday, June 2, 2011, regarding the

outstanding $900,000, the $900,000 has been repaid as follows:  $250,000 was paid on June 3,

2011, a rent credit of $265,000 was agreed upon, and on June 6, 2011 Plaintiff assigned his

$250,000 due from Shell/Motiva as his portion of the down payment to Shell/Motiva for the

aborted New Jersey acquisition. (See assignment of $250,000 on June 6, 2011, **Plaintiff's**

**Exhibit "19"**)

75.      Accordingly, this acrimony was resolved.

### THE NOTICE OF MEETING

76.     Apparently as a result of the above acrimony, Defendant NY Fuel Holdings, LLC and Metro NY Dealer Stations, LLC, on Friday, June 3, 2011 served a Notice of Meeting on Deponent stating that a meeting will be held on Tuesday, June 7, 2011 at 9:00am at the office of Silverman Realty Group, Inc, 237 Mamaroneck Avenue, White Plains, New York to, among other things, (1) remove Deponent as Manager of both Defendant NY Fuel Holding, LLC and Metro NY Dealer Stations, LLC; and (2) to amend the operating agreements to change the number of managers in each of the two aforementioned subsidiary limited liability companies to just Defendant Leon Silverman and Defendant James Weil and to remove Plaintiff as a manager. The meeting has been adjourned to June 8, 2011 at 6:00 p.m. at the office of Leon Silverman (See **Plaintiff's Exhibit "20"**).

77.     As stated above, Plaintiff is the individual personal guarantor on both the M & T loans; with an event of default if Plaintiff is removed as a Manager, and making Plaintiff personally liable to Shell/Motiva under the Asset Purchase Agreement, Wholesale Marketing Agreement and Branding Agreement.

### THE PROPOSED ACTION TO BE TAKEN ON JUNE 8, 2011 VIOLATE THE OPERATING AGREEMENT

78.     The operating agreement of NY Fuel Holdings, LLC in paragraph 11.7 was intended to not permit an amendment of the operating agreement if the amendment would adversely affect the interest of any manager and under such circumstances, the consent of the manger shall be required.

79.     Paragraph 11.7 of the Operating Agreement of NY Fuel Holdings, LLC states:

> "Section 11.7 <u>Amendment</u>. This Agreement may be modified by the Manager, provide that if such amendment would not adversely

affect the Interest of any Member other than the Manager, the consent of such Members shall be required."

80.     Paragraph 11.7 of the Operating Agreement of Metro NY Dealers, LLC states:

"Section 11.7  Amendment.  This Agreement may be modified by the Manager, provide that if such amendment would not adversely affect the Interest of any Member other than the Manager, the consent of such Members shall be required."

81.     Further, Section 3.6.4 of the Operating Agreement of NY Dealer Stations, LLC states:

"3.6.4 No material amendment to this Agreement may be made without first obtaining approval of the mortgagee holding the First Mortgage on the Property or any portion thereof and a Majority in Interest."

82.     Clearly, the removal of Plaintiff as a manager is a material amendment required approval of M & T since it creates an event of default under the loan agreement.

83.     Section 11.7 of the Operating Agreement of NY Dealer Stations Management, LLC states:

"Section 11.7  Amendment.  This Agreement may be modified by the Manager, provide that if such amendment would not adversely affect the Interest of any Member other than the Manager, the consent of such Members shall be required."

## AS AND FOR A FIRST CAUSE OF ACTION

### (Fraud in the Inducement)

84.     Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "83".

85.     Prior to entry into the LLCs, Individual Defendants James A. Weil and Leon Silverman represented that Plaintiff Sammy El Jamal would be a managing member of each LLC except NY Dealer Stations, LLC.

86.     With regard to NY Dealer Stations, LLC which owns all the fee and leasehold interest in retail motor fuel stations sites acquired from Motiva, Individual Defendants represented that the Operating Agreement of NY Dealer Stations, LLC would not be amended without the consent of Plaintiff, as a member thereof, if the amendment would adversely affect the interest of Plaintiff.  In such case Plaintiff's consent would be required.

87.     Section 10.7 of the Operating Agreement of NY Dealer Stations, LLC so specifies (See **Plaintiff's Exhibit "3"**).

88.     Sections 3.1.1.3 and 3.9 of the Operating Agreement of NY Fuel Holdings, LLC makes clear that James A. Weil would be manager in charge of fiscal and financial matters.  It was always represented by Individual Defendants that Plaintiff would be manager in charge of operations (See **Plaintiff's Exhibit "1"**).

89.     Further, the Operating Agreements of NY Fuel Distributors, LLC has only two managers:  Plaintiff and Individual Defendant James Weil (See **Plaintiff's Exhibit "4"**, Section 3.1.1).

90.     The Operating Agreement of NY Fuel Distributors, LLC states:
"3.1.2 General Powers.  Subject to the restrictions set forth below in Section 3.1.2.1, Sammy shall be in charge of the day-to-day management.  Sammy shall have full exclusive and complete discretion, power and authority subject in all cases to the requirements of applicable law and the terms of this Agreement to manage, control, administer and operate the day to day business and affairs of the Company for the purposes herein stated, and to make all decisions affecting the day to day business and affairs."  (See **Plaintiff's Exhibit "4",** Section 3.1.2; emphasis added).

91.     The Operating Agreement of NY Dealer Stations Management, LLC specifies that Plaintiff and Individual Defendants Weil and Silverman will be the managers (See **Plaintiff's Exhibit "5",** Section 3.1.1).

92.     As a manager of NY Dealer Stations, LLC it was represented to Plaintiff by the Individual Defendants that Plaintiff would have full, exclusive and complete discretion, power and authority, to control, administer and operate the business and affairs of the Company and to make decisions affecting such businesses and affairs (See **Plaintiff's Exhibit "5"**, Section 3.1.2).

93.     Individual Defendants represented, prior to entering into this operating agreement that all future opportunities in the motor fuel business would be considered a corporate opportunity and first offered to the company.

94.     Paragraph 3.4.4 of the NY Dealer Stations, LLC states that all future opportunities in the motor fuel business to own or operate a motor fuel distribution business is a company opportunity and must be offered to the Company.  (See **Plaintiff's Exhibit "5"**, Section 3.4.4).

95.     The Operating Agreement of NY Dealer Stations Management, LLC states the same.  (See **Plaintiff's Exhibit "5"**, Section 3.4.4).

96.     The Operating Agreement of Metro NY Dealer Stations, LLC states the same. (See **Plaintiff's Exhibit "2"**, Section 3.4.4).

97.     The Operating Agreement of NY Fuel Holdings, LLC states the same.  (See **Plaintiff's Exhibit "1"**, Section 3.4.4).

98.     The Operating Agreement of NY Fuel Distributors, LLC states that an amendment to the operating agreement requires the unanimous consent of its two managers Plaintiff and Individual Defendant Weil.  (See **Plaintiff's Exhibit "4"**, Section 3.5.1.8).

99.     The Operating Agreement of NY Fuel Distributors, LLC states that as long as the loan from M&T is in existence no material amendment to this Agreement may be made without first obtaining the consent of M&T, as lender (See **Plaintiff's Exhibit "4",** Section 3.6.4).

100.     Prior to formation of the aforestated LLCs it was understood that Plaintiff Sammy El Jamal would be a personal and individual guarantor of the M&T $33 Million loan and that the removal of Plaintiff Sammy El Jamal as manager would be an event of default, and therefore, Individual Defendants represented to Plaintiff that he should not worry he would remain a manager.

101.     Defendants issued a notice to remove Plaintiff as manager without honoring the representations documented in the aforestated Exhibits (See **Plaintiff's Exhibit "15"**).

102.     Individual Defendants, without offering the acquisition of 2320 Amsterdam Avenue, New York, New York to the company acquired said premises in their own company Amsterdam 181 Realty, LLC.

103.     Individual Defendants did not obtain the consent of M&T prior to amending the aforestated operating agreement.

104.     The Individual Defendants representations made to Plaintiff prior to entry into the LLCs were a material false representation and the Individual Defendants knew that such representations were false when made and the Individual Defendants intended that Plaintiff would rely upon such false representations.

105.     The Individual Defendants intended to defraud the Plaintiff thereby.

106.     The Plaintiff reasonably relied upon said representations.

107.     The Plaintiff has suffered damage as a result of said reliance.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Prima Facie Tort)

108.    Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "107".

109.    The Individual Defendants and Company Defendants intentionally inflicted harm upon Plaintiff.

110.    The intentionally inflicted harm results in special damages.

111.    The intentionally inflicted harm was without excuse or justification since Plaintiff has not been adjudicated as grossly negligent and under the removal provisions of each operating agreement a breach of fiduciary duty is not a ground for removal.

112.    The infliction of harm was undertaken by an act or series of acts that would otherwise be lawful.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Intentional Infliction of Severe Emotional Distress)

113.    Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "112".

114.    The actions of the Defendants are extreme and outrageous.

115.    The actions of the Defendants are intended to cause or disregard of a substantial probability of causing severe emotional distress.

116.    A casual connection exists between the conduct of Defendants and the injury to Plaintiff.

117.    Plaintiff, as a result has suffered severe emotional distress.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Interference with Contact)

118. Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "117".

119. Valid contracts exist between Plaintiff as individual guarantor and surety under both the Loan Acquisition Agreement with M & T and the Amended and Restated Asset Sale and Purchase Agreement with Motiva Enterprises, LLC.

120. Defendants have knowledge of Plaintiffs' guarantee and surety contracts.

121. Defendants by the wrongful removal of Plaintiff as a manager and amending operating agreements without the consent of M&T and that of Motiva are intentionally procuring the breach of Plaintiff's agreements with those entities.

122. Plaintiff has sustained damages to be determined by the trier of fact.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Intentional Interference with Prospective Advantage)

123. Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "122".

124. Defendants have known of the contract between Plaintiff on behalf of the Letter of Intent and contract between Motiva Enterprises, LLC and Metro NY Dealer Stations, LLC for the acquisition of the premises on Amsterdam Avenue, New York.

125. The Defendants have intentionally interfered with the contract and corporate opportunity of Metro NY Dealer Stations, LLC.

126. The Defendants intentionally interfered with the contract.

127.    The aforestated contract would not only have been entered into but also consummated had Individual Defendants and Amsterdam 181 Realty, LLC, while using funds of NY Fuel Distributors, LLC, not interfered with the contract and acquired it for the Individual Defendants and Amsterdam 181 Realty, LLC.

128.    The Defendants interference was done by wrongful means.

128.    The Plaintiff suffered damages as a result thereof to be determined by the trier of fact.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Specific Performance)

129.    Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "128".

130.    Plaintiff, as managing member of the LLCs is entitled to seek and obtain an order directing Defendants to specifically perform in accordance with the agreements between the parties.

131.    Defendants have declared an intention to violate those agreements by amending the agreements without the consent of the Plaintiff and without the consent of the lender as is required by the agreements between the parties.

132.    Plaintiff and LLCs are entitled to specific performance by the Defendants in accordance with the terms and conditions of the various agreements between the parties.

133.    Defendants should be directed to act in conformance with the agreements between the parties and specifically perform their duties and obligations pursuant to the various agreements between the parties and between the LLCs and third parties.

134.    Plaintiff has no adequate remedy at law.

Verified Complaint
06-06-11                                                                                         Page 24

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (For Declaratory Judgment)

135.    Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "134".

136.    Purusant to CPLR Section 3001, the Court can issue judgment declaring the rights and legal relations of the parties to a justiable controversy.

137.    The respsective obligations and rights in the various agreements set forth above are valuable consideration exchanged between the Plaintiff and the Defendants.

128.    The Plaintiff has performed in all respects pursuant to the various agreements between the parties.

129.    The Defendants have violated the terms of the various agreements between the parties and have threatened to remove Plaintiff as a member of the various LLCs discussed above.

130.    There is an actual and justicable controversy between the Plaintiff and the Defendants regarding the Plaintiff's rights pursuant to the various agreements between the parties.

131.    Plaintiff has no adequate remedy at law should Defendants vote to remove him as they have threatened to do.

132.    Under such circumstances, Plaintiff is entitled to seek and obtain a declaratory judgment against Defendants establishing his rights pursuant to the various agreements between the parties.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

133.    Plaintiff repeats and realleges the paragraphs of this Verified Complaint enumerated as "1" through "132".

134.    "Under New York law, fiduciary duties are a matter of public policy.  See, eg. *Tzolis v. Wolff*, 10 N.Y.2d 100, 855 N.Y.S.2d 6, 884 N.E.2d 1005, 1009 (2008) (noting that the New York legislature has declared it the public policy of New York to allow lawsuit that serve to deter breaches of fiduciary duties); see also *Kinney v. Glenny*, 136 Misc. 201, 240 N.Y.S. 713, 717 (N.Y. Sup. Ct. 1930 ("[A]ll acts of an agent which tend to violate his fiduciary duty are regarded as frauds upon the confidence bestowed and are not only invalid as to the principal, but are also against public policy."), rev'd on other grounds, 231 A.D. 311, 247 N.Y.S. 119 (1931). New York's public policy in enforcing fiduciary duties is an explicit public policy…" See *National Football League Players Ass'n v. National Football League*, 598 F.Supp.2d 971, 981 (D.C. Minn. 2008).

135.    Defendants, as managing members of the LLCs have a fiduciary duty to the LLCs and to Plaintiff as a fellow member.

136.    Defendants have a duty of undivided and undiluted loyalty, requiring them to single mindedly pursue the interests of the LLCs and the Plaintiff as a fellow member.

137.    The agreements between the Plaintiff and the Defendants include an implied covenant of good faith and fair dealing.

138.    As set forth above, Defendants have acted and are about to act to the detriment of the Plaintiff for the sole purpose of enriching themselves at the expense of the LLCs and the

Plaintiff in violation of their fiduciary duty and the implied covenant of good faith and fair dealing.

## AS AND FOR A NINTH CAUSE OF ACTION

### (Breach of Contract)

139.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "138" as if fully set forth in herein.

140.    Defendants, by the acts set forth above, have breached the various agreements between the parties and have, thereby, damaged Plaintiff and threaten to further damage Plaintiff by removing him as member of the LLC's.

141.    Defendants' actions have also violated the agreements between the various LLC's and third parties thereby further damaging the LLC's and Plaintiff by subjecting them to liability due to such breaches.

## AS AND FOR A TENTH CAUSE OF ACTION

### (Preliminary and Permanent Injunction)

142.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "141" as if fully set forth herein.

143.    Defendants have and threaten to cause harm to the Plaintiff and the LLC's in violation of the various agreements set forth above between Plaintiff and Defendants and between the LLC's and third parties.

144.    In the absence of relief from this Court, Plaintiff will further be harmed by Defendants and the LLC's will become liable to third parties due to the wrongful acts of the Defendants.

145.   Under such circumstances, the Defendants should be restrained and enjoined pending a determination of this action so as to prevent further harm to Plaintiff and the LLC's while the Court determines the rights and obligations of the parties.

146.   The Defendants should be perpetually and permanently enjoined from wrongfully removing Plaintiff as a managing member of the LLC's or otherwise violating Plaintiff's right as a managing member of the LLC's.

147.   Plaintiff has no adequate remedy at law.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

### (Negligence)

148.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "147" as if fully set forth herein.

149.   Defendants had a duty of care to Plaintiff.

150.   Defendants breached that duty.

151.   Defendants' negligence was a proximate cause of Plaintiff's injury.

WHEREFORE, Plaintiff is entitled to judgment against the Defendants as follows:

(A)   For the first cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(B)   For the second cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(C)   For the third cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(D)   For the fourth cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(E)     For the fifth cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(F)     For the sixth cause of action, an order directing the Individual Defendants to specifically perform the terms of the various agreements between the parties including, but limited to, the limitations on amendments to such agreements without the consent of the Plaintiff and/or the lender; and

(G)     For the seventh cause of action, awarding Plaintiff judgment pursuant to CPLR section 3001, declaring that Plaintiff and LLC's are entitled to specific performance of the Operating Agreements against Defendants and to have Judgment declaring that Defendants take the appropriate actions to affect the transactions agreed to in the operating agreement; and further declaring that Defendants are precluded from opposing or taking any action against Plaintiff's rights under the operating agreements, the Loan Agreement and the Amended and Restated Purchase and Sale Agreement with MOTIVA ENTERPRISES LLC; as well as declaring Defendants obligated to pay Plaintiff's costs and reasonable attorneys' fees for bringing the derivative action for the LLC's; and

(H)     For the eighth cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(I)     For the ninth cause of action, awarding Plaintiff Judgment against Defendants for an amount to be determined by the trier of facts; and

(J)     For the tenth cause of action, awarding Plaintiff Judgment against Defendants pursuant to CPLR section 6301 et. seq. preliminarily and permanently enjoining Defendants from removing Plaintiff as a manager of the LLC's and further enjoining Defendants from amending the operating agreement of the LLC's without the consent of the lender, Manufacturers

and Traders Trust Company and further enjoining Defendants from taking opportunities under

the operating agreements as well as declaring that Defendant is required to pay Plaintiff's costs

and reasonable attorneys' fees for bringing this derivative action for the LLC; and

    (K)    For the eleventh cause of action, awarding Plaintiff Judgment against Defenatns

for an amount to be determined by the trier of facts; and.

    (L)    Granting the Plaintiff such other and further relief deemed just and proper;

including costs, fees and equitable relief.

Dated:   White Plains, New York
        June 6, 2011

                       ALBERT J. PIRRO, JR., ESQ.
                       *Attorney for Plaintiff(s)*

      By:_____

                     Albert J. Pirro, Jr.
                     One North Lexington Avenue
                     White Plains, New York 10601-1712
                     914-287-6444

To:    Richard L. Brodsky, Esq.
       5 West Main Street, Suite 205
       Elmsford, NY 10523
       (212) 633-1405
       (914) 720-0880
       richardbrodsky@msn.com

## VERIFICATION

STATE OF NEW YORK            )
                            ) ss.:
COUNTY OF WESTCHESTER   )

      SAMMY EL JAMAL, being duly sworn deposes and says:

1. I am the plaintiff in this action.

2. I have read the foregoing verified complaint, and I know the contents thereof.

3. The same are true to my knowledge, except as to those matters which I believe to be true and as to those matter, I believe them to be true.

_____
SAMMY EL JAMAL

Sworn to before me this
6th day of June, 2011.

_____
Notary Public

West Co Registration No: 02KA5062196
expires 9/2/2014

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** Westchester

**RECEIVED**

JUN 27, 2011

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

-------------------------------------------------------x

Sammy El Jamal

**Plaintiff/Petitioner,**

Index No. 51297/11

- against -

Weil, et al

**Defendant/Respondent.**

-------------------------------------------------------x

# NOTICE OF HARD COPY SUBMISSION - - E-FILED CASE
### (This Form Must be Annexed to Hard Copy Submissions in E-Filed Cases)

With limited exceptions, all documents in mandatory e-filed cases and e-filed cases in which consent has been given must be filed electronically. Counsel who seek to submit original hard copy documents in an e-filed case must indicate the reason for hard copy submission by checking the relevant box and signing below.

1. Consensual Cases

[ ] I am authorized to and do withhold consent to e-filing on behalf of my client, a party to the case, or, if self-represented, myself and therefore submit this document in hard copy form.

2. Mandatory Cases

[ ] I am exempt from the requirement to e-file because I have filed with the court the exemption form required by the Rules or the court has granted my application upon good cause shown.

3. Consensual or Mandatory Cases

[ ] As provided by the Protocol on Electronic Filing, I am submitting a proposed order to show cause and supporting papers seeking a TRO, together with the required showing pursuant to Uniform Rule 202.7(f) and/or Commercial Division Rule 20 demonstrating significant prejudice to the applicant from the giving of notice. If these documents are served in hard copy only, I shall, as required by the Protocol, e-file these documents within 3 business days after service.

[✓] I am authorized to file this document in hard copy pursuant to an emergency exception and am submitting the explanatory affirmation/affidavit required by the E-Filing Rules. I shall, as required by the Rules, e-file these documents within 3 business days.

[ ] I am applying for a sealing order and the need to protect sensitive information in the moving papers requires that I submit the papers in hard copy form, as permitted by the Protocol on Electronic Filing.

[ ] I am authorized to file this document in hard copy because of a technical failure on the e-filing site as defined in the E-Filing Rules. I shall, as required by the Rules, e-file these documents within 3 business days after restoration of normal operations at the site.

[ ] I am submitting an ex parte application pursuant to statute _____. If these documents are served in hard copy only, I shall, as required by the Protocol, e-file these documents within 3 business days after service.

[ ] I am submitting documents for in camera review.

[ ] I am filing an exhibit that cannot be e-filed (Rule 202.5-(d)(6)).

Dated: June 7, 2011

_____ (Signature)

Albert J. Pirro, Jr. (Name)

Albert J. Pirro, Jr. (Firm Name)

1 No. Lexington Ave, 15th Fl
White Plains, NY 10604 (Address)

914-287-6444 (Phone)

ajp@pirrogroup.com (E-Mail)

4/14/11

Albert J. Pirro Esq, an attorney duly admitted to practice law before the courts of this state, under penalties of perjury, affirms and states:

1. Affiant is an attorney for Pls in an action entitled Sammy El Jamal, et. al. v. James A. Weil, et. al.

2. Affiant has an office an 1 North Lexington Avenue, White Plains, New York 10601

3. I am submitting the papers in Index No. 51297-11 in hard copy due to an emergency situation and have an emergency preliminary injunction application together w/ an application for a Temporary Restraining Order.

White Plains, New York
June 7, 2011

_____
ALBERT J. PIRRO JR