**HARFENIST KRAUT & PERLSTEIN LLP**
Attorneys for Plaintiffs
**SRG FUELCO, LLC; JMM FUELCO, LLC;**
**THE WEIL FAMILY, LLC**; AND **METRO**
**NY DEALER STATIONS, LLC**
2975 Westchester Avenue
Purchase, New York 10577
Tel. No. 914-701-0800
Jonathan D. Kraut

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re                                                                          Chapter 11

SAMMY EL JAMAL,                                                 Case No. 15-22872(RDD)

               Debtor.

-------------------------------------------------------------X

SRG FUELCO, LLC; JMM FUELCO, LLC;
THE WEIL FAMILY II, LLC; AND METRO NY
DEALER STATIONS, LLC,

               Plaintiffs,

-against-                                                                      Adv. Pro. No.

SAMMY EL JAMAL,

               Defendant.

-------------------------------------------------------------X

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

SRG Fuelco, LLC; JMM Fuelco, LLC; The Weil Family, LLC; and Metro NY Dealer Stations, LLC by their attorneys, Harfenist Kraut & Perlstein, for their Complaint against Sammy El Jamal respectfully represents:

## INTRODUCTION

1. On June 18, 2015 the Debtor filed a voluntary Chapter 11 petition.

2. The Debtor continues to manage its property and operate its business.

3. A creditors' committee has been appointed.

4. No Chapter 11 trustee has been appointed..

5. This Complaint, pursuant to Bankruptcy Code Sections 523(a)(2)(A), 523(a)(4) and 523(a)(6), seeks to have the Plaintiffs' claims against the Defendant declared nondischargeable.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff SRG Fuelco, LLC ("SRG") is a limited liability company formed under the laws of the State of New York, and it has its principal place of business in Westchester County, New York.

7. Plaintiff JMM Fuelco, LLC ("JMM") is a limited liability company formed under the laws of the State of New York, and it has its principal place of business in Westchester County, New York.

8. Plaintiff The Weil Family II, LLC ("WF") is a limited liability company formed under the laws of the State of New York, and it has its principal place of business in Westchester County, New York.

9. Plaintiff Metro NY Dealer Stations, LLC ("Metro") is a limited liability company formed under the laws of the State of Delaware, and it has its principal place of business in Westchester County, New York.

10. Upon information and belief, Defendant Sammy El Jamal resides at 4 Linden Place,

Purchase, New York 10577.

11. This adversary proceeding is commenced pursuant to Bankruptcy Code Sections 105(a), 523(a)(2)(A), 523(a)(4), and 523(a)(6) and Federal Rule of Bankruptcy Procedure 7007(6).

12. This adversary proceeding arises in the Chapter 11 case, Case No.15-22872 (RDD) pending before the United States Bankruptcy Court for the Southern District of New York.

13. This Court has jurisdiction over this adversary proceeding pursuant to Judicial Code Sections 157 and 1334 [28 U.S.C. §§ 157 and 1334].

14. This adversary proceeding is a "core proceeding" pursuant to Judicial Code Sections 157(b)(2)(A) and 157(b)(2)(I) [28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(I)].

15. Venue is proper in this District pursuant to Judicial Code Section 1409 [28 U.S.C. § 1409] in that the instant adversary proceeding is related to the above-captioned case under Title 11 of the United States Bankruptcy Code that is still pending.

## FACTS PERTINENT TO ALL CAUSES OF ACTION

A. *Introduction*

16. SRG at all relevant times in this Complaint is a member of Metro.

17. SRG holds a 31.734% interest in Metro.

18. JMM at all relevant times in this Complaint is a member of Metro.

19. JMM holds a 42.682% interest in Metro.

20. WF at all relevant times in this Complaint is a member of Metro.

21. WF holds a 8.696% interest in Metro.

22. The Defendant at all relevant times in this Complaint is a member of Metro.

23. On May 14, 2012, the Board of Metro approved a motion to remove the Defendant as the Managing Member of Metro because of his misconduct.

24. Croton Gas Mart ("CGM") is a domestic corporation with its principal place of business located in Westchester County, New York.

25. The Defendant is the sole shareholder of CGM.

26. The Defendant is the sole director of CGM.

27. Upon information and belief, CGM was formed by the Defendant to manage and operate a retail gasoline service station, located at 460 Albany Post Road, Croton-On-Hudson, New York.

28. Croton Food Mart ("CFM") is a domestic corporation with its principal place of business located in Westchester County, New York.

29. Upon information and belief, Mr. Musa El Jamal is the sole shareholder of CFM.

30. Upon information and belief, Mr. Musa El Jamal is the sole director of CFM.

31. Upon information and belief, CFM was formed by Mr. Musa El Jamal to manage and operate a retail gasoline service station, located at 460 Albany Post Road, Croton-On-Hudson, New York.  Mr. Musa El Jamal is the father of the Defendant.

32. On or about May 2004, Luposello's Garage, Inc. ("Luposello") and Croton Equities, Inc. ("Equities") entered into a twenty year lease by which Equities acquired certain rights to a portion of real property located at 460 Albany Post Road, Croton-On-Hudson, New York (the "Lease").

33. Pursuant to the Lease, Equities was granted various rights, including but not limited to the right to construct a convenience store and to sell and dispense gasoline at 460 Albany Post Road, Croton-On-Hudson, New York (the "Gas Station").

34. On or about February 2010, CGM entered into a sublease with Equities under which CGM agreed to sublease the Gas Station (the "Sublease").

35. The Sublease was limited in term and was to expire on August 31, 2010.

36. The Sublease provided that rent, maintenance and taxes for the Gas Station were to be paid directly by CGM to Luposello.

37. On or about June 2010, the Defendant approached Mr. James Weil ("Mr. Weil") and Mr. Leon Silverman ("Mr. Silverman") about Metro possibly acquiring certain rights to the Gas Station.

38. At all times SRG, WF and JMM were all members of Metro.

39. At all relevant times herein Mr. Weil was a manager of Metro.

40. At all relevant times herein Mr. Weil was a member and manager of WF.

41. At all relevant times herein Mr. Weil was a member and manager of JMM.

42. At all relevant times herein Mr. Silverman was a manager of Metro.

43. At all relevant times herein Mr. Silverman was a member and manager of SRG.

44. The Defendant advised Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, that CGM was a valuable site which would be a high traffic gasoline station.

45. The Defendant further advised Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, that Metro should invest Metro's corporate funds into the Gas Station so that Metro could supply motor fuels to CGM.

46. Acting upon the Defendant's representations, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, agreed that Metro should invest in upgrading and improving the Gas Station.

47. On or about September 8, 2010, CGM and Equities entered into an agreement for the

extension of the Sublease for the Gas Station (the "Extension Agreement").

48. Under the Extension Agreement, the Sublease for the Gas Station was extended for approximately twenty years.

49. As consideration for the Extension Agreement, CGM was required to pay Equities a sublease fee of $925,000.00.

50. At the conclusion of the twenty year Extension Agreement, Equities is required to convey to CGM any and all rights which it was afforded under Equities' lease with Luposello.

51. The Extension Agreement required that $225,000 of the $925,000 sublease fee be paid at the time of the execution of the Extension Agreement.

52. The Extension Agreement further provided that the remaining $700,000 of the sublease fee would be secured by a promissory note (the "Promissory Note").

53. Furthermore, the Extension Agreement provided that the rent, maintenance, and taxes would be continued to be paid directly to Luposello.

54. Acting upon the Defendant's representations, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, authorized Metro to make the $225,000 down payment required to be made by CGM under the Extension Agreement.

55. At the time of the closing of the Extension Agreement, Metro tendered a $225,000 on behalf of CGM.

56. In addition, at the time of the closing for the Extension Agreement, Metro tendered a $500 check to the title company for the transaction.

57. Subsequent to the closing for the Extension Agreement, Metro made monthly payments on the Promissory Note.

58. During the period ending February 2012, Metro paid more than $144,000 to Equities

pursuant to the Promissory Note.

59. But for the Defendant's representation that Metro would supply motor fuel to CGM, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, would not have agreed to make the payments required by the Extension Agreement.

60. Following the execution of the Extension Agreement, Metro submitted monthly rent, maintenance and tax payments on behalf of CGM to Luposello.

61. During the period ending February 2012, Metro paid more than $185,000 to Luposello in rent, maintenance, and taxes for the gas station.

62. Additionally, during the period following the Defendant's initial conversations with Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, concerning CGM, Metro reimbursed CGM more than $29,000 for rent, maintenance, and tax payments made by CGM to Luposello.

63. Due to the degraded condition of the property and equipment, CGM was closed for renovations in January 2011.

64. During the period that CGM was closed and including January 2012, Metro invested more than $7333,500 in capital improvements to the Gas Station.

65. The $733,500 invested by Metro included payment for the replacement and cleanup of underground storage tanks which stored the fuel inventory at the Gas Station.

66. The $733,5000 invested by Metro also included payment for the renovation of the Gas Station, and, more specifically, the convenience store and gasoline pump infrastructure.

67. But for the Defendant's representations that Metro would supply motor fuel to CGM, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, would not have agreed to invest in upgrading the Gas Station nor make the monthly rent,

maintenance and tax payments to Luposello.

68. Notwithstanding the Defendant's representation to Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, that Metro would supply motor fuel to CGM, the Defendant never made any attempts to have Metro furnish fuel to CGM.

69. On or about October 2011, Messrs. Weil and/or Silverman, as the representatives of WF, JMM and SRG, requested that the Defendant brand CGM as a Shell gasoline station and accept deliveries of motor fuel from Metro and its affiliated companies.

70. The Defendant did not rebrand CGM as a Shell gasoline station.

71. The Defendant, moreover, refused to enter into an agreement by which CGM would receive deliveries of motor fuel from Metro and its affiliated companies.

72. The Defendant reopened CGM under the BP brand.

73. Wholesale Fuels, Inc. is a domestic corporation wholly owned by the Defendant, and his father, Mr. Musa El Jamal.

74. In reopening CGM as a BP motor fuel station and taking delivery from Wholesale Fuel, Inc., the Defendant revealed his true intentions to defraud Metro and to breach his fiduciary duties to Metro.

75. The Defendant never had any intention to use Metro as the wholesale gasoline supplier for CGM.

76. CGM is no longer a subtenant and/or station operator at the Gas Station.

77. Upon information and belief, CFM is wholly owned by Mr. Musa El Jamal and has been substituted as the subtenant and station operator at the Gas Station.

78. Upon information and belief, CFM's acquisition of CGM's position and assumption of debt was without consideration and the transaction was consummated solely to frustrate

the Plaintiffs.

79. CFM has received the benefit of Metro's expenditures in connection with the Gas Station.

## COUNT I
(Bankruptcy Code Section 523(a)(4)-Fraud or Defalcation While Acting in a Fiduciary Capacity)

80. The Plaintiffs repeat each and every allegation of Paragraphs 1 through 78 of this Complaint.

81. As previously set forth, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, approved Metro's funding of the Extension agreement and the renovation of the Gas Station based upon the Defendant's representations as Manager of Metro that Metro would supply motor fuel to CGM.

82. Notwithstanding the Defendant's representations to Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, the Defendant had no intention of having Metro supply CGM with motor fuel.

83. Instead, the Defendant intentionally allowed Metro to fund the Extension agreement and the renovations and repairs at the Gas Station with the knowledge that CGM would only obtain motor fuel deliveries from the Defendant's wholly owned corporation, Wholesale Fuels, Inc.

84. As the Managing Member of Metro, the Defendant owed Metro the fiduciary duty to make available to Metro any business opportunity coming to the Defendant's attention from which Metro could derive a profit or business advantage.

85. In violation of his fiduciary duty to Metro, the Defendant failed to make available to Metro the corporate opportunity to supply motor fuel to CGM and to share in the profits from supplying CGM with motor fuel.

86. Instead, the Defendant diverted the corporate opportunity of supplying motor fuel to

CGM for himself.

87. All of the foregoing breaches of fiduciary duty were performed without the knowledge or consent of Messrs. Weil or Silverman , as the representatives of WF, JMM and SRG.

88. Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, would not have agreed to allow Metro to fund the Extension Agreement and the renovations and repairs for CGM if the Defendant had divulged that Metro would not be supplying CGM with motor fuel.

89. Additionally, SRG, WF and JMM would not have agreed to allow Metro to fund the Extension Agreement and the renovations and repairs for CGM if the Defendant had divulged that Metro would not be supplying CGM with motor fuel.

90. The prior acts have benefitted the Defendant and will continue to benefit the Defendant at Metro's expense and has caused it and will continue to cause serious harm and damages to Metro.

91. The Defendant committed defalcation while acting in a fiduciary capacity.

92. At all relevant times the Debtor was the Managing Member of Metro.

93. Upon information and belief, the Defendant acted with knowledge of his improper conduct that he was breaching his fiduciary duty to Metro.

94. The Defendant intentionally diverted a corporate opportunity from Metro in breach of his fiduciary duty as the Managing Member of Metro.

95. The Defendant intentionally fraudulently induced WF, JMM and SRG to approve expenditures for the Extension Agreement and the renovations and repairs for CGM knowing that he had no intention of having CGM purchase its motor fuel from Metro.

96. The Defendant further breached his fiduciary duty by intentionally engaging in

    corporate waste. Metro's expenditures for CGM did not benefit Metro. The Defendant knew that when Metro advanced its funding for CGM that Metro would not derive any benefit.

97. The Defendant's intentional conduct encompasses fraud while acting in a fiduciary capacity.

98. The Defendant's intentional conduct encompasses defalcation while acting in a fiduciary capacity.

99. The amounts of damages and profits can only be ascertained by an accounting.

100. By reason of the foregoing, pursuant to Bankruptcy Code Section 523(a)(4), Metro is entitled to a judgment declaring that its claims against the Defendant for breach of fiduciary duty are nondischargeable.

## COUNT II
(Bankruptcy Code Section 523(a)(4)-Fraud or Defalcation While Acting in a Fiduciary Capacity)

101. The Plaintiffs repeat each and every allegation of Paragraphs 1 through 99 of this Complaint.

102. The Defendant breached his fiduciary duty as a member of Metro to the other members of Metro, WF, JMM and SRG.

103. As discussed in detail above, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, approved Metro's funding of the extension agreement and the renovation of the gas station based on the Defendant's representation that Metro would supply motor fuel to CGM.

104. Notwithstanding the Defendant's representation to Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, the Defendant had no intent to allow Metro to supply motor fuel to CGM.

11

105. Instead, the Defendant intentionally permitted Metro to fund the Extension Agreement and renovations and repairs at the gas station with the knowledge that CGM would only obtain motor fuel deliveries from the Defendant's wholly owned corporation, Wholesale Fuels, Inc.

106. As a member of Metro, the Defendant owed Metro the fiduciary obligation to make available to Metro any opportunity coming to the Defendant's attention from which Metro could derive profit or advantage.

107. Under ¶ 3.4.4 of the Metro Operating Agreement, the Defendant had a duty to offer the opportunity to own or operate a motor fuel dispensing station to Metro or its members.

108. In violation of his fiduciary duty and the Metro operating agreement, the Defendant failed to make available to Metro or its members the opportunity to supply motor fuel to CGM and to control or share in its business and profits, but instead, diverted the opportunity for himself.

109. All of the foregoing fraudulent acts and breaches of fiduciary duty were performed without the knowledge or consent of Messrs. Weil or Silverman, as the representatives of WF, JMM and SRG..

110. Indeed, Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, would not have agreed to allow Metro to fund the Extension Agreement and the renovations and repairs if the Defendant had divulged that Metro would not be supplying CGM with motor fuel.

111. Additionally, SRG, WF and JMM would not have agreed to allow Metro to fund the Extension Agreement and the renovations and repairs if Sammy had divulged that Metro would not be supplying CGM with motor fuel.

112. The previously described acts benefitted and will continue to benefit the Defendant to the detriment of the other members of Metro.

113. The Defendant's fraudulent conduct has damaged the other members of Metro.

114. The Defendant as a member of Metro owed fiduciary duties to the other members of Metro.

115. The Defendant breached his fiduciary duty to the other members of Metro by committing fraud.

116. The Defendant breached his fiduciary duty to the other members of Metro by committing the act of defalcation.

117. Upon information and belief, the Defendant acted with knowledge of his improper conduct that he was breaching his fiduciary duty to the other members of Metro.

118. The Defendant intentionally diverted a corporate opportunity from Metro thereby breaching his fiduciary duty to the other members of Metro.

119. The Defendant intentionally fraudulently induced Messrs. Weil and Silverman, as the representatives of WF, JMM and SRG, to approve expenditures for the Extension Agreement and the renovations and repairs for CGM knowing that he had no intention of having CGM purchase its motor fuel from Metro, and thereby, damaging the other members of Metro.

120. The Defendant's intentional conduct encompasses fraud while acting in a fiduciary capacity.

121. The Defendant's intentional conduct encompasses defalcation while acting in a fiduciary capacity.

122. The amounts of damages and profits can only be ascertained by an accounting.

123. By reason of the foregoing, pursuant to Bankruptcy Code Section 523(a)(4), SRG, WF and JMM are entitled to a judgment declaring that their claims against the Defendant for breach of fiduciary duty are nondischargeable.

## COUNT III
(Bankruptcy Code Section 523(a)(4)-Embezzlement)

124. The Plaintiffs repeat each and every allegation of Paragraphs 1 through 122 of this Complaint.

125. Metro authorized the disbursement of certain funds concerning CGM based on the fundamental premise that Metro would supply motor fuels to CGM.

126. Metro approved expenditures for the Extension Agreement and the renovations and repairs for CGM.

127. The Defendant received funds and or other financial benefit from Metro for the Extension Agreement and the renovations and repairs for CGM.

128. The Defendant used the funds from Metro for the Extension Agreement and the renovations and repairs for CGM. for his own benefit so that his company could be the wholesale supplier of motor fuels for CGM.

129. Upon information and belief, the Defendant acted with fraudulent intent. The Defendant never intended to have Metro supply CGM with motor fuels.

130. By reason of the foregoing, pursuant to Bankruptcy Code Section 523(a)(4), Metro is entitled to a judgment declaring that its claims against the Defendant for embezzlement are nondischargeable.

## COUNT IV
(Bankruptcy Code Section 523(a)(6)-Conversion)

131. The Plaintiffs repeat each and every allegation of Paragraphs 1 through 129 of this

Complaint.

132. Metro has paid more than $369,500 to Equities as consideration for the Extension Agreement.

133. Metro has paid more than $214,000 in rent, maintenance, and taxes for the Gas Station.

134. Metro has paid more than $733,500 for renovations and repairs for the gas station.

135. All of Metro's expenditures in connection with CGM were made in contemplation of CGM purchasing motor fuels from Metro.

136. The Defendant was aware that but for his representation that CGM would purchase its motor fuels from Metro, Metro would not have made the expenditures set forth above.

137. In reopening CGM as a BP motor fuel station and taking delivery of gasoline from Wholesale Fuel, Inc., the Defendant has converted more than $1,317,000 that belongs to Metro.

138. By converting more than $1,317,000 of Metro's funds for his personal use the Defendant intended to injure Metro.

139. The Defendant acted deliberately to cause injury to Metro when he converted Metro's funds.

140. By converting more than $1,317,000 of Metro's funds for his personal use the Defendant intended to injure Metro.

141. The Defendant acted maliciously when he converted $1,317,000 of Metro's funds for his personal use.

142. The Defendant's actions in committing the tort of conversion against Metro were wrongful and without just cause or excuse.

143. Pursuant to Bankruptcy Code Section 523(a)(6), the debt of the Defendant to Metro for

conversion is nondischargeable.

144. By reason of the foregoing, pursuant to Bankruptcy Code Section 523(a)(6), Metro is entitled to a judgment against the Defendant declaring that its debt against the Defendant for conversion in the amount of no less than $1,317,000 is nondischargeable.

**COUNT V**
(Bankruptcy Code Section 523(a)(2)(A)-Fraud)
(False Pretenses, False Representation and Actual Fraud)

145. The Plaintiffs repeat each and every allegation of Paragraphs 1 through 143 of this Complaint.

146. The Defendant intentionally and knowingly made false and fraudulent statements of fact to WF, JMM and SRG to induce Metro to extend financing to CGM.

147. The Defendant intentionally and knowingly concealed material facts from WF, JMM and SRG to induce Metro to extend financing to CGM.

148. The Defendant's false and fraudulent statements of material fact include, but are not limited to:

    a. Representations that Metro would supply wholesale motor fuels to CGM;

    b. Representations that investment of Metro's funds in the Extension Agreement would be profitable to Metro;

    c. Representations that the investment of Metro's funds in the repairs and renovations to the Gas Station would be profitable to Metro;

149.

The Defendant's acts of fraudulent concealment include, but are not limited to:

    a. Concealment of the fact that CGM would be purchasing its motor fuels from the Defendant's wholly owned company, Wholesale Fuels, Inc.; and

16

      b. Concealment of the Defendant's intention that CGM would never purchase motor fuels from Metro.

150. The Defendant made false and fraudulent statements and concealed material facts in an intentional effort to induce Metro to fund the renovation of CGM so that he could supply with it with fuel from Wholesale Fuels, Inc.

151. Metro justifiably relied on the Defendant's representations.

152. As a proximate result of the Defendant's fraudulent representations and fraudulent concealment Metro has incurred damages in the amount of no less than $1,317,000.00.

153. Pursuant to Bankruptcy Code Section 523(a)(2)(A), the debt of the Defendant to Metro for fraud is nondischargeable.

154. By reason of the foregoing, pursuant to Bankruptcy Code Section 523(a)(2)(A), Metro is entitled to a judgment against the Defendant declaring that its debt against the Defendant for fraud in the amount of no less than $1,317,000.00 is nondischargeable.

    WHEREFORE, the Plaintiffs demand judgment against the Defendant as follows:

    A) As to Count I, pursuant to Bankruptcy Code Section 523(a)(4), Metro is entitled to a judgment declaring that its claims against the Defendant for breach of fiduciary duty are nondischargeable;

    B) As to Count II, pursuant to Bankruptcy Code Section 523(a)(4), SRG, WF and JMM are entitled to a judgment declaring that their claims against the Defendant for breach of fiduciary duty are nondischargeable;

    C) As to Count III, pursuant to Bankruptcy Code Section 523(a)(4), Metro is entitled to a judgment declaring that its claims against the Defendant for embezzlement are nondischargeable;

D) As to Count IV, pursuant to Bankruptcy Code Section 523(a)(6), Metro is entitled to a judgment against the Defendant declaring that its debt against the Defendant for conversion in the amount of no less than $1,317,000 is nondischargeable;

E) As to Count V, pursuant to Bankruptcy Code Section 523(a)(2)(A), Metro is entitled to a judgment against the Defendant declaring that its debt against the Defendant for fraud in the amount of no less than $1,317,000 is nondischargeable;

F) the costs of this adversary proceeding; and

G) such other and further relief as this Court deems just and equitable

Dated: Purchase, New York
       October 5, 2015

**HARFENIST KRAUT & PERLSTEIN**
Attorneys for Plaintiffs
**SRG FUELCO, LLC; JMM FUELCO, LLC; THE WEIL FAMILY, LLC**; AND **METRO NY DEALER STATIONS, LLC**

By:_____/s/_____
   Jonathan D. Kraut
   2975 Westchester Avenue
   Purchase, New York 10577
   Tel. No. 914-701-0800