PENACHIO MALARA LLP  
Counsel for the Debtor  
235 Main Street  
White Plains, New York 10601  
(914) 946-2889

**HEARING DATE & TIME:**  
**DECEMBER 8, 2015 at 10:00 AM**

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------X  
In re

SAMMY ELJAMAL,

              Debtor.  
------------------------------X

CHAPTER 11

CASE NO.: 15-22872 (RDD)

**INTERIM APPLICATION OF PENACHIO MALARA LLP AS COUNSEL FOR THE DEBTOR FOR APPROVAL OF LEGAL FEES IN THE AMOUNT OF $83,398.00 AND REIMBURSEMENT OF LEGAL EXPENSES IN THE AMOUNT OF $6,134.62 PURSUANT TO 11 U.S.C. § 328 FOR THE PERIOD FROM JUNE 7, 2015 THROUGH NOVEMBER 6, 2015**

**HONORABLE ROBERT D. DRAIN,**  
**UNITED STATES BANKRUPTCY JUDGE:**

The final application for compensation (the "Application") of **PENACHIO MALARA, LLP**, counsel to **SAMMY ELJAMAL**, the debtor herein (the "Debtor"), pursuant to 11 U.S.C. § 328 respectfully represents as follows:

**I.**         **BACKGROUND AND ACTIVITY IN CHAPETR 11 CASE**

        1.     On or about June 24, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") with the Clerk of this Court and the case was referred to the Bankruptcy Judge herein.

        2.     Since the filing, the Debtor has continued in the possession and management of his property as a debtor-in-possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.

3. An official committee of unsecured creditors has been formed (the "Committee"). No trustee or examiner has been appointed.

4. The Debtor's background has been set forth in detail in various motions and proceedings brought before the Court. Set forth herein is a brief narrative.

5. The Debtor is an individual who is engaged primarily in the business of operating various gasoline stations and convenience stores. The Debtor, who is in his early 40's, has been involved in the gasoline distribution business for many years. The Debtor, through hard work and natural business savvy, essentially transformed a single warehouse in the Bronx owned by his father into a thriving gasoline retail enterprise. The businesses that the Debtor currently operates (aside from those that are in litigation) are a conglomeration of "mom and pop" style family businesses.

6. The Debtor's financial reverses are the result of business disputes with his partners, Leon Silverman ("Silverman") and James Weil ("Weil"), sophisticated investors approximately twice the Debtor's age.

7. Unfortunately, during the last four years, the Debtor has been a party to highly contentious and protracted litigation with Weil and Silverman whose primary role initially was to finance the Debtor's acquisition of numerous gas stations. Instead of serving as lenders, Weil and Silverman essentially took over the Debtor's business and effectively ousted him from operations and from the attendant financial benefits.

8. In addition to Weil and Silverman, over the course of the past 4 years, the Debtor has been litigating with (i) Gasland Petroleum, Inc. ("Gasland"), a former gasoline supplier and its principals; (ii) Brent Coscia ("Coscia"), an employee of one of the Debtor's companies who obtained a judgment against the Debtor for malicious prosecution and related

torts; and (iii) Haifa Eljamal, his estranged wife with whom, upon information and belief, he has reconciled.

9. Other than the aforementioned litigation adversaries, the Debtor's creditors are limited.

10. The litigation with Silverman, Weil and Coscia, has imperiled the Debtor's financial viability. By seeking the protections of this Court, the Debtor's goal was to preserve his assets for the benefit of all creditors and to invoke the inherent equitable powers available to parties to address a drastically inequitable situation. The Debtor believes that the value of his business interests far exceeds his liabilities to his creditors.

11. The Debtor also filed for bankruptcy relief to enable him to address creditor claims in a single forum. Litigating in multiple forums in State Court has naturally distracted the Debtor from his business and caused him to incur additional expenses.

12. The Bankruptcy Court has been referred to as the Court of "last resort." In this case, this Court's inherent equitable powers are needed to prevent a manifest injustice - the potential seizure and liquidation of the Debtor's assets by litigation adversaries for a fraction of their value to the detriment of the Debtor and his estate. The Debtor sought the relief of this Court to enable him to formulate a plan to pay his legitimate creditors what, if anything, is due to them.

13. The Debtor's goal in filing for bankruptcy relief is to retain his businesses and real estate holdings and to fund a Chapter 11 plan through future earnings.

14. The Debtor hopes to file a disclosure statement plan within the next few months. The Debtor would like to focus on resolving the litigation, pursuing on appeal of the Coscia judgment and moving forward with proposing a plan.

## Activity In The Debtor's Chapter 11 Case

15. During the pendency of this Chapter 11 proceeding, the Debtor has complied with his duties as a debtor-in-possession. He attended the initial meeting of the creditors conducted by the Office of the United States Trustee as well as a follow up meeting.

16. The Debtor has followed the directives of the Office of the United States Trustee. For example, he has established a post-petition operating account and produced proof of insurance, income tax returns and other financial information requested.

17. The Debtor has prepared and filed monthly operating reports.

18. Throughout this case, the Debtor has endeavored to cooperate with the Committee notwithstanding the validity of some of the claim of its members. In this regard, it is noteworthy that the Committee members consist of the Gasland, Coscia and JMM Fuelco LLC, an entity controlled by Weil. Upon information and belief, Silverman serves as an *ad hoc* member of the Committee. The Debtor asserts that no member of the Committee but Coscia actually holds a valid, unliquidated and non-contingent claim against him.

19. The Debtor has complied substantially with the terms of an order entered by this Court under Federal Rule of Bankruptcy Procedure 2004. He has produced numerous documents to the Committee. The Debtor's accountant, Peter Kennedy, has submitted substantial financial information and related information to the Committee. The Debtor has appeared at the office of counsel for the Committee for two less than full days and intends to appear for a third day.

20. The Debtor, through his counsel, has been responsive to all requests for information and/or clarification. The Debtor, through his counsel, has endeavored to cooperate with the Committee and all parties in interest.

21. The Debtor has discussed with counsel the outline of potential plans. The Debtor has discussed funding a plan, in primary part, with distribution from his corporate holdings including cash in the amount of approximately $700,000.00 held by NY Fuel Distributors and/or Metro NY Dealer Stations. Counsel has broached the Committee, in general terms, with the prospect of a joint plan and has requested mediation. The Committee appeared to be amenable to same.

22. This Court established December 1, 2015 as the last day for filing proofs of claim. The Debtor is currently in the process of reviewing such claims and will file objections to those claims which are not valid.

23. In addition to the instant case, the Debtor has been dealing with other judicial proceeding including the Chapter 11 filings by (i) Armonk Snack Mart f/k/a Friendly Service of Armonk f/k/a Friendly Service as New Rochelle, Yonkers Snack Mart and Connecticut Dealer Stations Management, LLC; (ii) a matrimonial proceeding pending in New York State Supreme Court; and (iii) various appeals including an appeal of the Coscia judgment.

24. The Debtor is also in the process of addressing 5 adversary proceedings pending before this Court (collectively, the "Adversary Proceedings"). Three of the Adversary Proceedings originated in the State Court and were removed to this Court. Two of the Adversary Proceedings are actions to deny the dischargeability of debts. One of the non-dischargeabuility actions was commenced by Coscia and is based upon his state court judgment. The other was brought by entities related to Silverman and/or Weil for breach of fiduciary duties in connection with the operation of businesses.

25. Pursuant to various orders of this Court, the Debtor has retained special outside counsel to assist him.

## II. THE APPLICATION AND JURISDICTION

26. By this Application, the Firm seeks payment of **$83,398.00** in fees and reimbursement of **$6,134.62** in expenses pursuant to 11 U.S.C. §§ 326, 330, and 331 for the period of June 7, 2015 through November 6, 2015.

27. The Court has jurisdiction over this Application pursuant to 28 U.S.C. Section 1334. This is a core proceeding pursuant to 28 U.S.C. § 157 (b) (2) (A), in that it is a matter concerning the administration of a bankruptcy estate.

28. The statutory predicates for the relief sought herein are Sections 328 and 329 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

## III. THE APPLICATION FOR ATTORNEYS FEES FOR THE PERIOD FROM JUNE 7, 2015 THROUGH NOVEMBER 6, 2015

29. By application dated October 26, 2015 (ECF #122), this Court approved the Firm's retention.

30. The legal services performed by the Firm include, but are not limited to, the following:

    a. Engaged in ongoing extensive discussions with the Debtor and State Court counsel regarding bankruptcy rules and procedure;

    b. Prepared Petition and filing;

    c. Drafted various pleadings including retention applications, removals of state court litigation, motion to extend exclusivity;

d.  Investigated various exit strategies with Debtor including a sale, refinance or cure;

e.  Assisted with obligations of the Debtor including operating reports and examinations;

f.  Answered dischargeability action of Coscia; and

g.  Reviewed and produced numerous documents to the Committee.

It should be noted that in this case, because of the animosity and mistrust among the parties, counsel was required to review submissions very carefully to avoid any accusations regarding disclosure. Many seemingly simple pleadings required much more time than ordinarily required.

31. The narrative portion of this Application is intended to present to this Court a broad overview of the services rendered by the Firm. Such services are described in detail in the logs annexed to this Application as Exhibit B. In reviewing the time expending, counsel asks the Court to keep in mind that the Debtor requires a great deal of time and attention. The Debtor's business holdings are fairly complex. The litigation that preceding this case has been extensive. Moreover, the Debtor requires more attention than the "average" individual debtor. He feels that he has been taken advantage of by Weil and Silverman and that various State Court proceedings have been inherently unfair. It is impossible to memorialize all of the communications between counsel and the Debtor and/or the staff members at his businesses. Most routine communications are not included in the compensation sought.

32. In furtherance of "project summary billing" as mandated by the "Guidelines" promulgated by the Office of the Office of the United States Trustee, a summary of billing by project is annexed hereto as Exhibit A. The Court is respectfully referred thereto.

33. All of the services performed for the Debtor by the Firm have and will inure to the benefit of its estate. Anne Penachio's hourly billing rate is $385.00 per hour for this case. Francis Malara's billing rate for this case is $300.00 per hour. Paralegal, Jennifer Raggo's billing rate for the period covered by this application is $100.00 per hour. Anne Penachio performed the vast bulk of services in this case.

34. The Debtor was not billed for services which are routine and not legal in nature, such as proofreading. A paralegal assisted counsel with numerous services.

35. As noted above, at the time of its retention, the Firm was paid $10,000.00. The payment made by the Debtor was disclosed in counsel's retention application.

V. **ATTORNEYS AND PARALEGAL STAFF**

36. Anne Penachio was admitted to practice in New York before this Court in 1992 and in Connecticut in 1991. She obtained a Bachelor of Arts degree from Fordham University in 1988 and a Juris Doctor degree from Fordham University School of Law in 1991. She served as a law clerk to the Hon. Howard Schwartzberg. Anne Penachio's hourly billing rate for the period involved and the corresponding hours devoted as the attorney for the Debtor are set forth in exhibits hereto. As set forth therein, Ms. Penachio's billing rate is $85.00 per hour and she devoted a total of 207.00 hours as the attorney during the period covered by this application.

37. Francis J. Malara graduated from Pace Law School in 2006 and Fairfield University in 1992. Prior to starting law school in 2002, for approximate 10 years, Mr. Malara operated a successful family golf retail business based in Manhattan. Mr. Malara is currently a candidate for an L.L.M. in Bankruptcy Law at St. John's University School of Law. Francis J. Malara's hourly billing rate for the period involved and the corresponding hours devoted as the

attorney for the Debtor are set forth in the exhibits hereto. As set forth therein, Mr. Malara's billing rate is $300.00 and he devoted a total of 10.00 hours during the period covered by this application.

38. Jennifer Raggo graduated from Marist College in 2009. She is a licensed Paralegal completing the Paralegal program at Pace University in 2012. She devoted a total of 7.3 hours to this case for the period covered in this application. Her billing rate for the period covered by this application is $100.00 per hour.

39. It is respectfully submitted that the services rendered and expenses incurred by the Firm clearly satisfy the requisite standards of reasonableness including, inter alia, the following: the time and labor required; the novelty and difficulty of the questions and matters resolved; the skill required to perform the services properly; the experience, reputation and ability of the attorneys performing the services; the fees charged and fee awards in similar cases; the time involved; and the results obtained.

40. To the best of counsel's knowledge, information and belief, this Application complies with the Guidelines; the fees and disbursements sought herein are billed at rates and in accordance with practices customarily employed by the Firm and generally accepted by clients.

41. As a result of counsel's efforts and those of the Debtor, substantial benefits have inured to the Debtor's estate. Counsel has made every effort to resolve any dispute and promote the efficient administration of the case.

42. In accordance with the Guidelines, annexed hereto as Exhibit E is the affidavit of Anne Penachio certifying compliance with such Guidelines. It should be noted that the Firm does not charge for faxes. Legal Research is billed at a blended rate which reflects the

fee charged by the provider. Photocopies are billed $.10 per page. Binding and similar litigation organizational costs are billed at the rate charged by the provider (ie Kinkos). Overnight mail is used as sparingly as possible.

43. There is no agreement between the Firm and any other entity to share compensation. An affirmation to that extent is annexed hereto as <u>Exhibit F</u>.

44. The Debtor has funds available to satisfy the fee sought. Counsel seeks that the fee be paid out of funds aggregating approximately $700,000.00 held by New York Fuel. The Committee has informally agreed that administration expenses should be paid from those funds.

45. Because the Debtor's case is an individual case and there are funds on hand to satisfy the compensation sought, the Firm requests a waiver of any requirement for a holdback of fees or a holdback of 10%.

## VI. <u>NOTICE OF APPLICATION AND WAIVER OF MEMORANDUM OF LAW</u>

46. Notice of this application has been served upon the Debtor, all creditors, all parties who have filed a notice of appearance, and the Office of the United States Trustee.

47. Because the issues presented do not present novel issues of law or fact, it is respectfully requested that this Court waive the requirement for the filing of a memorandum of law.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) granting the Firm an award in the amount of $83,398.00 for professional services rendered to the Debtor and reimbursement of $6,134.62 in expenses; (ii) authorizing and directing the Debtor to remit such payment to counsel; (iii) waiver of any holdback; and (iv) granting such other and further relief as is just and proper.

Dated: White Plains, NY
 November 9, 2015

**PENACHIO MALARA LLP**

By: /s/ Anne Penachio
Anne Penachio
Counsel for the Debtor
235 Main Street
White Plains, NY 10601
(914) 946-2889