IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>　　SAMMY ELJAMAL,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 15-22872 (RDD) |

INDIVIDUAL CHAPTER 11 PLAN OF SAMMY ELJAMAL PROPOSED BY THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The Official Committee of Unsecured Creditors (the "Committee" or "Proponent")
hereby proposes the following Individual Chapter 11 Plan (the "Plan") for Sammy Eljamal (the
"Debtor") pursuant to sections 1121(c) and 1123 of title 11 of the United States Code (the
"Bankruptcy Code").   Reference is made to the Disclosure Statement to be filed with the
Bankruptcy Court for a discussion of certain matters germane to the Plan and for a summary and
analysis of the Plan and certain related matters.  All holders of Claims who are entitled to vote on
the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety
before voting to accept or reject the Plan.

**NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE
STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND
APPROVED BY THE COURT HAVE BEEN AUTHORIZED BY THE COURT FOR
USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.**

ARTICLE I

Definitions and Construction of Terms

The following terms utilized in the Plan shall have the following definitions:

1.1    Administrative Expense Claim means any right to payment constituting a cost or
expense of administration of the Chapter 11 Case and entitled to priority under sections 503(b)

and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the estate of the Debtor, (b) any actual and necessary costs and expenses of operating the businesses of the Debtor, (c) any indebtedness or obligations incurred or assumed by the Debtor or under the Plan in connection with the conduct of the Debtor's businesses, (d) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Sections 330 or 503 of the Bankruptcy Code, including, without limitation claims asserted by one or more of the members of the Committee or their professionals and which are approved pursuant to Section 503(b)(3)(D) and/or 503(b)(4) of the Bankruptcy Code, and (d) any fees or charges assessed against the estate of the Debtor under section 1930 of Chapter 123 of title 28 of the United States Code.

1.2    Allowed means with reference to any Claim (including any Administrative Expense Claim): (a) any Claim against the Debtor, proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules or if no proof of Claim was so filed, any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules prior to the closing of the Chapter 11 Case, as fixed, liquidated, non-contingent and undisputed in amount (or as to which the applicable proof of Claim has been withdrawn or Disallowed) (i) as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) as to which no action has been commenced to avoid such Claim within the applicable period of limitation fixed by the Plan, or (iii) as to which an objection has been interposed, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order, (b) any Claim to the extent that it has been allowed by a Final Order; provided, however, that Claims Allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by Final Order. "Allowed Claims" shall not, for any purpose under the Plan, include interest, penalties or late charges on such Claims from and after the Petition Date unless otherwise expressly provided for in the Plan or by Final Order.  In addition, "Allowed Claims" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.3    Avoidance Actions means any action authorized by Chapter 5 of the Bankruptcy Code, including, specifically, with respect thereto, § § 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Avoidance Actions.

1.4    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.5    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction of and over the Chapter 11 Case, and to the extent of any reference under section 157 of title 28 of the United States Code, the unit of such District Court under section 151 of title 28 of the United States Code.

1.6    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court.

1.7    <u>Bar Date</u> means any date established by the Bankruptcy Code, Bankruptcy Rules or Final Order as the deadline to file a proof of Claim in the Chapter 11 case.

1.8    <u>Business Day</u> means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.9    <u>Business Entities</u> means each of the business entities described on <u>Schedule 6</u> hereto, and any other corporation, partnership, limited liability company, or other business entity at any time hereafter identified in which the Debtor holds or asserts an interest under applicable state law.

1.10    <u>Business Entities Distributions</u> means all amounts paid or payable to the Debtor or received by the Debtor on account of the Debtor's Business Entities Interest, less any amounts actually withheld at source by the payor of such amounts for the account of the Debtor, or which the Debtor may reasonably elect to have withheld, in each case as may be required by applicable federal, state, or local law relating to the payment of taxes.

1.11    <u>Business Entities Interests</u> means any ownership, membership, shareholder, partnership or other interest of any kind of the Debtor in or on account of any of the Business Entities, however evidenced.

1.12    <u>Business Entities Organizational Documents</u> means all articles of incorporation or organization, certificates of incorporation or formation, partnership certificates, limited liability company agreements, operating agreements, by-laws, partnership agreements, or other organizational documents of the Business Entities.

1.13    <u>Business Entity Contract Party</u> means any Entity that has contracted with any Business Entity for the performance of services or the delivery of goods by the Business Entity in exchange for the payment of money or the delivery of Property to the Business Entity or to the Debtor.

1.14    <u>Case Professionals</u> means all persons retained and/or to be compensated by the Estate pursuant to sections 326, 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code or retained post-confirmation by the Trustee or the Trust Advisory Board to perform professional services for the Trustee or the Trust Advisory Board and specifically includes the parties described on <u>Schedule 5</u>.

1.15    <u>Cash</u> means the equivalent of legal tender of the United States of America, however paid or transmitted, and includes Scheduled Cash as defined herein.

1.16    <u>Cause(s) of Action</u> means, without limitation, (i) all pending suits to which the Debtor is a party, whether as plaintiff or defendant as of the date the Confirmation Order becomes a Final Order, and (ii) any and all other actions, proceedings, causes of action,

liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date, during the course of the Chapter 11 Case (including through the Effective Date) or through the dissolution of the Trust, including, without limitation, all Avoidance Actions arising under Chapter 5 of the Bankruptcy Code.

1.17    Chapter 11 Case means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor, styled In re Sammy Eljamal, Case No. 15-22872-RDD, pending before the Bankruptcy Court.

1.18    Claim has the meaning provided in section 101(5) of the Bankruptcy Code.

1.19    Class means a category of holders of Claims as set forth in Article III of the Plan.

1.20    Confirmation Date means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Case.

1.21    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.22    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.23    Debtor means Sammy Eljamal, also known as Sammy El Jamal, whether in his capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code or otherwise.

1.24    Debtor Retained Property means the (i) Debtor's Real Property, and (ii) any property of the Debtor that would be deemed exempt property and which the Debtor would be permitted to retain if the Debtor's assets were liquidated pursuant to chapter 7 of the Bankruptcy Code.

1.25    Disallowed Claim means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim that was not scheduled by the Debtor as a fixed, liquidated, non-contingent and undisputed Claim and which has not been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or (c) a Claim that is expressly disallowed under the terms of the Plan.

1.26    Disclosure Statement means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

4

1.27    Disputed means every Claim (i) which has been or hereafter is listed in the Debtor's Schedules as unliquidated, disputed or contingent or which is not listed in the Debtor's Schedules and as to which no timely filed proof of claim is asserted, (ii) which is specifically disputed under a particular provision of the Plan or by a timely filed claim objection, (iii) as to which a timely objection has been interposed under the Plan and not withdrawn or determined by a Final Order, (iv) as to which a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3019 has been made and not withdrawn or determined by a Final Order, or (v) as to which a proof of Claim was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed.  A Claim that is Disputed by the Trustee as to its amount only, shall be deemed Allowed in the amount the Trustee admits is owing, if any, and Disputed as to the excess.

1.28    Disputed Claims Reserve means any required Cash reserve to be created by the Trustee in amounts sufficient for the Trustee to make distributions under the Plan on account of all Disputed Claims if such Disputed Claims become Allowed Claims.

1.29    Distribution(s) mean the distribution or distributions by the Trustee in accordance with the Plan or the Trust Agreement of any Cash or other Trust Assets.

1.30    Distribution Record Date means, for purposes of voting on this Plan, the date on which the Bankruptcy Court approves the Disclosure Statement, and for purposes of making distributions under the Plan, the Confirmation Date.

1.31    Effective Date means a Business Day selected by the Proponent on or after the Confirmation Date, on which the conditions precedent to the effectiveness of the Plan specified in Section 13.2 of the Plan shall have been satisfied or waived in writing by the Proponent.

1.32    Entity shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.33    Escrow Funds means the Cash in an escrow account maintained by Debtor's counsel at TD Bank, Account Number xxxxxx2389, or such other account, established pursuant to the order of the Bankruptcy Court entered on December 15, 2015 [Dkt. No. 177].

1.34    Estate means the estate of the Debtor in the Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.35    Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari or other proceedings for re-argument or rehearing shall have been waived in writing in form and substance satisfactory to the Proponent or the Trustee or in the event that an appeal, writ of certiorari or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, re-argument or rehearing was sought and the time to take any further appeal, petition for certiorari or other proceedings for re-argument or rehearing shall have expired, provided, however, that the

possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

 1.36 <u>Impaired</u> means when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

 1.37 <u>Interest</u> means, unless the Trustee determines that the holder of an Allowed Claim is entitled to a higher or lower rate of interest under an enforceable agreement, or other applicable law, including, but not limited to, the New York State law interest rate of 9%, post-petition interest at the prime rate of interest as announced by JPMorgan Chase Bank, N.A. as of the Effective Date, in any case computed from and after the Petition Date, on the then-outstanding principal amount of an Allowed Claim.

 1.38 <u>Lien</u> has the meaning set forth in section 101(37) of the Bankruptcy Code (but a lien that has or may be avoided pursuant to an Avoidance Action shall not constitute a Lien).

 1.39 <u>Net Cash Proceeds</u> means the Cash proceeds of any disposition of any Property after payment of all related expenses of such disposition which may be required to be paid under applicable law or agreement to effectuate such disposition.

 1.40 <u>Newco</u> means a company, corporation, partnership, joint venture, limited liability company, or limited liability partnership created prior to the Effective Date for the purpose of bidding on and seeking to purchase the NY Business (as defined and described in Section 5.8(d)).

 1.41 <u>Other Priority Claim</u> means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code over unsecured Claims, but only to the extent entitled to such priority.

 1.42 <u>Person</u> means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorprated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

 1.43 <u>Petition Date</u> means June 18, 2015, the date the Debtor filed the voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

 1.44 <u>Plan</u> means this Chapter 11 Plan, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

 1.45 <u>Priority Tax Claim</u> means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code, including any Claim of such governmental unit for post-petition interest as set forth under applicable law and Section 511 of the Bankruptcy Code.

1.46    <u>Proceeds</u> means the Cash proceeds of any disposition of any Property, including, without limitation, any Net Cash Proceeds and the Cash proceeds of any Causes of Action.

1.47    <u>Professional Compensation Escrow</u> means a non-interest bearing escrow account to be established by the Trustee to be held by a financial institution acceptable to the Trustee pending payment of any such Claim of Case Professionals that is Allowed.

1.48    <u>Property</u> means all real, personal, tangible and intangible property of the Debtor of any kind, including, without limitation, the right to receive any other property (including, without limitation, distributions on account of any Business Entities Interests on account of any stock, membership, partnership or other property interest held by the Debtor, and any property of the kind or nature accounted for on the Debtor's Schedules as of the Petition Date, whether or not subject to any Lien).

1.49    <u>Pro Rata</u> means, when used with reference to a distribution of Cash to holders of Allowed Claims in a particular Class, proportionately so that with respect to a particular Allowed Claim in such Class the ratio of (a)(i) the amount of property to be distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of Cash to be distributed on account of all Allowed Claims in such Class of Claims to (ii) the amount of all Allowed Claims in such Class of Claims.

1.50    <u>Real Property</u> means the real property identified by the Debtor on Schedule A of the Schedules.

1.51    <u>Sale</u> means a means a sale of some or all of the Property of the Debtor after notice and hearing as set forth in the Plan pursuant to section 363(b) of the Bankruptcy Code, as approved by a Sale Order.

1.52    <u>Sale Order</u> means an order approving a Sale.

1.53    <u>Scheduled Cash</u> means all Cash and marketable securities (including without limitation the proceeds of any brokerage account held by the Debtor) held in any of the accounts identified in Item 2 of Schedule B of the Schedules (any other accounts), including all such Cash identified in Item 1 of Schedule B of the Schedules and marketable securities as of the date of the filing of the Chapter 11 Case as therein identified.

1.54    <u>Schedules</u> means the schedules of assets and liabilities and the statement of financial affairs filed with the Bankruptcy Court by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.55    <u>Secured Claim</u> means any Claim, to the extent reflected in the Debtor's Schedules and/or a proof of claim as a Secured Claim, as listed on <u>Schedule 3</u> of the Plan, which is actually secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.56    <u>Trust</u> means the liquidating trust to be created on the Effective Date, in accordance with Article V of the Plan and governed by the Plan and the Trust Agreement.

1.57    <u>Trust Advisory Board</u> means the oversight board that shall be formed or reconstituted pursuant to Article VII of the Plan.

1.58    <u>Trust Agreement</u> means the agreement to be dated as of the Effective Date establishing and delineating the terms and conditions of the Trust.

1.59    <u>Trust Assets</u> means all of the Debtor's Property (except for the Debtor Retained Property), including, without limitation, Business Entities Interests, Causes of Action, Escrow Funds, and any Cash (whether or not Scheduled Cash).

1.60    <u>Trust Beneficiaries</u> means the holders of Allowed Claims entitled to Distributions from the Trust pursuant to the Plan.

1.61    <u>Trust Interests</u> means the beneficial interests in the Trust.

1.62    <u>Trustee</u> means Clingman & Hanger Management Associates, LLC.

1.63    <u>Trustee Accounts</u> means the bank accounts opened by the Trustee as described in Article V of the Plan.

1.64    <u>Trustee Appointment</u> means the power of attorney appointment granted to the Trustee as described in Article V of the Plan.

1.65    <u>Unimpaired</u> means, when used with reference to a Claim, a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.66    <u>Unsecured Claim</u> means a Claim which is not a Secured Claim or a Claim which is entitled to priority under Section 507 of the Bankruptcy Code.

1.67    <u>United States Trustee</u> means the United States Trustee appointed under section 591, title 28, United States Code to serve in the Southern District of New York.

1.68    <u>Interpretation; Application of Definitions and Rules Construction</u>.  Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibits references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only, and shall not limit or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars means United States dollars.

ARTICLE II

Treatment of Administrative Expense Claims and Priority Tax Claims

2.1      Non-Classification.  As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting on or receiving distributions under the Plan.  All such Claims are instead treated separately pursuant to the terms set forth in this Article II.

2.2      Administrative Expense Claims.  Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim (other than Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses which are specifically addressed in Section 2.3 below and Administrative Expense Claims paid by the Debtor prior to the Effective Date in the ordinary course of business) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim as soon as practicable after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

(a)      Bar Date for the Filing of Certain Administrative Expense Claims, Excluding Professional Fee Claims.  Each Holder of an Administrative Expense Claim (other than a Professional Fee Claim) is required to File a proof of Administrative Expense Claim within thirty (30) days after the Effective Date.  Nothing herein extends any Bar Date previously established by the Bankruptcy Court.  Any request for payment of an Administrative Expense Claim (other than a Professional Fee Claim) that is not timely filed as set forth above will be forever barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtor, the Estate, the Trust, the Trust Assets or the Trustee or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Professionals.

2.3      Professional Compensation and Reimbursement Claims.  Following the Effective Date, the Trustee shall establish and fund the Professional Compensation Escrow as set forth in Article V of the Plan.  All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date and for services related to seeking approval of such compensation and expense reimbursement under sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by not later than the date which is forty five (45) days after the Effective Date or such other date as is fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid by the Trustee in full in Cash in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Trustee, or (iii) in accordance with the terms of any applicable order entered by the Bankruptcy Court.

2.4    <u>Priority Tax Claims</u>.  Except to the extent that the Trustee determines to make payments to the holder of a Priority Tax Claim in accordance with the provisions of Section 1129(a)(9)(C) of the Bankruptcy Code, or the holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, the Trustee shall pay to each holder of an Allowed Priority Tax Claim, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date such Priority Tax Claim becomes an Allowed Priority Tax Claim or as soon thereafter as is practicable, with interest as may be required by the Bankruptcy Code and provided under applicable non-bankruptcy law.

ARTICLE III

Classification of Claims and Equity Interests

Claims, other than Administrative Expense Claims and Priority Tax Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as set forth below.

| | | |
|---|---|---|
| Class I | Other Priority Claims | Unimpaired/Deemed to Accept |
| Class II | Unsecured Claims | Impaired – May Vote |
| Class III | Secured Claims | Unimpaired/Deemed to Accept |
| Class IV | Debtor Residual Interest Claims | Impaired/Deemed to Reject |

ARTICLE IV

Treatment of Claims and Equity Interests

4.1    <u>Class I Other Priority Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class I is unimpaired by the Plan.  Each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.  Set forth on <u>Schedule 1</u> is a list of the holders of Other Priority Claims, and the amount of their respective Priority Claims, as set forth by the Debtor in the Schedules or proofs of Claim filed with the Court in accordance with the Bankruptcy Code and the Bankruptcy Rules as of the Bar Date.

(b)    <u>Treatment</u>.  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, the Trustee shall pay to each holder of an Allowed Other Priority Claim, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later of the

10

Effective Date and the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

4.2     Class II Unsecured Claims.

(a)     Impairment and Voting.  Class II is impaired by the Plan.  Each holder of an Unsecured Claim as set forth on Schedule 2 is entitled to vote to accept or reject the Plan. Schedule 2 is the list of the holders of Unsecured Claims treated under Class II of the Plan, and the estimated amount of their respective Unsecured Claims for voting purposes, based upon the Debtor's Schedules or proofs of Claim filed with the Court in accordance with the Bankruptcy Code and the Bankruptcy Rules as of the Bar Date.  All Unsecured Claims in Class II, and set forth on Schedule 2 shall be deemed allowed solely for purposes of voting on the Plan and not for any other purpose.

(b)     Treatment.  Each holder of an Allowed Unsecured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, a Pro Rata Share of Trust Interests and shall be entitled to Distributions from the Trust in accordance with Article V of the Plan.

4.3     Class III Secured Claims.

(a)     Impairment and Voting.  Class III is unimpaired by the Plan.  Each holder of a Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.  Set forth on Schedule 3 is a list of the holders of Secured Claims, and the amount of their estimated respective Secured Claims, based upon the Debtor's Schedules or proofs of Claim filed with the Court in accordance with the Bankruptcy Code and the Bankruptcy Rules as of the Bar Date.

(b)     Treatment.  Each holder of an Allowed Secured Claim shall be paid by the Debtor from and after the Effective Date in the amounts and on the terms and conditions of the underlying agreements evidencing such Secured Claims, and the holders of such Allowed Secured Claims shall retain all of the rights provided to such holder under such agreements, without modification by the Plan, including without limitation, the Liens securing such Allowed Secured Claims.  The holders of the Allowed Secured Claims shall retain the Liens, if any, securing their respective Allowed Secured Claim until full and final payment of such Allowed Secured Claim is made as provided herein or after foreclosure upon abandonment.  Further, pending satisfaction of the Allowed Secured Claims, the loan documents pertaining to the Allowed Secured Claims shall remain in full force and effect, provided, however, that the remedies available to the holders of the Allowed Secured Claims under any retained security interest and the loan documents giving rise to the claims, including the right to exercise secured party rights, shall be exercisable only in the event the Debtor defaults on the payment obligations hereunder.  The holders of the Allowed Secured Claims shall have no recourse to the Trustee.

4.4     Class IV Debtor Residual Interest Claims.

(a)     Impairment and Voting.  Class IV is impaired by the Plan.  The Debtor is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(b)     Treatment.  The Debtor should receive in full satisfaction, settlement, release and discharge of his interests (i) the Debtor Retained Property, subject to any Liens; and (ii) remaining Cash or Property, if any, after full administration of the Trust, including payment in full of Class II Unsecured Claims, plus Interest, and all expenses of the Trust, in accordance with the priorities of the Bankruptcy Code and the terms of the Plan and Trust Agreement.

ARTICLE V

Establishment of Liquidating Trust and Means of Implementation of the Plan

5.1     Establishment of the Trust.  On the Effective Date, the Debtor and the Committee, on their own behalf and on behalf of the holders of Allowed Claims, shall execute, or be deemed to have executed, the Trust Agreement, and shall take all other steps necessary to establish the Trust.  The Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Trustee, and to ensure the treatment of the Trust as a liquidating trust for federal income tax purposes.  On the Effective Date, the Debtor shall transfer and be deemed to have transferred to the Trust all of his right, title, and interest in and to all of the Trust Assets and any and all other remaining property of the Debtor and his Estate (except for Debtor Retained Property), free and clear of any Lien, claim or interest in such property of any other Person except as provided in the Plan.  In addition, on the Effective Date, the exclusive right, but not the obligation, to investigate and pursue any and all Estate Actions shall vest in the Trust.  Title to all Trust Assets shall vest in the Trust on the Effective Date.  The Debtor, or such other Persons that may have possession or control of all other assets of the Estate, shall transfer possession or control of such assets to the Trustee and shall cooperate with the Trustee by executing documents or instruments necessary to effectuate such transfers or that shall aid implementation of the deemed transfers under the Plan.  All Cash held in the Trust shall be invested in accordance with the Trust Agreement.  All rights and privileges of the Debtor, except for those expressly reserved herein, shall transfer to and vest in the Trustee.

(a)     Purpose of the Trust.  The Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the Internal Revenue Service (the "IRS"), all parties shall treat the Trust as a liquidating trust for all federal income tax purposes.

(b)     Transfer of Assets to Trust.  The transfer of the Trust Assets into the Trust shall be made, as provided herein and in the Trust Agreement, for the benefit of the holders of Allowed Claims, whether Allowed on or after the Effective Date, and such other Persons and Professionals as provided in this Plan.  After the transfer of the Trust Assets to the Trust, the Trustee shall make Distributions in accordance with and subject to the terms and conditions of the Plan, the Trust Agreement and the Confirmation Order.  All parties shall treat the Trust as a liquidating trust for federal income tax purposes with the Trust Beneficiaries being the beneficiaries, grantors and owners of the Trust, as set forth in the Trust Agreement.  The transfer of the Trust Assets to the Trust shall be treated by all parties for all federal income tax purposes

12

as if all the transferred assets had been first transferred to the Trust Beneficiaries and then transferred by such beneficiaries to the Trust.

(c)    Termination.  The Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, on or after the date that is six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, including the Trustee, may extend the term of the Trust, upon notice, if it is necessary to complete the liquidation of the Trust Assets and make distributions or perform activities authorized by the Trust Agreement.  Notwithstanding the foregoing, multiple extensions can be obtained; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a liquidating trust within the meaning of the Treasury Regulation Section 301.7701-4(d) for federal income tax purposes.  The Trustee shall further cause the Trust to be terminated within three (3) months after making the final Distribution.

5.2    Appointment of the Trustee.  The Confirmation Order shall provide for the appointment of the Trustee.  The Trustee shall be the exclusive trustee of the Trust Assets for purposes of section 3713(b) of title 31 and section 6012(b)(3) of title 26 of the United States Code, as well as the representative of the Estate in accordance with section 1123 of the Bankruptcy Code and shall have all the powers, authority and responsibilities specified in the Trust Agreement, including without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.  The compensation for the Trustee shall be as set forth in the Trust Agreement.    From and after the Effective Date, among other things, the Trustee shall make all Distributions contemplated under this Plan, shall have the exclusive right to settle or compromise any Disputed Claim or Causes of Action pursuant to the terms of the Trust Agreement.

5.3    Applicability of Securities Law, Non-Transferability of Trust Interests and Reporting Requirements.  Under section 1145 of the Bankruptcy Code, the issuance of the Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities.  If the Trustee determines, with the advice of counsel, that the Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.  Upon issuance thereof, the Trust Interests shall not be certificated and are not transferable (except as otherwise provided in the Trust Agreement).

5.4    Business Entities Distributions.  Commencing as of the Effective Date and continuing until such time as all Class II Claims have been irrevocably paid in full with Interest as set forth in the Plan, one hundred percent (100%) of the Business Entities Distributions shall be payable solely and exclusively to the Trustee for distribution under the terms of the Plan and Trust Agreement.  The Confirmation Order shall constitute an Order of the Court (i) directing the Debtor to remit all such Business Entities Distributions received by the Debtor to the Trustee, and (ii) directing each Business Entity and each Business Entity Contract Party served with the Confirmation Order, or otherwise directed by the Trustee in writing, to pay directly to the Trustee the full proper and timely amount of any Business Entities Distributions otherwise payable to the Debtor.  The Trustee is authorized to take such further actions as may be

determined by the Trustee to effectuate the direct transfer to the Trustee by any Entity of all such Business Entities Distributions due to the Debtor. The Trustee shall promptly serve the Confirmation Order upon the Debtor, all of the Business Entities, and upon each Business Entity Contract Party (as they become known to the Trustee).

5.5     Establishment of Accounts and Reserves.     On the Effective Date, and in conjunction with making all Distributions required to be made on the Effective Date, the Trustee shall open new bank accounts in the name of the Trustee as required in the discretion of the Trustee to administer all Cash and any Proceeds which the Trustee may recover or become entitled to receive under the terms of the Plan (collectively herein the "Trustee Accounts"). The Trustee shall also establish reserves sufficient to pay the full amount of all Disputed Claims.

5.6     Reservation and Preservation of Causes of Action.

(a)     On the Effective Date any and all Causes of Action including, without limitation, Avoidance Actions, shall be reserved and preserved by, and for the benefit of, the holders of Claims under the Plan. Until such time as all Class II Claims have been irrevocably paid in full with Interest as set forth in the Plan, all Causes of Action may be prosecuted solely and exclusively by the Trustee for the benefit of the Trust Beneficiaries.

(b)     The Trustee is granted the exclusive full power to bring and prosecute, or to continue to prosecute or defend any Cause of Action including those actions listed on Schedule 4 attached hereto, as determined by the Trustee in the Trustee's discretion after consultation with the Trust Advisory Board. Such power shall include the power to sue on behalf of the Debtor and the Estate, to collect any amounts due on any Cause of Action, and the power to compromise any claim described in such Cause of Action, including, without limitation, the power to dismiss any Cause of Action, discontinue any pending Cause of Action, terminate any pending appeal in any Cause of Action, and the power to deliver any release on behalf of the Debtor and the Estate in connection with any settlement. Except as otherwise provided in the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Trustee, shall retain and may in the Trustee's discretion and business judgment (except as otherwise limited by the Plan) to enforce Causes of Action, Claims and defenses and counterclaims to all Claims asserted against the Debtor and the Estate, including but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

(c)     The Net Cash Proceeds of any Cause of Action shall be deposited into the Trustee Accounts for distribution by the Trustee in accordance with the terms of the Plan.

5.7     Business Entities/Post Confirmation Business.

(a)     On the Effective Date: (A) any and all prior proxies granted by the Debtor with respect to the Business Entities Interests are hereby deemed revoked without any further action on the part of the Debtor or Trustee, and (B) notwithstanding any provisions in the Business Entities Organizational Documents to the contrary, the Trustee is appointed as attorney in fact and proxy for the Debtor with full power of substitution and re-substitution with respect to all of the Business Entities Interests (the "Trustee Appointment"). The Trustee Appointment is coupled with an interest sufficient in law to support an irrevocable proxy and shall be irrevocable

until all Class II Claims have been irrevocably paid in full with Interest as set forth in the Plan. The Debtor shall take such further action or execute such other instruments as may be necessary in the determination of the Trustee to effectuate the intent of this proxy. The power of attorney granted herein is also a durable power of attorney and shall survive, inter alia, the death, disability or incapacity of the Debtor. The power of attorney and proxy granted to the Trustee pursuant to this Section 5.7(a) shall not expire or be subject to any time limitations imposed by the Business Entities Organizational Documents or by law.

(b)     From and after the Effective Date, and until all Class II Claims have been irrevocably paid in full with Interest as set forth in the Plan and the Trust has been fully administered:

(i)     The Trustee shall have the right to request and receive accounting and other statements from the Business Entities (including, without limitation, statements related to distributions and other payments), and the right to review such statements, including but not limited to the right to audit and collect any monies that may be due to the Debtor and/or not fully, properly and timely paid to the Debtor, including any amounts due to the Business Entities that have not been paid for which the Debtor has an interest. The Trustee shall further have the right to receive and review any and all agreements, previous accounting statements, income statements, balance sheets and other financial information of the Business Entities and the right to take any action permissible under any applicable agreement or applicable law related to proper and full payment of (i) any such amounts which may be due to the Debtor either directly or by or through the Business Entities or from any third-parties whether related or unrelated to the Business Entities; or (ii) any amounts paid by the Business Entities to any third-party or to another Business Entity, including, but not limited to, Centralized Management Services, Inc. In connection with the review of such agreements and financial information, the Trustee shall be bound at all times by any confidentiality restrictions in any applicable agreements provided to the Trustee, and shall, as necessary and appropriate, consult with the Trust Advisory Board.

(ii)     The Trustee shall be solely and exclusively authorized, pursuant to the Trustee Appointment, to exercise all of the rights of the Debtor as a member, manager, officer, shareholder or other interest holder in each of the Business Entities, whether arising on account of the Debtor's ownership of the Business Entities Interests or otherwise, and during the term of the Plan, as it may be extended hereunder, the Debtor shall have no such rights. Notwithstanding any provisions in the Business Entities Organizational Documents to the contrary, the Trustee may, to the full extent the Debtor would otherwise have such right, vote and give or withhold consents, approvals, ratifications and waivers with respect to the Business Entities Interests, and otherwise act with respect to the Business Entities Interests as though the Trustee were the outright owner thereof. It is the intent of the Plan that the Trustee control the Debtor's interests in the Business Entities to the maximum extent permissible under applicable law. The Debtor and all other persons or entities are enjoined from interfering in any way with the Trustee's rights and powers under this Section 5.7(b)(ii). In connection with the exercise of any of the foregoing rights, the Trustee shall, as reasonably determined by the Trustee, consult with the Trust Advisory Board. The Trustee shall take reasonable steps to keep the Trust Advisory Board advised of the actions taken by the Trustee as set forth in this subsection (ii), as circumstances permit.

(iii)    The Trustee shall succeed and be entitled to all amounts in any way payable to or distributable to the Debtor by the Business Entities or on account of the Business Entities Interests, all of which amounts shall be deposited by the Trustee into the Trustee Accounts for distribution by the Trustee in accordance with the terms of the Plan.

5.8    Liquidation of Trust Assets.

(a)    Promptly after the Effective Date, the Trustee shall review and appraise the Debtor's Business Entities Interests and other Trust Assets.  The Debtor and each of the Business Entities shall cooperate in all respects with the Trustee in connection with such appraisal.  The Trustee shall take such steps as the Trustee may determine, after consultation with the Trust Advisory Board, to liquidate or abandon some or all of the Business Entities Interests or other Trust Assets of the Debtor.  Any Net Cash Proceeds payable to the Trustee on account of any Sale or liquidation of Trust Assets shall be deposited by the Trustee into the Trustee Accounts for distribution by the Trustee in accordance with the terms of the Plan.  Any proposed abandonment of any Property by the Trustee shall be to the Debtor on account of his Class IV Residual Interest, provided that the Trustee shall not seek to abandon any Property without consultation with the Trust Advisory Board.

(b)    The Trustee may, in the Trustee's discretion, and after consultation with the Trust Advisory Board, or at the direction of 100% of the non-conflicted members of the Trust Advisory Board, seek to market and sell any one or all of the Business Entities Interests, or to exercise the Business Entities Interests so as to cause the liquidation, winding up and/or dissolution of any of the Business Entities, and the conversion of their respective assets to Net Cash Proceeds in accordance with applicable state law.  The Trustee shall be permitted to sell any of the Debtor's Business Entities Interests to a member of the Trust Advisory Board or related Entity, subject to the approval of the other members of the Trust Advisory Board and on notice as described below.  The Debtor is enjoined from taking any steps to impede, or otherwise interfere with, any such liquidation of the Business Entities Interests, subject to his right to bid on any assets pursuant to the terms of any bidding procedures and his right to object to a proposed Sale before the Bankruptcy Court.  The Confirmation Order shall operate as an injunction against the foregoing.

(c)    The Trustee, in his sound business judgment and discretion, and after consultation with the Trust Advisory Board, shall establish procedures for the marketing, bidding and sale of the Business Entities Interests, including procedures for an auction that are deemed reasonable under the circumstances.  Any such Sale of the Business Entities Interests or the Business Entities shall be "as is, where is" pursuant to a Trustee Bill of Sale and approved by the Bankruptcy Court after notice to the Debtor and all creditors, with an opportunity to be heard, and such hearing as the Bankruptcy Court may require.

(d)    Pursuant to the terms of this Plan, the Trustee will seek to sell the Debtors' Business Entities Interests in the following Business Entities: (i) NY Fuel Holdings LLC, (ii) NY Dealer Stations LLC, (iii) Metro NY Dealer Stations LLC, (iv) NY Fuel Distributors LLC, and (v) NY Dealer Stations Management LLC (collectively, the "NY Business") to NewCo, or any other qualified bidder that submits a higher or better offer.  The Sale of the NY Business will be subject to the following terms and conditions:

16

(i)      The purchase price for the Sale of the NY Business to NewCo is $2,500,000.

(ii)      The Sale of the NY Business will be "as is, where is" pursuant to a Trustee Bill of Sale.  The Trustee is providing no representations or warranties concerning the NY Business.

(iii)      On the Effective Date, NewCo will deposit the sum of $1,000,000 with the Trustee to be held in escrow in a segregated account.  If NewCo is the successful purchaser, at the closing, NewCo will pay the purchase price, less the deposit.

(iv)      The Trustee will conduct an auction in accordance with the following bidding procedures to obtain the highest or otherwise best offer to maximize value for the Trust Beneficiaries:

(A)      As soon as possible, but no later than seven (7) days following the Effective Date, the Trustee will file with the Bankruptcy Court a Notice of Auction, which will set forth (i) the date and time of the auction, which shall be no earlier than thirty (30) days after the Effective Date (the "Auction Date"), (ii) the assets to be sold, and (iii) the procedure for submitting a "Qualified Bid."  An auction will only occur if a Qualified Bid is received in addition to the NewCo bid.

(B)      To participate in the bidding process and become a "Qualified Bidder," any person or entity interested in purchasing the NY Business must submit a bid no less than fourteen (14) days prior to the Auction Date.   The bid on the NY Business must be under the same "as is, where is" conditions as those being proposed with respect to the sale to NewCo.

(C)      To be deemed a "Qualified Bid," the Bidder must provide the sum of $1,075,000 as a good faith deposit by (i) wiring $1,075,000 to a segregated account designated by the Trustee, or (ii) providing the Trustee a cashier's check in the sum of $1,075,000, in either case, so as to be received by the Trustee no later than forty-eight (48) hours prior to the Auction Date.  The good faith deposit will be returned if the Qualified Bidder is not the successful bidder and will be credited against the purchase price if the Qualified Bidder is the successful bidder.

(D)      Any "Qualified Bid" must also include the name of the Bidder (including all parties comprising the Bidder), any sponsors of the Bidder, and any of the principals, investors, officers, or directors of the Bidder.

(E)      Any "Qualified Bid" can include only cash, with no contingencies, including any financing contingencies, and the aggregate consideration of the bid must equal or exceed the sum of $2,650,000.

(F)      After the deadline to submit bids has passed, the Trustee will determine in the Trustee's reasonable business judgment, with consultation from the non-conflicted members of the Trust Advisory Board and its counsel, which

bid is the "Prevailing Bid." The Trustee will communicate the Trustee's determination to all Qualified Bidders, including NewCo, not later than immediately preceding the Auction.

(G)    At the auction, each overbid subsequent to the initial bid must be made in increments of at least $50,000 in excess of the prior bid.

(H)    The Trustee reserves the right, in the Trustee's reasonable business judgment, to vary the bid and auction procedures prior to or after the auction has commenced after consultation with the non-conflicted members of the Trust Advisory Board or the Trust Advisory Board's counsel.

(I)    NewCo is entitled to a break-up fee of $75,000 if it is not deemed the successful bidder. A Qualified Bidder other than NewCo is not entitled to any break-up fee, termination fee, or similar payment if it is not the successful bidder.

(J)    As soon as practicable following the conclusion of the auction and determination of successful bidder, the Trustee will seek a hearing to approve the Sale of the NY Business and for entry of a Sale Order.

(K)    As set forth in subsection (M) below, should the Bankruptcy Court not approve the Sale to the successful bidder or the Sale otherwise does not close, the Trustee may opt to seek Bankruptcy Court approval of the next highest or best bid. All bids shall remain open until the closing of a Sale of the NY Business.

(L)    This Plan and Disclosure Statement shall serve as notice of the proposed Sale and bid procedures.

(M)    The hearing on approval of the Sale to the successful bidder shall be held, subject to the Bankruptcy Court's calendar, as soon as possible after the auction, but not more than 7 days after the conclusion of the auction, unless otherwise agreed to by the Trustee and the successful bidder. Should the Bankruptcy Court not approve the Sale to the successful bidder or the Sale otherwise does not close, the Trustee may opt to seek Bankruptcy Court approval of the next highest or best bid, in which case the Trustee will return the deposit of the successful bidder at auction within five Business Days of filing its motion seeking approval of the next highest or best bid. Any other deposits held shall be returned to the depositor within five Business Days of the closure of the Court approved Sale.

5.9    Distributions on Account of Trust Interests.

The Trustee shall make Distributions from the Trustee Accounts as follows:

(a)    To the extent sufficient Cash is available from the Escrow Funds and/or any additional Cash delivered to the Trustee on the Effective Date, as described in this Plan, the Trustee shall:

(i)    distribute any amounts determined by the Trustee as necessary to satisfy the Allowed Administrative Expense Claims, as described in Section 2.2 of the Plan;

(ii)    distribute any amounts determined by the Trustee as necessary to satisfy the Allowed Priority Tax Claims, as described in Section 2.4 of the Plan;

(iii)    create the Professional Compensation Escrow and deposit in the Professional Compensation Escrow an amount reasonably determined by the Trustee to be sufficient for future distribution on account of Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses in accordance with the terms of the Plan, and thereafter distribute the Proceeds of the Professional Compensation Escrow as required by Section 2.3 of the Plan; and

(iv)    retain in the Trustee Accounts an amount of Cash reasonably determined by the Trustee to be sufficient for future distribution in accordance with the terms of the Plan on account of (A) other expenses of administration of the Plan, including without limitation, quarterly fees to the United States Trustee, and anticipated fees and expenses of the Trustee and professionals retained by the Trustee as set forth herein, (B) any Other Priority Claims as described in Section 4.1(b) of the Plan, and (C) any necessary reserves as determined by the Trustee as set forth in this Section.

(b)    From Cash retained pursuant to Section 5.9(a)(iv) above and/or received by the Trustee on or after the Effective Date, the Trustee shall distribute any amounts determined by the Trustee as necessary to satisfy the Allowed Class I Claims:

(c)    As determined by the Trustee in the Trustee's reasonable judgment, when sufficient Cash is held by the Trustee for distribution after payment or funding of the amounts in Section 5.9(a) and (b) above, the Trustee shall (unless such amount is determined by the Trustee to be de minimis) distribute Pro Rata to the holders of Allowed Class II Claims, any additional Proceeds collected by the Trustee under the terms of the Plan, other than de minimis amounts, amounts which have been deposited into the Professional Compensation Escrow in accordance with the terms of the Plan, or amounts which, as reasonably determined by the Trustee, must be retained for the payment of other expenses of administration of the Plan as set forth herein.

(d)    The total amount distributed to the holders of Class II Claims shall not in any event exceed 100% of the total amount of such Allowed Claims, plus Interest.

5.10    Distributions on Account of Disputed Claims.  A Disputed Claim, to the extent it becomes an Allowed Claim for Distribution purposes, shall receive from the Disputed Claims Reserve any amounts held in Disputed Claims Reserve attributable to the Allowed amount of such Claim, as set forth in the Plan.  Any Cash Distributions held in the Disputed Claims Reserve for the benefit of the holder of a Disputed Claim, which is subsequently Disallowed, in whole or in part, shall be distributed, in the Trustee's discretion, on a Pro Rata basis to the Trust Beneficiaries.  The Trustee may elect to delay making a Pro Rata Distribution to all Trust Beneficiaries until sufficient Cash is available to meet the minimum Distribution requirements set forth herein or if delaying such Distribution to a subsequent Payment Date would be more efficient and economical as determined by the Trustee

19

5.11    Additional Powers of the Trustee.

(a)    The Trustee shall, after consultation with the non-conflicted members of the Trust Advisory Board, have the authority to object to any Claims as the Trustee determines in the Trustee's discretion.  This shall not impede the right of the Debtor or any other party in interest from objecting to any Claims.

(b)    The Trustee shall act independently and shall have sole and exclusive discretion as to the means, and timing of the liquidation and distribution of Property under the Plan, except to the extent the provisions of the Plan expressly provide otherwise.

(c)    Except to the extent of any amounts which may be distributed to the Debtor under the provisions of the Plan as a result of his Class IV Residual Interests, the Debtor shall have no interest of any kind in any of the Proceeds that the Trustee may obtain upon liquidation of the Property that is the subject of the Plan until such time as all expenses of the Trustee and all Class II Claims, plus Interest, are paid in full.  Unless the Debtor contends that the Trustee has acted in bad faith, or in willful disregard of the duties of the Trustee as set forth herein, or in direct contravention of a provision of the Plan, the Debtor shall have no right of any kind to object to any proposed Sale or disposition of any Property made by the Trustee.  The Debtor shall not be entitled to object to any distribution of any Proceeds to the holders of Allowed Claims under the Plan.

(d)    The Trustee shall have standing, in all respects, to enforce all rights set forth in the Plan, and all rights of the Debtor arising under applicable federal or state law.

(e)    The Trustee shall, in each case as reasonably determined by the Trustee, after consultation with the Trust Advisory Board or as otherwise provided for in the Plan or Trust Agreement, do all of the following:

(i)    Pursue such of the Causes of Action including Avoidance Actions as the Trustee may determine to be for the benefit of the holders of Allowed Claims, or to resolve, abandon, discontinue, dismiss any Cause of Action, or take any other action as described in Section 5.6 of the Plan;

(ii)    Object to any Claims under the Plan, settle any such objections, agree to an Allowed Claim, or otherwise determine the Allowed Amount of any Claim;

(iii)    Determine and pay the reasonable compensation and expenses of the Trustee, the Trust Advisory Board, and any professional retained by the Trustee or the Trust Advisory Board in conjunction with the Plan pursuant to the procedures set forth in Section 15.6 herein.

(iv)    Incur expenses, and pay expenses incurred, in connection with the performance of the undertakings of the Trustee under the Plan;

(v)    Employ, retain, supervise, and terminate such agents, consultants, representatives, employees, and other professionals (as set forth in Section 5.12 herein) as are necessary to fulfill the Trustee's duties under the Plan and the Trust Agreement;

(vi)    Sell or abandon to the Debtor any Property, including without limitation, the Debtor's Business Interests, as described in Section 5.8 of the Plan, including entering into letters of intent, asset purchase agreements and similar agreements and Trustee bills of sale in connection with the sale of some or all of the Property; and

(vii)   Present for payment any check, money order, credit card account or other forms of payment made payable to the Debtor which constitutes income, profits, tax refunds, or receivables of any kind, and endorse same in the name of the Trustee for deposit as set forth in the Plan.

5.12    Trustee's Professionals and Expenses.  No Case Professional shall be entitled to compensation from the Trust or the Estate for services rendered to the Debtor after the Effective Date without the express written consent of the Trustee.  In connection with fulfilling the duties of the Trust set forth herein and in the Trust Agreement, or otherwise as the Trustee may reasonably determine are necessary, the Trustee, after consultation with the Trust Advisory Board, may without seeking authority from the Bankruptcy Court retain such accountants, consultants, financial advisors, investment bankers, attorneys, appraisers, auctioneers, special investigators, or other professional persons, including without limitation, special purpose counsel, which may include one or more Case Professionals, provided that the Trustee has concluded that no actual conflict of interest exists.  In no event shall the Trustee be required to expend the Trustee's own personal funds for the payment of any fees or expenses of any professional person, or with respect to any other expenses of administration of the Plan.  Any fees and/or expenses incurred after the Effective Date in connection with the administration of the Plan shall be paid as set forth in accordance with the conditions set forth in this Plan.

5.13    Payment of Quarterly Fees.  After the Confirmation Order becomes a Final Order, the Trustee shall pay quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the United States Trustee until the Chapter 11 Case has been converted, dismissed or closed by the Bankruptcy Court.

5.14    Effectuating Documents.  In addition to any other powers provided to the Trustee as set forth herein, the Trustee may execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements and documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

5.15    Liability.  The Trustee shall be entitled to rely upon the advice of the Trustee's professional persons and representatives concerning all matters, and upon the Plan, Trust Agreement, and any security agreement, schedule, certificate, statement, report, order, notice or other writing which the Trustee believes to be genuine or to have been presented by a proper person.  Except for such person's own gross negligence or willful misconduct, neither the Trustee nor any of the Trustee's professional persons, or agents, nor any member of the Trust Advisory Board shall (i) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of the Plan; or (ii) in any event, be liable as such for any actions taken or omitted by them under the Plan or in furtherance of the rights, duties and powers provided herein.  The Trustee shall be required to post bond for the faithful performance of the Trustee's duties hereunder within not less than thirty (30) days after the Effective Date, in an amount acceptable to the Trust Advisory Board.

No holder of any Claim shall have any obligation or liability to the Trustee for any fees or expenses arising under the Plan, and all such fees and expenses shall be payable from the Proceeds received or recovered by the Trustee under the Plan.

5.16    <u>Direction to Parties</u>.   From and after the date the Confirmation Order is entered, the Trustee may apply to the Bankruptcy Court for an order directing any necessary Entity to execute or deliver, or to join in the execution or delivery of, any instrument required to effect a transfer of Property dealt with by the Plan and to perform any other act that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

5.17    <u>Certain Tax Matters</u>.   Notwithstanding any other term or provision of the Plan, the Trustee shall have no obligation or duty to prepare or file any tax return on behalf of the Debtor or any Business Entity, and all obligations of the Debtor or any Business Entity to file any tax returns or to pay any tax associated therewith shall be the sole and exclusive liability of the Debtor or the Business Entity as the case may be.   The Trustee shall take reasonable steps to provide to the Debtor or any Business Entity such information as may from time to time be in the possession of the Trustee as may be reasonably necessary for the Debtor or the Business Entity to comply with their obligations to file any required tax returns.   Nothing in the Plan shall be construed to eliminate any requirements of federal state or local law that may apply to the Trustee on account of the Estate.

5.18    <u>Trustee Compensation</u>.   The Trustee shall be entitled to monthly compensation for services rendered in accordance with the terms agreed to between the Trustee and the Plan Proponent and for reimbursement of its actual expenses reasonably incurred, and as set forth in an engagement letter to be filed within seven days of the hearing to consider confirmation of the Plan, without further review or order of the Court, and the Trustee is authorized to pay and receive such compensation in accordance with the terms and conditions of the Plan and the engagement letter.

5.19    <u>Resignation, Removal, Successor Trustee</u>.   The Trust Agreement shall contain reasonable and customary terms for the resignation or removal of the Trustee and the appointment of a successor Trustee.

ARTICLE VI

Certain Post Confirmation Matters

6.1    <u>Debtor is Enjoined From Interfering or Commencing New Actions</u>.

From and after entry of the Confirmation Order, in addition to any restrictions set forth in Article V of the Plan, <u>the Debtor is expressly enjoined and prohibited from taking any of the following actions without express authorization from the Bankruptcy Court</u>:

(a)    Commencing any new litigation or arbitration, whether in State, Federal or any other court of competent jurisdiction or forum, including, but not limited to commencing any new litigation or arbitration against the Trust, the Trustee, the Trust Advisory Board, or its members.

(b)    Funding or indirectly participating (other than as a potential fact witness) in any litigation against any holder of a Claim, affiliate or family member.

(c)    Interfering in the business, directly or indirectly of any Business Entity.

6.2    <u>Funding of the Plan</u>.

Distributions required under the terms of the Plan with respect to obligations to the holders of Claims will be funded as set forth in Article V of the Plan.

6.3    <u>Closing of the Chapter 11 Case</u>.

After each Disputed Claim filed against the Debtor has become an Allowed Claim or a Disallowed Claim, and upon the earlier to occur of (a) all Property administered by the Trustee has been liquidated and the resulting Cash has been distributed in accordance with the terms of this Plan, or (b) the holders of Allowed Claims have been paid as required under the Plan, the Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules. The Trustee shall file a report with the Bankruptcy Court. Any additional Property after payment in full of all Allowed Claims, and all expenses of the Trust shall be returned to the Debtor on account of his Class IV Residual Interest Claims.

## ARTICLE VII

### Trust Advisory Board

7.1    <u>Trust Advisory Board</u>.

(a)    On the Effective Date, the Trust Advisory Board shall be comprised of the members of the Committee appointed in the Chapter 11 case, or an authorized representative of each of the Committee Members, as each may designate. The Trust Advisory Board shall be authorized, in the exercise of its reasonable discretion, to effectuate such procedural rules, bylaws or other agreements governing its makeup, voting and succession. The Trust Advisory Board shall be considered a party in interest with respect to all aspects of the Plan and the Chapter 11 Case from and after entry of the Confirmation Order, and may appear and be heard on all matters pertaining to the Plan, the Debtor and the Chapter 11 Case. Nothing in the Plan shall be deemed to prohibit the Trust Advisory Board from filing any motion or other proceeding with the Bankruptcy Court or any other court of appropriate jurisdiction to effectuate any rights granted to the Trust Advisory Board under the Plan, or any other rights existing under applicable law. To the extent that a member of the Trust Advisory Board assigns its Allowed Claim following the Effective Date, the successor-in-interest shall be entitled to serve on the Trust Advisory Board in the place of the original member, so long as that successor-in- interest is not the Debtor, a family member of the Debtor, or a Business Entity. Any member of the Trust Advisory Board whose claim is satisfied in full prior to the closing of the Chapter 11 Case shall withdraw from participation on and no longer be eligible to serve on the Trust Advisory Board.

(b)    In addition to any other rights and powers provided to the Trust Advisory Board as set forth in Article V of the Plan, the Trust Advisory Board shall be authorized to:

(i)     Review and consult with the Trustee regarding the Claims Allowance process, including pursuing any objections to the Allowance of Administrative Expense Claims (including Administrative Expense Claims for professional compensation and reimbursement of expenses provided for in Section 2.3 of the Plan), Priority Claims, Priority Tax Claims and Unsecured Claims;

(ii)     Review, consult with, advise and direct the Trustee in connection with pursuing, compromising or settling the Causes of Action or agreeing to the allowance of any Claim; and

(iii)     Review, consult with and advise the Trustee in connection with any other matters related to the Plan, as set forth herein, including but not limited to the Sale of any Property.

(c)     Costs and Expenses.  The Trust Advisory Board shall be entitled, in its reasonable judgment, to retain attorneys and other professionals as and when necessary.  The Trust Advisory Board shall be permitted to retain the same professionals as the Trustee on consent of both the Trustee and the Trust Advisory Board.  The reasonable fees and costs of such professional persons shall be paid by the Trustee as a cost of administration of the Plan and Trust in accordance with Article V of the Plan.  In addition, the members of the Trust Advisory Board shall be entitled to be reimbursed for the reasonable and necessary actual out of pocket expenses of its members.  All such compensation and reimbursement of expenses shall not be subject to further review or approval of the Court.

(d)     All rights and privileges of the Committee, except for those expressly reserved herein, shall transfer to and vest in the Trust Advisory Board upon its formation.

## ARTICLE VIII

### Provisions Governing Acceptance or Rejection of the Plan

8.1     Voting of Claims.  Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court.

8.2     Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

8.3     Plan Amendment.  If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Proponent reserves the right to amend the Plan in accordance with the terms hereof.

8.4    <u>Non-Consensual Confirmation</u>.  The Proponent will seek to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code.

ARTICLE IX

Provisions Governing Distributions

9.1    <u>Distributions for Claims Allowed as of the Effective Date</u>.  Distributions of Cash to be made on the Effective Date to holders of Allowed Claims shall be deemed made on the Effective Date, or such later date when the applicable conditions of Section 9.3(c) (regarding undeliverable distributions) are satisfied and the Trustee has determined sufficient Cash is available to make such Distributions, fund the Disputed Claims Reserve, and fund the Trust's expenses.  Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to Article X of the Plan.

9.2    <u>Other Distributions</u>.  All distributions under the Plan to holders of Allowed Claims shall be made by the Trustee as set forth in Article V of the Plan.

9.3    <u>Method of Delivery of Distributions Under the Plan</u>.

(a)    All Distributions under the Plan shall be made in accordance with the priorities established by the Plan.  At the option of the Trustee, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

(b)    Distributions to the holders of Allowed Claims will be made as follows: (i) at the respective addresses set forth in the Schedules unless superseded by the address set forth on the proofs of Claim filed by holders of Claims, or (ii) at the address set forth in any written notice of address change delivered to the Trustee after the date of filing of any proof of Claim.

(c)    Subject to the remaining terms of this Section 9.3(c), distributions returned to the Trustee or otherwise undeliverable will remain in the possession of the Trustee, until such time as a distribution becomes deliverable or as provided herein.  Undeliverable Cash will be held by the Trustee, for the benefit of the potential Claim holders of such Cash, subject to the terms of the Plan.  If any holder of an Allowed Claim's distribution is returned as undeliverable, the Trustee may, but shall not be required to, take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim.  Any holder of an Allowed Claim that does not advise the Trustee that it has not received its distribution within sixty (60) days after the date of attempted distribution will have its Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Trustee.  Distributions must be negotiated within sixty (60) days of the date of delivery of such Distribution.

(d)    Except as may be otherwise set forth in the Plan with respect to a particular Claim, all Distributions in respect of Allowed Claims will be allocated first to the original principal amount of such Claims (as determined for federal income tax purposes), with any excess allocated to the remaining portion of such Claims, if any.

(e)    In the event any payment, Distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or

Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

(f)      As of the Distribution Record Date, any applicable books and records for each of the Classes of Claims as may be maintained by Debtor shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims.  The Trustee will have no obligation to recognize any transfer or sale of Claims on or occurring after the Distribution Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims, to recognize and make Distributions on account of Allowed Claims only to those holders who are identified as holders of Claims as of the Distribution Record Date.  Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Distribution Record Date.

(g)      The Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which distribution shall be made), any claims of any nature whatsoever that the Debtor may have or had against the holder of such Claim.

(h)      The Trustee shall have no obligation to make a distribution on account of an Allowed Claim if the amount to be distributed to the holder of the Allowed Claim on the distribution date has a value less than $50.00.

(i)      Notwithstanding any other provision of the Plan, the Trustee shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down) with half dollars being rounded up.

(j)      The Trustee shall have no obligation to make a distribution on account of an Allowed Claim unless it has been provided with Claimant's Federal Tax Identification Number for withholding purposes.  Failure of Claimant to provide such tax reporting information upon request shall be deemed an abandonment to any right of distribution on its Claim(s).

ARTICLE X

Provisions For Resolving and Treating Disputed Claims
and Administrative Expense Claims

10.1     Objections to and Resolution of Administrative Expense Claims and Other Claims.

(a)      Holders of Administrative Expense Claims (other than Administrative Expense Claims for professional compensation and reimbursement of expenses of professionals addressed in Section 2.3 of the Plan) not paid prior to the date that is thirty (30) days after the notice of

confirmation shall submit proofs of such Administrative Expense Claim on or before the date that is thirty (30) days after the notice of confirmation or be forever barred from doing so. The notice of confirmation delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of the bar date for Administrative Expense Claims.

(b)    Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and 503 of the Bankruptcy Code, as to which any party in interest may object, the Trustee, in consultation with the Trust Advisory Board shall have the right and authority to (A) make and file objections to all Claims under the Plan and (B) allow, compromise, settle, otherwise resolve or withdraw any objections to such Claims without approval of the Bankruptcy Court after consultation with the Trust Advisory Board.

(c)    The Trustee shall have ninety (90) days after the Effective Date to file all objections to Administrative Expense Claims (other than applications for allowances of compensation and reimbursement of expenses) and serve such objections upon the holder of the affected Claim. The Trustee shall have six (6) months after the Effective Date to file all objections to all other Claims provided under Section 10.1(a) of the Plan and serve such objections upon the holder of the affected Claim. The Trustee shall have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

10.2    No Distribution Pending Allowance, Subsequent Distribution. Notwithstanding any other provision of the Plan, no Property shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is Allowed in accordance with the provisions of the Plan. If a Disputed Claim has not been Allowed as of the date for any Distribution on account of such Claim under the Plan, the amount otherwise distributable to the holder of such Claim under the Plan shall be deposited into the Disputed Claims Reserve, and held pending any determination of such Claim as an Allowed Claim for purposes of the Plan. Upon a determination that such Disputed Claim is an Allowed Claim for purposes of the Plan, the Claim as Allowed shall be paid from the Disputed Claims Reserve in accordance with the terms and conditions of the Plan, but the amount paid shall not exceed the amount in the Disputed Claim Reserve reserved on account of such Claim.

10.3    Excess Funds. Promptly after all Disputed Claims as to which payment has been made into the Disputed Claims Reserve have become Allowed Claims or have otherwise been resolved by Final Order of the Bankruptcy Court, and all applicable Distributions have been made from the Disputed Claims Reserve, any amounts remaining in the Disputed Claims Reserve shall be further distributed by the Trustee in accordance with the terms of the Plan.

10.4    Estimation. The Proponent or any creditor may, at any time prior to the Effective Date, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(e) of the Bankruptcy Code regardless of whether objections have been filed with respect to such Claim. In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim before Interest, as determined by the Bankruptcy Court. Notwithstanding this, the Trustee may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim.

10.5    Remedies Not Exclusive.  All of the Claims objection and estimation procedures set forth in this Article X are cumulative and not exclusive of one another.

ARTICLE XI

Executory Contracts and Unexpired Leases

11.1    To the extent not (i) assumed in the Chapter 11 Case prior to the Effective Date, (ii) rejected in the Chapter 11 Case prior to the Effective Date, (iii) subject of a separate motion to assume or reject that may be pending on the Effective Date, or (iv) specifically assumed pursuant to this Plan, each executory contract and unexpired lease that exists between the Debtor and any Person is specifically rejected as of and subject to the Effective Date pursuant to the Plan.

11.2    In the event that the Trustee becomes aware after the Effective Date of the existence of any executory contract or unexpired lease that was not included in the Schedules (the Debtor's Schedules did not list any executory contracts or unexpired leases), the right of the Trustee to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Trustee becomes aware of the existence of such contract or lease.  The deemed rejection provided for in this Article shall not apply to any such contract or lease.

11.3    All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court no later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a newly discovered executory contract pursuant to Section 11.2 above).  Any Claims not filed within such time will be forever barred from assertion against the Debtor's estate and the Trust.  All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

11.4    Should any executory contracts or unexpired leases be assumed, except as otherwise agreed by the parties, the Debtor will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed in accordance with Section 365 of the Bankruptcy Code.

ARTICLE XII

Effect of Confirmation

12.1    Term of Bankruptcy Injunction or Stays.  Subject to the rights of the holders of Allowed Secured Claims under Section 4.3 of the Plan, unless otherwise provided in the Confirmation Order, any injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Plan has been fully performed.

12.2    Injunction.  Except as otherwise expressly provided in the Plan (including, without limitation the rights granted under Section 4.3 of the Plan), the Bankruptcy Code, the Confirmation Order or a separate order of the Bankruptcy Court, all Entities who have held, hold

or may hold Claims against the Debtor or the Estate, other than those relating to the defense of Causes of Action preserved under the Plan, are permanently enjoined, from and after the date the Confirmation Order becomes a Final Order or is substantially consummated, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Trustee or the Debtor with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Trustee or the Debtor on account of any such Claim, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Trustee or the Debtor or against the Property other than actions to continue perfection of any Lien existing as of the commencement of the Chapter 11 Case, and (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims which are extinguished, dismissed or released pursuant to the Plan.

12.3    Binding Effect.   Subject to the Confirmation Order becoming a Final Order or substantial consummation of the Plan, on and after the Confirmation Date, the Plan shall be binding upon and inure to the benefit of the Trustee, the Debtor and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

12.4    Vesting of Property.   On the Effective Date, the Trust Assets shall vest in the Trust and the only Property that shall vest in the Debtor shall be the Debtor's right to receive the Debtor Retained Property as set forth in the Plan and its right to a distribution, if any, on account of its Class IV Residual Interest Claims in accordance with the Plan.  Upon the earlier to occur of the time the Chapter 11 Case is closed in accordance with the Plan or payment of 100% of all Allowed Class II Claims with Interest, and expenses of the Trust, all remaining Property not otherwise liquidated by the Trustee for the benefit of the holders of Allowed Claims as set forth in the Plan, shall be transferred to the Debtor.

12.5    Discharge.   The Debtor shall not be entitled to a discharge of any debt unless the Bankruptcy Court approves a motion of the Trustee in which the Trustee certifies that (i) all Trust expenses have been paid or reserved for, (ii) the Debtor has complied with all of the terms and conditions of the Plan, and (iii) payment has been made to 100% of all Allowed Class II Claims with Interest.  No discharge granted to the Debtor shall be inconsistent with the terms of any Order of the Court determining that any debt is non-dischargeable, or with the provisions of Sections 1141(d)(2) or (d)(6) of the Bankruptcy Code.  The Plan shall not supersede any right of any creditor to assert that such creditor's individual Claim against the Debtor is not dischargeable for any reason permitted under the Bankruptcy Code.

ARTICLE XIII

Conditions to Confirmation

13.1    Conditions Precedent to Confirmation.   The following are conditions precedent to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 13.3 of the Plan;

(a)    The Confirmation Order is in form and substance reasonably satisfactory to the Proponent.

(b)    The Plan shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with Section 15.7 of the Plan.

(c)    The Trust Agreement is in form and substance reasonably satisfactory to the Proponent.

(d)    All Exhibits and Schedules to the Plan are in form and substance reasonably satisfactory to the Proponent.

13.2    Conditions Precedent to Occurrence of Effective Date.    The following are conditions precedent to the occurrence of the Effective Date of the Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 13.3 of the Plan;

(a)    The Bankruptcy Court shall have entered the Confirmation Order.

(b)    The Trust Agreement shall have been executed in form and substance reasonably satisfactory to the Plan Proponent.

(c)    The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving the Trust Agreement and authorizing the Trustee to take all actions necessary or appropriate to implement the Plan and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

(d)    No stay of the Confirmation Order shall then be in effect, unless the Plan shall have been substantially consummated before entry of any stay.

(e)    The Plan, and any Exhibits and Schedules thereto, shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with Section 15.7 of the Plan.

13.3    Waiver of Conditions.  The conditions precedent to the entry of the Confirmation Order and to the occurrence of the Effective Date may be waived, in whole or in part, at any time by a written agreement of the Proponent without an order of the Bankruptcy Court.

ARTICLE XIV

Retention of Jurisdiction

14.1    Jurisdiction of Bankruptcy Court.  The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and enforce any of the injunctive positions of this Plan and to hear and determine any motion by the Debtor for authorization to act, as required by Section 6.1 of the Plan.

(b)    To hear and determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Case and the Plan, even if filed after confirmation of the Plan.

(c)    To hear and determine any objections to Claims, including Administrative Expense Claims, including, without limitation, all applications for compensation and reimbursement of expenses of professionals under Sections 330, 331 and 503(b) of the Bankruptcy Code.

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(e)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code.

(f)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(g)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, Confirmation Order, or Trust Agreement.

(h)    To hear and determine any action concerning the recovery and liquidation of Trust Assets, wherever located, including without limitation, litigation to liquidate and recover Trust Assets that consist of, among other things, the Causes of Actions, or other actions seeking relief of any sort with respect to issues relating to or affecting Trust Assets.

(i)    To recover all Property of the Estate, wherever located.

(j)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

(k)    To hear and determine any requests to sell any Property as to which Bankruptcy Court approval is required under the terms of the Plan.

(l)    To hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection matters related thereto, and settlements thereof, and any other Causes of Action properly within the jurisdiction of the Bankruptcy Court.

(m)    To hear and determine any disputes concerning quarterly fees owing or claimed to be owing to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code.

(n)    To enter a final decree closing the Chapter 11 Case.

(o)    To determine any disputes regarding allowance of fees and expenses of the Trustee, including without limitation, as set forth in Section 15.6 of the Plan.

(p)    To address, hear and determine any other issues or disputes that arise under the Plan.

ARTICLE XV

Miscellaneous Provisions

15.1    Effectuating Documents and Further Transactions.  The Trustee is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the transactions set forth in, and the terms and conditions of, the Plan.

15.2    Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, registration, licensing, sales or similar tax.

15.3    Exemption from Securities Laws.  Pursuant to Section 1145 of the Bankruptcy Code, the offer, sale or exchange of any security of the Debtor or an affiliate pursuant to the Plan requiring the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security under any state or local law shall not apply and shall be exempt from the Securities Act (including without limitation Section 5 of the Securities Act) and any similar state or local law.

15.4    Continuation of Committee.  The Committee shall continue in existence until the earlier of the Effective Date or substantial consummation of the Plan to exercise those powers and perform those duties specified in Section 103 of the Bankruptcy Code.  Thereafter, the Committee shall continue in existence until the later of (i) the conclusion of any appeals or other challenges or matters with respect to the Confirmation Order and (ii) entry of Final Orders on all requests for payment of professional compensation and reimbursement of expenses.  The Trustee shall pay from Trust Assets the reasonable expense reimbursement claims of the members of the Committee and the reasonable fees and expenses of the Committee's counsel in connection with (i) and (ii) above within ten Business Days after submission of detailed invoices to the Trustee, or as soon as practicable thereafter.  If the Trustee disputes the reasonableness of the requested fees or expenses, the Trustee or the affected party may submit any such dispute to the Bankruptcy Court for resolution.  The undisputed portion of such fees and expenses shall be paid as provided above.

15.5    Limited Plan Exculpation.  Neither the Trustee, the Proponent, any member of the Trust Advisory Board, nor any of their respective shareholders, members, officers, directors,

employees, partners, affiliates, subsidiaries, advisors, professionals or agents, shall have or incur any liability to the Debtor or any holder of a Claim for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, negotiations regarding or concerning the Plan or any of its Exhibits or Schedules, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the Property to be distributed under the Plan, except for willful misconduct or gross negligence, and in all respects the Proponent, the Trustee, the members of the Trust Advisory Board, and each of their respective shareholders, members, officers, directors, employees, partners, affiliates, subsidiaries, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their respective duties and responsibilities (if any) under the Plan.

15.6    Fees and Expenses of Trustee's and Trust Advisory Board's Professionals.  From and after the date that is the earlier of the Confirmation Order becoming a Final Order or substantial confirmation of the Plan, the Trustee (subject to the provisions of the Plan), shall in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons retained by the Trustee or the Trust Advisory Board in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed as provided in the Plan; provided however, each month, each such professional shall serve a monthly fee statement on the Trustee and the Trust Advisory Board by the 20th of each month for the preceding month.  If no objection is filed within ten (10) days of service of such monthly fee statement, the Trustee may pay the fees and expenses reflected in the monthly fee statement.  If a timely objection is asserted with respect to payment of amounts reflected in the monthly fee statement, the Trustee may pay the non-disputed portion of the amount sought in the monthly fee statement.  If the parties are unable to resolve a dispute related to a monthly fee statement, the Bankruptcy Court shall retain jurisdiction to address any such disputes.

15.7    Amendment or Modification of the Plan.  Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Proponent at any time prior to the Confirmation Date, provided that (a) the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and (b) the Proponent shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified by the Proponent at any time after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code, and (c) the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder or any Distribution to be received in connection with any settlement pertaining to such holder.  Prior to the Effective Date, the Proponent may make appropriate technical adjustments and modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

15.8    Severability.    In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable.    The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

15.9    Revocation or Withdrawal of the Plan.    The Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.    If the Proponent revokes or withdraws the Plan, the Plan shall be deemed withdrawn and shall be deemed null and void.

15.10    Notices.    All notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.

15.11    Governing Law.    Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

15.12    Withholding and Reporting Requirements.    In connection with the consummation of the Plan, the Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority in connection with all Distributions made hereunder.

15.13    Indemnification.    Except for its or their own gross negligence or willful misconduct, neither (i) the Proponent and the members of the Trust Advisory Board, and their respective shareholders, members, officers, attorneys, other professionals and/or agents; nor (ii) the Trustee, and the Trustee's attorneys, other professionals and/or agents, shall have any liability to the Debtor, the Estate, any creditor, or any other party-in-interest.    In the event that any Entity brings any action against any of the foregoing parties, provided that such party, as the case may be did not engage in willful misconduct or act grossly negligent, the Debtor shall and hereby is required to indemnify such party, against expenses, including attorneys' fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by the such party.    The termination of an action, suit or proceeding by judgment, order, settlement or conviction does not, by itself, create a presumption that such party, as the case may be, did not act in good faith and in a manner which such party reasonably believed to be in or not opposed to be in the best interest of the Estate and creditors.

15.14    Headings.    Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

15.15   Schedules.  All Exhibits and Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

15.16   Filing of Trust Agreement.   Within seven days of the hearing to consider confirmation of the Plan, the Proponent shall file the Trust Agreement with the Bankruptcy Court.

15.17   Filing of Additional Documents.   On or before confirmation of the Plan, the Proponent shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.18   Conflict.  To the extent the Plan is inconsistent with the Disclosure Statement the provisions of the Plan shall be controlling.  To the extent the Plan and Trust Agreement are inconsistent, the Plan controls.  In the event there is an inconsistency between the Plan and the Confirmation Order, the Confirmation Order controls.

15.19   Subordination Rights.   The classification and manner of satisfying all Claims under the Plan takes into consideration all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, that a holder of a Claim may have against other holders of Claims, which subordination rights are expressly reserved under the Plan.

15.20   Tax Liability.   The Trustee is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of any tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

15.21   Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

15.22   Effect of Withdrawal, Revocation, or Non-Consummation.  If Proponent revokes or withdraws this Plan prior to the earlier of the Effective Date or substantial consummation of the Plan or if neither of the foregoing occurs, the Plan, any settlement or compromise embodied in the Plan or any exculpation, release, or indemnification provided for in the Plan, shall be null and void.  In such event, nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claim(s) or Causes of Action by or against the Debtor, the holders of Claims against the Debtor, or any other Person or Entity in any further proceeding involving the Debtor, or to constitute an admission of any sort by the Debtor, any Claimholder, or any Person or Entity.

[Signature on following page]

Dated: March 28, 2016

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF SAMMY
ELJAMAL, BY ITS COUNSEL**


By: */s/ Melanie L. Cyganowski*
     Melanie L. Cyganowski
     Richard G. Haddad
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
(212) 661-9100

SCHEDULE 1

Holders of Other Priority Claims

| HOLDER | CLAIMED OR SCHEDULED AMOUNT |
|---|---|
| NONE | |
| | |
| | |

SCHEDULE 2

Holders of Unsecured Claims

| HOLDER | CLAIMED OR SCHEDULED AMOUNT |
|---|---|
| Amsterdam 181 Realty, LLC | $145,716.00 |
| Brent Coscia | $4,221,549.32 |
| Connecticut Dealer Station, LLC | $159,704.40 |
| First Niagara Bank, N.A. | $15,593.48 |
| Gas Land Petroleum Inc. | $733,000.00 |
| Global Transport | $4,800.00 |
| JMM Fuelco, Inc. | $1,317,000.00 |
| Metro NY Dealer Stations LLC | $587,518.00 |
| New York Fuel Distributors LLC | $326,617.47 |
| New York Fuel Distributors LLC | $340,323.05 |
| New York Fuel Distributors LLC | $179,727.17 |
| New York Fuel Distributors LLC | $67,335.00 |
| New York Fuel Distributors LLC | $136,302.00 |
| New York Fuel Distributors LLC | $17,336.97 |
| New York Fuel Distributors LLC | $623,962.95 |
| Robert Porpora | Unliquidated |
| Robert Porpora Realty Corp. | Unliquidated |
| Robert Porpora Inc | Unliquidated |
| SRG Fuelco, LLC | $1,317,000.00 |
| Weil Family II, LLC | $1,317,000.00 |
| Wholesale Fuel Distributors-CT, LLC | $2,308,544.00 |
| Wilton Motiva Associates, LLC | $5,000,000.00 |

SCHEDULE 3

Holders of Secured Claims

| HOLDER | CLAIMED OR SCHEDULED AMOUNT |
|---|---|
| CitiMortgage | $852,903.74 |
| Ridgewood Savings Bank | $623,266.35 |
| Brent Coscia | $1,000,000 |
| James A. Weil | $5,036.96 |

SCHEDULE 4

Causes of Action

**Bankruptcy Cases**

Causes of Action or Adversary Proceedings Involving the Debtor in the following bankruptcy
cases:

*In re Connecticut Dealers Stations Management LLC*, Case No. 13-23994 (RDD) (S.D.N.Y.
  Bankr.)

*In re Armonk Snack Mart, Inc.*, Case No. 15-22375 (RDD) (S.D.N.Y. Bankr.)

*In re Yonkers Central Avenue Snack Mart, Inc.*, Case No. 15-22824 (RDD) (S.D.N.Y.
  Bankr.)

*In re Sammy Eljamal*, Case No. 15-22872 (RDD) (S.D.N.Y. Bankr.)

*In re MS Scarsdale Snack Mart, Inc.*, Case No. 16-22043 (RDD) (S.D.N.Y. Bankr.)

*In re MS Elmsford Snack Mart Inc.*, Case No. 16-22106 (RDD) (S.D.N.Y. Bankr.)

**Adversary Proceedings**

*Robert Porpora Realty Corp. v. Friendly Service New Rochelle, Inc.*, Adv. Pro. 15-08225
  (RDD) (S.D.N.Y. Bankr.)

*Armonk Snack Mart f/k/a Friendly Service New Rochelle, Inc. v. Gas Land Petroleum, Inc.,
  et al.*, Adv. Pro. 15-08226 (RDD) (S.D.N.Y. Bankr.)

*Gas Land Petroleum, Inc. v. Friendly Service Armonk, Inc. et al.*, Adv. Pro. 15-08227 (RDD)
  (S.D.N.Y. Bankr.)

*New York Fuel Distributors, LLC v. Yonkers Central Avenue Snack Mart, Inc.*, Adv. Pro. 15
  8335 (RDD) (S.D.N.Y. Bankr.)

*NY Fuel Holdings, LLC, et al. v. Sammy Eljamal, et al.*, Adv. Pro. 15-08354 (RDD)
  (S.D.N.Y. Bankr.)

*Leon Silverman individually and as a Member of Connecticut Dealer Stations, LLC, et al. v.
  Sammy Eljamal and Connecticut Dealer Stations Management, LLC*, Adv. Pro. 15-08357
  (RDD) (S.D.N.Y. Bankr.)

*Sammy Eljamal individually and as Managing Member of NY Fuel Holdings, LLC, et al. v.
  James A. Weil, et al.*, Adv. Pro. 15-08358 (RDD) (S.D.N.Y. Bankr.)

*Brent Coscia v. Sammy Eljamal*, Adv. Pro. 15-08361 (RDD) (S.D.N.Y. Bankr.)

*SRG Fuelco, LLC, et al. v. Sammy El Jamal*, Adv. Pro. 15-08362 (RDD) (S.D.N.Y. Bankr.)

*MS Scarsdale Snack Mart, Inc. v. NY Fuel Distributors, et al.*, Adv. Pro. 16-08207 (RDD) (S.D.N.Y. Bankr.)

## Federal Court Actions

*Croton Falls Gas Mart, Inc., et al. v. NY Fuel Distributors, LLC and Metro NY Dealer Stations, LLC*, Civ. No. 11-06621 (S.D.N.Y.)

*MS Elmsford Snack Mart, Inc. v. James A. Weil, individually and as a Manager of NY Fuel Distributors, LLC, et al.*, Civ. No. 14-2226 (S.D.N.Y.)

*Yonkers Central Avenue Snack Mart Inc. v. NY Fuel Distributors, LLC*, Civ. No. 14-3479 (S.D.N.Y.)

*Yonkers Central Ave. Snack Mart, Inc., et al. v. NY Fuel Distributors, LLC, et al.*, No. 13 3841-cv (2d Cir.)

## State Court Actions

*Leon Silverman, et al. v. Sammy Eljamal, et al.*, Index No. 52114/2011 (N.Y. Sup. Westchester Co.)

*Leon Silverman, et al. v. Sammy Eljamal, et al.*, Index No. 55260/2014 (N.Y. Sup. Westchester Co.) (*removed to Bankr. S.D.N.Y.*)

*Wilton Motiva v. Eljamal*, Index No. 69245/2012 (N.Y. Sup. Westchester Co.)

SCS Real Estate, et al. v. Eljamal Index No. 51059/2013 (N.Y. Sup. Westchester Co.)

*Gas Land Petroleum, Inc. v. Sammy Eljamal*, Index No. 0999/2012 (N.Y. Sup. Ulster Co.)

*Sammy Eljamal, et al. v. James A. Weil*, et al., Index No. 51297/2011(N.Y. Sup. Westchester Co.) (*removed to Bankr. S.D.N.Y.*)

*Armonk Snack Mart, Inc. , f/k/a Friendly Service Nerw Rochelle, Inc. v. Robert Porpora Realty Corp.*, Index No. 52682/2012 (N.Y. Sup. Westchester Co.)

*Armonk Snack Mart, Inc.  f/k/a Friendly Service New Rochelle, Inc.  v. Gas Land Petroleum, Inc., et al.*, Index No. 53582/2015 (N.Y. Sup. Westchester Co.) (*removed to Bankr. S.D.N.Y.*)

*Gas Land Petroleum, Inc. v. Friendly Service Armonk, Inc., et al.*, Index No. 56368/2013 (N.Y. Sup. Westchester Co.) (*removed to Bankr. S.D.N.Y.*)

*Yonkers Central Ave. Snack Mart, Inc. v. NY Fuel Distributors, LLC*, Index No. 56948/2014 (N.Y. Sup. Westchester Co.) (*removed to S.D.N.Y.*)

*Wholesale Fuel Distributors, Inc. v. Benit Fuel Sales and Services, Inc.*, Index No. 57149/2013 (N.Y. Sup. Westchester Co.)

*Brent Coscia v. Sammy Eljamal and Bryan Orser*, Index No. 60236/2011 (N.Y. Sup. Westchester Co.)

*SRG Fuelco. LLC v. Sammy Eljamal, et al.*, Index No. 061492/2012 (N.Y. Sup. Westchester Co.)

*MS Scarsdale Snack Mart, Inc. v. James A. Weil, et al.*, Index No. 68766/2012 (N.Y. Sup. Westchester Co.) (*removed to Bankr. S.D.N.Y.*)

*Friendly Service New Rochelle, Inc. v. Robert Porpora Realty Corp. and Gas Land Petroleum, Inc.*, Index No. 69209/2014 (N.Y. Sup. Westchester Co.)

*NY Fuel Holdings, LLC, et al. v. Sammy Eljamal, et al.*, Index No. 70487/2012 (N.Y. Sup. Westchester Co.) (*removed to Bankr. S.D.N.Y.*)

*First Automotive Trust v. 202 Gas Mart, Inc., et al.*, Index No. 1500148/2014 (N.Y. Sup. Albany Co.)

*Bryan D. Orser v. Wholesale Fuel Distributors CT, LLC, et al.*, Index No. 0835/2014 (N.Y. Sup. Greene Co.)

Sammy Eljamal v. Howard Kaye, et al., Index No. 653621/2014 (N.Y. Sup. N.Y. Co.)

CMS v. Daryl E. Davis, Esq., et al., Index No. 14R006071 (N.Y. Sup. Richmond Co.)

*Sammy Eljamal v. Ahmad Aljamal, et al.*, Index No. 064859/2015 (N.Y. Sup. Westchester Co.)

*Coscia v. Eljamal and Orser*, Appellate Div. Docket No. 2014-06742

*Wilton Motiva Assoc. f/k/a 372 Wilton Assoc., LLC v. Connecticut Dealer Stations, LLC*, Appellate Div. Docket No. 2014-10985

*Eljamal v. Weil*, Appellate Division Docket No. 2015-001841

*Coscia v. Eljamal and Orser*, Appellate Div. Docket No. 2015-03157

**<u>Additional Causes of Action</u>**

All Causes of Action, as defined in the Plan, whether pending on the Confirmation Date or thereafter asserted, against any Person, including, but not limited to, Centralized Management Services, Inc. or any other Business Entity; any Business Contract Party; Musa Eljamal, Asma Eljamal, Haifa Eljamal, Reyad Eljamal or any other family member of the Debtor; the Debtor's current or former accountants or accounting firm; or current or former attorney or law firm that is not otherwise released under the Plan.  Causes of Action may include, but are not limited to Avoidance Actions, claims for turnover of property, breach of fiduciary duty, malpractice, or alter ego liability.

SCHEDULE 5

Case Professionals

PENACHIO MALARA LLP

OTTERBOURG P.C.

DEVELOPMENT SPECIALISTS, INC.

SCHEDULE 6

Business Entities

| |
|---|
| Airport Restaurant, Inc. |
| The Airport Mart, Inc. |
| The South Greenwich Convenience Mart, Inc. |
| Tarrytown Snack Mark, Inc. |
| Yonkers Central Avenue Snack Mart, Inc./Food & Gas of Yonkers |
| The Armonk Snack Mart, Inc. |
| Food & Gas of Ardsley |
| Purchase County Market |
| Best Rent Properties, LLC |
| Wholesale Fuel Distributors-CT, LLC |
| Connecticut Dealers Station, LLC |
| Connecticut Dealers Station Management, LLC |
| NY Fuel Holdings LLC |
| NY Dealer Stations LLC |
| Metro NY Dealer Stations LLC |
| NY Fuel Distributors LLC |
| NY Dealer Stations Management LLC |
| MS Scarsdale Snack Mart, Inc. |
| MS Elmsford Snack Mart, Inc. |
| Tuckahoe Snack Mart, Inc. |
| Highland Estates LLC |
| Greenwich Convenience Mart, Inc. |
| Thornwood Snack Mart, Inc. |
| Courtesy Properties LLC |
| Wholesale Fuel Distributors Inc. |
| Centralized Management Services, Inc. |
| Friendly Service Mohegan Lake, Inc./Mohegan Lake Gas Mart |
| American Safety & Environmental Services, LLC |
| South Greenwich Green Grocer Mart, Inc. |
| Total Merchant Services, Inc. |
| Greenwich Green Grocer Mart, Inc. |
| Rte 6 Cortlandt Carwash, Inc. |
| Greenwich Convenience Mart |