**BARR & MORGAN**
Counsel for Musa Eljamal
22 Fifth Street
Stamford, CT  06905
(203) 356-1595

John J. Morgan

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re

SAMMY ELJAMAL,

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CHAPTER 11

Case No. 15-22872 (RDD)

<u>**MEMORANDUM IN OPPOSITION TO**</u>
<u>**MOTION FOR APPONTMENT OF EXAMINER**</u>

Musa Eljamal, by and through the undersigned, hereby objects to the

appointment of an examiner in the above referenced case for any purpose.  In support,

Mr. Eljamal respectfully submits that while there might have been an appropriate

occasion for an examiner to have been appointed, now is not the time.  The adverse

parties namely, the committee and the debtor are already engaged in an adversarial

process to investigate each other, which investigations entirely overlap the scope of the

investigation proposed for an examiner newly brought into the case.  The parties

exhausted substantial resources in this investigation.  We submit that bringing another

new entity into the investigation (with the related expense) will result in an unnecessary

1

duplication of effort as well as delay which will result in another potentially massive expenditure of already scarce resources. Accordingly, we respectfully object.

## FACTS AND PROCEDURAL HISTORY

There have been substantial proceedings before the Court; so familiarity with the debtor and the procedural posture of the case will be assumed. That said, the undersigned wishes to highlight several matters:

1) The debtor, Sammy Eljamal is, part owner of a number of business ventures.

2) At the risk of over simplification, those ventures might be divided into wholesale ventures and retail ventures.

3) Generally speaking, Sammy Eljamal is at least 50/50 partners in the wholesale ventures with either James Weil or Leon Silverman.

4) Generally speaking, Sammy Eljamal is 50/50 partners with the undersigned's client, Musa Eljamal on the retail business ventures.

5) In this Chapter 11 case, a Committee has been appointed to represent the creditor class including the undersigned's client.

6) The Committee consists of two plenary members and James Weil and Brent Coscia and one ad hoc member, Leon Silverman.

7) Brent Coscia has been nominally appointed to chair the Committee.

8) Mr. Coscia he has not exercised that role instead he has delegated his responsibilities to Attorney Mark Oxman.

9) Attorney Oxman concurrently represents Leon Silverman, James Weil and Brent Coscia. More particularly, it appears that Mr. Oxman represents Mr. Silverman in

an action known as <u>Orser v. Silverman</u>.  He continues to represent James Weil in an action known as <u>Eljamal v. Weil</u> and he represents Brent Coscia in both the present action and the underlying case which gave rise to Mr. Coscia's claim.

10) Brent Coscia and James Weil share substantial contacts in addition to the same attorney.

11)  More particularly, Mr. Coscia is, or was, the General Manager of Mr. Weil's companies.  As a result of which Mr. Coscia was a direct subordinate to Mr. Weil and his employment is, or was, wholly dependent upon Mr. Weil's good graces.  In addition, legal documents suggest that Mr. Weil financed the underlying litigation which gave rise to Mr. Coscia's claim in this matter and therefore has de facto control over the resolution of that claim.

12)  As a result, the Committee does not consist of multiple independent members.  Rather, the Committee shares a unity of interest hostile to the debtor.

13) This unity of interest, averse to the debtor, has been repeatedly displayed in the conduct of the Committee which has taken positions hostile to the debtor and the entire creditor class other than James Weil.

14)  All of these facts about the Committee are objective and verifiable. As a result, we respectfully submit that the Court should disband the Committee rather than demand expenditure of substantial further resources on an examiner to investigate these issues.

## LAW & ARGUMENT

Section 1104 of the Bankruptcy Code provides:

"[I]f the court does not order the appointment of a trustee under this
section, then at any time before the confirmation of a plan, on request of a
party in interest or the United States trustee, and after notice and a
hearing, the court shall order the appointment of an examiner to conduct
such an investigation of the debtor as is appropriate, including an
investigation of any allegations of fraud, dishonesty, incompetence,
misconduct, mismanagement, or irregularity in the management of the
affairs of the debtor of or by current or former management of the debtor,
if ...
(1) such appointment is in the interests of creditors, any equity security
holders, and other interests of the estate; or (2) the debtor's fixed,
liquidated, unsecured debts, other than debts for goods, services, or
taxes, or owing to an insider, exceed $5,000,000."

The "as is appropriate" language in the statute affords the Court discretion to
appoint an examiner.   In In re Washington Mutual Inc., No. 08–12229(MFW)
(Bankr.D.Del. May 5, 2010), Hr'g Tr. at 101:12 (ECF Doc. # 3699), the court denied the
motion of the committee of equity security holders to appoint an examiner despite the
fact that no trustee had been appointed, no plan had been confirmed, and the debtors
clearly owed in excess of $5 million in fixed debt.   The court held that it had the
"discretion to determine what appropriate investigation of the debtor should occur and
that, if the Court determines that there's no appropriate investigation that needs to be
conducted, the Court has the discretion to deny the appointment of an examiner." Id. at
97:9–13. The court in Washington Mutual pointed to three factors in determining
whether an investigation would be inappropriate, including (1) whether the investigation
has already been conducted by other parties; (2) whether the appointment of an

4

examiner would increase costs and cause a delay with no corresponding benefit; and (3) the timing and underlying motives of the motion, i.e. whether it is a litigation tactic or an attempt to gain an advocate, or whether the motion comes after an undue delay. Id.,at 97:14–24.

Each of the Washington Mutual factors militates against appointing an examiner in this case:

**First**, the parties are already engaged in an adversarial process to conduct the investigation which is proposed by the United States Trustee. As the Court knows, the Creditors' Committee has propounded substantial discovery on the debtor, his entities, family members and related parties. Substantial documents have been produced and will likely continue to be produced as this action goes forward. By the same token, the debtor has propounded discovery upon certain creditors, certain members of the Creditors' Committee and their representatives. To date, the creditors and related entities have refused to produce even a single document. We trust that discovery will come before the Court in due order. Obviously, the parties have already expended time and effort on these investigative processes. As a result, it is likely that such information as is required, will be obtained by the adversarial process in the regular course. There is no reason to add yet another entity to this mix as it will only add another layer of discovery and confuse matters further than they already are.

**Second**, the appointment of an examiner would facially increase costs. Indeed, given the number of documents which will need to be reviewed, the examiner would likely expend tens of thousands of dollars merely to get up to speed on this matter.

Even then, the investigation conducted by the examiner will largely duplicate other efforts being made. As indicated in prior motions by the undersigned, counsel for the Committee has expended over a million dollars to investigate various and sundry alleged deficiencies (real and imagined) with the debtor's conduct. This, despite the fact that the debtor's plan will likely make all creditors whole. Obviously, the payment of creditors would have been substantially easier had the million dollars spent on Committee counsel been available to pay creditors. The simple fact remains that the debtors' assets are not infinite adding further layers to an already weighty administrative load would be unduly prejudicial to the debtor as well the creditors who have an interest in being paid - as distinct from James Weil whose interest is to minimize the debtors' assets for his own benefit.

**Lastly**, the undersigned respectfully submits that the attempt to appoint an examiner at this point in the case, after substantial investigatory funds have already been spent, is not for the purpose of performing the investigation but rather to duplicate effort and dissipate funds which would otherwise be available to pay creditors including this party. The only creditors to benefit from that scenario are James Weil and Leon Silverman who, not coincidentally, control the creditors Committee. The time that an examiner might better have been appointed was prior to the expenditure of resources on investigation. The investigation to have been conducted by a neutral party rather than the litigation adversaries before you and given the excessive billings by the Committee counsel, such an independent investigation would almost certainly have been less onerous and expensive.

6

The adversary process has now been underway for a number of months.  As a result of which, an appointment of an examiner at this late stage would serve limited purpose and merely add additional layers of cost, expense and time.  For all these reasons, the undersigned respectfully submits that this Court should refrain from appointing an examiner in this matter.

## CONCLUSION

As the Court is likely very well aware, the struggle between the debtor, Sammy Eljamal and his erstwhile business partners Leon Silverman and James Weil for control of the debtor's wholesale business interest has now been ongoing since 2011.  These disputes have resulted in a veritable "War of the Roses" spinning off over a dozen legal actions in New York State Civil Courts, Criminal Courts, and City Courts.  There have been a number of actions in the Federal Court for the Southern District of New York as well as numerous bankruptcy filings.

Despite the protracted litigation being waged by the principals of the companies, the entities have remained profitable throughout.  This is a testament to the strength of the assets brought to the table by Sammy Eljamal in the first instance as well as the ongoing viability of the business interests going forward.

It now appears that the actions are evolving from the original substantive disputes to a "War of Attrition".  It is no secret that Mr. Silverman and Mr. Weil have substantially greater financial wherewithal than the debtor Sammy Eljamal.  As a result, even if Mr. Eljamal has bona fide claims, Messrs. Weil and Silverman might nevertheless succeed simply by exhausting Mr. Eljamal's resources.  The undersigned

respectfully submits that many of the activities and positions advanced in this case strongly suggest an ongoing war of attrition which should be stopped or minimized if at all possible.  It is respectfully submitted that adding another party with exacerbate the problem rather than mitigate it.

Given his position in relation to the debtor and the other creditors, Musa Eljamal is the creditor with the most to lose if the war of attrition continues unabated.  As a result, he has a vested interest in preventing dissipation of assets and a vested interest in assuring that all creditors are paid in full.  Those interests are prejudiced as more layers of administrative expense are superimposed on this already heated and protracted adversarial process.

Accordingly, the undersigned respectfully submits that this Court should not appoint an examiner for any purpose and should take all reasonable steps to minimize further administrative expenses so as to ensure all creditors – not just Mr. Weil and his cronies – are made whole.  For all these reasons, the Motion to Appoint an Examiner submitted by the United States Trustee should be denied.

Dated: Stamford, Connecticut

September 9, 2016                              Respectfully submitted,

By:_____
John J. Morgan
Barr & Morgan
22 Fifth Street
Stamford, CT  06905
T. (203) 356-1595
F. (203) 504-8926
*Attorney for Musa Eljamal*

8

CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2016 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

John J. Morgan
Barr & Morgan