PENACHIO MALARA, LLP
Anne Penachio, Esq.
Counsel to the Debtor
235 Main Street-Suite 610
White Plains, NY 10601
(914) 946-2889

**HEARING DATE & TIME:**
**DECEMBER 6, 2016 at 10:00AM**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re

                                               CHAPTER 11

       SAMMY ELJAMAL,                     CASE NO.: 15-22872(RDD)

                                Debtor.
------------------------------------------------------------X

### NOTICE OF HEARING ON MOTION TO (I) ENFORCE THE PROVISION OF OPERATING AGREEMENTS THAT PERMIT THE INSPECTION OF BOOKS AND RECORDS; AND (II) COMPEL PRODUCTION OF DOCUMENTS

**PLEASE TAKE NOTICE THAT** a hearing on the motion of Sammy Eljamal, the above-referenced debtor (the "Debtor") for the entry of an order (i) enforcing the provision of Operating Agreements that permit the inspection of books and records; and (ii) compel production of documents of NY Fuel Holdings, LLC, Metro NY Dealer Stations, LLC, NY Dealer Stations Management, LLC, NY Dealer Stations, LLC and NY Fuel Distributors, LLC pursuant to Bankruptcy Rule 2004 will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, in his Courtroom at The Charles L. Brieant, Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York 10601, on December 6, 2016, at 10:00 a.m.

**PLEASE TAKE FURTHER NOTICE** that a copy of the motion will be available on the Bankruptcy Court's website, www.nysb.uscourts.gov or from the undersigned on request.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief sought in the application must comply with applicable law and be served upon the undersigned with a copy to the Bankruptcy Judge's Chambers at least three (3) days prior to the return date. Unless objections are interposed, the relief sought in the application may be granted.

Dated: November 22, 2016
       White Plains, NY

**PENACHIO MALARA, LLP**

/s/ Anne Penachio
Anne Penachio
Counsel to the Debtor
235 Main Street-Suite 610
White Plains, NY 10601
(914) 946-2889

PENACHIO MALARA, LLP  
Anne Penachio  
Counsel to the Debtor  
235 Main Street-Suite 610  
White Plains, NY 10601  
(914) 946-2889  

**HEARING DATE & TIME:**  
**DECEMBER 6, 2016 at 10:00AM**

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------X  
In re  

                            CHAPTER 11  

    SAMMY ELJAMAL,                        CASE NO.: 15-22872(RDD)  

                              Debtor.  
------------------------------------------------X  

## MOTION TO (I) ENFORCE THE PROVISION OF OPERATING AGREEMENTS THAT PERMIT THE INSPECTION OF BOOKS AND RECORDS; AND (II) COMPEL PRODUCTION OF DOCUMENTS

Sammy Eljamal, by his counsel Penachio Malara, LLP seeks entry of an order pursuant to Rules 2004, 9016 and all applicable rules and law of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing NY Fuel Holdings, LLC, Metro NY Dealer Stations, LLC, NY Dealer Stations Management, LLC, NY Dealer Stations, LLC and NY Fuel Distributors, LLC (collectively, the "NY Companies"), to (i) permit inspection of books and records under various Operating Agreements and (ii) compel the production of documents on the list (the "Documents") annexed hereto as Exhibit A pursuant to Bankruptcy Rule 2004. In support of this Motion, the Debtor respectfully represents as follows:

### BACKGROUND

1. On or about June 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") with the Clerk of this Court and the case was referred to the Bankruptcy Judge herein.

2. Since the filing, the Debtor has operated as a debtor-in-possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.

3. An official committee of unsecured creditors has been formed. No trustee or examiner has been appointed.

4. The Debtor, who is in his early 40's, has been engaged in the gasoline distribution business for many years. Because he was working in the industry from a young age, the Debtor did not have the opportunity to obtain a formal education. Despite this lack of formal training, the Debtor was able to build a small petroleum empire. At one point, he controlled approximately 30 retail sites.

5. Debtor, through hard work and enterprise, essentially transformed a single warehouse in the Bronx owned by his father into a thriving gasoline retail enterprise

6. The Debtor's current financial predicament emanates from his business relationship with Leon Silverman ("Silverman") and James Weil ("Weil"), two seasoned businessmen twice the Debtor's age. Silverman and Weil's primary role initially was to finance the Debtor's acquisition of wholesale and retail businesses. As discussed below, instead of serving as lenders, Weil and Silverman became the Debtor's partners. Shortly after their relationship began, following a series of management disputes, Weil and Silverman took over the business that the Debtor created, effectively ousted the Debtor from operations and from the attendant financial benefits.

7. In or about 2006, due to his stellar performance, the Debtor was presented with the opportunity from Shell Oil/Motiva to become a wholesaler of gasoline. Thereafter, the Debtor not only met but exceeded expectations of supplying Shell gasoline. In 2007, he was offered the opportunity to acquire numerous gas stations in Connecticut. In his quest to obtain financing, the Debtor met Silverman.

8. The Debtor and Silverman together formed a highly successful and profitable venture. The Debtor had the knowledge, expertise, connections and approvals to acquire and operate the Connecticut stations. Silverman, who had no experience in running gasoline stations, had the ability to finance acquisitions.

9. The Debtor's business relationship with Weil had an origin similar to his relationship with Silverman. In fact, the Debtor was introduced to Weil through Silverman's attorney, Alan Rothschild. Weil and his investors (collectively referred to as 'Weil") were to fund the acquisition of the NY Companies which operate numerous gasoline stations in New York.

10. In connection with the foregoing acquisitions, the Debtor pledged his entire life savings (in excess of $2 million).

11. For various reasons well documented in prior pleadings, the Debtor believes that Weil undermined his management role despite his vast experience in the gasoline industry.

12. Litigation between the Debtor and Weil ensued and ultimately devolved into an all consuming quagmire.

13. After several rounds of motions, Sammy was removed from operations of Metro. Upon information and belief, Weil now runs Metro and the related companies with many of the Debtor's long time employees that he trained.

14. The Debtor believes that he was treated unfairly in the State Court which in many instances, made harsh findings based upon hyper-technicalities and draconian penalty provisions.

15. A catalyst in the Debtor's decision to file for Bankruptcy was the appointment of a receiver by the State Court to liquidate the Debtor's interest in the NY Companies., a highly valuable entity, to satisfy a judgment held by an employee, Brent Coscia. The appointment of the "single purpose receiver" imperiled the Debtor's financial viability.

16. By seeking the protections of this Bankruptcy Court, the Debtor's goal was to preserve his assets for the benefit of all creditors and to invoke the inherent equitable powers available to parties to address a drastically inequitable situation. The Debtor believes that the value of his business interests far exceeds his liabilities to his creditors.

17. The Debtor also believes that Weil, who is armed with a team of high powered attorneys, and ample funds, goal is to strip him of his assets for his own financial gain without regard to maximizing their value.

18. The Debtor and the Committee agreed to participate in mediation in an effort to formulate a mutually acceptable plan of reorganization. The Debtor requires the Documents in order to meaningfully participate in mediation and any joint plan of reorganization.

19. The Debtor requires the documents sought to, *inter alia,* determine the value of his interests in the NY Companies and hopefully propose a plan that the Committee will support.

20. The Debtor is entitled to access books and records under the various Operating Agreements, each of which contains a similar provision regarding inspection. A copy of of the Operating Agreement of NY Fuel Holdings is annexed hereto as Exhibit B. See paragraph 4.1.

21 By this Motion, the Debtor seeks the Documents which relate to the NY Companies' finances, including their income, assets and liabilities, as well as the transfers of any assets. To the extent necessary, the Debtor also seeks access to the NY Companies books and records as is his right under the Operating Agreements.

22. The Debtor intends to share the documents with his financial advisor, RSM. RSM requires the "raw data" as set forth on Item 4 of the list on Exhibit A. Specifically, RSM needs the raw data (not a print report) from the general ledger system for each year in a format such as Excel, comma or tab delimited text file, or database back-up extract. In these formats, the files should have descriptive headers and file names and contain all available fields. Alternatively, if the NY Companies are utilizing a system such as Quickbooks, they should provide a copy of the underlying Quickbooks GL or database files along with the ADMIN User ID and Password for each of the files.

**PRIOR REQUEST**

23. Two previous applications for the relief sought herein were made to the Court under Federal Rules of Bankruptcy Procedure 2004 (Dkt. Nos. 178 and 209). The NY Companies voluntarily produced some documents. However, they were incomplete. The Debtor seeks to use the Documents with respect to the mediation and assessing valuation of the NY Companies and not for any pending litigation.

24. The Debtor hopes to resolve any dispute on consent. The Debtor does not want to disrupt business of the NY Companies. In the event that access to the NY Companies' books and records is needed, the Debtor's professionals will proceed in a manner designed to minimize interference.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) directing the production of documents by the NY Companies as set forth on Exhibit A; (ii) permiting access to the books and records of the NY Companies; and (iii) for such other and further relief as the Court deems just and equitable.

Dated: November 22, 2016
White Plains, New York

PENACHIO MALARA, LLP

/s/ Anne Penachio
Anne Penachio, Esq.
Attorney for the Debtor
235 Main Street
White Plains, NY 10601
(914) 946-2889