**BARR & MORGAN**
Counsel for Musa Eljamal
22 Fifth Street
Stamford, CT 06905
(203) 356-1595

John J. Morgan

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re

                                            CHAPTER 11

SAMMY ELJAMAL,                            Case No. 15-22872 (RDD)

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MOTION TO DISQUALIFY THE OXMAN LAW GROUP, PLLC

      Musa Eljamal, by and through the undersigned, hereby moves to disqualify the

Oxman Law Group PLLC and specifically, Lois N. Rosen, Stuart Kahan and Marc S.

Oxman, from further participation in this matter as well as the various collateral

proceedings and further objects to Marc Oxman, or any member of the firm, sitting as

chair of the creditors' committee or otherwise participating in its work.

      The model code of professional responsibility provides:

"The professional judgment of a lawyer should be exercised, within the bounds of the
law, solely for the benefit of the client and free of compromising influences and loyalties.
Neither the lawyer's personal interest, the interests of other clients, nor the desire third
persons should be permitted to **dilute** the lawyer's loyalty to the client." Ethical
Consideration 5-1 (Emphasis added).

1

The undersigned respectfully submits that because the Oxman Law firm wears, and has worn, so many hats in this action and has taken so many conflicting positions, the firm simply cannot plausibly exercise independent legal judgment for any of its clients.  Certainly, the firm cannot exercise the independent legal judgment required from the chair of the creditors' committee.  Accordingly, we hereby move that the firm be disqualified.

As the Court may recall, the undersigned first raised concerns about Oxman's multiple representation several months ago.  We understood the further consideration of the matter would be deferred until after the (now concluded) mediation.  Since that time, the extent of the conflicts as well as the problems caused by multiple representations have compounded.  We, therefore, now submit the Court should address the matter "head-on."

## FACTS AND PROCEDURAL HISTORY

There have been substantial proceedings before the Court; so familiarity with the debtor and the procedural posture of the case will be assumed.  That said, the undersigned wishes to highlight several matters:

1)      The debtor, Sammy Eljamal is, part owner of a number of business ventures.

2)      At the risk of over simplification, those ventures might be divided into wholesale ventures and retail ventures.

3)      For most entities, Sammy Eljamal is at least 50/50 partners in the wholesale ventures with either James Weil or Leon Silverman.

2

4)      Generally speaking, Sammy Eljamal is 50/50 partners with the undersigned's client, Musa Eljamal on the retail business ventures.

5)      In this Chapter 11 case, a Committee has been appointed to represent the unsecured creditor class including the undersigned's client.

6)      The Committee consists of two plenary members and James Weil and Brent Coscia and one ad hoc member, Leon Silverman.

7)      Brent Coscia has been nominally appointed to chair the Committee.

8)      Mr. Coscia has not exercised that role instead, he has delegated his responsibilities to Attorney Mark Oxman.

9)      Accordingly, Mr. Oxman is de facto, chair of the creditors' committee.

10)     When the issue of Oxman's conflicts was first raised with the Court the undersigned only knew about some of Mr. Oxman's clients.  Detailed research has disclosed that the Oxman firm filed appearances for at least twelve parties in this matter, namely:

Brent Coscia

James Weil

Leon Silverman

Robert Porpora Realty

NY Fuel Holdings LLC

NY Fuel Distributors LLC

Wholesale Fuel Distributors CT, LLC

Metro NY Dealer Stations, LLC

Connecticut Dealer Stations, LLC

Gasland Petroleum, Inc.

Amsterdam 181 Realty, LLC

and NY Dealer Stations Management, LLC.

The Oxman firm further maintains a known, but undisclosed, role internally with many of these parties. The full nature and extent of the relationships cannot be unearthed due attorney-client matters. Nevertheless, the extensive conflicts are manifest and concerning

11)    In an action known as <u>Orser et al. v. Coscia et al</u>, Index number 0021/2016 now pending in the Greene County Supreme Court, the Oxman Law Group, PLLC, represents Brent Coscia and James Weil. A review of the New York State Unified Court System website suggests that case is ongoing. Case detail sheet, attached as exhibit A.

12)    In a case entitled <u>Sammy Eljamal v. James A. Weil</u>, Index number 651144/2014 pending in the New York Civil Supreme Court the Oxman Law Group PLLC represents the defendant James Weil. Case detail sheet, attached as exhibit B.

13)    In another case entitled <u>Sammy Eljamal v. James A. Weil,</u> Index number 050633/2015 pending in the Westchester Civil Supreme Court Mr. Oxman's proceeding firm, Oxman, Tulis, Kirkpatrick, Whatt & Geifer, LLP represented James Weil. Case detail sheet, attached as exhibit C.

14)    In a case entitled <u>Friendly Service New Rochelle v. Robert Porpora Realty Corp.</u>, Index number 069209/2014 pending in the Westchester Civil Supreme Court Mr.

Oxman's predecessor firm represented the defendant.  Case detail sheet, attached as exhibit D.

15)    In the case entitled B. A. B.  Plus, LLC v. Gas land Petroleum, Inc., Index number 052529/2014 pending in the Westchester Civil Supreme Court the Oxman firm represented the defendant.  Case detail sheet, attached as exhibit E.

16)    In a case entitled Leon Silverman v. Sammy Eljamal, Index number 055260/2014, pending in the Westchester Civil Supreme Court Mr. Weil's firm represents Leon Silverman.  Case detail sheet, attached as exhibit F.

17)    In a case entitled Brian D. Orser v. Wholesale Fuel Distributors CT, LLC, Index number 000835/2014 pending in the Greene Civil Supreme Court, the Oxman firm represented the defendants (with the exception of Sammy Eljamal).  Case detail sheet, attached as exhibit G.

18)     In the case entitled NY Fuel Holdings, LLC v. Sammy Eljamal, Index number 070487/2012 pending in the Westchester Civil Supreme Court, Index number 070487/2012, the Oxman firm represented the plaintiffs.  Case detail sheet, attached as exhibit H.

19)    In the case entitled Armonk Snack Mart Inc. v. Robert Porpora Realty Corp., Index number 052682/2012 the Oxman firm represented one of the defendants. Case detail sheet, attached as exhibit I.

20)     In a case entitled Sammy Eljamal v. James A. Weil, Index number 051297/2011 the Oxman law firm appears to represent the defendants James Weil, Leon Silverman, NY Fuel Holdings, LLC, Metro NY Dealer Stations, LLC, NY Dealer

Stations Management, LLC, NY Fuel Distributors, LLC and NY Dealer Stations, LLC and Amsterdam 181 Realty, LLC.  Case detail sheet, attached as exhibit J.

21)    In a case entitled <u>Leon Silverman v. Sammy Eljamal</u>, Index number 052114/2011, the Oxman law firm represented the plaintiff, Leon Silverman.  Case detail sheet, attached as exhibit K.

22)    In a case entitled <u>Sammy Eljamal v. James A. Weil</u>, Index number 054967/2011 the Oxman firm represented the defendant James Weil.  Case detail sheet, attached as exhibit L.

23)    In a case entitled <u>Brent Coscia v. Sammy Eljamal</u> the Oxman law firm represents the plaintiff, Brent Coscia.  Case detail sheet, attached as exhibit M.

24)    The conflicts continued in this Court.

25)    In a proceeding entitled <u>Gas Land Petroleum, Inc. v. Friendly Service Automotive, Inc.</u>, Docket number 15-08227-RDD, the firm, through Stuart E. Kahan represented Gas Land.  Case summary sheet, attached as exhibit N.

26)    In a proceeding entitled <u>Silverman et al. v. Eljamal</u>, docket Nos. 15-08357-RDD, the Oxman firm, through Lois Rosen, represents the plaintiffs, Leon Silverman, Connecticut Dealer Stations, LLC and Wholesale Fuel Distributors-CT, LLC.  Case summary, attached as exhibit O.

27)    In an action entitled <u>NY Fuel Holdings, LLC v. Eljamal</u>, docket number 15-08354-RDD, the Oxman firm, through Lois Rosen, represents NY Fuel Holdings, LLC, Metro NY Dealer Stations, LLC, NY Fuel Distributors, LLC and NY Dealer Stations Management, LLC.  Case summary attached as exhibit P.

28)      In an action entitled <u>Coscia v. Eljamal,</u> docket number 15-08361-RDD, the Oxman firm through Stuart Kahan, represents Brent Coscia.  Case summary attached hereto as exhibit Q.

Virtually all of those representations occurred simultaneously and several of the conflicting representations continue to this day. In short, the Oxman law firm, has represented and continues to represent a plethora of parties in this matter. In addition to his parochial interests, Mr. Oxman is the acting chair of the creditors' committee in this action.  In that role, Mr. Oxman is charged with acting in the best interests of the Bankruptcy Estate and the creditors as a whole, including the movant.  Mr. Oxman has consistently subjugated his duties as chair of the committee to his parochial interests as counsel to James Weil. (Notably, **not** the party he nominally represents on the Committee).  In any event, Mr. Oxman has never contacted the undersigned to ascertain Musa Eljamal's interests, much less consider, represent, or protect them.  In short, he has stood the role of committee chair on its head.

## LAW & ARGUMENT

It is fundamental that disqualification of an attorney is a matter that rests within the sound discretion of the Court.  See, e.g., <u>Halberstam v. Halberstam,</u> 995 NYS 2nd 738, 739 (App. Div. 2d Dep't NY 2014).  The authority to disqualify an attorney is a function of the court's inherent supervisory power and not necessarily the applicable disciplinary rules.  <u>Merck Eprova AG v. ProThera Inc.,</u> 670 F. Supp. 2nd 201, 207 (SDNY 2009).  The Court is tasked with balancing the client's right to freely choose counsel against the need to maintain the highest standards of the profession.  <u>Id.</u>

Although the Court should look to state disciplinary rules, model rules and bar

commentary for guidance, these rules are not conclusive and disqualification may be

justified even in the absence of a clear ethical breach where necessary to preserve the

integrity of the adversary process.  Revise Clothing, Inc. v. Joe's Jean's Subsidiary, Inc.,

687 F. Supp.2d 381, 388 (SDNY 2010).

    However, both Second Circuit and New York State courts have repeatedly held

that all doubts should be resolved in favor of disqualification.  Id., at 387; McCutcheon v.

3 Princesses and AP trust dated February 3, 2014, 29 NYS 3rd 611, 615 (App. Div. 3d

Dep't NY 2016).  Indeed, both the Second Circuit and New York State courts have

explicitly held that an attorney must avoid not only the fact, but even the appearance, of

representing conflicting interests.  Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384,

1387 (2d Cir. 1976); McCutcheon v. 3 Princesses et al., 29 NYS 3rd 611, 614 (App. Div.

3d Dep't NY 2016).

    When considering circumstances similar to the case at bar, courts have looked to

Rules 1.6 and 1.7 of the Rules of Professional Conduct.

    Rule 1.7 provides, in pertinent part that "a lawyer shall not represent a client if a
reasonable lawyer would conclude that either: (1) the representation will involve the
lawyer in representing differing interests; or, (2) there is a significant risk that the
lawyer's professional judgment on behalf of a client will be adversely affected by the
lawyer's own financial, business, property or other personal interests."

    Rule 1.6 states in part "a lawyer shall not knowingly reveal confidential
information... Or use such information to the disadvantage of a client or for the
advantage of the lawyer or a third person.[.]

    Courts have also looked to the ethical considerations contained in the model

Code of Professional Responsibility; specifically, Ethical Consideration 5-1 (cited

above), as well as Ethical Considerations, EC 5-14; EC 5-15; EC 5-16; and EC 5-18. (Copies of which are attached hereto as exhibit S.)  Although those provisions are somewhat voluminous, of import here, they prohibit acceptance or continuation of employment which will adversely affect the lawyer's independent judgment or otherwise dilute the lawyer's loyalty to a client.  EC 5-14.  They note that the lawyer should resolve all doubts **against** the representation.  EC 5-15.  The code further provides that "if a disinterested lawyer would conclude that any of the affected clients should not agree to the representation... The lawyer should not ask for [a waiver of the conflict]."  EC 5-16. Further, the rules note that "a lawyer employed or retained by a corporation or similar entity owes allegiance to the entity and not to a shareholder, director, officer, employee, representative, or other person connected with the entity."  EC 5-18.

Some courts to draw a distinction between per se disqualifications and other circumstances.  For instance, in some courts the standard for disqualification varies depending upon whether the representation is concurrent or successive.

Concurrent representation:

It is prima facie the improper for an attorney to simultaneously represent a client and another party with adverse interests.  In such cases, per se disqualification applies. Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1387; Merck Eprova AG v. ProThera, Inc., 670 F. Supp.2d 201, 208; Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2nd 381, 388 (internal citations omitted).  In per se cases, it is not sufficient for the attorney to show that the matters upon which the attorney represents existing clients are totally unrelated.  GSI Commerce Solutions, Inc. v. BabyCenter, LLC, 618 F.3d 204,

210 (2d Cir. 2010).  Disqualification occurs immediately upon the attorney accepting concurrent employment for clients with arguably inconsistent positions.

<u>Successive representation</u>:

Many courts apply a different standard in the case of successive representation. In that case, the courts look to whether there is a "substantial relationship" between the counsel's prior representation and the issues in the present lawsuit and whether the attorney had access to or was likely to have had access to privileged information regarding the matter.  <u>Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.</u> 687 F. Supp. 2nd 381, 389.  However, even in that circumstance, New York State courts have found an irrebuttable presumption of disqualification where the matters were substantially related and the clients' interests are materially adverse. <u>McCutcheon v. 3 Princesses et al.,</u> 29 NYS 3rd 611, 614 (App. Div. 3d Dep't NY 2016).

**The Oxman firm should be disqualified under either standard.**

As noted above, the Oxman law group continues to represent a number of parties in ongoing litigation arising out of the Sammy Eljamal's gasoline businesses. Beyond being "substantially related" those lawsuits are inextricably intertwined.  At the same time, the various clients' interests are not congruent.  In some cases, the parties interests may run in parallel, but in others, (including, the principal bankruptcy) they conflict on the face of the record.  Therefore, we respectfully submit that under either standard disqualification is mandated.

During the last hearing, the Oxman firm claimed that it had cured its perceived conflicts by withdrawing representation from one, or more, of their clients.  We

respectfully submit that claim is unsupportable.  Preliminarily, where, as here, the representation was concurrent, the law firm cannot excuse its conflicted representation on that basis because the conflict is fixed as of the time a conflict arises not at some later point.  Courts do not allow law firms to convert a "present client" into a "former client" (and thereby retroactively avoid a conflict of interest) merely by choosing to cease representation of the less favored client.  As noted by the court, this is colloquially referred to as the "hot potato" rule.  See e.g. Merck Eprova AG v. ProThera, Inc., 670 F. Supp.2d 201, 209.

Secondly, the firm is not permitted to excuse conflicted representation even with respect to former clients where the matters in which the conflict exists are "substantially related" to the matter in which the firm represented the former client.  Here, all of the representation arises out of the exact same business operations and the fallout resulting from the disputes amongst the erstwhile partners.  As noted, all of the claims are inextricably intertwined.  Clearly, all of those disputes are substantially related if not identical.

**The Oxman firm is irrefutably conflicted**:

Throughout the litigation, we have been able to establish that the Oxman firm has publicly represented:

Brent Coscia

James Weil

Leon Silverman

Robert Porpora Realty

11

NY Fuel Holdings LLC

NY Fuel Distributors LLC

Wholesale Fuel Distributors CT, LLC

Metro NY Dealer Stations, LLC

Connecticut Dealer Stations, LLC

Gasland Petroleum, Inc.

Amsterdam 181 Realty, LLC

and NY Dealer Stations Management, LLC.

Even at first blush, it would be difficult to imagine how one firm could conceivably justify representing so many people and entities with so many differing interests in the same matter and at the same time.  But upon further inspection, the conflicts become even more glaringly apparent.

There is a very obvious conflict between the interests of Brent Coscia and several other creditors.  Brent Coscia is a creditor holding a multi-million dollar money judgment.  Manifestly, his interest would be to bring as much money into the estate as possible, and as quickly as possible - from whatever source.  Obviously, had Weil and Silverman properly distributed the monies owed to Sammy Eljamal from the wholesale operations, Mr. Coscia would immediately be made whole.  Those distributions have been blocked by Mr. Oxman.  A similar analysis applies to monies owed to Sammy Eljamal as profits from the retail operations.  Those interests are directly adverse to the interests of James Weil and Leon Silverman (with respect to the wholesale operations) and those interests are directly adverse to NY Fuel Distributors and Metro NY Dealer

Stations and Connecticut Dealer Stations (with respect to the retail operations). These conflicting interests have played out in public documents. As the court is well aware, Mr. Weil and Mr. Silverman have claimed, for over 5 years, that Sammy Eljamal owns approximately 8% of the wholesale companies when in fact, he owned 50%. As a result of that dispute, Mr. Weil and Mr. Silverman have withheld very substantial distributions from Mr. Eljamal. That withholding is obviously to the detriment of the estate as well as Mr. Coscia.

Mr. Coscia's interests also depart from those of NY Fuel Distributors and Metro NY Dealer Stations. Those entities have insisted that a number of retail stations, at which Mr. Eljamal is the franchisee, remain closed rather than allow Sammy Eljamal to make profit from those locations. Had those stations been open, Coscia may have been paid through cashflow. Sammy Eljamal has alleged that allowing those stations to remain fallow constitutes clear corporate waste. Certainly, however, income from those stations would immediately inure to the benefit of the estate and Mr. Coscia. In addition, Mr. Eljamal has alleged violations of New York law with respect to fuel pricing, among other things. If successfully prosecuted, those claims would bring substantial monies into Sammy Eljamal's estate, and by extension, to Mr. Coscia - at the expense of the companies. Similar analyses can be applied to the interests of Gasland and Robert Porpora Realty. Success by those entities would diminish the value of the Eljamal estate.

There is also a very obvious conflict between the interests of the wholesale entities and those of James Weil or Leon Silverman. Preliminarily, it is absolutely clear

13

that the lawyer must owe his allegiance to the entity and not to any shareholder,

director, officer, employee, representative or any other person connected with the entity.

EC 5-18.  So, the Oxman firm cannot excuse its conflicts by asserting that it was acting

on behalf of either Mr. Weil or Mr. Silverman.  Their interests have never been 100%

congruent with the entities and therefore continued representation of all of them

constitutes a conflict.  More particularly, both Mr. Weil and Mr. Silverman have a present

vested interest in minimizing the value of the wholesale entities as well as Sammy

Eljamal's interest in those companies.  They have displayed this interest in their

repeated attempts to frustrate Sammy Eljamal's attempt to reorganize and their

repeated attempts to force Mr. Eljamal into liquidation.  As a result, their financial

interests are to actively discourage third-party bidders at a liquidation sale.  Were that to

occur, they would be the only substantial bidders and they would be in the best position

to obtain the businesses at a cut rate price.  Manifestly, that position is not consistent

with the entities' interests, nor the interest of the estate or Mr. Coscia.  Furthermore,

Oxman purports to represent Weil, Silverman and the NY Fuel entities.  However, he

was retained under the pretext that Sammy controlled an 8% share, when in reality he

owns a 50% share.  Mr. Oxman has never acknowledged the 50% entitlement and

Sammy has never acknowledged Oxman right to represent the companies.  Resolving

that dispute should entail appointment with an un-conflicted attorney.

        In addition to these publicly displayed interests, Mr. Oxman has a private

parochial interest in minimizing Sammy Eljamal's proportionate share of the wholesale

companies because he was the chief proponent of the 8% claim.  He was the author of

the complaint which claimed that due to alleged deficiencies, Mr. Eljamal forfeited his

rights under the operating agreements to increasing distributions and that his rights

were effectively fixed at a predetermined date.  See pleading attached as exhibit R.

Although that position has now been discredited by this Court, Mr. Oxman will need to

justify the massive expenses due the clear corporate waste incurred by the entities to

pursue that questionable tack.

 Given Mr. Oxman's intimate relationship with all of the represented parties, it is

manifest that he obtained confidential and privileged information which could be used,

and would be used, by the other clients in an attempt to negotiate a better position or

better outcome for themselves from this bankruptcy proceeding.  In effect, Mr. Oxman

holds all of the reigns in his hands.  That simply cannot be tolerated by the Court where

the interests of the parties represented are not congruent.  Put in simplest terms,

bankruptcy, by its nature, is frequently a "zero-sum" game.  What benefits one creditor

commonly injures another.  As a result, one firm cannot and should not, purport to

represent twelve or more creditors.  In the best case, the firm would have to negotiate

between its clients rather than zealously representing them.

 In practice, the firm will likely pick one client and work from there.  This appears

to have occurred in this case since the actions of the firm and the committee seem

calculated to benefit James Weil rather than the estate or other creditors.

**The Oxman firm should be prohibited from participating in the work of the
creditors committee.**

 Leaving aside the obvious problems with the Oxman firm continuing to represent

the plethora of parties with adverse interests, the Oxman firm cannot exercise the independent judgment required of a chair of the creditors' committee. Indeed, judging by the conduct of that committee to date, it is obvious that Mr. Oxman does not take seriously his obligation to the estate or to all creditors.

As the Court is no doubt aware, there is substantial authority holding that persons who serve in a committee undertake to act in a fiduciary capacity in behalf of all creditors in the class they represent. Indeed, the Supreme Court has cautioned that the "whole body of law" imposes "the most rigorous responsibilities for fair dealing" on fiduciaries who represent the rights of others. This is crucially important in the case of reorganization committees which are the primary negotiating bodies for the plan of reorganization. Accordingly, individuals constituting the committee should be honest, loyal, trustworthy and without conflicting interests and with undivided loyalty and allegiance to their constituents. As a result, conflicts of interest on the part of representative persons on committees are thus not to be tolerated. Accordingly, where a committee representative or agent seeks to represent or advance the parochial interests of an individual creditor, this fiduciary is in breach of his duty of loyal and distribution service. See, e.g. In re Johns-Manville Corp. 26 B.R. 919, 924-26 (Bankr. S.D.N.Y. 1983).

A conflict of interest which amounts to a breach of fiduciary duty constitutes a type of conflict that would mandate removal of the creditor from the committee. In re Venturelink Holdings, Inc. 299 B.R. 420, 423 (Bankr. N.D Texas 2003). That case explicitly holds that:

16

"[T]he **appearance** of a breach of fiduciary duty should...mandate the removal.  The bankruptcy process must be both fair and appear to be fair.  A creditor on a committee who exudes the appearance of a breach of fiduciary duty undermines that basic bankruptcy tenant, thereby corrupting the process.  The United States trustee would [acts] arbitrarily and capriciously if he refused to remove a committee member who held a conflict of interest amounting to a breach of the fiduciary duty owed by the creditor to the creditors represented by the committee or who appeared to hold such a conflict." Id.  (Emphasis added)

In the <u>Venturelink</u> case, a dispute arose between various creditors and a member of the committee alleging that the member, while in a fiduciary capacity, obtained several million dollars from the debtor purportedly in violation of his fiduciary duty.  The court held that the member could not act as fiduciary to the very creditors who were attacking him.  This was because he could not exercise his duties to analyze the assets of the bankruptcy estate for the benefit of all creditors represented by the committee while under the allegation of breaching his fiduciary duty.  The court found that it was not merely a debtor/creditor dispute for goods and services nor a general disagreement about the reorganization process.  The dispute was more than strategy or tactics.  Rather, the dispute implicated the member's fiduciary duty and thereby his ability to honor the fiduciary duty to all creditors.  As a result, the court overruled the decision of the United States Trustee and removed the conflicted member.

We respectfully submit the result should be the same here.  Mr. Oxman and his firm are hopelessly conflicted.  They cannot possibly honor their fiduciary duties to all of the people they purport to represent or to the body of creditors as a whole.

The undersigned represents Musa Eljamal, the creditor with the greatest amount to lose if reorganization is not successful.  The committee has never consulted with the

17

undersigned concerning Musa Eljamal's interests. If anything, the committee has made a show of ignoring Musa's interests by repeatedly attacking him while ignoring obvious issues with committee members and others represented by the Oxman firm.

## CONCLUSION

As the Court has now seen, the struggle between the debtor, Sammy Eljamal and his erstwhile business partners Leon Silverman and James Weil for control of the debtor's wholesale business interest has been ongoing since 2011. These disputes have resulted in a veritable "War of the Roses" spinning off over a dozen legal actions in New York State Civil Courts, Criminal Courts, and City Courts. There have been a number of actions in the Federal Court for the Southern District of New York as well as numerous bankruptcy filings. The Oxman Law Group PLLC or its predecessor firm has appeared in almost every single one of the actions for "somebody." As best we can tell, the Oxman firm purports to represent at least 12 persons or entities in various litigations arising out of the underlying dispute. The list of Oxman clients is effectively a who's who of people who don't like Sammy Eljamal.

Depending upon the day, or the specifics of a given dispute, the interests of these multiple people change. They conflict in some cases and they run parallel in others. But they are never 100% congruent. The undersigned is at a complete loss to explain how one attorney can hold so many contrary positions at the same time.

All of these conflicts were further compounded when Mr. Oxman agreed to serve as chair of the creditors' committee. Under his leadership, the committee has abandoned any pretext of objectivity and has espoused the tenuous claims of one

18

creditor - James Weil.  The committee has attacked the Eljamal family over pretextual claim that modest monies are missing while ignoring the massive amount of money being wrongfully withheld by Weil and NY Fuel Holdings, LLC.

The rules and code generally prohibit an attorney from representing multiple interests which might dilute the attorneys loyalty to any one client.  This appears to be a textbook example of the risks the rules were designed to protect against.  There are twelve creditors competing over the same estate, they might not all be equally satisfied.

Simply put, there is absolutely no possibility that the Oxman firm can exercise independent legal judgment on behalf of the multitude of clients it purports to represent. Far beyond that, it certainly cannot reasonably be expected to exercise the independence required on the committee.  There are serious questions about the firm's honesty, loyalty, trustworthiness and unconflicted status.  See, In re Johns-Manville.

We respectfully submit that these concerns are objective and substantive.  But that is not the standard.  A committee member must both be, **and appear to be**, honest, loyal, trustworthy and unconflicted.  It is simply not possible for the Oxman firm to even arguably meet that standard.  As a result, we respectfully submit that the firm should be disqualified from representing any party to this matter and further disqualified from serving on the creditors' committee or otherwise participating in its work.

Dated: Stamford, Connecticut

January 18, 2017

Respectfully submitted,

By:_____

John J. Morgan
Barr & Morgan
22 Fifth Street
Stamford, CT  06905
T. (203) 356-1595
F. (203) 504-8926
*Attorney for Musa Eljamal*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2017 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


John J. Morgan
Barr & Morgan