PENACHIO MALARA LLP  
Counsel for the Debtor  
235 Main Street  
White Plains, New York 10601  
(914) 946-2889  

**HEARING DATE & TIME:**  
**FEBRUARY 7, 2017 at 10:00 AM**

By: Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------X  
In re  

                                                  Case No. 15-22872 (RDD)

      SAMMY ELJAMAL,

                                Debtor.  
------------------------------------------------------------X

### STATEMENT OF DEBTOR (I) IN SUPPORT OF MOTION OF MUSA ELJAMAL TO DISQUALIFY THE OXMAN LAW GROUP, PLLC (II) DIRECTING OXMAN TO TURN OVER RECORDS REGARDING ITS REPRESENTATION OF NEW YORK FUEL DISTRIBUTORS, LLC AND RELATED ENTITIES; AND (III) GRANTING SUCH OTHER <u>RELIEF AS MAY BE PROPER</u>

**SAMMY ELJAMAL**, the debtor herein ("Sammy" or the "Debtor"), by and through his counsel, **PENACHIO MALARA LLP**, submits this statement in support of the motion of **MUSA ELJAMAL** ("Musa"), to disqualify the **OXMAN LAW GROUP, PLLC** ("Oxman") from representing any party with an interest adverse to the Debtor and participating in this Chapter 11 proceeding, requiring it to turn over documents relating to its representation of **NEW YORK FUEL DISTRIBUTORS, LLC** and related entities (collectively, "NYFD"), and granting such other and further relief as may be just and proper including setting a hearing on the appropriate sanctions, and sets forth as follows:

    1.    Musa has moved to disqualify Oxman. The Debtor supports that request for the reasons set forth therein.

2. The Debtor further requests that the Court impose the appropriate sanction on Oxman for failure to disclose adverse interests in contravention of Bankruptcy Rule 2019 and, if necessary, schedule a hearing on same. At the very least, Oxman should be directed to disclose details of his representation of multiple parties with claims in the Bankruptcy Case.

3. Oxman, as designee of Brent Coscia ("Coscia"), chairman of the Official Committee of Unsecured Creditors, has undertaken representations in contravention of the interests of Coscia and the Debtor's estate. For example, Oxman continued to serve as counsel to Leon Silverman, James Weil and Gasland Petroleum, Inc. Such representation is directly contrary to the interests of creditors.

4. Since the motion, the Debtor has finally accessed some records of NYFD. Although the Debtor holds the largest single interest in NYFD (50%), the entity is controlled by Committee member James Weil ("Weil'). Weil has authority over NYFD's checkbook, as confirmed in a letter from NYFD, a copy of which is annexed hereto as Exhibit A.

5. NYFD's records reveal that Oxman has received approximately $175,000.00 from NYFD since the filing of the Debtor's petition. A print out from NYFD's records is annexed hereto as Exhibit B. The records indicate that a significant portion of the fees paid were for services rendered to Coscia in the Debtor's bankruptcy case.

6. NYFD's records also reflect that approximately $41,000.00 remains due and owing to Oxman for services performed. See Exhibit B.

7. Oxman concealed his continuing economic relationship with Weil and NYFD. He did not disclose it in correspondence to the United States Trustee (the "UST") during an inquiry into the propriety of the Committee. See Exhibit C. In that letter, Oxman insists that there is no conflict among Committee members. That "would diminish either Committee

2

member's ability act independently and in the best interests of all creditors." See Exhibit C page 1. Oxman does not mention the fact that he is being paid by Weil – a fact which obviously impacts "independence."

8. Oxman thwarted the Debtor's efforts to obtain information (and continues to do so) in violation of Court mandates by objecting to 2004 applications. In addition, Oxman failed to comply with the Debtor's request for billing statements and a retainer agreement with NYFD. See Exhibit D.

9. Significantly, Oxman failed to file a statement under Bankruptcy Rule 2019 setting forth his multiple representations.

10. The Debtor believes that Oxman used confidential information acquired while he served as counsel to NYFD during his representation of Coscia and Gasland. The Debtor believes that this confidential information was used to the detriment of his Chapter 11 estate to harm the estate (i.e. Oxman knew that the Debtor owned 50% of NYFD and was entitled to distributions but used his influence as counsel to NYFD to undermine the Debtor's interest for the benefit of Weil and Silverman).

11. The Debtor believes that Oxman has used and continues to use his position on the Committee to facilitate the acquisition by Weil of the Debtor's 50% interest in NYFD. This is obvious. Oxman first asserted the patently frivolous positon that the Debtor only held an 8.67% interest in NYFD when in fact his interest was 50%. Presumably, Oxman, as counsel to NYFD, advised Weil to deviate from the express distribution scheme in the Operating Agreement.

12. On behalf of Gasland, in connection with the Armonk Snack Mart, Inc., Chapter 11 Case No.: 15-22375, Oxman recently sought to gain control of the valuable assets in which

the Debtor has an interest. A letter from Oxman wherein he asserts Gasland's rights to property that belongs to the Debtor is annexed hereto as Exhibit E.

13. While counsel for NYFD, Oxman conspired with Weil to improperly value the Debtor's 50% interest in NYFD as only an 8.67% interest. Oxman and Weil further conspired to deny the Debtor mandatory distributions from NYFD in order to further depress the value of his interest. NYFD, while represented by Oxman, effectively "shut" the Debtor out from operations in direct contravention of the mandates of the Operating Agreement. Oxman's goal from the get go, was to assist his client Weil and receive a windfall at the expense of the Debtor and his estate.

14. Upon information and belief, Oxman did not receive a "waiver" from his dual representations from the Debtor or NYFD. A waiver is expressly contemplated under the terms of the Operating agreement wherein the Debtor and member Weil sand Silverman expressly waived conflicts of attorneys Alan Rothschild and Seth Friedland. See Operating Agreement at Exhibit F at 10.12.1 (p. 24).

## DISCUSSION

15. Throughout the Debtor's Chapter 11 case, Oxman has represented multiple creditors of the Debtor – Specifically, Silverman, Weil, NYFD, Coscia, and Amsterdam. Oxman has failed to disclose those agreements to the UST and the Court. Notably, the fact that NYFD is still paying Oxman to represent Coscia is a conflict that has been concealed.

16. Musa's application sets forth the legal basis in support of the relief sought – Oxman should be prohibited from representing any and all parties. Oxman's representation of NYFD (past and current), Silverman, Weil, Gasland, Amsterdam and Coscia are in direct conflict to his duties to Sammy as a 50% member of NYFD and also to Coscia as Committee

Chair (with a duty to all creditors). Oxman should be precluded from representing such entities.

17. Moreover, Oxman has most certainly been privy to information regarding the Debtor which was necessarily acquired during his representation of NYFD. Oxman has or is likely to use such information to gain an unfair advantage against the Debtor.

18. Oxman's continued representation of Gasland has imperiled the Debtor's assets as demonstrated by his correspondence annexed hereto as Exhibit E.

19. Oxman has failed to filed a disclosure under Bankruptcy Rule 2019 which provides in pertinent part as follows:

(b) Disclosure by groups, committees, and entities

(1) In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

(c) Information required

The verified statement shall include:

(1) the pertinent facts and circumstances concerning:

(A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act; or

(B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;

(2) if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to each member of a group or committee:
(A) name and address;

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed; and

5

(C) with respect to each member of a group or committee that claims to represent any entity in addition to the members of the group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the date of acquisition by quarter and year of each disclosable economic interest, unless acquired more than one year before the petition was filed;

(3) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity security holder represented by an entity, group, or committee, other than a committee appointed under § 1102 or § 1114 of the Code:

(A) name and address; and

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date of the statement; and

(4) a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders.

(e) Determination of failure to comply; sanctions

(1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.

(2) If the court finds such a failure to comply, it may:

(A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;

(B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or

(C) grant other appropriate relief.

Bankruptcy Rule 2019.

20.    It submitted that Oxman's failure to submit Verified Statement under Rule 2019 was intentional. He did not wish to disclose his numerous conflicts. Rather, he concealed his conflicts to further his goal of helping his client, Weil (the one with the money), in acquiring the Debtor's interest in NYFD. I remind the Court that it was Oxman, ostensibly on behalf of

Coscia, who petitioned the State Court pre-petition, for the appointment of a "single purpose receiver" to liquidate the Debtor's interests in NYFD which he maintained was a mere 8.67%.

21. Only with complete disclosure can the Debtor properly assess the Chapter 11 plan proposed by Oxman's clients Coscia and Weil who each signed it.

22. The Court should direct Oxman to comply with the undersigned's request immediately, provide detailed descriptions of his multiple representations, including retainer agreements, billing statements, and, in the case of services for NYFD, his file and email communications.

## CONCLUSION

The Debtor respectfully requests that the Court grant the relief sought and further relief as is just and proper.

Dated: White Plains, NY
January 31, 2017

PENACHIO MALARA LLP

By: /s/ Anne Penachio
Counsel for the Debtor
235 Main Street
White Plains, New York 10601
(914) 946-2889