Melanie L. Cyganowski
Richard G. Haddad
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SAMMY ELJAMAL,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-22872 (RDD) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 2004 AUTHORIZING THE ISSUANCE OF SUBPOENA
FOR THE PRODUCTION OF DOCUMENTS AND TAKING OF TESTIMONY FROM
CENTRALIZED MANAGEMENT SERVICES, INC.**

The Official Committee of Unsecured Creditors (the "**Committee**") of Sammy Eljamal (the "**Debtor**"), by its undersigned counsel, submits this Motion for entry of an Order, substantially in the form annexed hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, authorizing the issuance of a subpoena duces tecum and ad testificandum for the production of documents from and examination of Centralized Management Services, Inc. ("**CMS**"), his employer and an entity in which the Debtor claims to hold a 50% interest. In support of its Motion, the Committee respectfully alleges the following:

**PRELIMINARY STATEMENT**

1. The Committee has been trying for months to obtain from the Debtor documents concerning CMS. Notwithstanding the Debtor's statements (through counsel) that such information would be provided, no CMS documents have been provided. Accordingly, the Committee is formally seeking, through the Rule 2004 process, to obtain documents and take the testimony of a representative of CMS.

2. The Debtor acknowledges that CMS pays all of his personal and/or household expenses. Certain of those expenses are sometimes listed on the Debtor's monthly operating reports (they are not always consistently listed), but the Committee seeks to determine what additional expenses are paid for by CMS and what additional transfers are being made to or from the Debtor and/or his father. The Committee believes that the Debtor has used CMS, an entity controlled by the Debtor, as a vehicle to maintain his lifestyle during this bankruptcy case and keep particular funds and/or other assets outside of the estate. The Debtor also purportedly has a 50% interest in CMS and, therefore, CMS's income and disbursements are of significant interest in evaluating this asset and the Debtor's interest therein. The Committee respectfully submits that the relief requested in this Motion, and which has already been consented to by the Debtor in a so-ordered stipulation entered by this Court (*see* Case No. 15-22824 (RDD), Dkt. No. 99), is critical to unraveling the full extent of the Debtor's expenses, the assets available to the estate and its creditors, and whether those assets have been diminished by way of transfers from CMS to the Debtor that are outside the purview of the Court.

**PROCEDURAL BACKGROUND**

3. On June 18, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to

2

operate his businesses and properties as a debtor-in-possession. No trustee or examiner has been appointed in this case.

4. On July 16, 2015, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee presently consists of the following members: (i) Brent Coscia; and (ii) JMM Fuelco, LLC. Upon the recommendation of the Office of the United States Trustee and approval by the Committee, Leon Silverman, a creditor of the Debtor, was added as an *ex officio* member of the Committee.

5. In his Amended List of Business Interests (Dkt. No. 64), the Debtor represented that he has a 50% ownership interest in CMS (with the other 50% supposedly being owned by his father, Musa Eljamal).

6. CMS is the Debtor's "management company," and "collects" streams of revenue from various businesses in which the Debtor has an interest, some of which are subject to their own bankruptcy proceedings, in the form of "management fees," which are never reported on any bankruptcy or public filing, and have not been disclosed to the Committee despite repeated requests.

7. According to the Debtor's monthly operating reports and Rule 2004 testimony, CMS "pays for all personal and/or household expenses [of the Debtor] as part of a compensation package." (*See e.g.*, January 2017 Monthly Operating Report, Dkt. No. 461) However, the Debtor has not produced any documentation detailing the terms of, or even evidencing, such a compensation package. Nor is it clear if this additional compensation is reflected in the W-2 or similar tax statements prepared by CMS. Although the Debtor claims that CMS pays *all* of his personal and/or household expenses, few, if any, of these payments are itemized in any bankruptcy-filed document.

8.  In addition, the Committee requires information to understand the finances of CMS, including the amount and source of all revenue, the services provided, and all expenditures of CMS. This information includes the amount of management fees received by CMS from other businesses in which the Debtor has an interest, as well as all payments made to or for the benefit of the Debtor and his father, Mr. Musa Eljamal. Therefore, the Committee seeks Rule 2004 discovery from CMS to assist in its investigation concerning the full extent of the Debtor's assets, the value of such assets, and the possible looting of such assets by the Debtor.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## REQUESTED DISCOVERY

12. The Committee seeks entry of an Order, pursuant to Bankruptcy Rule 2004, in the same or substantially the same form as the accompanying proposed Order, authorizing the Committee to issue a subpoena <u>duces tecum</u> and <u>ad testificandum</u>, substantially in the form attached hereto as **Exhibit B** (the "**Subpoena**"), to CMS. The Subpoena seeks the examination of CMS (through an authorized representative) and the production of particular documents. The documents are needed for the Committee's investigation concerning the pre- and post-petition acts, conduct, property, liabilities and financial condition of the Debtor and his estate. The Committee must obtain this information to properly discharge its duties to its constituency under section 1103(c) of the Bankruptcy Code. In carrying out its statutory duties, the Committee must appropriately investigate all areas which may be needed to pay all claims of the Debtor's estate.

13. There is clear statutory basis for the relief requested. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the Court may order the examination of any entity" with regard to the "acts, conduct or property, or to the liabilities and financial condition of the debtor, or to any other matter that may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004. Bankruptcy Rule 2004(c) provides for the discovery of documents.

14. Rule 2004 discovery is an investigatory tool undertaken prior to litigation that is independent of a complaint or contested matter. It need not be tied to specific factual allegations at issue between parties to a dispute. In re Symington, 209 B.R. 678, 684 (Bankr. D. Md. 1997).

15. The scope of discovery under Rule 2004 is significantly broader than discovery under the Federal Rules of Civil Procedure. See In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991); In re ECAM Publications, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991). The purpose of the 2004 examination is to "show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, [so] that the rights of the creditor may be preserved." In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bank. E.D.N.Y. 1991) (quoting Cameron v. U.S., 231 U.S. 710, 717 (1914)). See also In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (holding that the purpose of Rule 2004 "is to facilitate the discovery of assets and the unearthing of frauds" into general matters and issues relating to the bankruptcy estate). The scope of Rule 2004 examinations is very broad and can be in the nature of a "fishing expedition." In re Coffee Cupboard, Inc., 128 B.R. at 514; In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005); In re Vantage Petroleum Corp., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983).

16. The Committee previously filed an adversary proceeding against CMS seeking an order (a) declaring CMS to be an alter ego of the Debtor; (b) directing an accounting of all income and expenses of CMS from the Petition Date and going forward until the case is closed;

and (c) directing the turnover of all excess proceeds to the Debtor's estate for the benefit of his creditors (*see* Adv. Pro. No. 16-08217 (RDD), Dkt. No. 1). The Committee has voluntarily discontinued that adversary proceeding without prejudice. (*Id.* Dkt. No. 18.)

17. Requiring CMS to submit to an examination and produce documents is not only authorized by Bankruptcy Rule 2004, but will be in the best interests of the Debtor's estate and its creditors. No party will be prejudiced by the granting of the relief requested herein.

18. In fact, the Debtor has already consented to the relief sought in this motion. In April 2016, this Court entered the So Ordered Stipulation Concerning Funds Held by NY Fuel Distributors, LLC (Case No. 15-22824 (RDD), Dkt. No. 99), between, among others, the Committee and the Debtor. Paragraph 5 of the so-ordered stipulation provides that: "The Eljamal Committee will have the right to apply for an order in Case No. 15-22872 (RDD), pursuant to Bankruptcy Rule 2004, authorizing the Eljamal Committee to issue subpoenas <u>duces tecum</u> and <u>ad testificandum</u> to Centralized Management Services, Inc. ("CMS") and [Yonkers Central Avenue Snack Mart, Inc. ("**Yonkers**")] to investigate, among other things, how CMS and the Debtor allocate and disburse funds in accordance with obligations incurred by its owners and associated businesses."

19. This stipulation was also signed by counsel to Yonkers. As Musa Eljamal is the Vice President of Yonkers and the individual responsible for Yonkers during its bankruptcy case, he must have authorized counsel's signing of the stipulation, and now can have no legitimate objection to the Rule 2004 relief sought by the Committee.

20. The Committee reserves its rights to supplement its requests for additional documents and information as such is deemed necessary.

**NOTICE**

21. Notice of the Motion has been given to: (a) CMS; (b) counsel of record to the Debtor, Penachio Malara LLP (Attn: Anne J. Penachio, Esq.); (c) the Office of the United States Trustee for the Southern District of New York; and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Committee respectfully submits that, in light of the nature of the relief requested herein, no further notice is necessary or required.

**NO PRIOR REQUEST**

22. No previous application for the relief sought herein has been made to this Court or to any other court.

**WAIVER OF MEMORANDUM OF LAW**

23. Because this Motion does not present any novel issues, and because the authorities relied upon are set forth herein, the Committee respectfully requests that the Court waive any requirement under the Local Bankruptcy Rules for the submission of a memorandum of law with respect to the Motion.

## CONCLUSION

24.     WHEREFORE, the Committee respectfully requests that the Court enter an Order substantially in the form annexed hereto as **Exhibit A**, authorizing the issuance of the Subpoena duces tecum and ad testificandum to CMS and granting such other, further relief as this Court deems just and proper.

Dated: New York, New York
          March 24, 2017

                                        By: /s/ Melanie L. Cyganowski
                                              Melanie L. Cyganowski
                                              Richard G. Haddad
                                        OTTERBOURG P.C.
                                        230 Park Avenue
                                        New York, New York 10169
                                        (212) 661-9100
                                        *Counsel to the Official Committee of Unsecured Creditors of Sammy Eljamal*