UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: 4/25/2017
Time: 10:00 A.M.

-----------------------------------------------------x

In re:

Chapter 11

SAMMY ELJAMAL,

Case No. 15-22872 (RDD)

Debtor.

-----------------------------------------------------x

OBJECTION OF BRENT COSCIA TO DEBTOR'S MOTION (I) FOR SANCTIONS FOR VIOLATIONS OF BANKRUPTCY RULE 2019 INCLUDING (i) THE DISALLOWANCE OF THE CLAIM OF BRENT COSCIA, (ii) THE PRECLUSION OF BRENT COSCIA FROM VOTING ON ANY PLAN OF REORGANIZATION; (iii) THE REMOVAL OF BRENT COSCIA FROM THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; (iv) THE IMPOSITION OF COSTS AND OTHER SANCTIONS ON BRENT COSCIA AND THE OXMAN LAW GROUP PLLC IN AN AMOUNT THAT THE COURT DEEMS FAIR AND JUST; (II) IN FURTHER SUPPORT OF THE MOTION OF CREDITOR MUSA ELJAMAL TO DISQUALIFY THE OXMAN LAW GROUP PLLC AS ATTORNEY FOR THE CREDITOR BRENT COSCIA; AND (III) FOR SUCH OTHER AND FURTHER RELIEF AS MAY BE JUST AND PROPER

Brent Coscia ("Coscia"), by his attorneys, Marc Stuart Goldberg, LLC, as and for his objection (the "Objection") to the motion of Sammy Eljamal (the "Debtor"), for an order for sanctions for alleged violations of Rule 2019 of the Federal Rules of Bankruptcy Procedure [Dkt. No. 463] (the "Sanction Motion"), respectfully sets forth and shows:

## BACKGROUND

1. Debtor moves this Court for an order for, inter alia, seeking sanctions against Coscia for alleged violations of Rule 2019 of the Federal Rules of Bankruptcy Procedure.
2. Coscia is a creditor of the Debtor.
3. Coscia has filed a claim in this case in the amount of $5,221,549.32 (the "Claim").
4. Upon information and belief, Debtor's estate is solvent and, therefore, Coscia's claim is entitled

to be paid 100%, with interest, which runs, at 9%,, or approximately $35,000.00 monthly. Thus, to date, Coscia's Claim exceeds $6,000,000.00.

5. Coscia is a member and Chairman of the Official Committee of Unsecured Creditors (the "Committee") in this case.

6. As recognized by the Office of the United States Trustee [Dkt. No. 543], the Sanction Motion was filed as a litigation tactic to gain advantage. It is no more and no less.

7. On the law and the facts, the Sanction Motion must be denied.

8. Rule 2019 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that: "(b) DISCLOSURE BY GROUPS, COMMITTEES, AND ENTITIES.

(1) In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another."

(2) (e) DETERMINATION OF FAILURE TO COMPLY; SANCTIONS.

(1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.

(2) If the court finds such a failure to comply, it may:

(A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;

(B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or

(C) grant other appropriate relief.

9. Among other things, the Sanction Motion looks to remove Coscia as a member of the Committee.

10. Coscia is neither a "group" nor a "committee" nor is he an "entity that represents, multiple creditors or equity security holders."

11. Oxman Law Group, PLLC, and/or its predecessors ("Oxman"), may be an "entity that represents, multiple creditors or equity security holders," although case law appears to indicate that absent

being an "organization" that has a legal identity apart from its individual members, the representation of multiple parties in and of itself does not foster an "entity" under the meaning of Rule 2019 of the Federal Rules of Bankruptcy Procedure.

"Rule 2019 more appropriately seems to apply to the formal organization of a group of creditors holding similar claims, who have elected to consolidate their collection efforts." Where an *ad hoc* committee has appeared as such, the committee is required to provide the information plainly required by Rule 2019 on behalf of each of its members. *In re Washington Mut., Inc.*, 419 B.R. 271, 276 (Bankr. D. Del. 2009).

12. "When a statutory term is undefined, courts give it its "ordinary meaning" or "common usage." *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 2024, 170 L.Ed.2d 912 (2008). To ascertain ordinary meaning Courts often turn to dictionary definitions for guidance. *See, e.g., Santos,* 128 S.Ct. at 2024. In its latest edition, *Black's* defines an entity as being an organization (such as a business or governmental unit) that has a legal identity apart from its members or owners. The Steering Group fits neither of the examples which *Black's* cites. It is clear, conversely, that the Steering Group has no legal identity apart from its members. It does not represent any creditors other than its members and it has no instrument authorizing it to act on behalf of non-member creditors. Members are apparently free to join and withdraw as they see fit, and no member is bound by any decisions of the majority of the Group. In short, this Court finds that the "Group" before it is not an "entity" because it is not an organization that has a legal identity apart from its individual members." *In re Philadelphia Newspapers, LLC*, 422 B.R. 553, 565–66 (Bankr. E.D. Pa. 2010).

13. Up until Oxman was substituted out in this case, Coscia relied upon Oxman for matters of legal representation in the prosecution of his individual interests against the Debtor, both in this Court and in the state court. Coscia continues to rely upon Oxman in the state court. Coscia also relied upon Oxman to advise him when his interests may have required him to abstain from Committee matters.

14. Coscia has relied, and continues to rely upon Otterbourg P.C. ("Otterbourg"), in his capacity as member/Chairman of the Committee, in which Coscia has acted, and continues to act, as a fiduciary on behalf of all creditors of Debtor's estate.

15. "If there is a failure to comply with the disclosure provisions of Bankruptcy Rule 2019, the Court may, *inter alia,* refuse to permit the entity acting on behalf of the parties from being heard further in a Chapter 11 case." *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990).

16. "In reviewing the scope of Bankruptcy Rule 2019(a), one commentator has stated:

    Rule 2019 applies only in cases under chapter 9 or chapter 11 of the Bankruptcy Code. The rule is part of the disclosure scheme of the Bankruptcy Code. It is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly.

    Rule 2019 covers entities which act in a fiduciary capacity but which are not otherwise subject to the control of the court.

    The rule will apply to any entity, including an attorney, who represents more than one creditor or equity interest holder. While a failure to comply with Rule 2019 will not affect the ability of an attorney to prosecute an involuntary chapter 11 petition, the rule must be complied with by such an attorney in order to be heard on behalf of multiple creditors on any other matter. [citations omitted.]" *In re Oklahoma P.A.C. First Ltd. P'ship*, supra.

17. Thus, it is the ability to be heard "on behalf of multiple creditors" that may be at risk by a failure to comply with Rule 2019. As set forth by the Office of the United States Trustee, it is not the removal of a creditor from an official committee appointed by the Office of the United States Trustee.

18. Coscia has been unable to find any rule, statutory or case law which holds that the failure of an attorney or its client, if applicable, to comply with Rule 2019 (which is addressed to entities, such as a law firm, and not to individual creditors such as Coscia) could result in a sanction that would disallow an otherwise allowable claim of a creditor. The thought of doing so would appear draconian at best[1].

[1] Much has been said of a purported "covenant not to sue." While Coscia disputes that a covenant not to sue existed at the time of the filing of Debtor's bankruptcy case, the dispute surrounding that allegation should be heard before the state court that rendered judgment in Coscia's favor. "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), this Court said: "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so...." *Id.,* at 96, 101 S.Ct., at 415. This principle was restated in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896, 79 L. Ed. 2d 56 (1984). Furthermore, a proof of claim filed in accordance with Rule 3001 of the Federal Rules of Bankruptcy Procedure, constitutes "prima facie evidence of the validity and amount of the claim." Even if the Court were able to sanction Coscia by a "compromise" of his Claim, which it is respectfully submitted it is not, it is inconceivable that the amount of such a sanction could even approach the presently allowable amount of that Claim, to wit, $5,221,549.32, plus interest in this presumably 100% plan case.

19. On February 7, 2017, this Court, among other things, this Court directed that Oxman file "disclosure of all relationships of the clients that your firm represents in this case and outside of the case relating to the assets of this debtor including the details of the financial arrangements on who's (sic) being paid, who has the right to settle and the like. [2]"

20. On February 10, 2017, Oxman filed its disclosure (the "Oxman Disclosure") in accordance with the Court's directive.

21. Among other things, the Oxman Disclosure confirmed that the Debtor was aware, since no later than April 2014, that New York Fuel Distributors, LLC ("NYFD") had been advancing payment for Coscia's legal fees; that the Debtor was aware, since no later than April 2014, that Coscia had agreed to repay those advances once Coscia collected from the Debtor on the $4,785,000.00, plus interest, judgment (the "Judgment") Coscia had secured against the Debtor; that Oxman had made this arrangement known to the Court by a filing, on April 15, 2016 [Dkt. No. 234]; and that on April 28, 2016, Oxman alerted the Office of the United States Trustee of this arrangement, a copy of which letter was provided, on the same date, to, among others, counsel to the Debtor and counsel to the Committee.

22. On March 3, 2017, Debtor moved this Court for an order seeking, inter alia, sanctions against Coscia (and the Oxman Law Group PLLC) for alleged violations of Bankruptcy Rule 2019 including, the disallowance of Coscia's Claim; precluding Coscia from voting on any plan of reorganization; the removal of Coscia from the Committee; and the imposition of costs and other

---

[2] In connection with Debtor's bankruptcy case, disclosure that an entity "that the debtor owns an interest in" has been known to the Debtor, the Committee and the Office of the United States Trustee since no later than April 28, 2016, at which time Oxman sent a letter to the Office of the United States Trustee (copying Debtor and Committee counsel, among others) in which Oxman set forth that "[B]oth the Debtor and Mr. Oser were well aware that Mr. Coscia's then employer NYFD advanced payment for the legal and expert witness fees of approximately $95,000 that Mr. Coscia incurred in connection with his defense of the unfounded criminal charges that were brought against him solely as a result of malicious and false statements made to the police by the Debtor and Mr. Oser." It was earlier disclosed, on April 15, 2016, in a filing by Coscia [Dkt. No. 234 at paragraph 22] that "[A]s disclosed during the State Court Action, Weill paid Coscia's legal and expert witness expenses incurred in connection with the criminal trial." (As represented by Coscia, in his eyes, Weil and FDNY are and were one in the same.)

sanctions against Coscia [Dkt. No. 463] (the "Sanction Motion") [3]. Coscia disputes that he have violated Rule 2019 and he disputes that a covenant not to sue existed at the time of the filing of Debtor's bankruptcy case (or for years prior to that filing, if at all).

23. The Sanction Motion focuses on two issues of attack on Coscia. The fee arrangement in which NYFD, an entity in which the Debtor has an interest, agreed to advance the legal fees and expenses for Coscia, and the Debtor's allegation that in 2011, Coscia entered into a "covenant not to sue" NYFD[4].

24. Neither of the "issues" asserted by the Debtor is supported by evidence[5].

25. The Debtor's "covenant not to sue" argument is based on Coscia's February 13, 2017 declaration [Dkt. No. 454] (the "February Declaration"), which stated:

> I told Jimmy [in 2011] that I could sue both NYFD and its investors for false arrest. I did not really want to do that though, since it was Sammy (not NYFD or its investors) who really had tried to hurt me. After some discussion, Jimmy asked whether I would agree not to sue NYFD if it would front my legal fees. . . . I consented to this arrangement, and agreed not to sue NYFD in exchange for the advance payment arrangement."

26. As set forth in Coscia's declaration submitted simultaneously herewith, June 14, 2011 was the most confusing day of Coscia's life. He had never been arrested before, much less for supposedly threatening to kill someone and he had never before had an attorney represent him in

[3] The cases cited by Debtor in support of the Sanction Motion speak exclusively to matters relating to Rule 2014 of the Federal Rules of Bankruptcy Procedure and section 327 of the Bankruptcy Code. As earlier set forth, not much has been written on the duty to disclose under Rule 2019; however, what appears to be clear in what little has been written, is that Rule 2019 refers primarily to "ad hoc committees." See, e.g., . *In re Washington Mut., Inc.*, *supra*. The intent behind Rule 2014 and section 327 are significantly different from the intent behind Rule 2019. Professionals employed in the context of a chapter 11 case must be disinterested and are to be paid from estate funds. Rule 2019 deals with the identity of those at the negotiating table. If creditors are acting as an "ad hoc committee," the debtor and other creditors should have knowledge of such a relationship. The parties in this case, and this Court, have all long known of the information that would be disclosed in a Rule 2019 Statement.

[4] Coscia submitted an affidavit to this Court dated September 13, 2016 [Dkt. No. 309] expressly stating that NYFD previously advanced payment for his legal fees. "As noted time and time again, I have never hidden the fact that New York Fuel Distributors advanced payment for legal and expert witness fees in the criminal trial against me."

[5] Indeed, the Sanction Motion is devoid of any evidence. All that is submitted in support of the Sanction Motion is an affirmation of Anne Penachio, Esq., Debtor's counsel. Ms. Penachio's affidavit is insufficient to carry the burden Debtor has in presenting the Sanction Motion. As such, the Sanction Motion should be denied, with prejudice.

a criminal proceeding.

27. Coscia recalls his conversation with Jimmy Weil ("Weil") at or about the time of his arrest. He recalls telling Weil, who, at the time had, and who continues to hold an interest in NYFD, that, in his opinion, he could sue NYFD for false arrest etc., but that such was not his focus as it was the Debtor, not NYFD that looked to harm Coscia.

28. After some discussion, Weil asked Coscia whether he would agree not to sue NYFD if NYFD would front Coscia's legal fees.

29. At that time, and during that conversation, Coscia told Weil that in exchange for NYFD's fronting his legal fees, he would not sue NYFD. Coscia acknowledges this in his February Declaration.

30. What is not set forth in the February Declaration is a subsequent conversation Coscia had with Weil in late September or early October 2011. In that conversation, some months after Coscia's arrest in June of 2011, and following the passage of time by which he could rationally reflect on his arrest and subsequent events, Coscia and Weil had another conversation.

31. In that conversation, Coscia told Weil there was no reason he shouldn't be able to sue NYFD, its investors, the Town of Harrison, or anyone else and that he didn't view himself as being bound by any agreement not to sue. Coscia told Weil that he would acknowledge, in writing, that he owed NYFD approximately $100,000 and that he would "repay this loan to Mr. Weil/New York Fuel Distributors." Coscia signed such a writing on October 5, 2011, a copy of which was marked as Plaintiff's Exhibit 48 in the state court trial on May 8, 2014 and filed with this Court as Dkt. 234-3 on April 15, 2016, and also told Weill that he no longer viewed himself as having an understanding that would limit his ability to sue anyone he felt, in his interests, he could sue.[6].

32. Weil agreed. Indeed, Weil told Coscia that he didn't even remember the existence of an

[6] To Coscia, Weil and NYFD were one in the same. Coscia had been told on multiple occasions that Weil was majority owner of NYFD and that the Debtor owned but 8.627% of NYFD.

understanding not to sue NYFD in the first place.

33. That said, even had Coscia agreed to sue only the individuals involved in the attack against him (and not NYFD, its investors, the Town of Harrison etc.), had Coscia simply been looking to "get the money" as John Morgan, Esq. ("Morgan") has so inflammatorily asserted before this Court, there would be nothing improper about such an arrangement. As set forth in Coscia's declaration submitted simultaneously herewith, although such an "informal understanding" was discussed between Coscia and Weil on or about June 14, 2011, whatever "informal understanding" Coscia had spoken of with Weil, was no longer Coscia's – or Weil's – understanding in or about late September or early October 2011 – or at any time thereafter.

34. The February Declaration was incomplete. It was truthful in what it said – but it was not the complete story. In Coscia's mind, the February Declaration was made solely to disprove the notion put forward by Morgan that Coscia was a money grabber. Coscia's failure to present the complete story in the February Declaration will be addressed more specifically in Coscia's declaration being submitted simultaneously herewith.

35. In sum and substance, Coscia submitted the February Declaration out of anger and frustration; anger and frustration that had been building up over the past, almost six years, during which time Coscia has been forced to re-live the nightmare that resulted from the Debtor (and Orser's) phony accusations, along with a myriad of other indignities that are spelled out in Coscia's declaration.

36. That anger and frustration simply exploded following the February 7th hearing when Morgan continuously asserted the notion that Coscia was a money grabber.

37. Coscia felt the urge to speak out and show that had he simply "wanted the money" he would have sued NYFD, its investors, the Town of Harrison, etc., but that he had not – indeed, that

immediately following his arrest, he nonetheless restrained himself from suing anyone other than the Debtor and Orser.

38. In Coscia's mind, the February Declaration was intended solely to disprove the notion put forth by Morgan that Coscia was a money grabber.

39. In Coscia's mind, he made his point by showing – "look, my interest is not the money – or I could have sued the whole world – it's righting the wrongs that the Debtor and Orser have imposed upon me and upon my life for the past, almost six years!"

40. Unfortunately, rather than simply disproving that he was a money grabber, in failing to present to totality of the story of Coscia's conversations with Weil, Coscia has now invited the continuing acrimony that is the Sanction Motion.

41. The February Declaration shouldn't cause legal harm to Coscia, yet it does give rise to the harm of providing his adversaries with an opportunity to "make some noise" and shift the focus from what should be the Debtor's conduct and the conduct of this case and the wastefulness that is the Debtor's chapter 11 case, which should be paying creditors 100% of their allowed claims under any circumstances.

42. This is most unfortunate – and sadly, it was unnecessary. Hopefully the acrimony that's resulted from the February Declaration has been addressed by Coscia in his declaration. Some will continue to look to make "noise," yet, regardless, the February Declaration changes none of the underlying facts of the Debtor's case; it doesn't rise to the level of sanctionable conduct; and it doesn't impact the allowability or bona fides of Coscia's Claim.

## THE RELIEF SOUGHT
## DISALLOWANCE OF COSCIA'S CLAIM

43. The Sanction Motion seeks assorted relief. In the first instance, it looks to disallow Coscia's Claim.

44. As earlier set forth, a proof of claim filed in accordance with Rule 3001 of the Federal Rules of Bankruptcy Procedure, constitutes "prima facie evidence of the validity and amount of the claim."

45. Coscia's Claim, which is filed in accordance with Rule 3001, attaches a copy of the Judgment entered in the amount of $4,785,000.00 in the Supreme Court, Westchester County, on June 13, 2014.

46. Interest on the Judgment in the amount of $436,549.32 accrued between the Judgment date of entry and the filing of Debtor's bankruptcy case.

47. The Claim is filed in the amount of $5,221,549.32. In that Debtor's estate is solvent, Coscia's claim is entitled to be paid 100%, with interest, which runs, at 9%,, or approximately $35,000.00 monthly. Thus, to date, Coscia's Claim exceeds $6,000,000.00.

48. Other than that Debtor's counsel asserts an "undisclosed existence of a covenant not to sue," Debtor has failed to meet his burden and sets forth no facts contesting the Claim.

49. "Courts in the Second Circuit apply a burden shifting framework for claims objections. *See In re St. Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr.S.D.N.Y.1997), *aff'd*, 221 B.R. 692 (S.D.N.Y.1998), *aff'd*, 173 F.3d 846 (2d Cir.1999). A properly filed proof of claim constitutes *prima facie* evidence of the claim's amount and validity. *See* Fed. R. Bankr.P. 3001(f). When a valid proof of claim is properly filed, the party in interest objecting to the claim carries the burden of putting forth evidence sufficient to refute the validity of the claim. *See St. Johnsbury Trucking*, 206 B.R. at 323. After the objector does so, the burden shifts to the claimant to establish the validity and amount of its claim by a preponderance of the evidence. *See In re Porter*, 374 B.R. 471, 480 (Bankr.D.Conn.2007)." In re Metex Mfg. Corp., 510 B.R. 735, 740 (Bankr. S.D.N.Y. 2014).

50. Debtor has failed to meet that burden.

51. In the first instance, Debtor's objection rests solely on the hearsay declaration of Debtor's counsel. There is no affidavit of a fact witness.

52. Secondly, no factual argument is made that the Judgment, following a trial by jury, was improperly rendered. Unless and until the Judgment is modified, if it is, by the state court, the

validity of Coscia's Claim and the conduct of the state court trial are beyond the scope of this Court's jurisdiction under the Rooker Feldman Doctrine[7].

53. In lieu of a factual argument, Debtor's counsel posits a theory of "undisclosed existence of a covenant not to sue" by reason of which, counsel concludes that this Court should disallow the Claim[8].

PRECLUDING COSCIA FROM VOTING ON A PLAN

54. Rule 3007 of the Federal Rules of Bankruptcy Procedure provides, inter alia:

(b) DEMAND FOR RELIEF REQUIRING AN ADVERSARY PROCEEDING. A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.

55. Rule 7001 of the Federal Rules of Bankruptcy Procedure provides, inter alia, that a proceeding to obtain equitable relief is to be commenced by an adversary proceeding and is governed by the rules of Part VII of the Federal Rules of Bankruptcy Procedure.

"An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

[7] *In re Castaldo,* 313 Fed. App. 351, 2008 WL 4222520 at *1 (2d Cir. September 11, 2008) (the Rooker Feldman Doctrine bars direct and collateral attacks of final state court judgments); *Dockery v. Cullen & Dykman,* 90 F. Supp. 2d 233, (E.D.N.Y. 2000) (plaintiff's claim that foreclosure judgment was obtained by fraud did not remove the claim from the applicability of the Rooker Feldman Doctrine; holding that even if judgment was wrongly procured its preclusive effect is conclusive until reversed or modified on appeal to the appropriate appellate court). Thus, the Debtor's argument is wholly without merit.

[8] Debtor has moved for a Rule 2004 examination and document production request of Coscia [Dkt. No. 465] that Coscia has opposed [Dkt. No. 516] on the grounds and for the reasons set forth in the objection, including that a Rule 2004 examination is not countenanced by the courts in the face of a pending contested matter, such as is the Sanction Motion. Debtor has also moved for the expanded engagement of Kenneth M. Stenger, Esq., presumably so that the Debtor may seek to have Mr. Stenger look to examine Coscia in the context of what would appear to be the contemplation of the Debtor's moving the state court pursuant to CPLR Rule 5015 for relief from the Judgment. Without taking issue with the bona fides of the Debtor's anticipated actions (this Sanction Motion is not the proper forum in which to join issue – indeed, issue has not even yet been taken with regard to a CPLR Rule 5015 motion), unless and until the state court modifies the Judgment, either by appeal or other means as might be contemplated by the Debtor, the Judgment must be given preclusive effect by this Court, and as such, allowed.

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief."

56. That aspect of the Sanction Motion that seeks to preclude Coscia from voting on a plan seeks equitable relief against Coscia. Not only can that relief not be sought by motion, also, in that the Debtor has moved to "disallow Coscia's Claim," even assuming, arguendo, that such relief could be sought by motion, it cannot be joined in the Sanction Motion which seeks the disallowance of Coscia's Claim. Rule 3007(b) of the Federal Rules of Bankruptcy Procedure prohibits that.

THE REMOVAL OF COSCIA FROM THE COMMITTEE

57. That aspect of the Sanction Motion that seeks to remove Coscia from the Committee seeks equitable relief against Coscia. As earlier set forth, and in citing to Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure, not only can that relief not be sought by motion, also, in that the Debtor has moved to "disallow Coscia's Claim," even assuming, arguendo, that such relief could be sought by motion, it cannot be joined in the Sanction Motion which seeks the disallowance of Coscia's Claim.

58. Additionally, Coscia joins the limited objection of the Office of the United States Trustee to the Sanction Motion [Dkt. No. 543]. As set forth by the Office of the United States Trustee, nothing in the section 1102(a) of the Bankruptcy Code confers on the court the power to remove a specific creditor from a committee.

THE IMPOSITION OF COSTS AND OTHER SANCTIONS AGAINST COSCIA

59. That aspect of the Sanction Motion that seeks to impose costs and other sanctions against Coscia also appears to seek equitable relief against Coscia. As earlier set forth, and in citing to Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure, not only can that relief not be sought by motion, in that the Debtor has moved to "disallow Coscia's Claim," even assuming,

arguendo, that such relief could be sought by motion, it cannot be joined in the Sanction Motion which seeks the disallowance of Coscia's Claim.

DISCOVERY

60. While Coscia respectfully submits that the Sanction Motion (including the Claim objection) must be denied in its entirety, with prejudice, for all of the reasons above set forth, should the Court determine otherwise and direct that an aspect of the Sanction Motion should proceed, Coscia will require discovery as he is entitled to by the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Coscia respectfully prays that the Sanction Motion be denied in its entirety; that the objection to Coscia's Claim be denied, with prejudice; together with such other and further relief as to the Court seems just and proper.

Dated: Scarsdale, New York
April 21, 2017

Marc Stuart Goldberg, LLC
Attorneys for Brent Coscia
By: /s/ Marc Stuart Goldberg
670 White Plains Road, Suite 121
Scarsdale, New York 10583
(914) 725-8200
E-mail: mgoldberg@msglegal.com