PENACHIO MALARA LLP	Hearing Date: April 25, 2017 at 10:00am
Counsel for the Debtor
235 Main Street
White Plains, New York 10601
(914) 946-2889
By:  Anne Penachio (A Member of the Firm)
     Joseph P. Garland (Of Counsel to the Firm)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re

      SAMMY ELJAMAL,

                                    Debtor.
------------------------------------------------------------------X

Chapter 11

Case No. 15-22872-RDD

## THE DEBTOR'S REPLY TO THE OPPOSITION OF BRENT COSCIA TO HIS MOTION FOR SANCTIONS UNDER BANKRUPTCY RULE 2019

**SAMMY ELJAMAL,** the debtor herein (the "Debtor"), by and through his counsel, **PENACHIO MALARA LLP,** submits this reply to the opposition of **BRENT COSCIA** (the "Coscia")) (ECF No. 553), to his motion for sanctions under Bankruptcy Rule 2019 (the "2019 Motion," (ECF No. 463)), and for such other and further relief as may be appropriate:

### I. Introduction

1. It bears remembering that the strange trip on which we are currently embarked began when the Court said,

> I have known for some time that [Coscia's] fees were paid in some way, shape, or form. But frankly, the payments that are at least referred to in the responsive papers are remarkably high to me I think for a committee that's well represented by experienced counsel. And I think it highlights why the disclosure is warranted. If some third party, not even an outside third party, but an entity in which the debtor owns an interest is paying the fees. That was a shocker to me . A true shocker . Did you know about that, Mr. Haddad? That the entity that was the subject of the litigation over the ownership interest was paying committee members['] fees?

(2019 Exh. NN, at 19:3-14 (Drain, J.).)[1]

2. Thus, as to Coscia, considerable effort went into tracing his own sworn-statements about who was paying, or advancing, his legal fees. It was a question to which the Court directed the parties, and it mattered to the Court whether it was Weil or "an entity in which the debtor owns an interest is paying the fees." Thus the Debtor identified the five times that Coscia said in his civil-trial testimony that "Weil" had advanced the fees. On direct and on cross. Including saying that it was not "[t]he people that own the company, Leon Silverman and Jimmy Weil" but only Weil. (Civ. Tr., at 285:2-8 (2019 Exh. G, at 9).) Never did he say it was NYFD or another of the NY Companies.

3. The Debtor recognizes that Coscia may not be responsible for the confusion created by the inconsistent statements of his counsel in April 2016 or the endorsement of those inconsistencies by the Chairman of the Official Committee of Unsecured Creditors (the "Committee"). Similarly, the undersigned does not believe the Debtor should be held responsible for (hypothetical) missteps of his counsel including any made at the civil trial.

4. The Debtor agrees with Coscia's new counsel that it may have been appropriate under the circumstances for Coscia to rely on the Oxman Firm and Otterbourg. (¶¶ 13-14, Coscia 2019 Obj.)

5. Still, Coscia signed his February 13 Declaration in which he says that "it was clear from the beginning that my fees were being advanced by NYFD, not Jimmy personally." (¶ 5, Coscia 2/13 Decl. (2019 Exh. A).) And, as Coscia points out, he also said it was NYFD in a

---

[1] References to "2019 Exh." are to exhibits attached to the March 3, 2017 Affirmation of Anne Penachio in support of the Debtor's Motion for Relief under Bankruptcy Rule 2019 and elsewhere, (ECF No. 463.)

September 13, 2016 Declaration. (ECF No. 309, *cited at* Coscia 2019 Obj., at 6 n.4 (attached to Cmte 2019 Obj. as ECF No. 545-2).)

6. Coscia's 2019 Objection says, "[t]he Sanction Motion focuses on two issues of attack on Coscia. The fee arrangement in which NYFD, an entity in which the Debtor has an interest, agreed to advance the legal fees and expenses for Coscia, and the Debtor's allegation that in 2011, Coscia entered into a 'covenant not to sue' NYFD," and that "[n]either of the 'issues' asserted by the Debtor is supported by evidence." (¶¶ 23-24, Coscia 2019 Obj.)

7. As to the former, the assertion made by the Debtor is that Coscia perjured himself because he gave inconsistent statements, under oath, concerning who was advancing his fees and had advanced his fees in the criminal matter and why. And the "evidence" presented was the statements themselves.

8. Coscia makes no effort to justify his inconsistent statements even now, beyond simply saying:

> I never made a distinction between Weil and NYFD. That may have led to confusion in various documents and pleadings which refer to Weil or NYFD or both. My concern was that I would have the ability to defend myself against the heinous attacks intended to ruin my life. Weil/NYFD stepped up to loan me the necessary funds to mount this defense and then to continue Oxman's representation of me during the bankruptcy case. I promised Weil/NYFD to repay the advances and I will do so. In my mind Weil and NYFD were interchangeable and I used them interchangeably when discussing this matter with counsel.

(¶ 34, Coscia April Decl.)

9. He drops a footnote: "To me, Weil and NYFD were one in the same. I had been told on multiple occasions" – he does not say by whom – "that Weil was majority owner of NYFD and that the Debtor owned but 8.627% of NYFD." (¶ 29, n.1, Coscia April Decl.)

10. If true, this of course gets Coscia from the frying pan into the fire. He is the Chair of the Committee yet does not have an understanding of something fundamental with respect to the

3

Debtor and his relationship with his creditors. Why would he concern himself with the claims that the Debtor makes about how Weil has abused his position as a member and manager of NYFD (and presumably the other NY Companies) when in his mind there is no "distinction" between them?

11. Perhaps more troubling is that none of the professionals seem the least concerned about this.

12. More generally, Coscia's opposition contains statements that are so contrary to the well documented record and so in defiance to common sense that they can only reasonably construed as contrived. Notwithstanding his vehement protestation that he "he is not a liar," Coscia has changed his story so many times that he cannot keep it straight.

13. Throughout this case (and before it began), Coscia, now the Chair of the Committee, has concealed and misrepresented facts to suit his ends and ultimately to further the goals of his former boss and benefactor, James Weil ("Weil"), who is also one of the Debtor's litigation adversaries.

14. Coscia's misrepresentations primarily relate to who has paid his legal fees and why.

15. In 2014, at the trial in the State Court, Coscia testified that Weil, his boss, was paying his fees because Weil knew that he was "innocent." (Civil Tr., at 360:11-18, (2019 Exh. G, at 12)). Coscia's motive then was to portray himself as an "innocent grandfather and a valued employee." His goal in concealing the no-sue agreement was to maximize damages and to avoid any reduction in an award under NY's General Obligations Law and rules concerning reduction of damages.

16. After the Debtor filed for bankruptcy relief in July 2015, Coscia did not initially make any disclosures regarding the payment of his fees by third parties despite the fact that his Counsel, the Oxman Law Group ("Oxman"), represented multiple parties in the case, including Committee

4

members Weil and Gas Land Petroleum, Inc. ("Gas Land"). Perhaps Coscia was silent because any perceived conflict could have resulted in his ineligibility to serve on the Committee.

17. In April 2016, when the Debtor sought information regarding the relationship among Coscia, Oxman, Weil and NY Fuel Distributors LLC and related entities (the "NY Companies"), Coscia (through counsel) objected to the application explaining that it was well known that "Weil" was paying his legal fees incurred by Oxman. (2019 Exh. T, at 22 (Coscia 2004 Obj.).)[2]

18. Several weeks later, when Weil's position on the Committee was under review (a creditor had asked the UST to consider reconstituting the Committee), Coscia claimed in correspondence to the UST in one place that Weil was advancing the fees and elsewhere that it was NYFD. (2019 Exh. V, (Apr. 28, 2016 Oxman Letter).) All of this is detailed in the Debtor's 2019 Motion.

19. In September 2016, Coscia submitted a declaration in connection with the UST's motion for the appointment of an examiner. He said, "As noted time and time again, I have never hidden the fact that New York Fuel Distributors advanced payment for legal and expert witness fees in the criminal trial against me." (ECF No. 309.) (This was not referred to in the 2019 Motion. It does not change that motion because it was filed after April 28, 2016, when Coscia's story as to who had advanced his fees had changed from "Weil" to "NYFD.")

20. Then, in February 2017, when the propriety of post-petition payments of Oxman's fees by the NY Companies was questioned by the Debtor and the UST, and the Court expressed its

---

[2] Twice in his April Declaration and twice in his objection Coscia says that the Debtor has known "since no later than April 2014" that NYFD advanced Coscia's legal fees in the criminal matter, (¶ 21, Coscia 2014 Obj.; ¶ 14, Coscia Apr. Decl.), relying on the Oxman 2019 Statement, (ECF No. 453), for this statement. As noted in the Penachio 2019 Motion Affirmation, though, the "April 2014" reference in the Oxman 2019 Statement appeared to be a typo since it is "untethered to any factual presentation." (¶ 75, n.4, Penachio 3/3 Aff., (ECF No. 463).) When informally asked the source of the "April 2014" assertion, Coscia's counsel declined to elaborate.

5

concerns on the subject as noted above, (¶ 1), Coscia justified the specific payments discovered by explaining that the NY Companies were paying his fees because he had agreed not to sue them. Coscia represented that his legal fees were being paid by the NY Companies pursuant to a "Covenant Not to Sue" negotiated by he and Weil.

21. Coscia's contention that he "volunteered" this information to defend himself from accusations by attorney John Morgan that he is a "money grubber" is preposterous. Coscia was not reacting to anything Mr. Morgan said. Rather, he submitted his declaration to address concerns raised by the UST and the Debtor regarding the propriety of the payment of his legal fees by the NY Companies to Oxman. It is noteworthy that at the time not only was the UST reviewing the propriety of the payment of Coscia's legal fees, but the Debtor had filed an application to remove Weil as manager of the NY Companies on the grounds, *inter alia*, that he was guilty of waste and mismanagement by using the assets of the NY Companies to pay for services that were not rendered to the company. Coscia wanted the Court and the UST to know that the payments by the NY Companies were valid as supported by consideration because they were made in accordance with the "Covenant Not to Sue."  Presumably Coscia revealed this fact to protect Weil, the NY Companies and its counsel Harfenist Kraut Perlstein, who had approved the payments and Oxman which had received them.

22. The "Covenant Not to Sue" formed one basis for the Debtor's motion for sanctions under Bankruptcy Rule 2019 (the "2019 Motion"). In April 2017, when Coscia realized that the existence of the "Covenant Not to Sue" imperiled his claim and judgment, he insisted in his opposition to the 2019 Motion that he unilaterally revoked the agreement. Coscia's "new" assertion that he withdrew from the "Covenant Not to Sue" is contradicted by the incontrovertible evidence: namely, (i) the continued payment of Oxman's fees post-petition; (ii) the statements of

6

the NY Companies through its counsel in a letter to the UST dated February 17, 2017; and (iii) his prior statements under oath.

23. In a nonsensical attempt to blame his lies on the Debtor, the undersigned counsel (who "goaded" him) and Mr. Morgan (who "lied" about him), Coscia insists that he did not reveal the "full story" to the Court or his counsel in February.

24. Coscia wants to retain the responsibilities of the Chair of the Committee. Yet without any subjective analysis, without having to assess who is and who is not telling the truth, or who is and who is not abusing whom, we know from recent statements made by him:

- Coscia makes no distinction between Weil and the NY Companies.
- Coscia has withheld information from his own counsel.
- Coscia signed a declaration that he blames his not-fully-informed counsel for drafting even though it was inaccurate in a material respect.
- Coscia signed that declaration although it was directly contrary to his own testimony in a civil trial.

25. We noted earlier that paragraph 24 of Coscia's 2019 Objection says that "[n]either of the 'issues' asserted by the Debtor is supported by evidence." Coscia's own words, though, are all the evidence needed.

26. A chart setting forth a time-line of Coscia's "stories" is annexed hereto as <u>Exhibit A</u>.

## II. The Story on the Criminal Case

27. While Coscia provides the Court with some background regarding the circumstances surrounding the criminal charges which led to his civil judgment against the Debtor, he omits certain important facts. The Debtor does not wish to minimize what happened to Coscia back in

7

2011. Given Coscia's and the Committee's near-constant repetition of those events, however, it is worth spending a few moments detailing those events.

28. Relying entirely on Coscia's own trial-testimony (supplemented by a few questions directed at the arresting Harrison PD Detective), on June 14, 2011, Detective Louis Arlotta of the Harrison Police Department "showed up at" the NYFD office. He told Coscia that he was investigating a complaint that Coscia had been overheard threatening the Debtor's life. Detective Arlotta "said he wanted to talk to me about it, and I said to him that I'd be more than happy to talk to him. As a matter of fact, I made a suggestion to him that we all go down to the police station together and take [a] lie detector test right then and there; myself, Mr. El Jamal, and Mr. Orser, and we can clear the matter up right then and there." (Civil Tr., at 292:2-7.) (Additional pages from the Civil Trial Transcript are attached as Exhibit B. Coscia's description of events before his criminal trial is set forth from pages 291 through 299 of the Civil-Trial Transcript.)

29. After the Debtor and Mr. Orser, according to Coscia, declined the offer of taking a lie-detector test, "at that point, then I said you know, I'll be happy to come down and see you. If I'm being accused of a crime, I'm going to want to come with an attorney." (Civil Tr., at 292:14-17.) Coscia then arranged to drive to the police station that afternoon, where he met his attorney, Mr. Oxman. He gave a statement, was arrested, was fingerprinted, was given an appearance ticket, and was released on his own recognizance. (Civil Tr., at 131:9-12.) (Detective Arlotta testified that Coscia was at the police station for "tops an hour. We tried to get him out of there" and that he was never placed in handcuffs. (Civil Tr., at 729:18-25 (Arlotta).))

30. Coscia's February 13, 2017 Declaration *suggests* that he was arrested, spoke to Weil and said, in essence, "Jimmy, I can sue NYFD and its investors for this"; and then retained Oxman, (Coscia 2/13 Decl., at ¶¶ 2-3, (2019 Exh. A).) According to his civil-trial testimony, the timing

8

was (i) Coscia agreed to meet with detectives at the Harrison police station; (ii) he went to the station with Oxman, (Civil Tr., at 292:22-25 ("went down there with [his] attorney, Mr. Oxman")) (see 2019 Exh. E, at 10 (6/14/11 entry of 3.5 hours for Marc Oxman)), and (iii) he was arrested, (Civil Tr., at 132:8-16 (arrested at police station after giving a statement)). Thus Coscia must have spoken to Weil between when Detective Arlotta showed up at NYFD and when he drove to the police station, i.e., before he was arrested.

31. Coscia was charged with "aggravated harassment," a misdemeanor. (Civil Tr., at 127:25 to 128:3.)

32. With respect to Coscia's statements upon the effect that the Debtor's alleged harassment has had on him, we do mean to minimize it or suggest that one should be forced to accept such things. But it should be kept in perspective.

### III. The Story on Coscia's Relationship with Weil, Silverman and the NY Companies

33. Coscia has not disclosed the "full story" regarding his relationship with Weil, the NY Companies and Leon Silverman ("Silverman"), an investor in the NY Companies and manager of companies that operate gasoline stations in Connecticut (the "CT Companies") (although he now says he views Weil and NYFD at least as one and the same). The financial records of the NY Companies reveal that Coscia has received what could be considered substantial economic benefits, which may include a salary, car, insurance, organizational fees, professional fees and access to an American Expense card. Records also reveal that Coscia may have received substantial benefits from Silverman and the CT Companies. The Debtor is engaged in active litigation with the NY Companies, Weil, Silverman and the CT Companies, the very entities that Coscia has and may continue to receive benefits from.

9

34. The records of the NY Companies suggest that Coscia may owe it and Weil well more than the $100,000.00 that he has alleged to be due.

35. It is submitted that Coscia's conduct in this case, coupled with the financial records of the NY Companies, indicates that he is indeed beholden to Weil, Silverman and/or the NY Companies. The following examples support the Debtor's position: (i) As Committee Chair, he has refused to pursue the NY Companies in this case for sums owed to the Debtor and has blindly accepted claims filed by the NY Companies as valid; (ii) On December 13, 2016, Coscia unilaterally revoked a settlement offer made by the Debtor (presumably after speaking with Weil); and (iii) Coscia has failed to cooperate with the Debtor's reasonable requests for information and documents.

36. Under the factual scenario presented, it is likely that Coscia declined to sue the NY Companies and Harrison Police Department because Weil (after conferring with Coscia for "some time") convinced him only to pursue the Debtor so that he – Weil – could wrest the Debtor's interests in the NY Companies from him for a fraction of their value. It would make sense that Weil made financial promises to Coscia other than simply agreeing to advance his legal fees. Who would agree to forego suing a police department and a company with deep pockets (and presumably insurance coverage) to pursue an individual? Who would keep such an arrangement from his attorney? Perhaps someone whose attorney (i.e., Oxman) also represented the companies (i.e., the NY Companies) and feared that he would be acting unethically by undermining the interests of one of the members of the very entity that he represented.

37. Coscia's attempt to justify his conduct by explaining that he had been "told on multiple occasions that Weil was the majority owner" of the NY Companies raises even more questions. Who made these representations? Was it Oxman, who also was counsel to Weil and argued that

the Debtor only held an 8.627% interest in the NY Companies pre-petition when he advocated on Coscia's behalf for the appointment of a receiver? Was is Silverman? When were the "multiple" representations made? What investigation did Coscia, as Committee Chair, undertake to verify whether what he was "told on multiple occasions" was true? Why did the Committee decline the Debtor's invitation to meet with Phil Halpern, special counsel in the action against Wei and the NY Companies?   Given what has transpired in this case, it is more than likely that Coscia did nothing in this regard.

38. In sum, even though Coscia insists he has now set forth he "full story," he has not.

### IV. Coscia Should be Removed From the Committee

39. The Debtor does not necessarily argue that Coscia was himself required to file a 2019 statement. His statement about who must file one, (¶¶ 11-12, Coscia 2019 Obj.),[3] though is misplaced since it refers to the pre-2011 Rule. Indeed, the Committee Notes on the 2011 Amendment say:

> Subdivision (b)(1) specifies who is covered by the rule's disclosure requirements. In addition to an entity, group, or committee that represents more than one creditor or equity security holder, the amendment extends the rule's coverage to groups or committees that consist of more than one creditor or equity security holder. The rule no longer excludes official committees, except as specifically indicated. The rule applies to a group of creditors or equity security holders that act in concert to advance common interests (except when the group consists exclusively of affiliates or insiders of one another), even if the group does not call itself a committee.

2011 Adv. Cmte. Notes Rule 2019.

---

[3] What purports in ¶ 11 to be a quotation from *In re Washington Mutual, Inc.* is from Judge Gropper in *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (Gropper, J.), with an internal citation to In re CF Holding Corp., 145 B.R. 124, 126 (Bankr. Conn. 1992) (Sear, J.).

40. The Debtor contends that at the least Coscia committed a fraud on the Court. (See Debtor Memo of Law in Support of 2019, etc. Motion, at 10-15, (ECF No. 464).)

41. If there was any doubt regarding whether Coscia should remain on the Committee, that uncertainty should be eradicated by Coscia's most recent submission, a last ditch, transparent effort to rehabilitate himself from the tangled web that he created.

42. Coscia obviously changed his story when it suited him to preserve his status as Committee Chair (most likely to benefit Weil), use that status to propose a plan that called for the seizure of the Debtor's 50% interests in the NY Companies for a fraction of their value, and hinder the administration of the Debtor's case. The timeline annexed as Exhibit A elucidates this.

43. It is submitted that the fact that Coscia considers Weil and the NY Companies "one in the same" further supports his removal. How can he possibly lead a Committee when he equates Weil with the NY Companies rather than the Debtor who holds the largest single interest at 50%?

44. Moreover, Coscia is not at all contrite. In fact, unlike Marc Oxman, Coscia never admits any wrongdoing. He is only sorry that he has put his claim and status in the case in jeopardy. Notably, in a shocking display of self-righteousness, Coscia blames his transgressions on others and regrets only that he let the undersigned and Mr. Morgan "get the better of him." Coscia does not say "Sorry, I made a mistake – It won't happen again." Instead, he basically says, "Don't blame me; I was tricked into making the misrepresentations by Penachio and Morgan." Afterall, as Coscia points out, he "never lies."

45. Coscia's attempts to curry the sympathy of the Court by making wholly unsupported claims against the Debtor raises even more suspicions regarding his ability to serve the interests of creditors.

46.  It is submitted that, based upon his own declarations, it is not acceptable for Coscia to continue to participate in this case. He has not revealed the "full story," he failed to set forth a plausible reason for doing do, and attributes his wrongdoings to the actions of others.

47.  Despite his insistence that he "never lies," it is clear that Coscia committed fraud on the Court, the Debtor and the creditors of his Estate. The only rational conclusion that can be reached from the events that transpired is that Coscia intentionally engaged conduct designed to harm the Debtor and his Estate and other creditors and to benefit himself and Weil – and then – when Coscia discovered that his claim was placed in jeopardy, Coscia changed his story again to protect himself.

48.  As a consequence of his actions, Coscia and his attorney, Oxman, should be precluded from further participation in the case. It is submitted that this relief is permitted under Bankruptcy Rule 2019 or 1103 or Section 105 of the Code. Nevertheless, to the extent that the Court accepts Coscia's position that a separate adversary proceeding is required, the Debtor respectfully requests leave to make such a motion.

49.  In the face of Coscia's conduct, one could only presume that the UST will take the appropriate action. One can only hope that the Committee professionals would take umbrage with Coscia's conduct.

## V. <u>CONCLUSION</u>

50. The Debtor respectfully requests that the Court overrule the opposition interposed to the 2019 Motion and grant such other and further relief as is just and proper.

Dated: White Plains, New York
April 22, 2017

                                     PENACHIO MALARA LLP

                                     By: <u>/s/ Anne Penachio</u>
                                       Anne Penachio
                                       Joseph P. Garland, of counsel to the Firm
                                       Counsel to Debtor
                                       235 Main Street
                                       White Plains, NY 10601
                                       (914) 946-2889