**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
|   |   |
|---|---|
| In re: | : Chapter 11 |
|   | : |
|      SAMMY ELJAMAL, | : Case No.: 15-22872 (RDD) |
|   | : |
|           Debtor. | : |
|   | : |
-------------------------------------------------------x


### INDIVIDUAL CHAPTER 11 PLAN FOR THE BANKRUPTCY ESTATE
### OF SAMMY ELJAMAL AS PROPOSED BY THE CHAPTER 11 TRUSTEE



**Albert Togut**
**Scott E. Ratner**
**Steven S. Flores**
**TOGUT, SEGAL & SEGAL LLP**
**One Penn Plaza, Suite 3335**
**New York, New York 10119**
**(212) 594-5000**

*Counsel for Stephen S. Gray,*
*not individually but solely in*
*his capacity as Chapter 11 Trustee*


**Dated: April 30, 2018**

# TABLE OF CONTENTS

**ARTICLE I**
Definitions and Construction of Terms ................................................................................1

    1.1 Administrative Expense Claim(s) ............................................................................1

    1.2 Administrative Expense Claim Reserve ..................................................................1

    1.3 Allowed ...................................................................................................................1

    1.4 Amsterdam ..............................................................................................................2

    1.5 Assets ......................................................................................................................2

    1.6 Available Cash .........................................................................................................2

    1.7 Avoidance Actions ..................................................................................................2

    1.8 Ballot ......................................................................................................................2

    1.9 Bankruptcy Code .....................................................................................................2

    1.10   Bankruptcy Court ...............................................................................................2

    1.11   Bankruptcy Rules ...............................................................................................2

    1.12   Bar Date ..............................................................................................................2

    1.13   Bar Date Order ...................................................................................................2

    1.14   Business Day .......................................................................................................3

    1.15   Case Professionals .............................................................................................3

    1.16   Cash ....................................................................................................................3

    1.17   Cause(s) of Action .............................................................................................3

    1.18   CDS ....................................................................................................................3

    1.19   CDSM .................................................................................................................3

    1.20   Chapter 11 Case ..................................................................................................3

    1.21   Claim ..................................................................................................................3

    1.22   Class ...................................................................................................................3

1.23     Committee ............................................................................................................3

1.24     Confirmation Date ...............................................................................................4

1.25     Confirmation Hearing .........................................................................................4

1.26     Confirmation Order .............................................................................................4

1.27     Coscia ..................................................................................................................4

1.28     Coscia Settlement Agreement .............................................................................4

1.29     Creditor ...............................................................................................................4

1.30     CT Actions ..........................................................................................................4

1.31     CT Claims ...........................................................................................................4

1.32     CT Companies .....................................................................................................4

1.33     CT Entities ..........................................................................................................4

1.34     CT Settlement .....................................................................................................4

1.35     CT Settlement Amount ........................................................................................4

1.36     Debtor .................................................................................................................4

1.37     Disclosure Statement ..........................................................................................4

1.38     Disclosure Statement Approval Order .................................................................5

1.39     Disputed ..............................................................................................................5

1.40     Disputed Claims Reserve ....................................................................................5

1.41     Distribution(s) .....................................................................................................5

1.42     Effective Date .....................................................................................................5

1.43     Entity ..................................................................................................................5

1.44     Estate ..................................................................................................................5

1.45     Exculpated Claim ...............................................................................................5

1.46     Exculpated Party .................................................................................................5

1.47     Executory Contract .............................................................................................5

1.48     Final Order ..........................................................................................................5

1.49   First CT Action ...................................................................................................6

1.50   General Unsecured Claim ....................................................................................6

1.51   Impaired ..............................................................................................................6

1.52   Insider .................................................................................................................6

1.53   JMM ....................................................................................................................6

1.54   Lien .....................................................................................................................6

1.55   Mediators ............................................................................................................6

1.56   Metro ...................................................................................................................6

1.57   NY Action ............................................................................................................6

1.58   NY Additional Litigations ...................................................................................6

1.59   NY Companies .....................................................................................................7

1.60   NY Entities ..........................................................................................................7

1.61   NY Settlement ......................................................................................................7

1.62   NY Settlement Amount ........................................................................................7

1.63   NY Settlement Payment Reduction Escrow .........................................................7

1.64   NYDS ...................................................................................................................7

1.65   NYDSM ................................................................................................................7

1.66   NYFD ...................................................................................................................7

1.67   NYFH ...................................................................................................................7

1.68   Other Priority Claim ............................................................................................7

1.69   Person ..................................................................................................................7

1.70   Petition Date ........................................................................................................7

1.71   Plan .....................................................................................................................7

1.72   Plan Administrator ...............................................................................................7

1.73   Plan Distribution Fund .........................................................................................8

1.74   Plan Supplement ..................................................................................................8

1.75    Priority Claim ....................................................................................8

1.76    Priority Tax Claim .............................................................................8

1.77    Pro Rata .............................................................................................8

1.78    Professional Fee Claim(s)....................................................................8

1.79    Professional Fee Claim Reserve .........................................................8

1.80    Released Party ....................................................................................8

1.81    Schedules............................................................................................8

1.82    Second CT Action ..............................................................................8

1.83    Secured Claim.....................................................................................8

1.84    Settlement Funds.................................................................................8

1.85    Silverman ...........................................................................................9

1.86    Third CT Action .................................................................................9

1.87    Trustee ...............................................................................................9

1.88    Trustee Account .................................................................................9

1.89    Unimpaired .........................................................................................9

1.90    United States Trustee..........................................................................9

1.91    United States Trustee Fees..................................................................9

1.92    Weil ....................................................................................................9

1.93    WFD ...................................................................................................9

1.94    WFD-CT..............................................................................................9

1.95    Wilton Motiva.....................................................................................9

1.96    Wells Fargo Escrow ...........................................................................9

1.97    Interpretation;  Application of Definitions and Rules Construction. .................9

ARTICLE II
Treatment of Administrative  Expense Claims and Priority Tax Claims ..........................10

2.1 Non-Classification.................................................................................10

2.2 Administrative Expense Claims. ................................................................................10

2.3 Priority Tax Claims. .....................................................................................................10

2.4 Professional Fee Claims. ............................................................................................11

ARTICLE III
Classification of Claims and Interests ..............................................................................11

ARTICLE IV
Treatment of Claims ..........................................................................................................11

4.1 Class I:  Secured Claims. ............................................................................................11

(a) Classification. ..........................................................................................................11

(b) Treatment. ...............................................................................................................11

(c) Voting. ......................................................................................................................12

4.2 Class II:  Other Priority Claims. ................................................................................12

(a) Classification. ..........................................................................................................12

(b) Treatment. ...............................................................................................................12

(c) Voting. ......................................................................................................................12

4.3 Class III:  General Unsecured Claims........................................................................12

(a) Classification. ..........................................................................................................12

(b) Treatment. ...............................................................................................................13

(c) Voting. ......................................................................................................................13

ARTICLE V Implementation of the Plan and the Plan Administrator .............................13

5.1 Plan Settlements as a Means of Implementing the Plan............................................13

(a) Plan Settlements. ....................................................................................................13

5.2 Plan Funding. .............................................................................................................14

5.3 Distributions on Account of Assets............................................................................14

5.4 Vesting of Assets .......................................................................................................14

5.5 Appointment of the Plan Administrator. ....................................................................14

5.6 Powers and Duties of the Plan Administrator............................................................15

5.7 Retention of Professionals..................................................................................................15

5.8 Liquidation of Remaining Assets. ................................................................................16

5.9 Post-Confirmation Date Fees and Expenses. .............................................................16

5.10 Payment of Quarterly Fees. ......................................................................................16

5.11 Effectuating Documents.............................................................................................16

5.12 Liability......................................................................................................................16

5.13 Direction to Parties. ..................................................................................................17

ARTICLE VI Provisions Governing Distributions and Voting on the Plan ......................17

6.1 Distributions. ..............................................................................................................17

6.2 Timing of Distributions...............................................................................................17

6.3 Address for Delivery of Distributions. .......................................................................17

6.4 Distributions under Twenty-Five Dollars. ..................................................................17

6.5 Time Bar to Cash Payments.........................................................................................17

6.6 Unclaimed Distributions at Closing of Bankruptcy Case. ..........................................18

6.7 Manner of Payments under the Plan. ..........................................................................18

6.8 Setoffs and Recoupment. .............................................................................................18

6.9 No Interest....................................................................................................................18

6.10 Voting of Claims.........................................................................................................18

6.11 Plan Amendment. .......................................................................................................19

ARTICLE VII Provisions For Resolving and Treating Disputed Claims...........................19

7.1 Disputed Claim Objection Deadline. ..........................................................................19

7.2 Disputed Claims Settlement.........................................................................................19

7.3 Distributions on Account of Disputed Claims. ...........................................................19

7.4 No Distribution Pending Allowance;  Subsequent Distribution. ...............................19

7.5 Excess Funds................................................................................................................19

7.6 Estimation. ..................................................................................................................20

7.7 Limitations on Funding of Disputed Claims Reserve. ...............................................20

7.8 Remedies Not Exclusive.................................................................................................20

ARTICLE VIII .....................................................................................................................20

8.1 Assumption or Rejection of Executory Contracts. ....................................................20

8.2 Approval of Assumption or Rejection of Executory Contracts.................................20

8.3 Bar Date for Filing Proofs of Claim Relating to Executory Contracts Rejected
Pursuant to the Plan. ...................................................................................................20

ARTICLE IX Effect of Confirmation....................................................................................21

9.1 Term of Bankruptcy Injunction or Stays....................................................................21

9.2 Releases by the Debtor and Related Parties. ..............................................................21

9.3 Releases by Holders of Claims.....................................................................................21

9.4 Injunctions.....................................................................................................................22

9.5 Exculpation. ..................................................................................................................22

9.6 Binding Effect. ..............................................................................................................23

9.7 Discharge........................................................................................................................23

ARTICLE X Conditions to Confirmation .............................................................................23

10.1 Conditions Precedent to Confirmation.....................................................................23

10.2 Conditions Precedent to Occurrence of Effective Date. .........................................24

ARTICLE XI Certain Post Confirmation Matters ...............................................................24

11.1 Closing of the Chapter 11 Case. .................................................................................24

11.2 Reservation and Preservation of Causes of Action. .................................................24

ARTICLE XII Retention of Jurisdiction................................................................................25

12.1 Jurisdiction of Bankruptcy Court. .............................................................................25

ARTICLE XIII Miscellaneous Provisions.............................................................................26

13.1 Exemption from Transfer Taxes.................................................................................26

13.2 Dissolution of Committee. ..........................................................................................26

13.3 Successors and Assigns. ...........................................................................................26

13.4 Entire Agreement. ....................................................................................................26

13.5 Amendment or Modification of the Plan....................................................................26

13.6 Severability. ............................................................................................................27

13.7 Revocation or Withdrawal of the Plan......................................................................27

13.8 Notices. ..................................................................................................................27

13.9 Governing Law........................................................................................................27

13.10 Withholding and Reporting Requirements................................................................27

13.11 Indemnification. .....................................................................................................28

13.12 Headings. ..............................................................................................................28

13.13 Schedules..............................................................................................................28

13.14 Filing of Additional Documents. .............................................................................28

13.15 Conflict. ................................................................................................................28

13.16 Time. ....................................................................................................................28

13.17 Effect of Withdrawal, Revocation, or Non-Consummation. ................................29

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Sammy Eljamal (the "Debtor"), hereby proposes the following Chapter 11 plan (the "Plan") pursuant to sections 1121(c) and 1123 of title 11 of the United States Code (the "Bankruptcy Code"). Reference is made to the Disclosure Statement filed with the Bankruptcy Court concurrently herewith for a discussion of certain transactions and other matters germane to the implementation of the Plan and the Debtor's Chapter 11 Case, as well as a summary discussion of the terms and conditions of the Plan. [All holders of Claims (as defined herein) who are entitled to vote on the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety and consult with an attorney before voting to accept or reject the Plan.]

**[NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.]**

## ARTICLE I
### Definitions and Construction of Terms

The following terms utilized in the Plan shall have the following definitions:

1.1     Administrative Expense Claim(s) means, except as otherwise set forth in this Plan, a Claim (or a portion of a Claim) for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's Estate, and all fees and charges assessed against the Debtor's Estate, as defined herein, pursuant to 28 U.S.C. § 1930. The term Administrative Expense Claim does not include Professional Fee Claims or Priority Claims, as defined herein and which are treated separately in this Plan.

1.2     Administrative Expense Claim Reserve  means any Cash held in a reserve to be established and maintained by the Plan Administrator in accordance with the terms and conditions  of this Plan.

1.3     Allowed means, with reference to any Claim (including any Administrative Expense Claim) that portion of a Claim:  (i) which has been allowed by a Final Order; (ii) which is allowed under the terms of this Plan;  or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely and otherwise properly filed on or before the Bar Date with the Bankruptcy Court, and with respect to Claims described in this clause (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof.  Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the Bankruptcy Code and applicable law.

1

1.4     <u>Amsterdam</u> means Amsterdam 181 Realty, LLC, a Delaware limited liability company.

1.5     <u>Assets</u> mean (a) all assets and properties of every kind, nature, character and description, whether real, personal, or mixed, whether tangible or intangible (including contract rights), wherever situated and by whomever possessed, including the goodwill related thereto, operated, owned, or leased by, or an behalf of, the Debtor that constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code, including, without limitation, Cash, any and all Claims, Causes of Action, or rights of the Debtor under federal, state or foreign law, letters of credit issued for or on behalf of the Debtor and the monies deposited to secure the performance of any contract or lease by the Debtor;  and (b) the proceeds, products, rents, and/or profits of any of the foregoing.

1.6     <u>Available Cash</u>  means unrestricted Cash on hand on the Effective Date;  the Settlement Funds, proceeds, if any, from any Causes of Action;  and the proceeds, if any, from the liquidation of any other Assets available.

1.7     <u>Avoidance Actions</u>  mean any action arising under chapter 5 of the Bankruptcy Code, including, sections 544, 545, 546, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such actions.

1.8     <u>Ballot</u> means the form distributed to each holder of a Claim against the Debtor that is entitled to vote to accept or reject the Plan on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.9     <u>Bankruptcy Code</u> means title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.*, as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to this Chapter 11 Case.

1.10    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Southern District of New York and any court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

1.11    <u>Bankruptcy Rules</u> mean (i) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court, as provided under section 2075 of title 28 of the United States Code, as such Rules may be amended from time to time, and (ii) any Local Rules of the Bankruptcy Court.

1.12    <u>Bar Date</u> means November 25, 2015, which was the date fixed in the Bar Date Order as the deadline to file a proof of Claim in the Chapter 11 Case.

1.13    <u>Bar Date Order</u> means the Order Establishing November 25, 2015 as the Deadline for Filing Proofs of Claims and Approving the Form and Manner of Notice Thereof, entered by the Bankruptcy Court on October 15, 2015 [Dkt. No. 121].

1.14    Business Day means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.15    Case Professionals mean all persons retained pursuant to a Final Order of the Bankruptcy Court who are to be compensated pursuant to sections 326, 327, 328, 330, and 1103 of the Bankruptcy Code or retained following the Confirmation Date by the Trustee or the Plan Administrator.

1.16    Cash means cash or cash equivalents, including, but not limited to, wire transfers, checks, other readily marketable direct obligations of the United States of America, and certificates of deposit issued by a federally insured depository institution.

1.17    Cause(s) of Action means, without limitation, (a) all pending suits to which the Debtor is a party, whether as plaintiff or defendant, as of the date the Confirmation Order becomes a Final Order, and (b) any and all other actions, proceedings, causes of action, liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date, during the course of the Chapter 11 Case (including through the Effective Date), including, without limitation, all Avoidance Actions.

1.18    CDS means Connecticut Dealer Stations, LLC, a Delaware limited liability company.

1.19    CDSM means Connecticut Dealer Stations Management, LLC, a Delaware limited liability company.

1.20    Chapter 11 Case means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor, bearing the caption In re:  Sammy Eljamal, Case No. 15-22872-RDD and pending before the Bankruptcy Court.

1.21    Claim means any "claim" within the meaning of section 101(5) of the Bankruptcy Code.

1.22    Class means a category of holders of Claims as set forth in Article III and IV of the Plan.

1.23    Committee means the Official Committee of Unsecured Creditors appointed by the United States Trustee pursuant to section 1102 of the Bankruptcy Code in the Debtor's Chapter 11 Case, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.24    Confirmation Date means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Case and the conditions set forth in Section 10.1 of the Plan have been satisfied.

1.25    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.26    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.27    Coscia means Brent Coscia.

1.28    Coscia Settlement Agreement means the settlement agreement entered into by and between Coscia, on the one hand, and the Trustee, on the other hand, dated December 6, 2017, and approved by a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019, dated January 23, 2018 [Dkt. No. 712].

1.29    Creditor means any holder of a Claim against the Debtor or the Estate or holder of any Claim against property of the Debtor or the Estate.

1.30    CT Actions means, collectively, the First CT Action, the Second CT Action and the Third CT Action.

1.31    CT Claims means, collectively, the General Unsecured Claims, as they may have been amended, filed in the Chapter 11 Case by CDS (Claim No. 24-2), WFD-CT (Claim No. 25-2), and Wilton Motiva (Claim No. 26-2).

1.32    CT Companies means, collectively, CDS and WFD-CT.

1.33    CT Entities means Silverman, the CT Companies, Wilton Motiva, and Silverman.

1.34    CT Settlement means the settlement agreement entered into by and between the CT Entities, on the one hand, and the Trustee, on the other hand, dated April 30, 2018. A copy of the CT Settlement is annexed hereto as **Exhibit 1**.

1.35    CT Settlement Amount means the sum of $2,728,000, as adjusted, to be remitted by the CT Entities to the Trustee pursuant to the terms and conditions of the CT Settlement.

1.36    Debtor means Sammy Eljamal, also known as Sammy El Jamal, including in his former capacity as debtor in possession in the Chapter 11 Case, which ended on June 8, 2018 upon the appointment of the Trustee.

1.37    Disclosure Statement means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.38    Disclosure Statement Approval Order means that certain order entered by the Bankruptcy Court approving the Disclosure Statement.

1.39    Disputed means every Claim that is not yet Allowed.

1.40    Disputed Claims Reserve means any Cash held in a reserve to be established and maintained by the Plan Administrator and funded by the Trustee, in amounts sufficient for the Plan Administrator to make Distributions under the Plan on account of all Disputed Claims in the event, and to the extent, they become Allowed Claims.

1.41    Distribution(s) means the distribution or distributions on account of Allowed Claims to be made by the Plan Administrator in accordance with the terms and conditions of the Plan.

1.42    Effective Date means a Business Day selected by the Trustee, on or after the Confirmation Date, on which the conditions precedent to the effectiveness of the Plan specified in Section 10.2 of the Plan shall have been satisfied.

1.43    Entity shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.44    Estate means the estate of the Debtor in the Chapter 11 Case, created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.45    Exculpated Claim means any Claim, Cause of Action, obligation or liability asserted or assertable against the Exculpated Parties, related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Case and any proceeding therein; including, without limitation, the Trustee's administration of the Estate, the Distribution of any Asset of the Estate; the formulation, preparation, dissemination, negotiation and promulgation of this Plan and the accompanying Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, or the pursuit of confirmation of this Plan or the administration and implementation of this Plan; provided, however, Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud. For the avoidance of doubt, no Cause of Action, obligation or liability expressly set forth in or preserved by this Plan constitutes an Exculpated Claim.

1.46    Exculpated Party means the Mediators, Trustee and the Trustee's retained Case Professionals, including: (i) Togut, Segal & Segal LLP, (ii) CR3 Partners, LLP, (iii) Verdolino & Lowey, PC., and (iv) StoneTurn Group, LLP.

1.47    Executory Contract means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between the Debtor and any other Person.

1.48    Final Order means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal or move for reargument or for a rehearing or for leave to appeal has expired, or (b) if an appeal has been sought, no stay (temporary or otherwise) pending appeal has been obtained.

1.49    First CT Action means that lawsuit commenced by Silverman against the Debtor in the Supreme Court of the State of New York, Westchester County, Index No. 52114/2011.

1.50    General Unsecured Claim means a Claim which is not an Administrative Expense Claim, a Secured Claim, a Priority Claim, or a Professional Fee Claim.

1.51    Impaired means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.52    Insider shall have the meaning given to such term as defined in section 101(31) of the Bankruptcy Code.

1.53    JMM means JMM Fuelco, LLC, a New York limited liability company.

1.54    Lien has the meaning given to such term in section 101(37) of the Bankruptcy Code (but a lien that has or may be avoided pursuant to an Avoidance Action shall not constitute a Lien).

1.55    Mediators mean the Persons that were appointed by the Bankruptcy Court or served as mediators in connection with the Chapter 11 Case: (a) the Honorable Cecelia G. Morris, Chief Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, (b) the Honorable Francis Conrad (Ret.), and (c) the Honorable Robert D. Drain, Bankruptcy Judge of the United State Bankruptcy Court for the Southern District of New York.

1.56    Metro means Metro NY Dealer Stations, LLC, a Delaware limited liability company.

1.57    NY Action means that lawsuit commenced by the Debtor as a Member of the NY Companies and on behalf of himself as an investor in NYFH and Metro against Weil, Silverman, each of the NY Companies and Amsterdam currently pending as Adv. Pro No. 15-08358 (Bankr. S.D.N.Y.) (removed from Supreme Court State of New York, Westchester County, Index No. 51297/2014).

1.58    NY Additional Litigations means the following lawsuits involving certain NY Entities and, as to which, the Debtor, either individually or through entities he controls, remains a party: (i) MS Scarsdale Snack Mart, Inc. v. NY Fuel Distributors LLC, Adv. Pro. No. 16-08207 (Bankr. S.D.N.Y.) (removed from Supreme Court, Westchester County, Index No. 68766/2012) (affiliated Chapter 11 Case No. 16-22043); (ii) MS Elmsford Snack Mart, Inc., et al. v. James A. Weil, individually and as a Manager of NY Fuel Distributors, LLC, et al., Case No. 14-CV-02226 (S.D.NY. 2014); (iii) Croton Falls Gas Mart, Inc., Tuckahoe Road Snack Mart, Inc., Rt. 1 Port Chester Snack Mart, Inc., Yonkers Central Ave. Snack Mart, Inc. f/k/a Food and Gas of Yonkers, Inc., Buchanan Food & Gas, Inc. South Broadway Snack Mart, Inc., 202 Gas Mart, Inc., and Croton Gas Mart, Inc. v. NY Fuel Distributors, LLC and Metro NY Dealer Stations, LLC, Case No. 11-CV-06621 (S.D.N.Y. 2011); (v) Metro Dealer Stations, LLC, et al. v. Sammy ElJamal, et al., Index No. 61492/2012 (Westchester County Supreme Court); (vi) SRG Fuelco, LLC, The Weil Family II, LLC, Metro NY Dealer Stations LLC v. Sammy ElJamal, Adv.

Pro. No. 15-08362 (Bankr. S.D.N.Y 2015) (affiliated Chapter 11 Case No. 15-22824); and (vii) Sammy ElJamal v. Aljamal et al. (Supreme Court, Westchester County, Index No. 64859/2015).

1.59    NY Companies  means NYFH, NYDS, NYDSM, Metro, and NYFD.

1.60    NY Entities  means the NY Companies, JMM, Weil Family II LLC, Amsterdam, Scarsdale Fuel and Food Corp., CoCo Farms of Elmsford, Inc., Weil, and Marc Weil.

1.61    NY Settlement  means the settlement agreement entered into by and between the NY Entities, on the one hand, and the Trustee, on the other hand, dated April 30, 2018. A copy of the NY Settlement is annexed hereto as **Exhibit 2**.

1.62    NY Settlement Amount  means the sum of $12,800,000, as adjusted, to be remitted by the NY Entities to the Trustee pursuant to the terms and conditions of the NY Settlement.

1.63    NY Settlement Payment Reduction Escrow means the sum of $500,000 to be held in escrow for a limited duration and the purposes specified in Section 2(C)(ii) of the NY Settlement.

1.64    NYDS means NY Dealer Stations, LLC, a Delaware limited liability company.

1.65    NYDSM means NY Dealer Stations Management, LLC, a Delaware limited liability company.

1.66    NYFD means NY Fuel Distributors, LLC, a Delaware limited liability company.

1.67    NYFH means NY Fuel Holdings, LLC, a Delaware limited liability company.

1.68    Other Priority Claim means any Claim, other than an Administrative Expense Claim, a Secured Claim, a Priority Tax Claim, or a General Unsecured Claim.

1.69    Person means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

1.70    Petition Date means June 18, 2015, the date the Debtor filed the voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.71    Plan means this Chapter 11 Plan, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.72    Plan Administrator means shall mean Stephen S. Gray, not individually but solely in his capacity as plan administrator pursuant to the provisions of this Plan and the Confirmation Order.

1.73    Plan Distribution Fund means (i) any and all unrestricted Cash on hand in the Trustee's Account; (ii) the Settlement Funds; (iii) proceeds, if any, of any Causes of Action; and (iv) proceeds, if any, from the liquidation of any other Assets, which monies shall be used by the Plan Administrator to fund Distributions in accordance with the terms and conditions of the Plan.

1.74    Plan Supplement  means the compilation of documents, including any exhibits to the Plan not included herewith, that the Trustee shall file with the Bankruptcy Court at least ten (10) days prior to the voting deadline for the Plan (or at such later date as may be approved by the Bankruptcy Court).

1.75    Priority Claim means a Claim that is either a Priority Tax Claim or Other Priority Claim.

1.76    Priority Tax Claim means any Claim which is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.77    Pro Rata means, at any time, the proportion that an Allowed Claim bears to the aggregate amount of all Allowed Claims in a particular Class at such time.

1.78    Professional Fee Claim(s) means Claims of Case Professionals or any other Person for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, or 331 of the Bankruptcy Code.

1.79    Professional Fee Claim Reserve means any Cash held in a reserve to be established and maintained by the Plan Administrator in accordance with the terms and conditions of this Plan.

1.80    Released Party means each of the following in its capacity as such, and only in its capacity as such: (a) the Debtor; (b) the Trustee, on behalf of himself and the Estate; (b) Coscia; (c) the NY Entities; (d) the CT Entities and (e) the Trustee's retained Case Professionals (including StoneTurn Group, LLP).

1.81    Schedules means the schedules of assets and liabilities and the statement of financial affairs filed with the Bankruptcy Court by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 on August 7, 2015, 2015 [Dkt. No. 50], as such schedules and statements have been or may be supplemented or amended from time to time.

1.82    Second CT Action means that lawsuit commenced by Wilton Motiva against the Debtor, Musa El Jamal, WFD-CT, CDS, CDSM and WFD in the Supreme Court State of New York, Westchester County, Index No. 69245/2012.

1.83    Secured Claim means any Claim other than a Claim which is an Administrative Expense Claim, a Priority Claim, a Professional Fee Claim, or a General Unsecured Claim.

1.84    Settlement Funds means, collectively, the CT Settlement Amount and the NY Settlement Amount, as the same may be subject to adjustment in the CT Settlement and the NY Settlement.

1.85    Silverman means Leon Silverman.

1.86    Third CT Action means that lawsuit commenced by Silverman, WFD-CT and CDS against the Debtor and CDSM currently pending as Adv. Pro. No. 15-8357 (Bankr. SDNY) (removed from New York Supreme Court, County of Westchester, Index No. 55260/2014).

1.87    Trustee means Stephen S. Gray, not individually but solely in his capacity as Chapter 11 Trustee of the Debtor's Estate.

1.88    Trustee Account means the bank account established and maintained by the Trustee for the Chapter 11 Case following his appointment by the Bankruptcy Court.

1.89    Unimpaired means, when used with reference to a Claim, a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code and is designated as such under Article III of this Plan.

1.90    United States Trustee means the United States Trustee appointed under section 591, title 28, United States Code to serve in the Southern District of New York.

1.91    United States Trustee Fees means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code, and interest, if any, for delinquent fees pursuant to section 3717 of Title 31 of the United States Code.

1.92    Weil means James Weil.

1.93    WFD means Wholesale Fuel Distributors, Inc., a New York corporation.

1.94    WFD-CT means Wholesale Fuel Distributors-CT, LLC, a Delaware limited liability company.

1.95    Wilton Motiva means Wilton Motiva Associates, LLC, a Delaware limited liability company.

1.96    Wells Fargo Escrow  means the sum of $185,000 to be held in escrow as provided for in Section 2C(iv) of the NY Settlement.

1.97    Interpretation;  Application of Definitions and Rules Construction.  Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibits references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only, and shall not limit or otherwise affect the provisions of

the Plan.  Unless otherwise indicated herein, all references to dollars means United States dollars.

## ARTICLE II
### Treatment of Administrative
### Expense Claims and Priority Tax Claims

2.1     Non-Classification.  As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims are not classified for purposes of voting on or receiving Distributions under the Plan.  All such Claims are instead treated separately in accordance with the terms and conditions set forth in this Article II.

2.2     Administrative Expense Claims.  Following the Effective Date, the Plan Administrator shall establish and fund the Administrative Expense Claim Reserve as forth in Article V of the Plan.  Except to the extent that any Person or Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim or Priority Tax Claim specifically addressed below) shall (i) receive Cash in an amount equal to such holder's Allowed Administrative Expense Claim on the Effective Date or as soon as practicable after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (ii) be assumed and paid in the ordinary course by the Debtor, after the occurrence of the Effective Date;  provided, however, the Plan Administrator shall be responsible for the satisfaction of United States Trustee Fees arising under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 from the Effective Date through the entry of a final decree closing the Chapter 11 Case.

Each holder of an Administrative Expense Claim (other than a Professional Fee Claim or Priority Tax Claim) is required to file a proof of Administrative Expense Claim within thirty (30) days after the Effective Date.  Nothing herein extends any Bar Date previously established by the Bankruptcy Court.  Any request for payment of an Administrative Expense Claim (other than a Professional Fee Claim or Priority Tax Claim) that is not timely filed as set forth above shall be forever barred, and holders of such Claims shall not be able to assert such Claims in any manner against the Debtor, the Estate, the Trustee or the Plan Administrator or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Case Professionals.

The Plan Administrator shall have ninety (90) days after the Effective Date to file objections, if any, to Administrative Expense Claims (other than a Professional Fee Claim or Priority Tax Claim) and serve such objections upon the holder of the affected Claim.  The Plan Administrator shall have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

2.3     Priority Tax Claims.  Except to the extent that the Plan Administrator determines to make Distributions to the holder of a Priority Tax Claim in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code, or the holder of an Allowed Priority Tax Claim has been satisfied prior to the Effective Date or agrees to a different

treatment, the Plan Administrator shall pay to each holder of an Allowed Priority Tax Claim, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim on the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, with interest as may be required by the Bankruptcy Code and provided under applicable non-bankruptcy law.

2.4    Professional Fee Claims.  Following the Effective Date, the Plan Administrator shall establish and the Trustee shall fund the Professional Fee Claims Reserve as set forth in Article V of the Plan.  All Persons and Entities seeking an allowance of their Professional Fee Claim for services rendered and expenses incurred through and including the Confirmation Date under sections 330 or 331 of the Bankruptcy Code (a) shall file their respective applications for allowance of their Professional Fee Claim by not later than the date which is forty-five (45) days after the Confirmation Date or such other date as may be fixed by the Bankruptcy Court, and (b) if granted, the Allowed Professional Fee Claim filed by the Bankruptcy Court shall be paid by the Plan Administrator in full, in Cash and in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which such Professional Fee Claim becomes an Allowed Claim or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between the holder of an Allowed Professional Fee Claim and the Plan Administrator, or (iii) in accordance with the terms and conditions of any applicable order entered by the Bankruptcy Court.

## ARTICLE III
### Classification of Claims and Interests

Other than Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims, Claims are classified for all purposes, including voting, confirmation and Distribution pursuant to the Plan, as set forth below:

| | | |
|---|---|---|
| Class I | Allowed Secured Claims | Unimpaired/Deemed to Accept |
| Class II | Allowed Other Priority Claims | Unimpaired/Deemed to Accept |
| Class III | Allowed General Unsecured Claims | Impaired/Entitled to Vote to Accept or Reject the Plan |

## ARTICLE IV
### Treatment of Claims

4.1    Class I:  Secured Claims.

(a)    Classification.  Class I consists of Allowed Secured Claims.

(b)    Treatment.  Except to the extent that a holder of an Allowed Secured Claim has agreed to less favorable treatment, each holder of an Allowed Secured Claim shall, at the option of the Plan Administrator:  (i) be paid the Allowed amount of such

Secured Claim in full, in Cash in accordance with Article V of this Plan, in full and final satisfaction of such Claim; (ii) receive delivery of the collateral securing such Allowed Secured Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code, or (iii) be paid by the Debtor from and after the Effective Date in the amounts and on the terms and conditions of the underlying agreements evidencing such Secured Claims, and the holders of such Allowed Secured Claims shall retain all of the rights provided to such holders under such agreements, without modification by the Plan, including without limitation, the Liens securing such Allowed Secured Claims, provided, however, on the Effective Date, the Plan Administrator shall satisfy any amounts owed to the holders of Allowed Secured Claims (including any attorney's fees and late charges) that have accrued prior to the Effective Date and remain unpaid.

The holders of the Allowed Secured Claims shall retain the Liens, if any, securing their respective Allowed Secured Claim until full and final payment of such Allowed Secured Claim is made as provided herein. Further, pending satisfaction of an Allowed Secured Claim, the loan documents and judgment liens pertaining to the Allowed Secured Claim shall remain in full force and effect, provided, however, that the remedies available to the holder of the Allowed Secured Claim under any retained security interest and the loan documents and/or judgment lien giving rise to the Claim, including the right to exercise secured party rights, shall be exercisable only in the event the Debtor defaults on the payment obligations hereunder. The holders of the Allowed Secured Claims shall have no recourse against the Trustee, the Estate, or the Plan Administrator.

(c) Voting. Class I is Unimpaired. Each holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.2 Class II: Other Priority Claims.

(a) Classification. Class II consists of Allowed Other Priority Claims.

(b) Treatment. After the payment of Allowed Secured Claims, and except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, the Plan Administrator shall pay to each holder of an Allowed Other Priority Claim, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later to occur of (a) the Effective Date or (b) the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

(c) Voting. Class II is Unimpaired. Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

4.3 Class III: General Unsecured Claims.

(a) Classification. Class III consists of the Allowed General Unsecured Claims.

(b)     Treatment.  After the payment of Allowed Secured Claims and Allowed Other Priority Claims, and on the later to occur of (a) the Effective Date or (b) the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or as soon as practicable thereafter, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, release and settlement of such Allowed Claim, its Pro Rata share of available Cash in the Plan Distribution Fund in an amount up to, but not to exceed, its Allowed General Unsecured Claim.

(c)     Voting.  Class III is Impaired.  Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

### ARTICLE V
Implementation of the Plan and the Plan Administrator

5.1     Plan Settlements as a Means of Implementing the Plan.

(a)     Plan Settlements.  The Plan is predicated upon and incorporates two (2) separate settlement agreements, and shall be deemed a motion for approval of the settlements pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

(i)     The NY Settlement:

On the Effective Date, the Plan will resolve the NY Action, the NY Additional Lawsuits, and all related litigation between and among the Debtor and the NY Entities and Claims asserted by the NY Entities pursuant to the terms and conditions as set forth in the NY Settlement.

Pursuant to the NY Settlement, on the Effective Date, the NY Companies shall pay to the Trustee for Distribution the NY Settlement Amount in exchange for mutual releases, including a release of all claims, causes of action and counterclaims asserted in the NY Action, the NY Additional Lawsuits and all other proceedings based upon the same or similar facts, and a relinquishment by the Debtor of any ownership interest in, among other Entities, the NY Companies.

As part of the NY Settlement, the NY Entities have agreed to the reduction and allowance of Claim Nos. 1, 3, 4, 5, 6, 7, 10, 11, 18, 22 and 23 in the fixed aggregate amount of $3,000,000 and to forego any Distributions on account of Claim Nos. 9 and 15, which Claims shall be deemed released and withdrawn under this Plan as part of the NY Settlement.

(ii)     The CT Settlement:

On the Effective Date, the Plan will resolve the CT Actions, and all related litigation between and among the Debtor and the CT Entities and Claims asserted by the CT Entities pursuant to the terms and conditions as set forth in the CT Settlement.

Pursuant to the CT Settlement, on the Effective Date, the CT Companies shall pay to the Trustee for Distribution of the CT Settlement Amount in exchange for mutual releases, including a release of all claims, causes of action and counterclaims asserted in

the CT Actions and all other proceedings based upon the same or similar facts, and a relinquishment by the Debtor of any purported ownership interest in the CT Companies and CDSM.

As part of the CT Settlement, the CT Entities have agreed to the reduction and allowance of Claim No. 24 of CDS, Claim No. 25 of WFD-CT, and Claim No. 26 of Wilton in the fixed aggregate amount of $1,728,000.

5.2     Plan Funding.  The Plan shall be funded by Available Cash on hand on the Effective Date.  On the Effective Date, the Settlement Funds shall be paid to the Trustee, and the Trustee shall transfer all Available Cash on hand to the Plan Distribution Fund.

5.3     Distributions on Account of Assets.  As provided for below and elsewhere in this Plan, the Plan Administrator shall administer the Plan Distribution Fund and make Distributions therefrom in accordance with the following procedures and priorities:

(i)     First, to make Distributions as necessary to satisfy Allowed Administrative Expense Claims as set forth in Section 2.2 of the Plan, and retain in the Plan Distribution Fund (A) an amount of Cash, reasonably determined by the Plan Administer in his discretion, to be held as the Administrative Expense Claim Reserve sufficient for any future Distributions on account of Allowed Administrative Expense Claims, and (B) an amount of Cash, reasonably determined by the Plan Administer in his discretion, to be held as the Professional Fee Claim Reserve sufficient for any future Distributions on account of Allowed Professional Fee Claims;

(ii)     Second, to make Distributions as necessary to satisfy the Allowed Claims in Classes I, II, and III to the terms of this Plan in the order of priority as set forth in the Plan, and retain in the Plan Distribution fund an amount of Cash, reasonably determined by the Plan Administrator in his discretion, to fund the Disputed Claims Reserve as set forth in Article VII of the Plan;  and

(iii)     Third, to establish, fund and administer the NY Settlement Payment Reduction Escrow and Wells Fargo Escrow in accordance with the NY Settlement, and thereafter distribute the funds as required by this Plan.

5.4     Vesting of Assets  Except as otherwise provided in this Plan and the Confirmation Order, and after all Distributions in accordance with Section 5.3 of this Plan have been made, all Assets remaining in the Plan Distribution Fund shall vest in the Debtor pursuant to section 1141(b) of the Bankruptcy Code, in each case free and clear of all Claims, Liens and Interests.

5.5     Appointment of the Plan Administrator.  The Confirmation Order shall provide for the appointment of Stephen S. Gray as Plan Administrator.  To the extent the Plan Administrator becomes unable or unwilling to continue in the role of Plan Administrator, the successor to the Plan Administrator shall be determined by the Bankruptcy Court.  The Plan Administrator shall have all the powers, authority and responsibilities necessary and appropriate to implement this Plan and the other transactions contemplated by this Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with this Plan,

including without limitation the powers and authority of a trustee under sections 704 and 1106 of the Bankruptcy Code. The compensation for the Plan Administrator shall be as set forth in the Plan Supplement. Accordingly, from and after the Effective Date, the Plan Administrator shall make all Distributions contemplated under this Plan and shall have the exclusive right to settle or compromise any Disputed Claim pursuant to the terms and conditions of the Plan.

5.6     Powers and Duties of the Plan Administrator. In addition to any other rights and obligations described in the Plan, the powers and duties of the Plan Administrator shall also consist of the following:

(a)     To maintain and administer the Plan Distribution Fund in accordance with the terms and conditions of the Plan;

(b)     To review and object to Claims filed against the Debtor;

(c)     To settle, compromise, negotiate or otherwise resolve all disputes and Claims involving the Debtors, the Estate and the Chapter 11 Case;

(d)     To commence and pursue such of the Causes of Action as the Plan Administrator may determine to be for the benefit of the Post Effective Date Debtor, or to resolve, abandon, discontinue, dismiss any Cause of Action, or take any other action the Plan Administrator deems necessary with respect to any Cause of Action;

(e)     To have standing to appear before the Bankruptcy Court or any other court of competent jurisdiction on behalf of the post-Effective Date Debtor;

(f)     To cause U.S. Trustee Fees to be paid;

(g)     To pay expenses incurred in carrying out the powers and duties enumerated pursuant to the Plan, including professional fees incurred after the Confirmation Date;

(h)     To open and maintain bank accounts and deposit funds and draw checks and make Distributions in accordance with this Plan;

(i)     To prepare and file any required tax returns or other tax documents on behalf of the Estate;

(j)     To effectuate any of the provisions in this Plan;

(k)     At the appropriate time, to ask the Bankruptcy Court to enter the final decree closing the Chapter 11 Case; and

(l)     To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to the Plan.

5.7     Retention of Professionals. The Plan Administrator is further authorized to retain such professionals that the Plan Administrator in his discretion believes are

necessary to carry out the terms of the Plan, including retaining the same Case Professionals that were retained to represent the Trustee and the Estate in the Chapter 11 Case, without any further notice to or action, order, or approval of the Bankruptcy Court. The fact that such Case Professionals may have represented the Trustee or the Estate during the Chapter 11 Case shall not disqualify those Case Professionals from continuing to provide services to the Plan Administrator, or impact their disinterestedness, or give rise to a conflict of interest that would preclude such representation, provided, however, no Case Professional shall be entitled to compensation from the Plan Administrator or the Estate for services rendered to the Debtor after the Effective Date without the express written consent of the Plan Administrator.

5.8     Liquidation of Remaining Assets. From and after the Effective Date, except as otherwise expressly provided herein, the Plan Administrator may, without further approval of the Bankruptcy Court, use, sell at public or private sale, assign, transfer, or otherwise dispose of any remaining Assets and convert same to Cash to be Distributed in accordance with the terms of this Plan.

5.9     Post-Confirmation Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Trustee and/or the Plan Administrator (as the case may be) may pay the reasonable and documented legal, professional, or other fees and expenses incurred by the Plan Administrator and his professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.10    Payment of Quarterly Fees. After the Confirmation Order becomes a Final Order, the Plan Administrator shall pay quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), to the United States Trustee until the Chapter 11 Case has been converted, dismissed or closed by the Bankruptcy Court.

5.11    Effectuating Documents. In addition to any other powers provided to the Plan Administrator as set forth herein, the Plan Administrator may execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements and documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

5.12    Liability. The Plan Administrator shall be entitled to rely upon the advice of the Plan Administrator's professional persons and representatives concerning all matters, and upon the Plan and any security agreement, schedule, certificate, statement, report, order, notice or other writing which the Plan Administrator believes to be genuine or to have been presented by a proper Person. Except for such Person's own gross negligence or willful misconduct, neither the Plan Administrator nor any of the Plan Administrator's professionals, or agents shall (a) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of the Plan; or (b) in any event, be liable as such for any actions taken or omitted by them under the Plan or in furtherance of the rights, duties and powers provided herein. The Plan Administrator shall be required to post any required bond, as necessary, for the faithful performance of the Plan Administrator's duties hereunder within not less than thirty (30) days after the Effective Date. No

holder of any Claim shall have any obligation or liability to the Plan Administrator for any fees or expenses arising under the Plan, and all such fees and expenses shall be payable from the Cash received or recovered by the Plan Administrator under the Plan.

5.13    Direction to Parties.  From and after the Effective Date, the Plan Administrator may apply to the Bankruptcy Court for an order directing any necessary Entity to execute or deliver, or to join in the execution or delivery of, any instrument required to perform any act that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

## ARTICLE VI
Provisions Governing Distributions and Voting on the Plan

6.1    Distributions.  As set forth in Section 5.3 above, the Plan Administrator shall make all Distributions from the Plan Distribution Fund.  Whenever any Distribution shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the day immediately succeeding a Business Day, but shall be deemed to have been made on the date due.  For federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest, to the extent applicable.

6.2    Timing of Distributions.  Each Distribution shall be made on the Effective Date or as soon as reasonably practicable thereafter.

6.3    Address for Delivery of Distributions.  If any Distribution is returned to the Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Plan Administrator is notified of such holder's then current address within ninety (90) days after such Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distributions shall be reallocated and distributed to the other holders of Allowed Claims in accordance with the Plan.

6.4    Distributions under Twenty-Five Dollars.  The Plan Administrator shall not be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Plan Administrator on or before twenty (20) days after the Effective Date.  Any such Distributions not subject to a timely request for payment shall be distributed by the Plan Administrator to the other holders of Allowed Claims in accordance with the Plan.

6.5    Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Plan Administrator by the holder of the Allowed Claim to whom such check was originally issued.  Any Claim in respect of such voided check shall be made on or before 120 days from the date on which such original Distribution was made.  If no Claim is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those other holders of Allowed Claims in accordance with the Plan.

6.6     Unclaimed Distributions at Closing of Bankruptcy Case.  In the event that any unclaimed Distributions exist on the date the Bankruptcy Court enters a Final Order and decree closing the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and Rule 3022 of the Federal Rules of Bankruptcy Procedures, such Distributions shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Plan Administrator, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that period, the claim of any Person to those Distributions shall be deemed forfeited. Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any holder of an Allowed Claim.  All Cash or other Assets that revert to the Plan Administrator pursuant to this Article VI shall be distributed by the Plan Administrator to the other holders of Allowed Claims in accordance with the Plan.

6.7     Manner of Payments under the Plan.  Unless the Person or Entity receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Plan Administrator by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.8     Setoffs and Recoupment.  Except as otherwise provided in this Plan, the Plan Administrator may, but shall not be required to, setoff against or recoup from any Claim or Claims of any nature whatsoever that the Estate may have against the Creditor holding such Claim(s) and such holder shall have the right to object to any such setoff or recoupment made by the Plan Administrator, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claim.

6.9     No Interest.  Unless otherwise specifically provided for in the Plan (including with respect to the Allowed amount of any Claims hereunder), required under applicable bankruptcy law, or agreed to by the Plan Administrator, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

6.10    Voting of Claims.  Each holder of a Claim in Impaired Class III that is entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court.  A holder of a Claim as to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.  A holder of a Claim that has been temporarily allowed for purposes of voting on the Plan is entitled to vote.  A holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.

6.11    Plan Amendment.  If in the event Impaired Class III votes to accept the Plan by the requisite statutory majorities required under section 1126(c) of the Bankruptcy Code, the Trustee reserves the right to amend the Plan in accordance with the terms hereof.

## ARTICLE VII
Provisions For Resolving and Treating Disputed Claims

7.1    Disputed Claim Objection Deadline.  On and after the Effective Date, the Plan Administrator may continue to attempt to resolve consensually any Disputed Claim and the Plan Administrator shall have the right, but not the obligation, to object to the allowance of any Claim and may file with the Bankruptcy Court any other appropriate motion or adversary proceeding with respect thereto.  All such objections may be litigated to Final Order.  The Plan Administrator shall retain the rights and defenses of the Estate with respect to any Claim, subject to the provisions of this Plan.

Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made no later than ninety (90) days after the Effective Date.

7.2    Disputed Claims Settlement.  Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date and subject to the provisions of this Plan, the Plan Administrator shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

7.3    Distributions on Account of Disputed Claims.  A Disputed Claim, to the extent it becomes an Allowed Claim for Distribution purposes, shall receive from the Disputed Claims Reserve any amounts held in the Disputed Claims Reserve attributable to the Allowed amount of such Claim, as set forth in the Plan.

7.4    No Distribution Pending Allowance;  Subsequent Distribution.  Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is Allowed in accordance with the Plan.  If a Disputed Claim has not been Allowed as of the date for any Distribution on account of such Claim under the Plan, the amount otherwise distributable to the holder of such Claim under the Plan shall be retained in the Disputed Claims Reserve, and held pending any determination of such Claim as an Allowed Claim for purposes of the Plan.  Upon a determination that such Disputed Claim is an Allowed Claim for purposes of the Plan, the Claim as Allowed shall be paid from the Disputed Claims Reserve in accordance with the terms and conditions of the Plan, but the amount distributed shall not exceed the amount in the Disputed Claim Reserve reserved on account of such Claim.

7.5    Excess Funds.  Promptly after all Disputed Claims, as to which Cash has been retained therefor in the Disputed Claims Reserve, have become Allowed Claims or have otherwise been resolved by Final Order of the Bankruptcy Court, and all applicable Distributions have been made from the Disputed Claims Reserve, any amounts

remaining in the Disputed Claims Reserve shall be further distributed by the Plan Administrator in accordance with the Plan.

7.6    <u>Estimation</u>.  The Trustee may request estimation or limitation of any Claim pursuant to Bankruptcy Code section 502(c) regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection;  <u>provided</u>, <u>however</u>, that the Bankruptcy Court will determine (a) whether such Claims are subject to estimation pursuant to Bankruptcy Code section 502(c) and (b) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

7.7    <u>Limitations on Funding of Disputed Claims Reserve</u>.  Except, as expressly set forth in the Plan, the Plan Administrator shall have no duty to fund the Disputed Claims Reserve.

7.8    <u>Remedies Not Exclusive</u>.  All of the Claims objection and estimation procedures set forth in this Article VII are cumulative and not exclusive of one another.

**ARTICLE VIII**
Executory Contracts and Unexpired Leases

8.1    <u>Assumption or Rejection of Executory Contracts</u>.  Effective on the Confirmation Date, all Executory Contracts, to the extent such exist, are hereby specifically deemed rejected, except for any Executory Contract (a) that has been specifically assumed, or assumed and assigned, by the Debtor or Trustee on or before the Confirmation Date with the approval of the Bankruptcy Court, (b) in respect of which a motion for assumption or assumption and assignment has been filed with the Bankruptcy Court on or before the Confirmation Date, or (c) that is specifically designated as a contract to be assumed on a schedule to be included as part of the Plan Supplement.

8.2    <u>Approval of Assumption or Rejection of Executory Contracts</u>.  Entry of the Confirmation Order, but subject to the occurrence of the Effective Date, shall constitute (a) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the assumption, or assumption and assignment, of the Executory Contracts assumed, or assumed and assigned, in accordance with Section 8.1 of the Plan, and (b) the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code of the rejection of the Executory Contracts rejected in accordance with Section 8.1 of the Plan.

8.3    <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts Rejected Pursuant to the Plan</u>.  Claims against the Debtor arising out of the rejection of Executory

Contracts pursuant to the Plan must be filed with the Court no later than thirty (30) days after the later of service of (a) notice of entry of an order approving the rejection of such Executory Contract which Order may be the Confirmation Order, and (b) notice of occurrence of the Effective Date. Any such Claims not filed within such time shall be forever barred from assertion against the Estate, and any and all of the Assets of the Estate.

## ARTICLE IX
Effect of Confirmation

9.1    <u>Term of Bankruptcy Injunction or Stays</u>.  Subject to the rights of the holders of Allowed Secured Claims under Section 4.1 of the Plan, unless otherwise provided in the Confirmation Order, any injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until this Plan has been fully performed.

9.2    <u>Releases by the Debtor and Related Parties</u>.  **Except for the right to enforce this Plan, or as otherwise provided herein, the Debtor, the Estate, and the Trustee shall, effective upon occurrence of the Effective Date, be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, Causes of Action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise;  <u>provided</u>, <u>however</u>, such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Parties in respect of any express contractual obligation of any such party effective from and after the Effective Date;  <u>provided</u>, <u>further</u>, that no Person who votes to reject this Plan will receive the benefit of a release;  <u>provided</u>, <u>further</u>, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or any order confirming the Plan shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Plan Administrator in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court;  <u>provided</u>, <u>further</u>, that nothing in this Article IX in the Plan shall prohibit the Trustee, the CT Entities, or the NY Entities from enforcing their rights under the Plan, the CT Settlement, or the NY Settlement.**

9.3    <u>Releases by Holders of Claims</u>.  **Except for the right to enforce this Plan, or as otherwise provided herein, each holder of a Claim against the Debtor, the Estate, or the Trustee shall be deemed to forever release, waive and discharge the Released Parties of and from any and all Claims, demands, Causes of Action and the like, existing as of the Effective Date or thereafter arising from any act, omission, event, or other occurrence that occurred on or prior to the Effective Date, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, at law, in equity or otherwise;  <u>provided</u>, <u>however</u>, such release, waiver and discharge shall not operate as a release, waiver or discharge of any Released Party in respect of any express contractual obligation of any such party effective from and after the Effective**

Date;  provided, further, that no Person who votes to reject this Plan will receive the benefit of a release;  provided, further, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, any Plan Supplement, or any order confirming the Plan shall affect any Causes of Action, Claims, or counter-Claims that may be asserted by the Plan Administrator in connection with an objection to a Claim that has not been Allowed, in each case as determined by the Bankruptcy Court;  provided, further, that nothing in this Article IX or in the Plan shall prohibit the Trustee, the CT Entities, or the NY Entities from enforcing their rights under the Plan, the CT Settlement, or the NY Settlement.

9.4     Injunctions.  In addition to the releases provided for in the above Sections 9.2 and 9.3 of the Plan, the following provisions shall apply and shall be fully set forth in the Confirmation Order:

        (a)     Injunctions Against Interference with Consummation or Implementation of Plan.  Upon the Effective Date all Persons shall be enjoined from commencing or continuing any judicial or administrative proceeding, employing any process, or taking any action whatsoever against the Debtor, the Estate, the Trustee, the Plan Administrator, or any Released Parties with the intent or effect of interfering with the consummation and implementation of this Plan, the NY Settlement, and CT Settlement and the transfers, payments and Distributions to be made in accordance with the same.

        (b)     Injunction Against Prosecution of Causes of Action.  Except as otherwise specifically provided for by this Plan, as of the Effective Date, all Persons shall be enjoined from taking any of the following actions in respect to any released Claims as set forth in Sections 9.2 and 9.3:

                (i)     the commencement or continuation of any action or proceedings;

                (ii)     the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order;

                (iii)     the creation, perfection or enforcement of any encumbrance of any kind;  and/or

                (iv)     the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from any such entity.

9.5     Exculpation.  Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim, or obligation, Cause of Action or liability for any Exculpated Claim, and shall be entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  Each Exculpated Party and their respective affiliates, agents, directors, members, managers, officers, officials, employees, advisors and attorneys have, and upon the Effective Date shall be deemed to have, participated in the promulgation of this Plan and in good faith and in compliance with the applicable provisions of the

**Bankruptcy Code and applicable non-bankruptcy law and shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or Distributions made pursuant to this Plan. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability satisfied, enjoined or subject to exculpation pursuant to this Article IX; provided, however, that nothing in the Plan or the Confirmation Order shall, or shall be deemed to, release or exculpate the Exculpated Parties and representatives with respect to, its obligations or covenants arising from bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Upon the Confirmation Date, Creditors will be unable to pursue any Claims that are satisfied, enjoined or subject to exculpation under the Plan, but Creditors may pursue Claims that may arise in the future, or pursuant to the Plan or Confirmation Order.**

9.6    <u>Binding Effect</u>. Subject to the earlier of the Confirmation Order becoming a Final Order or substantial consummation of the Plan, on and after the Confirmation Date, the Plan shall be binding upon and inure to the benefit of the Plan Administrator, the Debtor and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

9.7    <u>Discharge</u>. The Debtor shall not be entitled to a discharge of any debt unless the Bankruptcy Court approves a motion of the Plan Administrator in which the Plan Administrator certifies that (a) all Plan Administrator expenses have been paid or reserved for, (b) the Debtor has complied with all of the terms and conditions of this Plan and Confirmation Order, and (c) all Distributions required to be made under this Plan are made, including payments made to Allowed Class III Claims. No discharge granted to the Debtor shall be inconsistent with the terms of any Order of the Court determining that any debt is non-dischargeable, or with the provisions of sections 1141(d)(2) or (d)(6) of the Bankruptcy Code.

**ARTICLE X**
Conditions to Confirmation

10.1    <u>Conditions Precedent to Confirmation</u>. The following are conditions precedent to the occurrence of the Confirmation Date:

(a)    The Confirmation Order is in form and substance reasonably satisfactory to the Trustee.

(b)    The Confirmation Order shall approve the terms and conditions of the NY Settlement and CT Settlement contemplated under the Plan and as provided in the respective settlement agreements.

(c)     The Plan shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with the terms of this Plan.

(d)     All exhibits and schedules to the Plan are in form and substance reasonably satisfactory to the Trustee.

10.2     Conditions Precedent to Occurrence of Effective Date.  The following are conditions precedent to the occurrence of the Effective Date of the Plan:

(a)     The Bankruptcy Court shall have approved the Confirmation Order by Final Order.

(b)     The Bankruptcy Court shall have entered a Final Order (contemplated to be part of the Confirmation Order) approving the Plan Administrator and authorizing the Plan Administrator to take all actions necessary or appropriate to implement the Plan and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

(c)     No stay of the Confirmation Order shall then be in effect, unless the Plan shall have been substantially consummated before entry of any stay.

(d)     The Plan, and any Exhibits and Schedules thereto, shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with the Plan.

## ARTICLE XI
Certain Post Confirmation Matters

11.1     Closing of the Chapter 11 Case.  After each Disputed Claim filed against the Debtor has become an Allowed Claim or a disallowed Claim, and upon the Distribution to all holders of Allowed Claims in full as required under the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.  The Plan Administrator shall file a report with the Bankruptcy Court.

11.2     Reservation and Preservation of Causes of Action.

(a)     On the Effective Date, any and all Causes of Action including, without limitation, Avoidance Actions claims for turnover of property, breach of fiduciary duty, malpractice, or alter ego liability, shall be reserved and preserved by, and for the benefit of, the holders of Claims under the Plan.  Until such time as all Class III Claims have been irrevocably paid in full as set forth in the Plan, all Causes of Action, not otherwise released hereunder, may be prosecuted solely and exclusively by the Plan Administrator, in the Plan Administrator's discretion, for the benefit of holders of Allowed Class III Claims.

(b)     The Plan Administrator is granted standing to bring and prosecute any Cause of Action not released hereunder, as determined by the Plan Administrator

in the Plan Administrator's discretion. Such power shall include the power to sue on behalf of the Debtor and the Estate, to collect any amounts due on any Cause of Action, and the power to compromise any claim described in such Cause of Action. Except as otherwise provided in the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may in the Plan Administrator's discretion and business judgment (except as otherwise limited by the Plan) enforce Causes of Action, Claims and defenses and counterclaims to all Claims asserted against the Debtor and the Estate, including but not limited to, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

**ARTICLE XII**
Retention of Jurisdiction

12.1     <u>Jurisdiction of Bankruptcy Court</u>.  The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and enforce any of the injunctive provisions of this Plan.

(b)     To hear and determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Case and this Plan, even if filed after confirmation of the Plan.

(c)     To hear and determine any objections to Claims, including Administrative Expense Claims and Professional Fee Claims of the Bankruptcy Code, and all disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting.

(d)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(e)     To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code.

(f)     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(g)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or Confirmation Order.

(h)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code.

(i)     To hear and determine any requests to sell any Assets as to which Bankruptcy Court approval is required under the terms of the Plan.

(j)     To hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection

matters related thereto, and settlements thereof, and any other Causes of Action properly within the jurisdiction of the Bankruptcy Court.

(k)     To hear and determine any disputes concerning quarterly fees owing or claimed to be owing to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code.

(l)     To enter a final decree closing the Chapter 11 Case.

(m)     To determine any disputes regarding allowance of fees and expenses of the Plan Administrator as set forth in the Plan.

(n)     To address, hear and determine any other issues or disputes that arise under the Plan.

## ARTICLE XIII
Miscellaneous Provisions

13.1    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of notes or issuance of debt or equity securities under this Plan, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, registration, licensing, sales or similar tax.

13.2    <u>Dissolution of Committee</u>.  The Confirmation Order shall provide for the dissolution of the Committee as of the Effective Date.  On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof, including any Case Professionals, shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Case. The Trustee, the Debtor, the Estate, or the Plan Administrator shall not be responsible for paying any fees or expenses incurred by the members of or Case Professionals to the Committee after the Effective Date.

13.3    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

13.4    <u>Entire Agreement</u>.  The Plan constitutes the entire agreement and understanding among the Debtors and their creditors relating to payment and treatment of all Claims in bankruptcy.

13.5    <u>Amendment or Modification of the Plan</u>.  Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Trustee at any time prior to the Confirmation Date, provided that (a) the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and (b) the Trustee shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified by the Trustee at any time after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the

Bankruptcy Code, (b) and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder or any Distribution to be received in connection with any settlement pertaining to such holder. Prior to the Effective Date, the Trustee may make appropriate technical adjustments and modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

13.6    Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

13.7    Revocation or Withdrawal of the Plan. The Trustee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Trustee revokes or withdraws the Plan, the Plan shall be deemed withdrawn and shall be deemed null and void.

13.8    Notices. All notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or made by electronic means with confirmation of receipt.

> To the Plan Administrator:
> Stephen S. Gray, Plan Administrator
> c/o Steven S. Flores, Esq.
> Togut, Segal & Segal, LLP
> One Pennsylvania Plaza, Suite 3335
> New York, New York 10119
> E-mail: sflores@teamtogut.com

13.9    Governing Law. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of law of such jurisdiction.

13.10   Withholding and Reporting Requirements. In connection with the consummation of the Plan, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority in connection with all Distributions made hereunder.

13.11   Indemnification.  As provided in Section 8.5, except for its or their own gross negligence or willful misconduct, neither (a) the Trustee and his attorneys, other professionals and/or agents;  nor (b) the Plan Administrator, and the Plan Administrator's attorneys, other professionals and/or agents, shall have any liability to the Debtor, the Estate, any creditor, or any other party-in-interest.  In the event that the Debtor, any Person acting on his behalf, or any Entity owned or under the control of the Debtor brings any action against any of the foregoing parties, provided that such party, as the case may be, did not engage in willful misconduct or act grossly negligent, the Debtor shall and hereby is required to indemnify such party, against expenses, including attorneys' fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by the such party.  The termination of an action, suit or proceeding by judgment, order, settlement or conviction does not, by itself, create a presumption that such party, as the case may be, did not act in good faith and in a manner which such party reasonably believed to be in or not opposed to be in the best interest of the Estate and creditors.

13.12   Headings.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

13.13   Schedules.  All exhibits and schedules to the Plan are incorporated into and are a part of this Plan as if set forth in full herein.

13.14   Filing of Additional Documents.  On or before confirmation of the Plan, the Trustee shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

13.15   Conflict.  To the extent this Plan is inconsistent with the Disclosure Statement the provisions of the Plan shall be controlling.  In the event there is an inconsistency between the Plan and the Confirmation Order, the Confirmation Order controls.

13.16   Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.17  Effect of Withdrawal, Revocation, or Non-Consummation.  If Trustee revokes or withdraws this Plan prior to the earlier of the Effective Date or substantial consummation of the Plan or if neither of the foregoing occurs, the Plan, any settlement or compromise embodied in the Plan or any exculpation, release, or indemnification provided for in the Plan, shall be null and void.  In such event, nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claim(s) or Causes of Action by or against the Debtor, the holders of Claims against the Debtor, or any other Person or Entity in any further proceeding involving the Debtor, or to constitute an admission of any sort by the Debtor, any Claim holder, or any Person or Entity.

Dated: April 30, 2018

STEPHEN S. GRAY,
    Not Individually But Solely in
    His Capacity as Chapter 11 Trustee,

/s/ Steven S. Flores
TOGUT, SEGAL & SEGAL LLP
Albert Togut
Scott E. Ratner
Steven S. Flores
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000