EXHIBIT 1

# SETTLEMENT AGREEMENT BY AND BETWEEN
# CHAPTER 11 TRUSTEE AND CONNECTICUT DEALER STATIONS, LLC, *ET AL.*

This settlement agreement (the "Settlement Agreement") is entered into by and between, Stephen S. Gray, not individually but solely in his capacity as the trustee (the "Trustee") for the Chapter 11 estate (the "Estate") of Sammy ElJamal (the "Debtor") in the bankruptcy case currently pending in the Southern District of New York under Case No. 15-22872 (the "Chapter 11 Case"), and Leon Silverman ("Silverman") and Marilyn Silverman, individually and on behalf of the following entities that Silverman owns or otherwise controls: (i) Connecticut Dealer Stations, LLC ("CDS"); (ii) Wholesale Fuel Distributors-CT, LLC ("WFD-CT"); and (iii) Wilton Motiva Associates LLC f/k/a 372 Wilton Associates LLC ("Wilton") (collectively, with Silverman and Marilyn Silverman, the "Connecticut Companies" and, together with the Trustee, the "Parties"):

## RECITALS

**The Bankruptcy Cases**

**WHEREAS,** on June 18, 2015 (the "Petition Date"), the Debtor commenced a voluntary case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"); and

**WHEREAS,** on July 16, 2015, the Office of the United States Trustee (the "United States Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") consisting of three members: (a) Brent Coscia; (b) JMM FuelCo, LLC; and (c) Gas Land Petroleum, Inc.;[1] and

**WHEREAS,** on June 6, 2017, the Court entered an order directing the United

---

[1] On May 15, 2016, Gasland Petroleum, Inc. withdrew from the Committee, and, on May 28, 2016, the United States Trustee amended its notice of appointment to reflect such.

States Trustee to appoint a Chapter 11 trustee for the Estate of the Debtor [Doc. No. 600]; and

**WHEREAS,** on June 8, 2017, the Court entered the *Order Granting the Application for Appointment of Chapter 11 Trustee,* pursuant to which the Trustee was appointed as the Chapter 11 Trustee herein [Doc. No. 606]; and

**Pre-Petition Background Between Connecticut Companies and the Debtor**

**WHEREAS,** in March of 2008, the Debtor and the Connecticut Companies entered into a joint venture and formed two entities – CDS and WFD-CT (together, the "CT Companies") – for the purpose of acquiring gasoline stations and distribution rights held by Motiva Enterprises, LLC, a Shell Corporation affiliate; and

**WHEREAS**, in connection with the formation of the CT Companies, the Debtor and the Connecticut Companies, among others, executed the Amended and Restated Operating Agreement of WFD-CT, dated March 24, 2008, (the "WFD-CT Operating Agreement") and the Amended and Restated Operating Agreement of CDS, dated March 28, 2008, (the "CDS Operating Agreement" together with the WFD-CT Operating Agreement, the "Operating Agreements"); and

**WHEREAS,** pursuant to the Operating Agreements, the Debtor made initial capital contributions into the CT Companies in exchange for a ninety-four percent (94%) interest in CDS and ninety-five percent (95%) interest in WFD-CT; and

**WHEREAS,** as set forth in the CDS Operating Agreement**,** Connecticut Dealer Stations Management, LLC ("CDSM"), an entity wholly owned and controlled by the Debtor according to various documents, held a one-percent (1%) interest in, and was designated manager of, CDS; and

**WHEREAS,** CDSM is a debtor in a voluntary bankruptcy case currently pending in this Court as Case No. 13-23994 (the"CDSM Bankruptcy"); and

**WHEREAS**, CDSM schedules its ownership interest in CDS as its sole-asset on its schedules of assets and liabilities filed in the CDSM Bankruptcy; and

**WHEREAS**, no creditors have asserted a proof of claim against CDSM as reflected on the claims register maintained in the CDSM Bankruptcy[2]; and

**WHEREAS**, on July 9, 2011, on account of the Debtor's and CDSM's alleged failure, in their collective capacities as then managers and members of the CT Companies, to comply with the Operating Agreements, the Connecticut Companies commenced litigation in the New York Supreme Court, Westchester County (Index No. 52114/2011) (the "Connecticut Litigation") seeking, among other things, the removal of the Debtor and CDSM as both managers and members of the CT Companies; and

**WHEREAS**, on July 9, 2013, the New York Supreme Court entered a decision and order in the Connecticut Litigation (the "Decision and Order") removing the Debtor and CDSM, and declaring Silverman, as the manager of the respective CT Companies; and

**WHEREAS**, on July 11, 2013, the Decision and Order was appealed by the Debtor (the "Appeal") to the Appellate Division of the Supreme Court for the Second Department, the record for which has been fully perfected by the parties; and

**WHEREAS**, as of the date hereof, oral argument concerning the Appeal has not been calendared, and any disposition on the Appeal has been stayed pending the Chapter 11 Case; and

**WHEREAS**, on August 9, 2013, during the pendency of the Connecticut

---

[2] CDSM lists on its Schedule F: (i) an unsecured nonpriority claim in the amount of zero dollars on behalf GE Capital in relation to a guarantee executed in connection with a loan made to the Connecticut Companies for the acquisition of the gasoline and retail stations from Motiva; and (ii) an unsecured nonpriority claim for an unknown amount on behalf of Silverman related to the Parties Claims, and as released by the Connecticut Companies in Section 4(a) herein.

Litigation, the CT Companies issued written notices stating, in substance, that due to the Debtor's failure to satisfy purported "mandatory" additional capital calls, the Debtor had become a "Failing Member" and a "Defaulting Member" of the CT Companies as that term is defined in the respective Operating Agreements; and

**WHEREAS**, by letter dated September 20, 2013, CDS issued a written notice stating that due to CDSM's purported failure to meet certain of its obligations as a member, CDSM had become a "Defaulting Member" of CDS as that term is defined in the CDS Operating Agreement; and

**WHEREAS**, by letter dated November 13, 2013, due to the Debtor's alleged failure to cure his designation as a purported "Failing Member," Silverman alleges to have properly exercised his right under the Operating Agreements of the CT Companies to purchase the Debtor's ninety-four percent (94%) interest in CDS and ninety-five percent (95%) interest in WFD-CT for a combined total purchase price of $14,026.97 (the "Termination"); and

**WHEREAS,** the Debtor acknowledges having received a check in the amount of $14,026.97, but has not cashed, deposited, indorsed or otherwise negotiated the check, and has at all times since its remittance disputed the validity of the Termination; and

**WHEREAS**, by letter dated November 22, 2013, due to CDSM's alleged failure to cure its designation as a purported "Defaulting Member," Silverman notified CDSM of his election to exercise his right under the CDS Operating Agreement and intent to purchase CDSM's one-percent (1%) in CDS for a purchase price of $705 at a closing scheduled to occur on December 10, 2013 (a date which was sixty (60) days within Silverman's notice of determination of the purchase price as required by the CDS Operating Agreement with respect to the termination of a "Defaulting Member's" interest); and

**WHEREAS**, on December 9, 2013, in an apparent effort to stay the closing of Silverman's purchase of its interest in CDS, CDSM commenced the CDSM Bankruptcy; and

**WHEREAS,** in addition to the Connecticut Litigation**,** the Debtor either individually, or through affiliated entities he controls, remains a party to various lawsuits involving certain Connecticut Companies, including, but not limited to the following: (i) *Wilton, et al. v. ElJamal, et al.*, Index No. 69245/2012 (Westchester County Supreme Court); (ii) *Silverman, et al. v. ElJamal, et ano.*, Index No. 55260/2014 (Westchester County Supreme Court); and (iii) *Silverman, et al. v. ElJamal, et al.*, Adv. Pro. No. 15-8357 (Bankr. SDNY) (collectively, the "Additional Litigations"); and

**Proofs of Claim Submitted by the Connecticut Companies**

**WHEREAS,** the Connecticut Companies have asserted claims, as amended, in the Chapter 11 Case totaling approximately $8,130,467.30 which claims on their face relate to business dealings prior to the Petition Date between the Debtor and the Connecticut Companies (the "Connecticut Related Claims") as follows:

| Claimant | No. | Classification | Amount |
|---|---|---|---|
| CDS | 24-2 | Unsecured | $159,704.44 |
| WFD-CT | 25-2 | Unsecured | $2,970,762.86 |
| Wilton | 26-2 | Unsecured | $5,000,000 |
| | | **Total Amount**: | $8,130,467.30 |

**WHEREAS,** the Trustee, on behalf of the Debtor and his Estate on the one hand and the Connecticut Companies, on the other hand, wishes to finally and fully settle all claims, litigation and disputes arising from or related to the Debtor's and Connecticut Companies' business relations, whether now known or unknown or asserted or assertable, including disputes stemming from: (i) Connecticut Related Claims; (ii) the Connecticut Litigation (including the Appeal); and (iii) the Additional Litigations, as

5

those litigations pertain to the Parties (including the Chapter 11 Estate) (collectively, the "Parties' Claims");  and

**WHEREAS,** the Parties have negotiated at arm's-length and in good faith to resolve the Parties' Claims;  and

**WHEREAS,** the Trustee believes this Settlement Agreement is in the best interest of the Debtor's Estate and the Estate's creditors and other stakeholders, is an appropriate means of resolving the Parties' Claims, and avoids the risk, cost, and uncertainty of prolonged litigation.

**NOW, THEREFORE**, without the admission of liability or the adjudication of any issue of fact or law, subject to the approval of this Settlement Agreement by the Court as part of a plan of reorganization to be promulgated by the Trustee as soon as practicable, and upon the consent and agreement among the Parties, the Parties hereby agree:

1. **Settlement Consideration.** Subject to the terms and conditions set forth herein, the Connecticut Companies will pay the Estate the aggregate sum of $2,738,000 as consideration for the compromises set forth in this Settlement Agreement (the "Settlement Payment") on the terms and conditions set forth below:

    a. **Settlement Payment.** Within three (3) business days following the entry of an Order confirming a Plan and approving this Settlement Agreement (the "Plan Effective Date"), the Connecticut Companies shall pay, or cause to be paid, to the Trustee for the benefit of the Estate the sum of $2,738,000 by wire transfer or bank cashier's check, less the Deposit (defined below) paid under Section 2(b) herein (the "Settlement Payment");  provided, however, the Settlement Payment shall be reduced by the difference , if any, between $1,728,000 and the

6

amount distributable under the Plan on account of the Allowed Connecticut Claims (as defined in Section 1(c) herein).

b. **Deposit.**  Upon execution of the Settlement Agreement, the Connecticut Companies shall immediately deposit with the Trustee by wire transfer or bank cashier's check an amount equal to $273,800 as a good-faith, earnest money deposit (the "Deposit").  The Deposit shall be applied against the Settlement Payment.

c. **Treatment of the Connecticut Related Claims.**  On the Plan Effective Date, the Connecticut Related Claims shall be allowed as general unsecured claims and fixed (without interest) in the reduced aggregate amount of $1,728,000 (the "Allowed Connecticut Claims").  The pro rata allocation of distributions under the Plan on account of the Allowed Connecticut Claims shall be made in accordance with a schedule to be provided by the Connecticut Companies to the Trustee on or before that date which is at least ten (10) business days prior to the date, as fixed by the Court, for the commencement of the hearing to confirm the Plan and to approve the Settlement Agreement.

2. **Related Transactions.**  Subject to the receipt of the Settlement Payment and upon the Plan Effective Date, the Trustee shall transfer to the Connecticut Companies all of the right, title, and interest the Debtor, the Estate, and the Trustee may have in and to:  (a)  CDS; (b) WFD-CT;  and (c) CDSM.

3. **Settlement Effective Date**.  The Settlement Agreement shall become binding on the Connecticut Companies upon execution, and the Trustee upon entry of an Order approving the Settlement Agreement.

4. **Releases.**

a. Upon the Plan Effective Date, the Connecticut Companies do hereby fully, finally and forever waive, release and/or discharge the Trustee, the Debtor, the Estate, CDSM, and the CDSM Bankruptcy Estate from any and all claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or assertable, arising from or otherwise related to the Parties' Claims (the "Connecticut Release") to the maximum extent permitted by law, except as provided herein; provided, further, the Connecticut Companies agree that they will not pursue, or cause CDSM to pursue, any claims against the Trustee, the Debtor or the Estate for any acts or omissions that pre-date the transfer of CDSM to the Connecticut Companies as provided for in Section 2 herein; and provided, further, that nothing in this Section 4 or in the Plan shall prohibit the Connecticut Companies from enforcing their rights under the Plan or this Settlement Agreement.

b. Subject to receipt of the net Settlement Payment, upon the Plan Effective Date, the Trustee, on behalf of himself, the Debtor, the Estate, CDSM, and the CDSM Bankruptcy Estate, does hereby fully, finally and forever waive and release the Connecticut Companies from any and all of the Debtor's claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or assertable by the Trustee on behalf of the Debtor and the Estate, arising from or otherwise related to the Parties' Claims (the "Trustee Release," together with the Connecticut Release, the "Releases") to the

maximum extent permitted by law, except as provided herein and as to the Allowed Connecticut Claims and provided, further, that nothing in this Section 4 or in the Plan shall prohibit the Trustee from enforcing his rights under the Plan or this Settlement Agreement.

5. **Termination of Litigation.** As soon as practicable after the Plan Effective Date, the Parties shall work together to cause the Connecticut Litigation (including the Appeal), and the Additional Litigations, to be dismissed or discontinued as to all parties with prejudice and without costs.

6. **Plan and Court Approval; Contingency if Motion Denied.** The Trustee shall incorporate the terms of this Settlement Agreement into a Chapter 11 plan for the Debtor's Estate (a "<u>Plan</u>") to be filed after the Parties' execution of this Agreement. The Connecticut Companies shall support and reasonably cooperate in good faith with the Trustee in connection with his efforts to promulgate the Plan. If the Court does not enter a Final Order[3] confirming the Plan and approving this Settlement Agreement, or if the Settlement Effective Date does not occur by June 22, 2018, which date may be extended by the Parties' written agreement, then this Settlement Agreement will be considered null and void and cannot be used by any party for any purpose in any other proceeding, lawsuit, arbitration, mediation or similar dispute resolution proceeding, and the Trustee shall immediately return all payments made by the Connecticut Companies to the Trustee under this Agreement.

---

[3] "Final Order" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal or move for reargument or for a rehearing or for leave to appeal has expired, or (b) if an appeal has been sought, no stay (temporary or otherwise) pending appeal has been obtained.

9

7. **Bar Order/Injunction.** The Trustee shall seek entry of a confirmation order that provides for an injunction to permanently enjoin and restrain (a) the Connecticut Companies from asserting against the Debtor any of the Parties' Claims covered by the Connecticut Release; (b) the Trustee, the Debtor, and/or his affiliates, from asserting against the Connecticut Companies any of the Parties' Claims covered by the Trustee Release; and (c) the Parties (including the Debtor or those acting in concert with him) from taking any of the following actions in respect to any Released Claims:

i. the commencement or continuation of any action or proceedings;

ii. the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order;

iii. the creation, perfection or enforcement of any encumbrance of any kind; and/or

iv. the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from any such entity

provided, however, that nothing in Section 4 above or in this Section 7 or in the Plan shall prohibit the Trustee or the Connecticut Companies from enforcing their rights under the Plan or this Settlement Agreement, and seeking damages in connection with any such actions.

**Additional Terms**

8. This Settlement Agreement constitutes the entire agreement and understanding between the Parties regarding the compromise and settlement of the Parties' Claims and it can only be modified by a writing signed by the Parties and approved by the Court.

9. The Parties understand and agree that neither the making of this Settlement Agreement nor anything contained herein shall be construed or considered

in any way to be an admission of guilt, wrongdoing, or noncompliance with federal, state or local law, statute, order or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever on behalf of the Trustee, Debtor or the Estate.

10. Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action among or between the Parties, other than as may be necessary to (a) obtain approval of and enforce this Settlement Agreement or any dispute hereunder; or (b) seek damages or injunctive relief in connection therewith.

11. This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the document to be drafted. Each party warrants that it has been represented and advised by counsel or has had the full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

12. This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original and evidence of this Settlement Agreement may be exchanged by fax or by electronic transmission of a scanned copy of the signature pages or by exchange of originally signed documents, each of which shall be as fully binding on the party as a signed original.

13. Each person who executes this Settlement Agreement represents that he or she is duly authorized to execute this Settlement Agreement. The Trustee represents that he is authorized to enter into this Settlement Agreement and that he and the Debtor and the Estate will be bound thereby, subject to entry of a Final Order approving same.

14. The Parties hereby irrevocably and unconditionally agree that the Court shall retain exclusive jurisdiction over any and all matters arising from or related to this Settlement Agreement and the Plan incorporating the Settlement Agreement that is approved by an Order, including without limitation the interpretation and enforcement of this Settlement Agreement and the Plan.

| | |
|---|---|
| Dated: April 30, 2018<br>New York, New York | Dated: April 30, 2018<br>New York, New York |
| LEON SILVERMAN<br>Individually and on Behalf Of The<br>Connecticut Companies | STEPHEN S. GRAY<br>Not Individually But Solely in His<br>Capacity as Chapter 11 Trustee |
| /s/ Leon Silverman<br>LEON SILVERMAN | /s/ Steven S. Flores<br>TOGUT, SEGAL & SEGAL LLP<br>Scott E. Ratner<br>Steven S. Flores<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000 |