TOGUT, SEGAL & SEGAL LLP  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000  
Steven S. Flores  

*Attorneys for Stephen S. Gray,*  
*Not Individually But Solely in His*  
*Capacity as the Chapter 11 Trustee*

HEARING DATE: TO BE DETERMINED  
OBJECTION DEADLINE: TO BE DETERMINED

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------------x  
                                                    :  
In re:                                          :        Chapter 11  
                                                  :  
SAMMY ELJAMAL,                  :        Case No. 15-22872 (RDD)  
                                                  :  
                   Debtor.        :  
                                                  :  
---------------------------------------------------------------x

# CHAPTER 11 TRUSTEE'S OBJECTION TO PROOF OF CLAIM NUMBER 20-2 FILED BY MUSA ELJAMAL

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

JURISDICTION ..................................................................................................................... 3

BACKGROUND .................................................................................................................... 3

    A.  The Chapter 11 Case ................................................................................................ 3

    B.  The Amended Claim ................................................................................................ 4

RELIEF REQUESTED ........................................................................................................... 7

BASIS FOR RELIEF .............................................................................................................. 7

THE AMENDED CLAIM IS TOTALLY BASELESS ......................................................... 9

NOTICE ................................................................................................................................ 10

NO PRIOR REQUEST ......................................................................................................... 11

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*In re Allegheny Int'l, Inc.*,
  954 F.2d 167 (3d Cir. 1992) ........................................................................................ 8

*In re Bennett*,
  83 B.R. 248 (Bankr. S.D.N.Y. 1988) ........................................................................... 8

*In re Marian T. Vanegas*,
  290 B.R. 190 (Bankr. D. Conn. 2003) ......................................................................... 7

*In re Marino*,
  90 B.R. 25 (Bankr. D. Conn. 1988) ............................................................................. 7

*In re Rockefeller Ctr. Props.*,
  272 B.R. 524 n.13 (Bankr. S.D.N.Y. 2000) ................................................................. 7

*In re St. Johnsbury Trucking Co.*,
  206 B.R. 318 (Bankr. S.D.N.Y. 1997) ......................................................................... 8

*In re Waterman Steamship Corp.*,
  200 B.R. 770 (Bankr. S.D.N.Y. 1996) ......................................................................... 8

*In re WorldCom, Inc.*,
  No. 02-13533, 2005 WL 3832065 (Bankr. S.D.N.Y. 2005) ........................................ 8

**Statutes**

11 U.S.C. § 105 ............................................................................................................ 3, 6

11 U.S.C. § 502 ........................................................................................................ 3, 6, 7

28 U.S.C. § 157 ................................................................................................................ 3

28 U.S.C. § 1334 .............................................................................................................. 3

28 U.S.C. § 1408 .............................................................................................................. 3

28 U.S.C. § 1409 .............................................................................................................. 3

**Rules**

Fed. R. Bankr. P. 3001 .............................................................................................. 3, 6, 7

Fed. R. Bankr. P. 3003 ..................................................................................................... 4

Fed. R. Bankr. P. 3007 ................................................................................................. 3, 6

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the estate of Sammy ElJamal (the "Debtor") in the above-captioned case, by his attorneys, Togut, Segal & Segal LLP, respectfully makes this objection (the "Objection") to proof of claim number 20-2 attached hereto as Exhibit A (the "Amended Claim") filed by the Debtor's father, Musa ElJamal ("Musa"). Pursuant to sections 105(a) and 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Trustee seeks an order disallowing and expunging the Amended Claim in its entirety. In further support of this Objection, the Trustee submits the *Declaration of Steven S. Flores, Esq.* (the "Flores Decl.") attached hereto as Exhibit B, and respectfully states:

## PRELIMINARY STATEMENT

On April 30, 2018, the Trustee filed his Chapter 11 Plan and Disclosure Statement. [Dkt. Nos. 726 and 727].[1] As reflected in those documents, the work undertaken by the Trustee and his professionals less than one year ago has resulted in claim settlements and related transactions that (if approved) will generate approximately $15.5 million in cash consideration for the benefit of the Debtor's Chapter 11 estate, while reducing the unsecured claim pool by nearly $10 million. These multi-party, comprehensive settlements and transactions, as incorporated in the recently filed Chapter 11 Plan and discussed in more detail in the accompanying Disclosure Statement, set the stage for a largely consensual confirmation process (with the sole exception being the Debtor and, perhaps, his father Musa) that will allow the

---

[1] Shortly after the filing of this Objection, the Trustee expects to amend his plan to reflect the expectation that all *bona fide* creditors will be paid in full.

Debtor to finally exit bankruptcy with substantial assets intact, resolve multiple ancillary litigations that have been pending in some cases for years before various federal and state courts, and bring clarity and, it is hoped, finality to various affiliated Chapter 11 cases (which are pending before this Court).  The Amended Claim filed by the Debtor's father (Musa), only *after* the Trustee's appointment, stands as one of the final hurdles to achieving the foregoing.

Viewed most favorably, the Amended Claim is nothing more than an attempt by Musa to gain control over the general unsecured claim pool and, thus, presumably leverage over the Trustee by asserting millions of dollars of totally baseless claims against his son, the Debtor.  Motives aside, now that the Trustee has obtained from Musa and his professionals all so-called "support" (and explanations) for the Amended Claim, it is clear that the Amended Claim is utterly baseless and must be disallowed in its entirety.

At best, the Amended Claim demonstrates a fundamental misunderstanding of bankruptcy law and process, and it treads dangerously close to overstepping the bounds of zealous advocacy.  Even assuming the fourteen (14) alleged "advances" which Musa now seeks to recover from his son were made at all:  (i) the advances were purportedly made almost exclusively by third parties other than Musa;  (ii) the advances were largely received by third parties other than the Debtor;  and (iii) perhaps most importantly, there is not one shred of evidence that any of these alleged advances were in fact loans by Musa to the Debtor that were made on the condition, or with the expectation, that they were to be repaid by the Debtor.  There are no promissory notes, no loan agreements, and nothing indicating that interest charges or principal payments were ever sought by Musa from the Debtor or paid by the Debtor to his father.

2

This claim objection should not be necessary. The Amended Claim is frivolous, lacking any basis in law or fact. By way of example only, some of the "backup" that Musa has provided to support a Court-Ordered payment to himself shows that Musa is seeking payment for amounts paid by the Debtor (if the documentary "support" provided is to be believed). *See, e.g.,* Flores Decl. Ex. 15 ($250,000 personal check *from* Sammy ElJamal to third party). Despite these obvious defects, Musa has refused the Trustee's request to voluntarily withdraw or subordinate the Amended Claim. For these reasons and those that follow, the Trustee believes the Amended Claim filed by Musa against his son, the Debtor, must be disallowed and expunged in its entirety.

## JURISDICTION

1. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Objection in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rules 3001 and 3007.

## BACKGROUND

**A.    The Chapter 11 Case**

3. On June 18, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

4. The Debtor has numerous interests in businesses primarily involving the sale of gasoline and the operation of gas stations in Metropolitan New York and Connecticut [*Affirmation of Sammy ElJamal*, Dkt. No. 9].

5. On July 16, 2015, the United States Trustee (the "UST") appointed the Official Committee of Unsecured Creditors in this case (the "Committee").

3

6.     Pursuant to the *Order Granting Motion to Set Last Day to File Proofs of Claims*, dated October 15, 2015 [Dkt. No. 121] (the "Bar Date Order") and Bankruptcy Rule 3003(c)(3), the Court fixed **November 25, 2015** as the general bar date for filing proofs of claim against the Debtor's estate.

7.     By application dated March 7, 2017, the UST moved for the appointment of a Chapter 11 trustee [Dkt. No. 469]. The Debtor contested the motion [Dkt. No. 577, as amended]. Following a hearing held on June 5, 2017, the Court directed the UST to appoint a Chapter 11 trustee.

8.     On June 6, 2017, the Court entered its *Order Pursuant to 11 U.S.C. § 1104(a)(2) Directing the Appointment of a Chapter 11 Trustee* [Dkt. No. 600].

9.     Shortly thereafter, on June 8, 2017, the Court entered its *Order Approving the Appointment of Chapter 11 Trustee*, pursuant to which Mr. Gray was appointed as Chapter 11 Trustee herein [Dkt. No. 606]. The Trustee has duly qualified, and is acting as Chapter 11 Trustee.

**B.     The Amended Claim**

10.    On November 20, 2015, Musa filed his initial proof of claim number 20-1 against his son, the Debtor, asserting a claim in an amount "to be determined" based on "advanced monies." [Proof of Claim No. 20-1] (the "Original Claim").

11.    On May 4, 2016, the Committee filed an objection to the Original Claim, arguing, among other things, that Musa failed to attach any supporting documentation. [Dkt. No. 260].

12.    On October 4, 2017, following the appointment of the Chapter 11 Trustee, Musa filed the Amended Claim, which assigned a dollar value of $7,621,386.18 to what had been the Original Claim, thereby making it the largest claim in the Chapter 11 case. Notably, there is no indication that the amounts of the alleged "advances" were not

4

known by Musa at the time the Original Claim was filed, thereby lending support to the inescapable conclusion that the Amended Claim was filed by Musa in an effort to control the unsecured claim pool *after* the Chapter 11 Trustee was appointed.

13.     Although the Amended Claim is based on amounts allegedly advanced by Musa to his son, the Debtor, the vast majority of the alleged advances at issue indisputably came from entities other than Musa.  Likewise, it appears that virtually all of the alleged advances were made directly to entities other than the Debtor. Importantly, the Amended Claim does not demonstrate that the Debtor and his father, Musa, intended to treat the alleged advances as loans or obligations that the Debtor would be required to satisfy.

14. Specifically, the Amended Claim identified fourteen (14) "advances" or "payments" for which the Debtor is now allegedly obligated to repay his father, Musa, as follows:

| | Alleged Advances/Payments Identified in the Amended Claim | |
|---|---|---|
| Item No. | Description | Claim Amount |
| 1 | Fees paid to law firm Collier Halpern | $349,108.55 |
| 2 | Fees paid to Tom Decea's law firm | $332,743.00 |
| 3 | Fees paid to Al Pirro, Esq. | $387,260.26 |
| 4 | Fees paid to John Morgan, Esq. | $187,448.88 |
| 5 | Fees paid to Cuddy & Fedder | $44,929.00 |
| 6 | Fees paid to Platzer, Swergold | $84,209.03 |
| 7 | Fees paid to Wilson Elser Spolzino | $17,500.00 |
| 8 | Amounts paid to WFD-CT | $3,341,957.50 |
| 9 | Amounts paid to purchase interest in NYFD | $937,968.00 |
| 10 | Amounts paid to purchase interest in Metro NY | $99,218.50 |
| 11 | Amounts related to Best Rent sale | $488,789.22 |
| 12 | Amounts advanced by Musa on behalf of Sammy | $908,569.74 |
| 13 | NJ Shell Security Deposit (funds transferred to Sammy) | $125,000.00 |
| 14 | Payments to reduce 1st Mortgage on Sammy's House | $316,684.50 |
| | Total: | $7,621,386.18[2] |

15. Like the Original Claim, the Amended Claim does not include documentation (or sufficient explanations) providing either a factual or legal basis for the Amended Claim and the amounts sought by Musa from the Debtor.

16. On March 7, 2018, counsel for the Trustee sent a letter to Musa's counsel, Bruce Bronson, Esq. ("Musa's Counsel"), who prepared, filed and signed the Amended Claim, requesting copies of any and all documents (the "Documentation") that he reviewed and relied upon as supporting the amounts sought from the Debtor in the Amended Claim, before attesting to its veracity and affixing his signature and filing the Amended Claim in the Chapter 11 case. *See* Flores Decl. Ex. 1.

---

[2] The total amount listed in the Amended Claim is $7,621,386.67, but the math on that number is not correct. The sum of the line items 1 through 14 included on Schedule A to the Amended Claim, as detailed above, equals $7,621,386.18.

6

17. In response to the Trustee's written request, Musa's Counsel furnished a haphazard array of materials to the Trustee and, subsequently, confirmed that the Documentation provided constituted the full universe of materials Musa's Counsel relied on in preparing, signing and filing the Amended Claim. *See* Flores Decl. Ex. 2.[3]

18. Based on a careful review and analysis of the materials furnished in "support" of Musa's Amended Claim, the Trustee (in consultation with his professionals) determined that the Documentation does not provide any factual or legal support to the Amended Claim whatsoever. To the contrary, the Documentation provided only serves to establish why the Amended Claim is utterly baseless and should be disallowed and expunged in its entirety.

## RELIEF REQUESTED

19. Pursuant to sections 105 and 502 of the Bankruptcy Code and Bankruptcy Rules 3001 and 3007, the Trustee seeks entry of an order, substantially in the form annexed hereto as Exhibit C (the "Proposed Order"), disallowing and expunging the Amended Claim.

## BASIS FOR RELIEF

20. Section 502(b) of the Bankruptcy Code provides, in pertinent part:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
>   (1) such claim is unenforceable against the debtor and property of the debtor, under any

---

[3] Out of an abundance of caution, on March 23, 2018, the Trustee also served a Bankruptcy Rule 2004 subpoena on Musa. No new "support" was produced in response to that subpoena. *See* Flores Decl. Ex. 3.

7

>> agreement or applicable law for a reason other than because such claim is contingent or unmatured;

11 U.S.C. § 502(b).

21. Bankruptcy Rule 3001(c)(1) provides, in relevant part:

> [W]hen a claim . . . is based on a writing, **a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim**.

Fed. R. Bankr. P. 3001 (Emphasis added); *see also* Bankruptcy Rule 3007(a) (requiring that objections to claims be in writing).

22. As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim under Bankruptcy Code section 502(a). *See In re Marian T. Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 n.13 (Bankr. S.D.N.Y. 2000). To receive the benefit of *prima facie* validity, however, "the proof of claim must 'set forth facts necessary to support the claim.'" *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).

23. A party objecting to the proof of claim must only provide evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim. *See In re Waterman Steamship Corp.*, 200 B.R. 770 (Bankr. S.D.N.Y. 1996). Once this occurs, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re WorldCom, Inc.*, No. 02-13533, 2005 WL 3832065 at *4 (Bankr. S.D.N.Y. 2005) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)); *see also In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997). The claimant must prove the claim, not sit back while the objector attempts to disprove it. *See In re Bennett*, 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988).

8

## THE AMENDED CLAIM IS TOTALLY BASELESS

24.     The Amended Claim, as filed, fails to attach any documentation that establishes: (i) whether the alleged advances were in fact made; (ii) when such alleged advances were made and, if made, that it was Musa who made the advance and his son, the Debtor, who was the recipient; and (iii) if the parties intended to treat the sums listed in the Amended Claim as loans to be repaid by the Debtor.[4]

25.     Those fundamental flaws aside, each alleged component of the Amended Claim is baseless. The Documentation makes clear that *even if* the fourteen (14) alleged advances were, in fact, made, *they were made by entities other than Musa to parties other than the Debtor*. Moreover, the Documentation fails to establish that the Debtor and his father, Musa, intended to treat the alleged advances as loans or obligations that the Debtor was required to repay. By way of example, the Documentation does not include any loan agreements, promissory notes or any other evidence that the alleged "advances" were intended to constitute loans or obligations that the Debtor would be required to repay.

26.     These key, dispositive facts are not disputed. By way of example only, the Amended Claim itself states:

---

[4] This omission is particularly significant in this context where the Debtor's father has agreed to pay – *without* a right to reimbursement – at least some of the legal fees incurred by his son in this Chapter 11 case (and others). *See, e.g.*, *Declaration of Philip M. Halpern Pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 117-1] at ¶ 6 ("[t]he Firm's fees for services rendered, or to be rendered, in connection with this Debtor, have been and will be paid by third parties, specifically Musa Eljamal, the Debtor's father, not the Debtor"); *Declaration of Robert A. Spolzino Pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure* [Dkt. No. 60-2] at ¶ 5 ("Wilson Elser's fees for services rendered, or to be rendered, in connection with this Debtor, have been and will be paid by third parties, not the Debtor"); *Order Granting (I) Third Application of Penachio Malara, LLP for Allowance of Interim Compensation and Reimbursement of Expenses and (II) First Interim Application of Wilson, Elser, Moskowitz, Eldelman & Dicker, LLP as Special Counsel for the Debtor for Allowance of Interim Compensation and Reimbursement of Expenses* [Dkt. No. 390 at 2] (stating "that the compensation granted hereunder to Wilson, Elser…shall not be paid by the Debtor or from funds held in escrow on behalf of the Debtor or his estate, but by Musa Eljamal or an entity controlled by him").

> [t]he items marked with a * below were paid by Centralized Management Services, Inc. ("CMS"). CMS is owned 50% by Musa ElJamal and 50% by Sammy ElJamal. **Because CMS made payments to various law firms or other entities on behalf of Sammy ElJamal as personal expenses, Musa ElJamal has a claim for his 50% share of such disbursements.**
>
> \*    \*    \*    \*
>
> [i]tems marked with ** were either paid by CMS or Wholesale Fuel Distributors, Inc. (also owned 50% by Sammy and Musa).

Amended Claim, Exhibit A (Emphasis added).

27.  To the extent **entities** other than Musa, personally, made the alleged advances at issue, any claims for repayment of those advances are assertable only by the entities themselves. Importantly, none of the actual entities identified in the Amended Claim as making the advances filed proofs of claim against the Debtor. *See* Schedule 1 (attached hereto) (Items 1-11, 13 and 14). And the time to do so has long expired with the passage of the claims bar date on November 25, 2015.

28.  In addition to the general objections described above, specific objections to each line item in the Amended Claim are itemized on the attached "**Schedule 1**," which is incorporated herein by reference.

29.  Musa has had many opportunities to produce documents or other evidence to provide the legal and factual support for the Amended Claim. He has failed to do so at every turn and his unsupported contentions must be rejected once and for all, and the Amended Claim disallowed and expunged in its entirety.

## NOTICE

30.  Notice of this Objection has been given to (a) the United States Trustee for the Southern District of New York; (b) counsel for the Debtor; (c) counsel for the Official Committee of Unsecured Creditors; (d) counsel for Musa; and (e) all parties

who have filed a Notice of Appearance in the Case. The Trustee submits that no other or further notice of this Objection need be provided.

## NO PRIOR REQUEST

31. No previous application for the relief sought herein has been made by the Trustee to this or any other Court.

## CONCLUSION

**WHEREFORE** the Trustee respectfully requests entry of the Proposed Order, sustaining the Objection, disallowing the Amended Claim in its entirety, and granting the Trustee such other and further relief as is just and proper.

Dated: May 16, 2018
      New York, New York

    STEPHEN S. GRAY
    Not Individually But Solely in His
    Capacity as Chapter 11 Trustee
    By His Attorneys,
    TOGUT, SEGAL & SEGAL LLP
    By:

    */s/ Steven S. Flores*
    STEVEN S. FLORES
    A Member of the Firm
    One Penn Plaza, Suite 3335
    New York, New York 10119
    (212) 594-5000

## Schedule 1

| | Line Items in the Amended Claim | | |
|---|---|---|---|
| | Description | Claim Amount | Specific Objections |
| 1 | Fees paid to law firm Collier Halpern | $349,108.55 | Paid **from** CMS and WFD Inc.  Paid **to** third party.  No evidence of what work was done by firm (and for who).  Flores Decl. Ex. 4.  No proof that the money was intended to be repaid. |
| 2 | Fees paid to Tom Decea's law firm | $332,743.00 | Paid **from** CMS, Armonk Snack Mart, and WFD Inc.  Paid **to** third party.  No evidence of what work was done by firm (and for who).  *Id.*  Ex. 5.  No proof that the money was intended to be repaid. |
| 3 | Fees paid to Al Pirro, Esq. | $387,260.26 | Paid **from** CMS.[5]  Paid **to** third party.  No evidence of what work was done by firm (and for who).  *Id.*  Ex. 6.  No proof that the money was intended to be repaid.  And some of the work done by Al Pirro appears to have been done for, or at the direction of, Musa.  *See* e-mail, dated November 30, 2011 (the penultimate page of Exhibit 6). |
| 4 | Fees paid to John Morgan, Esq. | $187,448.88 | Paid **from** CMS and WFD Inc.  Paid **to** third party.  No evidence of what work was done by firm (and for who).  *Id.*  Ex. 7.  No proof that the money was intended to be repaid. |
| 5 | Fees paid to Cuddy & Fedder | $44,929.00 | Paid **from** CMS.  Paid **to** third party. No evidence of what work was done by firm (and for who).  *Id.*  Ex. 8.  No proof that the money was intended to be repaid. |
| 6 | Fees paid to Platzer, Swergold | $84,209.03 | Paid **from** CMS.  Paid **to** third party.  No evidence of what work was done by firm (and for who).  *Id.*  Ex. 9.  No proof that the money was intended to be repaid. |
| 7 | Fees paid to Wilson Elser Spolzino | $17,500.00 | Paid **from** CMS.  Paid **to** third party.  *Id.*  Ex. 10.  No proof that the money was intended to be repaid. |

---

[5] While the overwhelming amount of these advances were made by CMS, the supporting documentation indicates that three checks that total $60,000 came from Musa and Asma ElJamal's Wells Fargo Account.

| | **Line Items in the Amended Claim** | | |
|---|---|---|---|
| | Description | Claim Amount | Specific Objections |
| 8 | Amounts paid to WFD-CT | $3,341,957.50 | Paid **from** South Greenwich Convenience Mart Inc., CMS, **Sammy ElJamal**, and Connecticut Dealer Stations, LLC.  Paid **to** third parties.  *Id.* Ex. 11.  No proof that the money was intended to be repaid. |
| 9 | Amounts paid to purchase interest in NYFD | $937,968.00 | No evidence that the money was paid by Musa (or who the payments were made to).[6]  *Id.* Ex. 12.  No proof that the money was intended to be repaid. |
| 10 | Amounts paid to purchase interest in Metro NY | $99,218.50 | No evidence that the money was paid by Musa (or who the payments were made to).  Flores Decl.  Ex. 13.  No proof that the money was intended to be repaid. |
| 11 | Amounts related to Best Rent sale | $488,789.22 | *Id.* Ex. 14.  No proof that the money was intended to be repaid. |
| 12 | Amounts advanced by Musa on behalf of Sammy | $908,569.74 | No proof that the money was advanced or was intended to be repaid.  *Id.* Ex. 15.  Indeed, the last two pages of Exhibit 15 indicate that the amounts allegedly paid were "loans" to entities named "Airport Mart" and "WFD Inc.," not the Debtor. |
| 13 | NJ Shell Security Deposit (funds transferred to Sammy) | $125,000.00 | No evidence that the money was paid by Musa (or who it was paid to).  *Id.* Ex. 16.  No proof that the money was intended to be repaid.  And the basis for this claim appears to be a check from the Debtor, not Musa. |
| 14 | Payments to Sammy to reduce 1st Mortgage on Sammy's House | $316,684.50 | No evidence that the money was paid by Musa.  *Id.* Ex. 17.  No proof that the money was intended to be repaid. |

---

[6]  The exhibit that purports to support line item 9 lists the Debtor's capital contribution as $1,785,937.50, while the Amended Claim lists the total amount expended as $1,875,937.00.