EXHIBIT 2

# SECOND AMENDED AND RESTATED SETTLEMENT AGREEMENT BY AND AMONG CHAPTER 11 TRUSTEE AND NEW YORK FUEL HOLDINGS, LLC, *ET AL.*

This settlement agreement (the "Settlement Agreement") is entered into by and among, Stephen S. Gray, not individually but solely in his capacity as Chapter 11 trustee (the "Trustee") for the Chapter 11 estate (the "Estate") of Sammy ElJamal ("ElJamal" or the "Debtor") in the bankruptcy case currently pending in the Southern District of New York (Case No. 15-22872 (RDD)) (the "Chapter 11 Case"), and James Weil ("Weil"), in both his individual capacity and on behalf of the following entities which, except as otherwise provided, Weil owns or otherwise controls: (i) New York Fuel Holdings, LLC ("NYFH"); (ii) New York Fuel Distributors, LLC ("NYFD"); (iii) Metro NY Dealer Stations, LLC ("Metro NY"); (iv) New York Dealer Stations LLC ("NY Dealer"); and New York Dealer Stations Management LLC ("NY Dealer Stations") (collectively, the "NY Companies"); (iv) JMM Fuelco, LLC ("JMM"); (v) Weil Family II LLC; (vi) Amsterdam 181 Realty LLC; (vii) Scarsdale Fuel and Food Corp; (viii) CoCo Farms of Elmsford, Inc.; and (ix) SRG Fuelco, LLC ("SRG," owned and/or controlled by Leon Silverman), and Marc Weil (collectively, with Weil and Marc Weil, the "NY Entities" and, together with the Trustee, the "Parties"). This Settlement Agreement is intended to supersede and replace the settlement agreement entered into among the Parties dated as of April 30, 2018, as amended on June 22, 2018.

## RECITALS

**The Bankruptcy Cases**

**WHEREAS,** on June 18, 2015 (the "Petition Date"), the Debtor commenced a voluntary case under Chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"); and

**WHEREAS**, five entities, owned in whole or in part by the Debtor, have also commenced Chapter 11 cases, which have not been substantively consolidated or jointly administered with the Debtor's individual Chapter 11 Case; the cases are:

- In re: Yonkers Central Avenue Snack Mart, Inc. ("Yonkers"), Case No. 15-22824 (RDD);

- In re: MS Scarsdale Snack Mart, Inc. ("MS Scarsdale"), Case No. 16-22043 (RDD);

- In re: MS Elmsford Snack Mart, Inc. ("MS Elmsford"), Case No. 16-22106 (RDD);

- In re: Connecticut Dealer Stations Management, LLC ("CDSM"), Case No. 13-23994 (RDD); and

- In re: Armonk Snack Mart, Inc. ("Armonk"), Case No. 15-22375 (RDD).[1]

**WHEREAS**, on June 6, 2017, the Court entered an order directing the United States Trustee to appoint a Chapter 11 trustee for the Estate of the Debtor [Dkt. No. 600]; and

**WHEREAS,** on June 8, 2017, the Court entered the *Order Granting the Application for Appointment of Chapter 11 Trustee*, pursuant to which the Trustee was appointed as the Chapter 11 Trustee herein [Dkt. No. 606]; and

**Disputes Between the Debtor and the NY Entities**

**WHEREAS,** as of the Petition Date, the Debtor and certain entities he owns and/or controls, including: (i) MS Elmsford that, according to books and records made available to the Trustee and to representations made by the Debtor and others, is owned

---

[1] CDSM and Armonk, and their respective bankruptcy cases, are not involved in, or resolved by, this Settlement Agreement.

2

50% by the Debtor and 50% by Marc Weil; (ii) MS Scarsdale that, according to books and records made available to the Trustee and to representations made by the Debtor and others, is owned 50% by the Debtor and 50% by Marc Weil; and (iii) Yonkers that, according to books and records made available to the Trustee and to representations made by the Debtor and others, is owned 100% by the Debtor (MS Elmsford, MS Scarsdale, and Yonkers are hereinafter collectively referred to as the "<u>Debtor Entity Stations</u>") were involved in various lawsuits with business associates and related parties, including certain NY Entities; and

**WHEREAS,** in agreements executed in 2010 by the Debtor on behalf of Croton Falls Gas Mart, Inc. ("<u>Croton Falls</u>") and Tuckahoe Road Snack Mart, Inc. ("<u>Tuckahoe</u>") with the NY Companies (such agreements are listed on Schedule 1 to this Settlement Agreement and hereinafter referred to as, the "<u>Croton Falls Agreements</u>" and the "<u>Tuckahoe Agreements</u>," respectively), the Debtor represented that he owned 100% of Croton Falls and Tuckahoe, but since then has claimed that: (i) Croton Falls is owned approximately fifty percent (50%) by his father (Musa Eljamal) and fifty percent (50%) by his brother-in-law (Issa Issa); and (ii) Tuckahoe is owned approximately fifty percent (50%) by the Debtor and fifty percent (50%) by his father; and

**WHEREAS**, the NY Companies dispute the Debtor's representations regarding ownership of Croton Falls and Tuckahoe, and claim that if the ownership of Croton Falls and Tuckahoe is as Debtor now claims, then the NY Companies have fraud, breach of contract, and other claims including the right to terminate; and

**WHEREAS**, under the present circumstances, the Trustee's rights in and control over Croton Falls and Tuckahoe are uncertain without further litigation; and

**WHEREAS,** beginning in 2010, the Debtor Entity Stations and NYFD executed certain agreements, listed in Schedule 2 to this Agreement (collectively, the "<u>Debtor

Entity Station Agreements")[2], that enable the Debtor Entity Stations to operate gasoline and retail businesses at locations owned or controlled by the NY Companies; and

**WHEREAS**, the NY Entities contend that they have effectively terminated the Station Agreements, but the Debtor disputes this contention, and some or all of the Station Agreements are the subject of pending litigation; and

**WHEREAS,** prior to the Petition Date, the Debtor commenced a lawsuit against certain NY Entities relating to the Debtor's interest in the NY Companies, which lawsuit was removed to this Court by the Debtor and remains pending in the Chapter 11 Case as Adversary Proceeding No. 15-08358 (the "NYFD Lawsuit"); and

**WHEREAS,** on December 28, 2016, the Court entered an order in the NYFD Lawsuit granting, in part, and denying, in part, summary judgment for the Debtor [Adv. Pro. Dkt. No. 24] (the "Summary Judgment Order"); and

**WHEREAS,** the Summary Judgment Order provided, among other things, that the Debtor and, thus, his Chapter 11 Estate, holds a fifty percent (50%) interest in NY Metro and NYFH, subject to the terms and conditions of those entities' respective Operating Agreements (and distributive provisions therein); and

**WHEREAS,** the Summary Judgment Order has been appealed by the NY Entities but the appeal has not been perfected; and

**WHEREAS,** the Summary Judgment Order further provided that certain of the NY Entities had failed to make proper distributions under the respective Operating Agreements of the NY Companies; and

---

[2] The Debtor Entity Station Agreements, the Croton Falls Agreements, and the Tuckahoe Agreements are collectively referred to as the "Station Agreements."

4

**WHEREAS,** on May 4, 2017, RSM USA LLP ("RSM"), the Debtor's retained financial advisor, filed its *Report Regarding Calculation of Distributions Payable and Adjustments to Capital Account of Sammy ElJamal for Metro NY Dealer Stations, LLC and NY Fuel Holdings, LLC* [Dkt No. 588] (the "RSM Report") and concluded that the Debtor is owed $3,316,564 in past due distributions on account of his interest in the NY Companies, and his capital account on account of his interest in the NY Companies should be increased by a total of $9,754,892; and

**WHEREAS,** the Trustee and/or his professionals have reviewed the RSM Report and the applicable Operating Agreements of the NY Companies, engaged in discussions with RSM (and other retained professionals), and has determined to resolve those disputes as provided herein; and

**WHEREAS,** the Debtor either individually, or through entities he controls, remains a party to various lawsuits involving certain NY Entities, including but not limited to the following:

a. NY Fuel Distributors, LLC v. Yonkers Central Ave. Snack Mart Inc., Adv. Pro. No. 15-08335 (Bankr. S.D.N.Y.) (affiliated Chapter 11 Case No. 15-22824);

b. MS Scarsdale Snack Mart, Inc. v. NY Fuel Distributors LLC, Adv. Pro. No. 16-08207 (Bankr. S.D.N.Y.) (removed from Supreme Court, Westchester County, Index No. 68766/2012) (affiliated Chapter 11 Case No. 16-22043);

c. MS Elmsford Snack Mart, Inc., *et al.* v. James A. Weil, individually and as a Manager of NY Fuel Distributors, LLC, *et al.*, Case No. 14-CV-02226 (S.D.NY. 2014);

d. Croton Falls Gas Mart, Inc., Tuckahoe Road Snack Mart, Inc., Rt. 1 Port Chester Snack Mart, Inc., Yonkers Central Ave. Snack Mart, Inc. f/k/a Food and Gas of Yonkers, Inc., Buchanan Food & Gas, Inc. South Broadway Snack Mart, Inc., 202 Gas Mart, Inc., and Croton Gas Mart, Inc. v. NY Fuel Distributors, LLC and Metro NY Dealer Stations, LLC, Case No. 11-CV-06621 (S.D.N.Y. 2011);

  e. Metro Dealer Stations, LLC, *et al.* v. Sammy ElJamal, *et al.*, Index No. 61492/2012 (Westchester County Supreme Court);

  f. SRG Fuelco, LLC, The Weil Family II, LLC, Metro NY Dealer Stations LLC v. Samm ElJamal, Adv. Pro. No. 15-08362(Bankr. S.D.N.Y 2015) (affiliated Chapter 11 Case No. 15-22824); and

  g. Sammy ElJamal v. Aljamal *et al.* (Supreme Court, Westchester County, Index No. 64859/2015) (stayed by an order dated August 11, 2016).

(collectively, the "NY Litigations").

**Proofs of Claim Submitted by the NY Entities**

**WHEREAS,** the NY Entities have asserted secured and unsecured claims in the Chapter 11 Case totaling approximately $6,381,275, which claims on their face relate to business dealings prior to the Petition Date involving the Debtor and the NY Entities (the "NY-Related Claims"), more particularly described in Schedule 2.

**WHEREAS,** the Trustee, on behalf of the Debtor and his Estate, on the one hand, and the NY Entities, on the other hand, wish to finally and fully settle all claims, litigation and disputes arising from or related to the Debtor's and NY Entities' business relations, whether now known or unknown or asserted or assertable, that are the subject of the: (i) NY-Related Claims; (ii) the NYFD Lawsuit; and (iii) the NY Litigations, as those litigations pertain to the Parties (including the Chapter 11 Estate) (collectively, the "Parties' Claims"); and

**WHEREAS,** the Parties have negotiated at arms'-length and in good faith to resolve the Parties' Claims; and

**WHEREAS,** the Trustee believes this Settlement Agreement is in the best interest of the Debtor's Estate and the Estate's creditors and other stakeholders, is an appropriate means of resolving the Parties' Claims, and avoids the risk, cost, and uncertainty of prolonged litigation.

**NOW, THEREFORE**, without the admission of liability or the adjudication of any issue of fact or law, subject to the approval of this Settlement Agreement by the Court as part of a plan of reorganization to be promulgated by the Trustee as soon as practicable, and upon the consent and agreement among the Parties, the Parties hereby agree:

1. **Plan and Court Approval; Contingency if Confirmation Denied.** The Trustee shall incorporate the terms of this Settlement Agreement into a Chapter 11 Plan for the Debtor's Estate (a "Plan") to be filed as soon as practicable following the Parties' execution of this Agreement. The NY Entities shall support and cooperate in good faith with the Trustee in connection with his efforts to promulgate the Plan. If the Plan Effective Date (as defined in Section 2 below) does not occur within sixty (60) calendar days after the date which the Court enters a Final Order approving the Plan and Settlement Agreement, which date may be extended by the Parties' written agreement, then this Settlement Agreement will be considered null and void and cannot be used by any party for any purpose in any other proceeding, lawsuit, arbitration, mediation or similar dispute resolution proceeding, and the Trustee shall immediately return all payments made by the NY Entities to the Trustee under this Agreement

2. **Settlement Consideration.** Subject to the terms and conditions set forth in this Settlement Agreement, the NY Entities will pay the Estate the aggregate sum of $14,800,000 as consideration for the compromises set forth in this Settlement Agreement on the terms and conditions set forth below:

    a. Upon the entry of a Final Order confirming a Plan and approving this Settlement Agreement (the "Plan Effective Date"), the NY Entities will pay, or cause to be paid, to the Trustee for the benefit of the Estate the sum of $14,800,000 by wire transfer or bank cashier's check, less the

Deposit (defined below) paid under Section 2(b) herein (the "Settlement Payment"); provided, however, the Settlement Payment shall be reduced by the difference, if any, between $3,000,000 and the amount distributable under the Plan on account of the Allowed NY Claims (as defined in Section 2(d) herein).

b. **Deposit:** Upon execution of this Settlement Agreement, the NY Entities shall immediately deposit with the Trustee by wire transfer or bank cashier's check an amount equal to $1,280,000 as a good-faith, earnest money deposit (the "Deposit"). The Deposit shall be applied against the Settlement Payment and may be used to fund the escrows provided for in Section 2 (c) below.

c. **Escrows.**

   i. **Yonkers Station Damages Escrow**: Upon receipt of the Deposit by the Trustee, a total of $300,000 of the Settlement Payment shall be placed and held in escrow by the Trustee and, to the extent necessary, be made available to the NY Entities as reimbursement for the cost of repairing any material physical damage to any of the real or personal property at the location where the Yonkers station operates (the "Yonkers Station") during the period between the filing of this Settlement Agreement and the Plan Effective Date that disrupts the operation of the Yonkers Station and is intentionally or recklessly caused by the Debtor, or those acting in concert with him, not including any ordinary wear and tear or damage caused in the ordinary course of operations of the Yonkers Station, (the "Damages Escrow"). Reimbursement shall be made only if the NY

Entities submit to the Trustee within fifteen (15) days of the Plan Effective Date proof of physical damage that is in the Trustee's reasonable judgment sufficient to establish the damage, both physical and monetary, described above. Upon the NY Entities obtaining an order of eviction requiring Yonkers to vacate the station (subject only to the presence of the Dunkin Donut franchise currently operated by an entity not affiliated with the Parties (the "DD Operation")), any unused portion of the Damages Escrow shall be released to the Trustee without demand.

ii. **Contingent Settlement Payment Reduction:** A total $500,000 of the Settlement Payment shall be placed and held in escrow by the Trustee (the "Payment Reduction Escrow") and, to the extent necessary, be released to the NY Entities as a Settlement Payment reduction to account for the reasonable cost of terminating all agreements, to the extent termination is disputed, with Yonkers, Tuckahoe, Croton Falls and/or the Debtor, or those acting in concert with him, and obtaining a court order requiring Yonkers, Tuckahoe, Croton Falls and/or the Debtor or those acting in concert with him to vacate the stations (the "Contingent Settlement Payment Reduction"). The Contingent Settlement Payment Reduction shall be triggered only if litigation is necessary to achieve such termination or to obtain an order requiring Yonkers, Tuckahoe, Croton Falls and/or the Debtor or those acting in concert with him to vacate the stations, and any request for reimbursement shall be supported by proof of payment of

reasonable costs incurred by the NY Entities in connection with the commencement and prosecution of the necessary litigation. The Payment Reduction Escrow shall be released to the Trustee without demand if (i) litigation concerning the agreements referenced directly above is not necessary; (ii) such litigation is not commenced within 30 days after the Plan Effective Date; or (iii) upon the effective termination of the Yonkers, Croton Falls and Tuckahoe Agreements and obtaining an order requiring Yonkers, Tuckahoe, Croton Falls and/or the Debtor or those acting in concert with him to vacate the stations.

iii. Notwithstanding Sections 2(c)(i) and (ii) of this Settlement Agreement, funds, if any, in the Damages Escrow and the Payment Reduction Escrow remaining unused upon the earlier to occur of (a) ten (10) months after the Plan Effective Date or (b) the closing of the Chapter 11 Case as contemplated by Section 11.1 of the Plan shall be released to the Trustee without demand, which time may be extended by the Parties' written agreement or Court order.

iv. **Wells Fargo Escrow**: The Trustee will place in escrow $185,000 of the Settlement Amount for payment of Claim No. 3 filed by Wells Fargo Bank N.A. in the bankruptcy case of Yonkers currently pending before the Bankruptcy Court as Case No. 15-22824. Any amounts not paid to Wells Fargo in satisfaction of that claim will be released to the Trustee for appropriate distribution upon the earlier to occur of (a) ten (10) months after the Plan Effective Date or (b)

the closing of the Chapter 11 Case as contemplated by Section 11.1 of the Plan.

d. **Treatment of the NY-Related Claims.** Pursuant to the Plan, the NY-Related Claims shall be fixed as follows: (i) Claims Nos. 9 and 15 shall be released and deemed withdrawn pursuant to Section 5(a) herein; (ii) Claims Nos. 1, 3, 4, 5, 6, 7, 10, 11, 18, 22, and 23 shall be allowed as general unsecured claims in the aggregate amount of $3,000,000 (collectively, the "Allowed NY Claims"). The pro rata allocation of distributions under the Plan on account of the Allowed NY Claims shall be made in accordance with a schedule to be provided by the NY Entities to the Trustee on or before that date which is at least ten (10) business days prior to the date, as fixed by the Court, for the commencement of the hearing to confirm the Plan and to approve the Settlement Agreement.

e. **Relief from the Automatic Stay.** The Final Order confirming the Plan and approving this Settlement Agreement shall provide that, from and after the Effective Date of the Plan, the automatic stay set forth in section 362 of the Bankruptcy Code shall be lifted and modified to the extent necessary for the Trustee and the NY Entities to effectuate the terms of the Plan and the Settlement Agreement.

3. **Related Transactions.**

a. Subject to the receipt of the Settlement Payment and upon the Plan Effective Date, the Trustee shall transfer to such party (or parties, as applicable) to be designated by the NY Entities on or before that date which is at least ten (10) business days prior to the date, as fixed by the

Court, for the commencement of the hearing to confirm the Plan and to approve the Settlement Agreement all of the right, title, and interest the Debtor, the Estate, and the Trustee may have in and to: (a) NYFH; and (b) Metro NY.

b. Subject to the receipt of the Settlement Payment and upon the Plan Effective Date, or as soon as reasonably practicable thereafter, the Trustee shall transfer to such party (or parties, as applicable) to be designated by the NY Entities on or before that date which is at least ten (10) business days prior to the date, as fixed by the Court, for the commencement of the hearing to confirm the Plan and to approve the Settlement Agreement all of the right, title and interest the Debtor, the Estate and the Trustee may have in and to the Debtor Entity Stations, Croton Falls and Tuckahoe.

c. Subject to the receipt of the Settlement Payment and upon the Plan Effective Date, or as soon as reasonably practicable thereafter, and subject to the consent and cooperation of Marc Weil, the Trustee, in his capacity as legal representative of the Debtor and his Estate, shall cause the Debtor Entity Stations to terminate the Debtor Entity Station Agreements to the extent the Debtor Entity Stations have any remaining rights to operate thereunder, and the Order confirming the Plan and approving this Settlement Agreement shall direct the Debtor to vacate the premises that the Debtor Station Entities operate on.

d. If within one (1) year of the Plan Effective Date, there is a sale, transfer or other conveyance of all, or substantially all, of the assets and/or ownership interests of one or more entities of the NY Companies that

results in aggregate consideration in excess of $100 million (each a "Relevant Transfer") on account of such transaction, the Estate shall immediately, without demand, be entitled to 25% of such proceeds after deducting amounts due to repay outstanding debt and repay members' initial capital contributions and unpaid preferred and tax distributions, and accounts payable to the extent such payments are required under the NY Companies' Operating Agreements.

4. **Binding Effect**. The Settlement Agreement shall become binding on the NY Entities upon execution, and the Trustee upon entry of an Order approving the Settlement Agreement.

5. **Releases.**
   a. The Plan will provide that upon the Plan Effective Date, the NY Entities fully, finally and forever waive, release and/or discharge the Trustee, his agents, employees, attorneys and accountants, the Debtor and the Estate from any and all claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, arising from or otherwise related to the Parties' Claims, (the "NY Release"), provided, however, that nothing in this Section 5 or in the Plan shall prohibit the Trustee or the NY Entities from enforcing their rights under the Plan or this Settlement Agreement, including without limitation by prosecuting such litigation as may be required to terminate the Station Agreements, gaining possession of the Debtor Entity Stations (subject, in the case of the Yonkers Station, to the

> presence of the DD Operation), Tuckahoe, and Croton Falls, and seeking damages in connection with any such actions.

b. Subject to receipt of the Settlement Payment, the Plan will provide upon the Plan Effective Date, the Trustee, on behalf of himself, the Debtor and the Estate, fully, finally and forever waives, releases and/or discharges the NY Entities, their agents, employees, attorneys and accountants, from any and all of the Trustee's, the Debtor's and Estate's claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted by the Debtor or the Trustee on behalf of the Debtor or the Estate, arising from or otherwise related to the Parties' Claims (the "Trustee Release" and, together with the NY Release, the "Releases"), provided, however, that nothing in this Section 5 or in the Plan shall prohibit the Trustee or the NY Entities from enforcing their rights under the Plan or this Settlement Agreement, including without limitation by prosecuting such litigation as may be required to terminate the Station Agreements, gaining possession of the Debtor Entity Stations (subject, in the case of the Yonkers Station, to the presence of the DD Operation), Tuckahoe, and Croton Falls, and seeking damages in connection with any such actions.

6. **Termination of Litigation.** As soon as practicable after the Plan Effective Date, the Parties will work together to cause the NYFD Lawsuit and the NY Litigations to be dismissed or discontinued (as the case may be) as to the Debtor, to the extent the claims asserted in those litigations are released as part of the Releases contained in

Section 5 herein, and with prejudice and as to the NY Entities to the extent the Trustee, on behalf of the Debtor or the Estate, controls the claims asserted therein.

7. **NY Companies & Distributions.** The Trustee will cooperate with the NY Entities to surrender and relinquish all of the Debtor's interests in the NY Companies and shall execute such documents as are reasonably required to evidence the surrender and relinquishment of such interests. Distributions payable to the Trustee on behalf of the Estate by NYFH and Metro NY shall continue to be made to the Trustee in the ordinary course and in compliance with their respective operating agreements until the Plan Effective Date.

8. **Temporary Restraining Order.** Upon the filing of the Plan and this Settlement Agreement (or as soon thereafter as the Trustee deems necessary), the Trustee shall use reasonable efforts to obtain a temporary restraining order or take other appropriate measures to protect the real and personal property at the locations where the Debtor Entity Stations, Croton Falls, and Tuckahoe operate, but allows for their operation in the ordinary course, pending the Plan Effective Date.

9. **Duty to Provide Security.** Upon execution of this Settlement Agreement, the NY Entities will provide reasonable security services (at no cost to the Estate) for the locations where the Debtor Entity Stations, Croton Falls, and Tuckahoe operate. The NY Entities have the discretion to determine the type of security to be provided for each of those locations, which discretion will be exercised in good faith.

10. **Resignation of Management Positions held by Trustee.** To the extent the Trustee is an officer, director and/or managing member of any of the NY Entities, the Debtor Station Entities, Tuckahoe or Croton Falls by reason of his being the Trustee for the Debtor's Estate, then, upon the occurrence of the Plan Effective Date, the Trustee,

acting on behalf of the Debtor, shall be deemed, without any further action on his part, to have resigned his positions with such entities, if any.

11. **Abandonment.**  Upon entry of a Final Order confirming the Plan and approving this Settlement Agreement, the Trustee is deemed to have abandoned to NYFD, or such designee or designees as may be identified by the NY Entities on or before that date which is at least ten (10) business days prior to the date, as fixed by the Court, for the commencement of the hearing to confirm the Plan and to approve the Settlement Agreement, any personal property, fixtures or inventory that belongs to the Debtor located at the real property where the Debtor Entity Stations operate.

12. **Bar Order/Injunction.**  The Trustee shall seek entry of a confirmation order that provides for an injunction to permanently enjoin and restrain (a) the NY Entities from asserting against the Debtor any NY Released Claims; (b) the Trustee, the Debtor, and/or his affiliates, from asserting against the NY Entities any of the Parties' Claims covered by the Trustee Release; and (c) the Parties (including the Debtor or those acting in concert with him) from taking any of the following actions in respect to any Released Claims:

   i. the commencement or continuation of any action or proceedings;
   ii. the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order;
   iii. the creation, perfection or enforcement of any encumbrance of any kind; and/or
   iv. the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from any such entity

provided, however, that nothing in Section 5 above or in this Section 11 or in the Plan shall prohibit the Trustee or the NY Entities from enforcing their rights under the Plan

or this Settlement Agreement, including without limitation by prosecuting such litigation as may be required to terminate the Station Agreements, gaining possession of the Debtor Entity Stations, Tuckahoe, and Croton Falls, and seeking damages in connection with any such actions

13. **Entire Agreement.** This Settlement Agreement constitutes the entire agreement and understanding between the Parties regarding the compromise and settlement of the NYFD Lawsuit, the NY Litigations and the NY-Related Claims, and it can only be modified by a writing signed by the Parties and approved by the Court.

14. **No Admission of Liability.** The Parties understand and agree that neither the making of this Settlement Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, or noncompliance with federal, state or local law, statute, order or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever on behalf of the Trustee, Debtor or the Estate.

15. **Fed. R. Evid. 408 Communication.** Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action among or between the Parties, other than as may be necessary to (a) obtain approval of and enforce this Settlement Agreement or any dispute hereunder or (b) seek damages or injunctive relief in connection therewith.

16. **Construction.** This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing the document to be drafted. Each Party warrants that it has been represented and advised by counsel or has had the full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

17. **Electronic Signature.** This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original and evidence of this Settlement Agreement may be exchanged by fax or by electronic transmission of a scanned copy of the signature pages or by exchange of originally signed documents, each of which shall be as fully binding on the party as a signed original.

18. **Authority.** Each person who executes this Settlement Agreement represents that he or she is duly authorized to execute this Settlement Agreement. The Trustee represents that he is authorized to enter into this Settlement Agreement and that he and the Debtors and the Estate will be bound thereby, subject to Court approval.

19. **Jurisdiction.** The Court shall retain exclusive jurisdiction over any and all matters arising from or related to this Settlement Agreement and the Plan incorporating the Settlement Agreement that is approved by an Order, including without limitation the interpretation and enforcement of this Settlement Agreement and the Plan.

| | |
|---|---|
| Dated: August 14, 2018<br>      Scarsdale, New York | Dated: August 14, 2018<br>      New York, New York |
| JAMES WEIL | STEPHEN S. GRAY<br>   Not Individually But Solely in His<br>   Capacity as Chapter 11 Trustee |
| */s/ James Weil*<br>JAMES WEIL | */s/ Stephen S. Gray*<br>STEPHEN S. GRAY, AS CHAPTER 11 TRUSTEE |

Dated: August 14 2018
      Scarsdale, New York

NEW YORK FUEL HOLDINGS, LLC


*/s/ James Weil*
NEW YORK FUEL HOLDINGS, LLC

18

Dated: August 14, 2018
      Scarsdale, New York

NEW YORK FUEL DISTRIBUTORS, LLC


*/s/ James Weil*
NEW YORK FUEL DISTRIBUTORS, LLC


Dated: August 14, 2018
      Scarsdale, New York

METRO DEALER STATIONS, LLC


*/s/ James Weil*
METRO DEALER STATIONS, LLC


Dated: August 14, 2018
      Scarsdale, New York

JMM FUELCO, LLC


*/s/ James Weil*
JMM FUELCO, LLC


Dated: August 14, 2018
      Scarsdale, New York

WEIL FAMILY II LLC


*/s/ James Weil*
WEIL FAMILY II LLC

Dated: August 14, 2018
        Scarsdale, New York

AMSTERDAM 181 REALTY LLC


*/s/ James Weil*
AMSTERDAM 181 REALTY LLC

Dated: August 14, 2018
        Scarsdale, New York

SCARSDALE FUEL AND FOOD CORP


*/s/ James Weil*
SCARSDALE FUEL AND FOOD CORP.

Dated: August 14, 2018
        Scarsdale, New York

COCO FARMS OF ELMSFORD, INC.


*/s/ James Weil*
COCO FARMS OF ELMSFORD, INC.

Dated: August 14, 2018
        New York, New York

SRG FUELCO, LLC


*/s/ Leon Silverman*
SRG FUELCO, LLC

Dated: August 14, 2018
        Scarsdale, New York

MARC WEIL


*/s/ Marc Weil*
MARC WEIL